# EXHIBIT 1

# Case No. SCV261819
# 01-16-2018
# Civil Case Cover Sheet

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

Leslie R. Perry 062390
Perry, Johnson, Anderson, Miller & Moskowitz, LLP
438 First Street, 4th Floor
Santa Rosa, CA 95401
TELEPHONE NO.: (707) 525-8800   FAX NO.: (707) 545-8242
ATTORNEY FOR *(Name)*: Plaintiffs

**ENDORSED
FILED**

**JAN 16 2018**

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sonoma
STREET ADDRESS: 600 ADMINISTRATION DRIVE
MAILING ADDRESS: ROOM 107J
CITY AND ZIP CODE: SANTA ROSA, CA 95403
BRANCH NAME: Civil

CASE NAME: Lewis v. Liberty Mutual Insurance Company

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 261819 |
|---|---|---|
| [X] Unlimited   [ ] Limited | [ ] Counter   [ ] Joinder | |
| (Amount demanded exceeds $25,000) | (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: |
| | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[X] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
  a. [ ] Large number of separately represented parties
  b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
  c. [ ] Substantial amount of documentary evidence
  d. [ ] Large number of witnesses
  e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
  f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [ ] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify)*: One
5. This case [ ] is [X] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 16, 2018

Leslie R. Perry
(TYPE OR PRINT NAME)                                    ▷ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
CEB | Essential Forms   ceb.com

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)-Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice-
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach-Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case-Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ-Administrative Mandamus
    Writ-Mandamus on Limited Court
      Case Matter
    Writ-Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal-Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400-3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late
      Claim
    Other Civil Petition

CEB | Essential
     | Forms

**CIVIL CASE COVER SHEET**

Case No. SCV261819
01-16-2018
Summons and Complaint

**SUM-100**

# SUMMONS
## (CITACIÓN JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Liberty Mutual Insurance Company; Liberty International Underwriters; and DOES 1 through 50

**FILED**

JAN 1 6 2018

SUPERIOR COURT OF CALIFORNIA,
COUNTY OF SONORA
BY_____ DEPUTY CLERK

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Nicolette Lewis; Alexis Lewis; Margrett Lewis and Jeffrey Lewis

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión  Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte  Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil  Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER<br>*(Número del Caso)*<br>SCV **261819** |

SONOMA COUNTY SUPERIOR COURT
600 ADMINISTRATION DRIVE
SANTA ROSA, CA 95403

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Leslie R. Perry 062390 Perry, Johnson, Anderson, Miller & Moskowitz, LLP
438 First Street, 4th Floor (707) 525-8800
Santa Rosa, CA 95401

| | | | | |
|---|---|---|---|---|
| DATE:<br>*(Fecha)* JAN 1 6 2018 | ARLENE D. JUNIOR | Clerk, by<br>*(Secretario)* | JENNIFER ELLIS | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*



[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

SCV-261819
CVPS001
Summons Issued
45379

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

CEB  Essential Forms  ceb.com

1    Leslie R. Perry, Bar No. 62390
     John E. Johnson, Bar No. 114902
2    Heather-Ann T. Young, Bar No. 283211
     PERRY, JOHNSON, ANDERSON,
3    MILLER & MOSKOWITZ, LLP
     438 1st Street, 4th Floor
4    Santa Rosa, California  95401
     Telephone: (707) 525-8800
5    Facsimile: (707) 545-8242

**FILED**

**JAN 1 8 2018**

SCV – 261819
CF
Complaint Filed
45378

SUPERIOR COURT OF CALIFORNIA,
COUNTY OF SONOMA

BY_____ DEPUTY CLERK

6    Attorneys for Plaintiffs
     ALEXIS LEWIS, JEFFREY LEWIS,
7    MARGRETT LEWIS, and NICOLETTE
     LEWIS

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         COUNTY OF SONOMA

10

11   ALEXIS LEWIS, JEFFREY LEWIS,          Case No. SCV  261819
     MARGRETT LEWIS, and NICOLETTE
12   LEWIS,                                **COMPLAINT**
                                               1) Direct Action for Recovery of
13              Plaintiffs,                         Judgment under Insurance Code
                                                   §11580(b)(2)
14        v.

15   LIBERTY MUTUAL INSURANCE             UNLIMITED CIVIL ACTION
     COMPANY, LIBERTY
16   INTERNATIONAL UNDERWRITERS,          Judge:
     and DOES 1 through 50, inclusive,
17                                        Complaint Filed:
                Defendants.               Trial Date:
18   _____/

19        Plaintiffs ALEXIS LEWIS, JEFFREY LEWIS, MARGRETT LEWIS, and

20   NICOLETTE LEWIS complain of Defendants, and each of them, as follows:

21        1.      Defendant Liberty Mutual Insurance Company is a Massachusetts corporation

22   authorized to do and doing business in California.  Liberty International Underwriters is a

23   division of Liberty Mutual Insurance Company with its corporate headquarters in San

24   Francisco, California.  Liberty Mutual Insurance Company and Liberty International

25   Underwriters are hereafter referred to as "Liberty Mutual."

26        2.      EcoSmart, Inc., is a California corporation with its corporate headquarters in

27   Los Angeles, California.  EcoSmart developed, marketed, merchandised and sold an ethanol

28   based product under the trade name e-NRG for use in decorative fire appliances.

1

Complaint

*(left margin, vertical text)* PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ, LLP

3.      Plaintiffs Alexis Lewis, Jeffrey Lewis, Margrett Lewis, and Nicolette Lewis at all times mentioned herein were residents of the County of Sonoma, and the State of California.

4.      Plaintiffs do not currently know the names of DOES 1 through 50, and therefore sue said Defendants by said fictitious names. Plaintiffs allege that each of these Defendants is in some way liable and at fault for the events and happenings referred to herein, and each is responsible for the damages incurred by Plaintiffs. Plaintiffs will amend this Complaint to allege each Defendant's true name and capacity when ascertained.

5.      EcoSmart sold e-NRG to Outdora for retail sale.  Outdora is a California corporation with its principal place of business in Sonoma, California.  On April 7, 2014, Plaintiff Margrett Lewis purchased four gallons of e-NRG from Outdora for use in her outdoor decorative fire appliance commonly referred to as a fire bowl.

6.      On June 8, 2014, Plaintiffs Nicolette and Alexis Lewis were using the fire bowl at their house in Sonoma, California, to heat marshmallows with their two best friends to make s'mores when they thought the fire was out and that the fire bowl needed to be refilled. Plaintiff Alexis Lewis was in the process of re-fueling the fire bowl with a one-gallon fuel container of e-NRG when vapors from the fuel container ignited causing an explosive discharge of ethanol fuel and fire, igniting her twin sister Nicolette Lewis.  The flames fully engulfed Nicolette Lewis causing severe third degree burns to her face, neck, chest, arms, legs and feet.  As Plaintiffs Jeffrey Lewis and Margrett Lewis rushed out of the house in response to Plaintiff Nicolette Lewis' blood curdling screams, they saw their daughter fully engulfed in flames. As Plaintiffs Margrett Lewis and Jeffrey Lewis attempted to put out the flames on Plaintiff Nicolette Lewis, and the area around her, they suffered burn injuries.

7.      Plaintiff Nicolette Lewis suffered 27 percent total body burns with third degree burns to her face, neck, chest, arms, legs and feet, and was hospitalized for 30 days at Shriner's Hospital with life threatening injuries. As a result of massive burn scars, Plaintiff Nicolette Lewis had to undergo split thickness skin grafting and skin grafts were taken from 32 percent of her body that was not burned.  Plaintiff developed skin contractures and keloid scarring

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

2

1    which interfered with normal body function, resulting in over twenty surgical procedures, over

2    twenty laser treatments, hyperbaric oxygen therapy, leach therapy and multiple debridements

3    causing severe pain and emotional distress.

4         8.       Plaintiffs Alexis Lewis, Margrett Lewis and Jeffrey Lewis suffered burn

5    injuries and severe emotional distress, including post-traumatic stress disorder, depression and

6    anxiety which has and will continue to affect their mental and physical health.

7         9.       The fuel container used in one gallon fuel containers was defective in design for

8    lack of a flame arrestor. A flame arrestor is a simple wire or plastic mesh that fits in the neck

9    of the fuel container and prevents flames from entering the container, thus preventing the

10   discharge of flaming ethanol fuel. EcoSmart was aware of the need to modify their fuel

11   containers to include flame arrestors prior to the sale of e-NRG to Plaintiff Margrett Lewis and

12   after the subject accident equipped all ethanol fuel containers sold under the name e-NRG with

13   flame arrestors.

14        10.      EcoSmart was served with a Summons and Complaint by Plaintiffs in an action

15   filed in the Sonoma County Superior Court entitled *Lewis v. EcoSmart, et al.*, Case No. SCV-

16   256907 alleging product defect, negligence and negligent infliction of emotional distress.

17        11.      Liberty Mutual issued a policy of insurance covering EcoSmart, Policy No.

18   ME-CAS-12-438176, covering negligence and product defects resulting in bodily injury with a

19   coverage period of April 30, 2013, to April 30, 2014. The policy was renewed on April 30,

20   2014, with coverage to April 30, 2015, under Policy No. SY-CAS-13-438176. Coverage

21   under the policy period commencing April 30, 2014, substantially reduced coverage limits and

22   included claims made provision without providing 60 days' notice as required under California

23   law.

24        12.      Liberty Mutual declined to provide a defense and indemnification in *Lewis v.*

25   *EcoSmart, et al.*, Case No. SCV-256907 because the claim was filed after June 30, 2014, and

26   the accident occurred on June 8, 2014.

27        13.      Plaintiffs allege that Liberty Policy No. ME-CAS-12-438176 was in full force

28   and effect on June 8, 2014, and provided full coverage for the injuries and damages suffered

3

1   by Plaintiff because the terms of coverage and the amount of coverage was substantially

2   reduced or excluded without Liberty Mutual giving EcoSmart the notice required by California

3   Insurance Code section 677.2.  Due to the failure of Liberty Mutual to give notice to

4   EcoSmart, Policy ME-CAS-12-438176 coverage was extended by 60 days or until June 30,

5   2014, pursuant to California Insurance Code section 678.1.  The extended coverage under

6   Insurance Code section 678.1 provides coverage for the injuries and damages suffered by

7   Plaintiffs.

8           14.     On or about November 8, 2015, EcoSmart filed for bankruptcy protection in

9   U.S. Federal Bankruptcy Court, California Central, Case No. 2:15bk27139 due to the lawsuit

10  filed by Plaintiffs in Sonoma County due to the denial of coverage and indemnity by Liberty

11  Mutual as set forth above.  By order of the Bankruptcy Court, Plaintiffs were allowed to

12  proceed against EcoSmart's insurance carrier, to the extent there is coverage, but discharged

13  EcoSmart for personal liability for debts.

14          15.     On January 9, 2018, following testimony of experts and after review of

15  declarations, medical records and reports, Judge Allan Hardcastle, Sonoma County Superior

16  Court Judge, entered Judgment against EcoSmart in favor of Plaintiffs in Sonoma County

17  Superior Court Case No. SCV-256907 for injuries and damages suffered by Plaintiffs as a

18  result of the accident of June 8, 2014.  The full amount in judgment against EcoSmart and in

19  favor of Plaintiffs is: Nicolette Lewis, $30,678,221.71; Alexis Lewis, $4,095,763; Margrett

20  Lewis, $7,565.052; and Jeffrey Lewis, $3,565,284.  True and correct copies of the Judgments

21  are attached as Exhibit A hereto.

22          16.     Pursuant to California Insurance Code section 11580(b)(2), Plaintiffs are

23  bringing a direct action against Defendant Liberty Mutual for the injuries and damages

24  suffered on June 8, 2014, as set forth above.  Defendant Liberty Mutual is liable for the

25  injuries and damages suffered by Plaintiffs due to its wrongful denial of both coverage and

26  defense under its policy of insurance with EcoSmart, Policy No. ME-CAS-12-438176, a copy

27  of which is attached as Exhibit B hereto.

28          17.     Plaintiffs request a finding that Liberty Mutual Policy No. ME-CAS-12-438176

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

4

Complaint

1   provides coverage for Plaintiffs' injuries and damages arising out of the subject accident, that

2   Liberty Mutual wrongfully denied coverage to EcoSmart, that Liberty Mutual wrongfully

3   failed to provide a defense to EcoSmart and that Liberty Mutual is obligated to pay its policy

4   limits to satisfy the judgments against EcoSmart and in favor of Plaintiffs as set forth above.

5       WHEREFORE, Plaintiffs pray for judgment as follows:

6   1.   Full payment of the Judgments entered against EcoSmart in Sonoma County

7        Superior Court Case No. SCV-256907 in favor of Plaintiffs;

8   2.   Interest from the date of judgment;

9   3.   For costs of suit; and

10  4.   Such other relief as the Court determines is just and proper.

11                          PERRY, JOHNSON, ANDERSON,
                            MILLER & MOSKOWITZ, LLP
12

13  DATED: January 16, 2018          By: _____

14                                       LESLIE R. PERRY
                                         Attorneys for Plaintiffs
15                                       ALEXIS LEWIS, JEFFREY LEWIS,
                                         MARGRETT LEWIS, and NICOLETTE
16                                       LEWIS

17

18

19

20

21

22

23

24

25

26

27

28

5

Complaint

Case No. SCV261819
01-16-2018
Notice of Assignment

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA<br>CIVIL DIVISION<br>600 ADMINISTRATION DRIVE, ROOM 107-J<br>SANTA ROSA, CALIFORNIA 95403-2878<br>(707) 521-6500<br>http://www.sonoma.courts.ca.gov | (FOR COURT USE ONLY)<br><br>ENDORSED<br>FILED<br>JAN 16 2018 |
|---|---|
| Lewis vs Liberty Mutual Insurance Company | SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SONOMA |
| **NOTICE OF ASSIGNMENT TO ONE JUDGE FOR ALL PURPOSES,<br>NOTICE OF CASE MANAGEMENT CONFERENCE,<br>and ORDER TO SHOW CAUSE** | Case number:<br>SCV-261819 |

**A COPY OF THIS NOTICE MUST BE SERVED WITH THE SUMMONS AND COMPLAINT<br>AND WITH ANY CROSS-COMPLAINT**

1. **THIS ACTION IS ASSIGNED TO HON. PATRICK BRODERICK FOR ALL PURPOSES.**
Pursuant to California Rules of Court, Rule 2.111(7), the assigned judge's name must appear below the number of the case and the nature of the paper on the first page of each paper presented for filing.

2. EACH DEFENDANT MUST FILE A WRITTEN RESPONSE TO THE COMPLAINT AS REQUIRED BY THE SUMMONS.
 A Case Management Conference has been set at the time and place indicated below:

| | | |
|---|---|---|
| Date: Tuesday, 05/15/2018 | Time: 3:00 PM | Courtroom 16 |
| Location: 3035 Cleveland Avenue, Santa Rosa. CA 95403 | | |

3. No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement [Judicial Council form #CM-110] and serve it on all other parties in the case. In lieu of each party's filing a separate case management statement, any two or more parties may file a joint statement.

4. At the conference, counsel for each party and each self-represented party must appear personally or by telephone [California Rules of Court, Rule 3.670(c)(2)]; must be familiar with the case; and must be prepared to discuss and commit to the party's position on the issues listed in California Rules of Court, Rule 3.727.

5. Pre-approved dispositions are recorded three (3) court days prior to the case management conference. These may be obtained by calling (707) 521-6883 or by going to http://sonoma.courts.ca.gov/online-services/tentative-rulings.

### ORDER TO SHOW CAUSE

To Plaintiff(s), Cross-complainants, and/or their attorneys of record:
If, on the date shown above, you are not in compliance with the requirements stated in the California Rules of Court, rules 2.30, 3.110, and/or 3.720 through 3.771 inclusive, you must then and there show cause why this court should not impose monetary and/or terminating sanctions in this matter.

Pursuant to California Rule of Court, rule 3.221(b), information and forms related to Alternative Dispute Resolution are available on the Court's website at http://www.sonoma.courts.ca.gov/self-help/adr.

CV-1 [Rev. September 13, 2013]   NTC OF ASSIGNMENT OF 1 JUDGE FOR ALL PURPOSES, NTC OF CMC & OSC
CRC, Rules 3.110, 3.720-3.730; CCP§§177.5, 583.410

## ELECTRONIC SERVICE OF DOCUMENTS

### Enabled by Local Rule 18.16

Voluntary e-service is available in Sonoma County. The Court has pre-approved a Stipulation for cases in which the attorneys or parties choose e-service. A copy of the Stipulation is available under the "Civil" section in the "Division" tab of the Court website: http://www.sonoma.courts.ca.gov. The advantages of e-service to the parties include:

| | |
|---|---|
| **SAVE MONEY** | Reduction in costs related to photocopying, retrieving, storing, messenger and postage fees. No special software is needed to use e-service |
| **SAVE TIME** | Instant service of your documents on all parties |
| **SAVE SPACE** | With 24/7 internet access to all documents, you do not need to house paper copies |
| **GAIN CERTAINTY** | Immediate confirmation of service for your records. Documents are not delayed in the mail or blocked by email spam blockers and firewalls |

To take advantage of e-service, select an e-service provider and file the signed Stipulation with the Court. Parties can then e-serve documents through the selected provider. Information about e-service providers is available at the website for the Sonoma County Bar Association: http://www.sonomacountybar.org. The Court does not endorse one provider over another.

**To learn more about available e-service providers and their fees, please visit their website**

*Note: Hard-copy pleadings are required to be filed with the Court in accordance with applicable provisions of the Code of Civil Procedure, California Rules of Court and local rules. You do not need to provide a courtesy copy of a served document to the specific department in which the matter has been assigned.*

## DISCOVERY FACILITATOR PROGRAM

Effective January 1, 2008, the Sonoma County Superior Court promulgated Sonoma County Local Rule 4.14 which established the Discovery Facilitator Program. Participation in the Discovery Facilitator Program shall be deemed to satisfy a party's obligation to meet and confer under Sonoma County Local Rule 5.5 and applicable provisions of the Code of Civil Procedure and California Rules of Court. This program has been providing assistance in resolving discovery disputes and reducing the backlog of matters on the law and motion calendars in our civil law departments. The Sonoma County Superior Court encourages all attorneys and parties to utilize the Discovery Facilitator Program in order to help resolve or reduce the issues in dispute whether or not a discovery motion is filed.

There is a link to Local Rule 4.14 and the list of discovery facilitator volunteers on the official website of the Sonoma County Superior Court at http://www.sonoma.courts.ca.gov. On the home page, under the "AVAILABLE PROGRAMS & HELP" section, click on »Discovery Facilitator Program. You can then click on either "Local Rule 4.14" to obtain the language of the local rule, or "List of Facilitators" for a list of the volunteer discovery facilitators and accompanying contact and biographical information.

Case No. SCV261819
01-23-2018
First Amended Summons and First
Amended Complaint

FIRST AMENDED COMPLAINT

# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br>Liberty Mutual Insurance Company; Liberty International<br>Underwriters; and DOES 1 through 50<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br>Nicolette Lewis; Alexis Lewis; Margrett Lewis and Jeffrey Lewis | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)*<br>**FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SONOMA<br><br>**JAN 2 3 2018**<br><br>BY_____<br>Deputy Clerk |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>SONOMA COUNTY SUPERIOR COURT<br>600 ADMINISTRATION DRIVE<br>SANTA ROSA, CA 95403 | **CASE NUMBER**<br>*(Número del Caso):*<br>SCV-261819 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Leslie R. Perry 062390 Perry, Johnson, Anderson, Miller & Moskowitz, LLP
438 First Street, 4th Floor (707) 525-8800
Santa Rosa, CA 95401

| | | | |
|---|---|---|---|
| DATE:<br>*(Fecha)* | **JAN 2 3 2018**   **ARLENE D. JUNIOR** | Clerk, by<br>*(Secretario)*   GRISELDA ZAVALA | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

SCV-261819
CVPS001
Summons Issued
46415

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courtinfo.ca.gov* |

CEB Essential Forms
ceb.com

LEWIS, MARGRETT

ENDORSED
FILED

JAN 2 3 2018

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SONOMA

1  LESLIE R. PERRY (SBN 062390)
   JOHN J. JOHNSON (SBN 114902)
2  HEATHER-ANN T. YOUNG (SBN 283211)
   PERRY, JOHNSON, ANDERSON,
3  MILLER & MOSKOWITZ, LLP
   438 First Street, Fourth Floor
4  Santa Rosa, CA 95401
   Telephone: (707) 525-8800
5  Facsimile: (707) 545-8242

6  Attorney for Plaintiffs
   MARGRETT LEWIS, NICOLETTE LEWIS,
7  ALEXIS LEWIS and JEFFREY LEWIS

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    COUNTY OF SONOMA

10 NICOLETTE LEWIS, ALEXIS LEWIS,       ) CASE No. 261819
   MARGRETT LEWIS; and JEFFREY LEWIS    )
11                                      ) Unlimited Civil Action
                                        )
12            Plaintiff(s),             ) **FIRST AMENDED COMPLAINT**
                                        )   **(1) Direct Action for Recovery of**
13            vs.                       )       **Judgment under Insurance Code**
                                        )       **Section 11580(b)(2)**
14 LIBERTY MUTUAL INSURANCE COMPANY ,  )   **(2) Breach of Contract**
   LIBERTY INTERNATIONAL UNDERWRITERS, )
15 and DOES 1 through 50, inclusive,    )
                                        )
16                                      ) Department: 16
              Defendant(s).             ) Judge: Hon. Patrick Broderick
17                                      ) Trial Date: not yet set
                                        )
18 _____ )

19         Plaintiffs ALEXIS LEWIS, JEFFREY LEWIS, MARGRETT LEWIS, and

20 NICOLETTE LEWIS complain of Defendants, and each of them, as follows:

21         1.      Defendant Liberty Mutual Insurance Company is a Massachusetts corporation

22 authorized to do and doing business in California. Defendant Liberty International Underwriters

23 is a division of Liberty Mutual Insurance Company with its corporate headquarters in San

24 Francisco, California. Defendants Liberty Mutual Insurance Company and Liberty International

25 Underwriters are hereafter referred to as "Liberty Mutual."

26         2.      EcoSmart, Inc., is a California corporation with its corporate headquarters in

27 Los Angeles, California. EcoSmart developed, marketed, merchandized and sold an ethanol

28 based product under the trade name e-NRG for use in decorative fire appliances.

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

1

FIRST AMENDED COMPLAINT

3.      Plaintiffs Alexis Lewis, Jeffrey Lewis, Margrett Lewis, and Nicolette Lewis at all times mentioned herein were residents of the County of Sonoma, and the State of California.

4.      Plaintiffs do not currently know the names of DOES 1 through 50, and therefore sue said Defendants by said fictitious names. Plaintiffs allege that each of these Defendants are in some way liable and at fault for the events and happenings referred to herein, and each is responsible for the damages incurred by Plaintiffs. Plaintiffs will amend this Complaint to allege each Defendant's true name and capacity when ascertained.

5.      EcoSmart sold e-NRG to Outdora for retail sale. Outdora is a California corporation with its principal place of business in Sonoma, California. On April 7, 2014, Plaintiff Margrett Lewis purchased four gallons of e-NRG from Outdora for use in her outdoor decorative fire appliance commonly referred to as a fire bowl.

6.      On June 8, 2014, Plaintiffs Nicolette and Alexis Lewis were using the fire bowl at their house in Sonoma, California, to heat marshmallows with their two best friends to make s'mores when they thought the fire was out and that the fire bowl needed to be refilled. Plaintiff Alexis Lewis was in the process of re-fueling the fire bowl with a one-gallon fuel container of e-NRG when vapors from the fuel container ignited causing an explosive discharge of ethanol fuel and fire, igniting her twin sister Nicolette Lewis. The flames fully engulfed Nicolette Lewis causing severe third degree burns to her face, neck, chest, arms, legs and feet. As Plaintiffs Jeffrey Lewis and Margrett Lewis rushed out of the house in response to Plaintiff Nicolette Lewis' blood curdling screams they saw their daughter fully engulfed in flames. As Plaintiff Margrett Lewis and Jeffrey Lewis attempted to put out the flames on Plaintiff Nicolette Lewis, and the area around her, they suffered burn injuries.

7.      Plaintiff Nicolette Lewis suffered 27 percent total body burns with third degree burns to her face, neck, chest, arms, legs and feet, and was hospitalized for 30 days at Shriner's Hospital with life threatening injuries. As a result of massive burn scars, Plaintiff Nicolette Lewis had to undergo split thickness skin grafting and skin grafts were taken from 32 percent

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

1  of her body that was not burned. Plaintiff developed skin contractures and keloid scarring
2  which interfered with normal body function, resulting in over twenty surgical procedures, over
3  twenty laser treatments, hyperbaric oxygen therapy, leach therapy and multiple debridements
4  causing severe pain and emotional distress.

5      8.      Plaintiff Alexis Lewis, Margrett Lewis and Jeffrey Lewis suffered burn
6  injuries and severe emotional distress, including post-traumatic stress disorder, depression and
7  anxiety which has and will continue to affect their mental and physical health.

8      9.      The fuel container used in one gallon fuel containers was defective in design for
9  lack of a flame arrestor. A flame arrestor is a simple wire or plastic mesh that fits in the neck
10 of the fuel container and prevents flames from entering the container, thus preventing the
11 discharge of flaming ethanol fuel. EcoSmart was aware of the need to modify their fuel
12 containers to include flame arrestors prior to the sale of e-NRG to Plaintiff Margrett Lewis and
13 after the subject accident equipped all ethanol fuel containers sold under the name e-NRG with
14 flame arrestors.

15     10.     EcoSmart was served with a Summons and Complaint by Plaintiffs in an action
16 filed in the Sonoma County Superior Court entitled *Lewis v. EcoSmart, et al.*, Case No. SCV-
17 256907 alleging product defect, negligence and negligent infliction of emotional distress.

18                              **FIRST CAUSE OF ACTION**

19                     **(Direct Action under Insurance Code Section 11580)**

20     11.     Plaintiffs incorporate by reference each of the allegations set forth in paragraphs 1
21 to 10 above.

22     12.     Liberty Mutual issued a policy of insurance covering EcoSmart, Policy No.
23 ME-CAS-12-438176, covering negligence and product defects resulting in bodily injury with a
24 coverage period of April 30, 2013, to April 30, 2014. The policy was renewed on April 30,
25 2014, with coverage to April 30, 2015, under Policy No. SY-CAS-13-438176. Coverage
26 under the policy period commencing April 30, 2014, substantially reduced coverage limits and
27 included claims made provision without providing 60 days notice as required under California

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

1   law.

2       13.    Liberty Mutual declined to provide a defense and indemnification in *Lewis v.*

3   *EcoSmart, et al.*, Case No. SCV-256907 because the claim was filed after June 30, 2014, and

4   the accident occurred on June 8, 2014.

5       14.    Plaintiffs allege that Liberty Policy No. ME-CAS- 12-438176 was in full force

6   and effect on June 8, 2014, and provided full coverage for the injuries and damages suffered by

7   Plaintiffs because the terms of coverage was substantially reduced or excluded without Liberty

8   Mutual giving EcoSmart the notice required by California Insurance Code section 677.2. Due to

9   the failure of Liberty Mutual to give notice to EcoSmart, Policy ME-CAS-12-438176 coverage

10   was extended by 60 days or until June 30, 2014, pursuant to California Insurance Code section

11   678.1. The extended coverage under Insurance Code section 678.1 provides coverage for the

12   injuries and damages suffered by Plaintiffs.

13       15.    On or about November 8, 2015, EcoSmart filed for bankruptcy protection in

14   U.S. Federal Bankruptcy Court, California Central, Case No. 2:15bk27139 due to the lawsuit

15   filed by Plaintiffs in Sonoma County due to the denial of coverage and indemnity by Liberty

16   Mutual as set forth above. By order of the Bankruptcy Court, Plaintiffs were allowed to

17   proceed against EcoSmart's insurance carrier, to the extent there is coverage, but discharged

18   EcoSmart for personal liability for debts.

19       16.    On January 9, 2018, following testimony of experts and after review of

20   declarations, medical records and reports, Judge Allan Hardcastle, Sonoma County Superior

21   Court Judge, entered Judgment against EcoSmart in favor of Plaintiffs in Sonoma County

22   Superior Court Case No. SCV-256907 for injuries and damages suffered by Plaintiffs as a result

23   of the accident of June 8, 2014. The full amount in judgment against EcoSmart and in

24   favor of Plaintiffs is: Nicolette Lewis, $30,678,221.71; Alexis Lewis, $4,095,763; Margrett

25   Lewis, $7,565,052; and Jeffrey Lewis, $3,565,284. True and correct copies of the Judgments

26   are attached as Exhibit A hereto.

27       17.    Pursuant to California Insurance Code.section 11580(b) (2), Plaintiffs are

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

4

1    bringing a direct action against Defendant Liberty Mutual for the injuries and damages
2    suffered on June 8, 2014, as set forth above.  Defendant Liberty Mutual is liable for the injuries
3    and damages suffered by Plaintiffs due to its wrongful denial of both coverage and
4    defense under its policy of insurance with EcoSmart, Policy No. ME-CAS-12-438176, a copy
5    of which is attached as Exhibit B hereto.
6        18. Plaintiffs request a finding that Liberty Mutual Policy No. ME-CAS-12-438176
7    provides coverage for Plaintiffs' injuries and damages arising out of the subject accident, that
8    Liberty Mutual wrongfully denied coverage to EcoSmart, that Liberty Mutual wrongfully
9    failed to provide a defense to EcoSmart and that Liberty Mutual is obligated to pay its policy
10   limits to satisfy the judgments against EcoSmart and in favor of Plaintiffs as set forth above.

### SECOND CAUSE OF ACTION

#### (Breach of Contract)

19.    Plaintiffs incorporate by reference each of the allegations set forth in paragraphs 1
to 18 above.

20.    The insurance policy is a contract between Defendant Liberty Mutual and
EcoSmart, wherein Liberty Mutual promises to insure EcoSmart against liability claims.

21.    EcoSmart paid its premiums and in turn was covered by this policy so there was a
bargained for exchange.

22.    Once Plaintiffs secured the judgments against EcoSmart they became judgment
creditors. Defendant Liberty Mutual owed duties and obligations to Plaintiffs as judgment
creditors and as third party beneficiaries under the contract.

23.    Defendant Liberty Mutual breached this contract by failing to indemnify or defend
EcoSmart.

24.    Defendant Liberty Mutual breached this contract by failing to provide coverage to
EcoSmart.

///
///

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

25.     As a direct and proximate result of Defendant Liberty Mutual's conduct and breach of contractual obligations, Plaintiffs have suffered damages under the policy in an amount according to proof at trial.

WHEREFORE, Plaintiffs pray for judgment as follows:

1.     Full payment of the Judgments entered against EcoSmart in Sonoma County Superior Court Case No. SCV-256907 in favor of Plaintiffs;

2.     Interest from the date of judgment;

3.     For costs of suit; and

4.     Such other relief as the Court determines is just and proper.

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ, LLP

DATED: January 23, 2018                    By: _____
                                                LESLIE R. PERRY
                                                Attorneys for Plaintiffs
                                                NICOLETTE LEWIS, ALEXIS LEWIS,
                                                MARGRETT LEWIS and JEFFREY
                                                LEWIS

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

6

EXHIBIT A

JUD-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| William D. Anderson, SBN 53071<br>Perry, Johnson, Anderson, Miller & Moskowitz, LLP<br>438 First Street, 4th Floor<br>Santa Rosa, CA 95401<br>TELEPHONE NO.: (707) 525-8800   FAX NO. *(Optional)*: (707) 545-8242<br>E-MAIL ADDRESS *(Optional)*: anderson@perrylaw.net<br>ATTORNEY FOR *(Name)*: Plaintiffs MARGRETT LEWIS, et al. | **F I L E D**<br><br>JAN 0 9 2018<br><br>Clerk of Superior Court of California.<br>County of Sonoma<br>By<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   SONOMA
STREET ADDRESS: 3055 Cleveland Avenue
MAILING ADDRESS: Department 19
CITY AND ZIP CODE: Santa Rosa, CA 95403
BRANCH NAME: Unlimited Civil Case

PLAINTIFF: MARGRETT LEWIS, et al.

DEFENDANT: ECOSMART, INC., et al.

| JUDGMENT | | | CASE NUMBER:<br>SCV-256907 |
|---|---|---|---|
| ☐ By Clerk   ☒ By Default | ☐ After Court Trial | | |
| ☒ By Court   ☐ On Stipulation | ☐ Defendant Did Not<br>Appear at Trial | | |

JUDGMENT

1. ☒ **BY DEFAULT**
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. ☐ **Clerk's Judgment** (Code Civ. Proc., § 585(a)). Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
   e. ☒ **Court Judgment** (Code Civ. Proc., § 585(b)). The court considered
      (1) ☒ plaintiff's testimony and other evidence.
      (2) ☐ Plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. ☐ **ON STIPULATION**
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and
   b. ☐ the signed written stipulation was filed in the case.
   c. ☐ the stipulation was stated in open court   ☐ the stipulation was stated on the record.

3. ☒ **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.
   a. The case was tried on *(date and time)*: ~~January 9, 2017, 9:00 A.M.~~ *April* January 9, 2018, 8:30 a.m
      before *(name of judicial officer)*:  Hon. Allan D. Hardcastle
   b. Appearances by:
      ☒ Plaintiff *(name each)*:                    ☒ Plaintiff's attorney *(name each)*:
         (1) MARGRETT LEWIS                              (1) WILLIAM D. ANDERSON
         (2) JEFFREY LEWIS                               (2) HEATHER-ANN YOUNG
      ☐ Continued on Attachment 3b.

      ☐ Defendant *(name each)*:                    ☐ Defendant's attorney *(name each)*:
         (1)                                             (1)
         (2)                                             (2)
      ☐ Continued on Attachment 3b.

   c. ☐ Defendant did not appear at trial. Defendant was properly served with notice of trial.

   d. ☐ A statement of decision (Code Civ. Proc., § 632) ☐ was not  ☐ was   requested.

Page 1 of 2

CEB | Essential
ceb.com | Forms

| PLAINTIFF: MARGRETT LEWIS, et al. | CASE NUMBER: SCV-256907 |
| DEFENDANT: ECOSMART, INC., et al. | |

JUDGMENT IS ENTERED AS FOLLOWS BY:  [X] THE COURT   [ ] THE CLERK

4. [ ] Stipulated Judgment. Judgment is entered according to the stipulation of the parties.

5. Parties. Judgment is
   a. [X] for plaintiff (name each):
      NICOLETTE LEWIS

   c. [ ] for cross-complainant (name each):

   and against defendant (names):
   ECOSMART, INC.

   and against cross-defendant (name each):

   [ ] Continued on Attachment 5a.

   [ ] Continued on Attachment 5c.

   b. [ ] for defendant (name each):

   d. [ ] for cross-defendant (name each):

6. Amount.
   a. [X] Defendant named in item 5a above must pay plaintiff on the complaint:

   c. [ ] Cross-defendant named in item 5c above must pay cross-complainant on the cross-complaint:

| (1) [X] Damages | $ 30,550,622.00 | (1) [ ] Damages | $ |
| (2) [ ] Prejudgment interest at the annual rate of     % | $ | (2) [ ] Prejudgment interest at the annual rate of     % | $ |
| (3) [ ] Attorney fees | $ | (3) [ ] Attorney fees | $ |
| (4) [X] Costs | $ 27,599.71 | (4) [ ] Costs | $ |
| (5) [ ] Other (specify): | $ | (5) [ ] Other (specify): | $ |
| (6)     TOTAL | $ 70,550,622.00  A 2H 30,678 22 | (6)     TOTAL | $             0.00 |

   b. [ ] Plaintiff to receive nothing from defendant named in item 5b.
      [ ] Defendant named in item 5b to recover costs $
      [ ] and attorney fees $

   d. [ ] Cross-complainant to receive nothing from cross-defendant named in item 5d.
      [ ] Cross-defendant named in item 5d to recover costs $
      [ ] and attorney fees $

7. [X] Other (specify):   See attached findings.

Date: 1/9/18

[X] _____ ADLAN D. HARDCASTLE  Judicial Officer

Date: _____

[ ] Clerk, by _____, Deputy

---

(SEAL)   CLERK'S CERTIFICATE (Optional)

I certify that this is a true copy of the original judgment on file in the court.

Date: 1-9-18

Clerk, by _____, Deputy
         Christine Reynoso

Page 2 of 2

CEB | Essential Forms
ceb.com

1   Attachment to JUDGMENT BY COURT:
    Lewis v. EcoSmart
2   SCV 256907

3   Nicolette Lewis

4                            FINDINGS:

5        1.    Defendant ECOSMART, INC. (ECOSMART) is a California Corporation with

6   its principal place of business 3641 Holdredge Avenue, Los Angeles, California.

7        2.    ECOSMART is 90% owned by Defendant THE FIRE COMPANY, PTY, LTD

8   (THE FIRE COMPANY).

9        3.    ECOSMART has one director, Stephane Thomas, who is also CEO.  He is also

10  managing director and CEO of THE FIRE COMPANY.

11       4.    ECOSMART was incorporated to act as a sales and distribution company for

12  the products designed and sold by THE FIRE COMPANY.

13       5.    e-NRG is denatured alcohol and is produced and bottled by Defendant

14  CHEMISPHERE CORPORATION (CHEMISPHERE) for ECOSMART.  ECOSMART then

15  sells and distributes e-NRG throughout the U.S. and Canada.

16       6.    The e-NRG product line includes one gallon HDPE fuel containers

17  CHEMISPHERE for bottling and packaging.

18       7.    Prior to July 1, 2014, e-NRG one gallon fuel containers did not have flame

19  arrestors.

20       8.    Flame arrestor technology has been in use since the late 1800s and is commonly

21  used in industry.  Flame arrestors were used by competitors of ECOSMART prior to the time

22  ECOSMART incorporated them into their fuel containers.

23       9.    Flame arrestors typically cost a few cents to manufacture.

24       10.   Flame arrestors are a safety feature designed to quench flames and prevent them

25  from entering fuel container and causing the accidental explosion of fuel and fuel vapors

26  within the container.

27       11.   Ethanol alcohol, the fuel used in e-NRG, produces vapor that is in the explosive

28  range at room temperature.

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

                                           1
DEFAULT JUDGMENT AGAINST ECOSMART, INC. BY COURT AFTER HEARING (PLAINTIFF
NICOLETTE LEWIS)

1    12.    e-NRG one gallon fuel containers without flame arrestors create a severe burn

2    hazard because fuel vapors can ignite and travel back into the fuel container, igniting the fuel

3    vapor and air in the headspace of the bottle causing an explosive discharge of flaming fuel and

4    vapor.

5    13.    e-NRG one gallon fuel containers manufactured prior to July 1, 2014, were not

6    equipped with flame arrestors creating a foreseeable risk of harm and therefore are defective.

7    14.    ECOSMART was aware of the unreasonable risk of harm their one gallon fuel

8    containers created prior to June 8, 2014, because ECOSMART was aware of at least two other

9    severe burn injuries suffered by consumers using e-NRG fuel containers which lacked flame

10   arrestors.

11   15.    In February 2014, ECOSMART hired REAX Engineering to do a fire safety

12   analysis of its e-NRG fuel containers and REAX Engineering concluded that all e-NRG fuel

13   containers should be equipped with flame arrestors due to the severe burn hazard caused when

14   used in a foreseeable manner by consumers.

15   16.    As early as 2011 Alexander Eburne, CEO of ECOSMART, was aware of the

16   national recall of pourable gel alcohol containers that did not have flame arrestors due to the

17   severe burn hazard created when used in a foreseeable manner by consumers.

18   17.    ECOSMART was negligent for selling fuel containers that were not equipped

19   with flame arrestors knowing that an explosive discharge of flaming fuel was a risk when used

20   in a foreseeable manner by consumers.

21   18.    ECOSMART started a national recall of its fuel containers due to lack of flame

22   arrestors in May, 2014, but never contacted or notified Plaintiffs of the recall and the danger of

23   using e-NRG fuel containers.

24   19.    On April 7, 2014, Plaintiff MARGRETT LEWIS purchased four one gallon

25   fuel containers of e-NRG from retailer Defendant OUTDORA and was not advised of the

26   severe risk of harm she was exposing herself and her family by purchasing ethanol fuel

27   containers which were not equipped with flame arrestors.

28   20.    On June 8, 2014, Plaintiffs NICOLETTE LEWIS, ALEXIS LEWIS and two

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

2

DEFAULT JUDGMENT AGAINST ECOSMART, INC. BY COURT AFTER HEARING (PLAINTIFF
NICOLETTE LEWIS)

1   friends were cooking marshmallows over a Hampton Model 530 fire bowl sold and distributed

2   by Defendant REAL FLAME COMPANY, INC. (REAL FLAME) when the flame appeared

3   to die out requiring refueling.

4       21.   ALEXIS LEWIS, using an approximately half full one gallon container of e-

5   NRG, attempted to refuel the fire bowl, when burning vapor and fuel discharged in an

6   explosion, covering NICOLETTE LEWIS in flames.

7       22.   During the explosive discharge of ethanol fuel from the e-NRG fuel container,

8   ALEXIS LEWIS suffered burn injuries to her lower extremities.

9       23.   MARGRETT LEWIS, hearing horrific screams from NICOLETTE, ran out

10   onto the front porch and in an effort to smother NICOLETTE's flames and to remove

11   NICOLETTE'S shirt which was engulfed in flames, MARGRETT suffered severe burn

12   injuries to both her hands and arms.

13       24.   Plaintiff JEFFREY LEWIS, also hearing the screams of NICOLETTE, ran out

14   onto the front patio and suffered burn injuries to his right leg and lower extremities as he

15   attempted to put the flames out.

16       25.   As a result of the explosion of the e-NRG fuel containers ALEXIS LEWIS

17   suffered burn injuries to her leg.

18       26.   If the one gallon fuel container of e-NRG that ALEXIS was pouring at the time

19   of the accident had a flame arrestor, there would have been no explosive discharge and none of

20   the Lewis family members would have been burned.

21       27.   NICOLETTE LEWIS suffered burn injuries to 26% of her body and 12% of

22   were third degree burns.  The burn injuries to NICOLETTE were to her face, ear, neck, chest,

23   abdomen, both arms, both legs and both feet.  To cover the burn areas in grafts, skin from 30%

24   of her body was harvested, including skin from her legs, torso and back.

25       28.   NICOLETTE LEWIS developed severe contractures from her burns.  She

26   developed hyper pigmented and hyper vascularized scarring, called keloid scars, on both the

27   burn sites and on the sites harvested for skin grafting such that 56% of her body and face have

28   residual scarring.  She has had 17 surgeries to remove contractures and badly damaged skin

3

DEFAULT JUDGMENT AGAINST ECOSMART, INC. BY COURT AFTER HEARING (PLAINTIFF
NICOLETTE LEWIS)

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

1   from her neck, arms, chest, abdomen and legs. The total medical bills for Nicolette Lewis are

2   $1,115,298.91 and of the total $591,706.54 has been paid. NICOLETTE LEWIS will need to

3   undergo surgical treatment in the future to repair both the burn sites and the areas where skin

4   was harvested. NICOLETTE LEWIS has suffered from depression, anxiety and post-

5   traumatic stress disorder.   The present value of future surgical care, psychiatric and

6   psychological treatment is $8,486.251.00.

7       29.     NICOLETTE LEWIS has loss of earnings and earning capacity due to her

8   injuries in the amount of $144,370.00.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFAULT JUDGMENT AGAINST ECOSMART, INC. BY COURT AFTER HEARING (PLAINTIFF NICOLETTE LEWIS)

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

JUD-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | FOR COURT USE ONLY |
|---|---|
| William D. Anderson, SBN 53071<br>Perry, Johnson, Anderson, Miller & Moskowitz, LLP<br>438 First Street, 4th Floor<br>Santa Rosa, CA 95401<br>TELEPHONE NO. (707) 525-8800    FAX NO.(Optional): (707) 545-8242<br>E-MAIL ADDRESS (Optional):    anderson@perrylaw.net<br>ATTORNEY FOR (Name):    Plaintiffs MARGRETT LEWIS, et al. | **F I L E D**<br><br>JAN 09 2018<br>Clerk of Superior Court of California,<br>County of Sonoma<br>By_____<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   SONOMA
STREET ADDRESS: 3055 Cleveland Avenue
MAILING ADDRESS: Department 19
CITY AND ZIP CODE: Santa Rosa, CA 95403
BRANCH NAME: Unlimited Civil Case

PLAINTIFF: MARGRETT LEWIS, et al.

DEFENDANT: ECOSMART, INC., et al.

| JUDGMENT<br>☐ By Clerk    ☒ By Default    ☐ After Court Trial<br>☒ By Court    ☐ On Stipulation    ☐ Defendant Did Not<br>Appear at Trial | CASE NUMBER:<br>SCV-256907 |
|---|---|

JUDGMENT

1. ☒ BY DEFAULT
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. ☐ Clerk's Judgment (Code Civ. Proc., § 585(a)). Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
   e. ☒ Court Judgment (Code Civ. Proc., § 585(b)). The court considered
      (1) ☒ plaintiff's testimony and other evidence.
      (2) ☐ Plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. ☐ ON STIPULATION
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and
   b. ☐ the signed written stipulation was filed in the case.
   c. ☐ the stipulation was stated in open court    ☐ the stipulation was stated on the record.

3. ☒ AFTER COURT TRIAL. The jury was waived. The court considered the evidence.
   a. The case was tried on (date and time): ~~January 9, 2017, 9:00 A.M.~~ then January 9, 2018, 8:30a.m.
      before (name of judicial officer):   Hon. Allan D. Hardcastle
   b. Appearances by:
      ☒ Plaintiff (name each):                          ☒ Plaintiff's attorney (name each):
         (1) MARGRETT LEWIS                                (1) WILLIAM D. ANDERSON
         (2) JEFFREY LEWIS                                 (2) HEATHER-ANN YOUNG
         ☐ Continued on Attachment 3b.

      ☐ Defendant (name each):                          ☐ Defendant's attorney (name each):
         (1)                                              (1)
         (2)                                              (2)
         ☐ Continued on Attachment 3b.

   c. ☐ Defendant did not appear at trial. Defendant was properly served with notice of trial.

   d. ☐ A statement of decision (Code Civ. Proc., § 632) ☐ was not ☐ was    requested.

Form Approved for Optional Use<br>Judicial Council of California<br>JUD-100 [New January 1, 2002]

JUDGMENT

Code of Civil Procedure, §§ 585, 664.6

CEB | Essential<br>ceb.com | Forms

| PLAINTIFF: MARGRETT LEWIS, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT: ECOSMART, INC., et al. | SCV-256907 |

JUDGMENT IS ENTERED AS FOLLOWS BY: · [X] THE COURT     [ ] THE CLERK

4.  [ ] Stipulated Judgment. Judgment is entered according to the stipulation of the parties.

5.  Parties. Judgment is
    a. [X] for plaintiff *(name each)* :                     c. [ ] for cross-complainant *(name each)* :
       MARGRETT LEWIS

       and against defendant *(names)* :                     and against cross-defendant *(name each)* :
       ECOSMART, INC.

       [ ] Continued on Attachment 5a.                     [ ] Continued on Attachment 5c.

    b. [ ] for defendant *(name each)* :                     d. [ ] for cross-defendant *(name each)* :

6.  Amount.
    a. [X] Defendant named in item 5a above must          c. [ ] Cross-defendant named in item 5c above must pay
       pay plaintiff on the complaint:                     cross-complainant on the cross-complaint:

| (1) [X] Damages | $ | 7,565,052.00 | | (1) [ ] Damages | $ | |
| (2) [ ] Prejudgment | $ | | | (2) [ ] Prejudgment | $ | |
| interest at the | | | | interest at the | | |
| annual rate of   % | | | | annual rate of   % | | |
| (3) [ ] Attorney fees | $ | | | (3) [ ] Attorney fees | $ | |
| (4) [ ] Costs | $ | | | (4) [ ] Costs | $ | |
| (5) [ ] Other *(specify)* : | $ | | | (5) [ ] Other *(specify)* : | $ | |
| (6)   TOTAL | $ | 7,565,052.00 | | (6)   TOTAL | $ | 0.00 |

    b. [ ] Plaintiff to receive nothing from defendant          d. [ ] Cross-complainant to receive nothing from
       named in item 5b.                                  cross-defendant named in item 5d.
       [ ] Defendant named in item 5b to recover          [ ] Cross-defendant named in item 5d to recover
       costs $                                             costs $
       [ ] and attorney fees $                             [ ] and attorney fees $

7.  [X] Other *(specify)* :     See attached findings.

Date: 1/9/18

[ ] _____
    ALLAN D. HARDCASTLE

Date:                                                          [ ] Clerk, by _____ , Deputy

---

(SEAL)                            CLERK'S CERTIFICATE *(Optional)*

I certify that this is a true copy of the original judgment on file in the court.

Date: 1-9-18

Clerk, by _____ , Deputy
          Christine Reynoso

JUD-100 [New January 1, 2002]                     JUDGMENT
CEB | Essential
ceb.com | Forms

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

Attachment to JUDGMENT BY COURT:
Lewis v. EcoSmart
SCV 256907

Margrett Lewis

                              FINDINGS:

    1.     Defendant ECOSMART, INC. (ECOSMART) is a California Corporation with its principal place of business 3641 Holdredge Avenue, Los Angeles, California.

    2.     ECOSMART is 90% owned by Defendant THE FIRE COMPANY, PTY, LTD (THE FIRE COMPANY).

    3.     ECOSMART has one director, Stephane Thomas, who is also CEO. He is also managing director and CEO of THE FIRE COMPANY.

    4.     ECOSMART was incorporated to act as a sales and distribution company for the products designed and sold by THE FIRE COMPANY.

    5.     e-NRG is denatured alcohol and is produced and bottled by Defendant CHEMISPHERE CORPORATION (CHEMISPHERE) for ECOSMART. ECOSMART then sells and distributes e-NRG throughout the U.S. and Canada.

    6.     The e-NRG product line includes one gallon HDPE fuel containers CHEMISPHERE for bottling and packaging.

    7.     Prior to July 1, 2014, e-NRG one gallon fuel containers did not have flame arrestors.

    8.     Flame arrestor technology has been in use since the late 1800s and is commonly used in industry. Flame arrestors were used by competitors of ECOSMART prior to the time ECOSMART incorporated them into their fuel containers.

    9.     Flame arrestors typically cost a few cents to manufacture.

    10.    Flame arrestors are a safety feature designed to quench flames and prevent them from entering fuel container and causing the accidental explosion of fuel and fuel vapors within the container.

    11.    Ethanol alcohol, the fuel used in e-NRG, produces vapor that is in the explosive range at room temperature.

DEFAULT JUDGMENT AGAINST ECOSMART, INC. BY COURT AFTER HEARING (PLAINTIFF MARGRETT LEWIS)

12.     e-NRG one gallon fuel containers without flame arrestors create a severe burn hazard because fuel vapors can ignite and travel back into the fuel container, igniting the fuel vapor and air in the headspace of the bottle causing an explosive discharge of flaming fuel and vapor.

13.     e-NRG one gallon fuel containers manufactured prior to July 1, 2014, were not equipped with flame arrestors creating a foreseeable risk of harm and therefore are defective.

14.     ECOSMART was aware of the unreasonable risk of harm their one gallon fuel containers created prior to June 8, 2014, because ECOSMART was aware of at least two other severe burn injuries suffered by consumers using e-NRG fuel containers which lacked flame arrestors.

15.     In February 2014, ECOSMART hired REAX Engineering to do a fire safety analysis of its e-NRG fuel containers and REAX Engineering concluded that all e-NRG fuel containers should be equipped with flame arrestors due to the severe burn hazard caused when used in a foreseeable manner by consumers.

16.     As early as 2011 Alexander Eburne, CEO of ECOSMART, was aware of the national recall of pourable gel alcohol containers that did not have flame arrestors due to the severe burn hazard created when used in a foreseeable manner by consumers.

17.     ECOSMART was negligent for selling fuel containers that were not equipped with flame arrestors knowing that an explosive discharge of flaming fuel was a risk when used in a foreseeable manner by consumers.

18.     ECOSMART started a national recall of its fuel containers due to lack of flame arrestors in May, 2014, but never contacted or notified Plaintiffs of the recall and the danger of using e-NRG fuel containers.

19.     On April 7, 2014, Plaintiff MARGRETT LEWIS purchased four one gallon fuel containers of e-NRG from retailer Defendant OUTDORA and was not advised of the severe risk of harm she was exposing herself and her family by purchasing ethanol fuel containers which were not equipped with flame arrestors.

20.     On June 8, 2014, Plaintiffs NICOLETTE LEWIS, ALEXIS LEWIS and two

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ, LLP

2

1     friends were cooking marshmallows over a Hampton Model 530 fire bowl sold and distributed

2     by Defendant REAL FLAME COMPANY, INC. (REAL FLAME) when the flame appeared

3     to die out requiring refueling.

4           21.      ALEXIS LEWIS, using an approximately half full one gallon container of e-

5     NRG, attempted to refuel the fire bowl, when burning vapor and fuel discharged in an

6     explosion, covering NICOLETTE LEWIS in flames.

7           22.      During the explosive discharge of ethanol fuel from the e-NRG fuel container,

8     ALEXIS LEWIS suffered burn injuries to her lower extremities.

9           23.      MARGRETT LEWIS, hearing horrific screams from NICOLETTE, ran out

10     onto the front porch and in an effort to smother NICOLETTE's flames and to remove

11     NICOLETTE'S shirt which was engulfed in flames, MARGRETT suffered severe burn

12     injuries to both her hands and arms.

13           24.      Plaintiff JEFFREY LEWIS, also hearing the screams of NICOLETTE, ran out

14     onto the front patio and suffered burn injuries to his right leg and lower extremities as he

15     attempted to put the flames out.

16           25.      As a result of the explosion of the e-NRG fuel containers ALEXIS LEWIS

17     suffered burn injuries to her leg.

18           26.      If the one gallon fuel container of e-NRG that ALEXIS was pouring at the time

19     of the accident had a flame arrestor, there would have been no explosive discharge and none of

20     the Lewis family members would have been burned.

21           27.      MARGRETT LEWIS has suffered post-traumatic stress disorder, severe

22     anxiety and emotional trauma that caused physical injuries as a result of insomnia, eating

23     disorders and mental exhaustion. The future cost of psychiatric and psychological treatment

24     for MARGRETT LEWIS is $66,365.20 .

25

26

27

28

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

3

JUD-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| William D. Anderson, SBN 53071<br>Perry, Johnson, Anderson, Miller & Moskowitz, LLP<br>438 First Street, 4th Floor<br>Santa Rosa, CA 95401<br>TELEPHONE NO.: (707) 525-8800   FAX NO. *(Optional)*: (707) 545-8242<br>E-MAIL ADDRESS *(Optional)*: anderson@perrylaw.net<br>ATTORNEY FOR *(Name)*: Plaintiffs MARGRETT LEWIS, et al. | **F I L E D**<br><br>JAN 0 9 2018<br><br>Clerk of Superior Court of California,<br>County of Sonoma<br>By_____<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   SONOMA
STREET ADDRESS: 3055 Cleveland Avenue
MAILING ADDRESS: Department 19
CITY AND ZIP CODE: Santa Rosa, CA 95403
BRANCH NAME: Unlimited Civil Case

PLAINTIFF: MARGRETT LEWIS, et al.

DEFENDANT: ECOSMART, INC., et al.

| JUDGMENT | | CASE NUMBER: |
|---|---|---|
| ☐ By Clerk   ☒ By Default   ☐ After Court Trial<br>☒ By Court   ☐ On Stipulation   ☐ Defendant Did Not<br>Appear at Trial | | SCV-256907 |

JUDGMENT

1.  ☒ **BY DEFAULT**
    a.  Defendant was properly served with a copy of the summons and complaint.
    b.  Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
    c.  Defendant's default was entered by the clerk upon plaintiff's application.
    d.  ☐ Clerk's Judgment (Code Civ. Proc., § 585(a)). Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
    e.  ☒ Court Judgment (Code Civ. Proc., § 585(b)). The court considered
        (1)  ☒ plaintiff's testimony and other evidence.
        (2)  ☐ Plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2.  ☐ **ON STIPULATION**
    a.  Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and
    b.  ☐ the signed written stipulation was filed in the case.
    c.  ☐ the stipulation was stated in open court   ☐ the stipulation was stated on the record.

3.  ☒ **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.
    a.  The case was tried on *(date and time)*: ~~January 9, 2017, 9:00 A.M.~~ January 9, 2018, 8:30a.m.
        before *(name of judicial officer)*: Hon. Allan D. Hardcastle
    b.  Appearances by:
        ☒ Plaintiff *(name each)*:                ☒ Plaintiff's attorney *(name each)*:
           (1) MARGRETT LEWIS                      (1) WILLIAM D. ANDERSON
           (2) JEFFREY LEWIS                       (2) HEATHER-ANN YOUNG
        ☐ Continued on Attachment 3b.

        ☐ Defendant *(name each)*:                ☐ Defendant's attorney *(name each)*:
           (1)                                     (1)
           (2)                                     (2)
        ☐ Continued on Attachment 3b.

    c.  ☐ Defendant did not appear at trial. Defendant was properly served with notice of trial.

    d.  ☐ A statement of decision (Code Civ. Proc., § 632) ☐ was not ☐ was   requested.

Page 1 of 2

Form Approved for Optional Use
Judicial Council of California
JUD-100 [New January 1, 2002]

JUDGMENT

Code of Civil Procedure, §§ 585, 664.6

CEB | Essential
ceb.com | Forms

| PLAINTIFF: MARGRETT LEWIS, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT: ECOSMART, INC., et al. | SCV-256907 |

JUDGMENT IS ENTERED AS FOLLOWS BY:  [X] THE COURT   [ ] THE CLERK

4. [ ] Stipulated Judgment. Judgment is entered according to the stipulation of the parties.

5. Parties. Judgment is
   a. [X] for plaintiff *(name each)*:
      JEFFREY LEWIS

      and against defendant *(names)*:
      ECOSMART, INC.

      [ ] Continued on Attachment 5a.

   b. [ ] for defendant *(name each)*:

   c. [ ] for cross-complainant *(name each)*:

      and against cross-defendant *(name each)*:

      [ ] Continued on Attachment 5c.

   d. [ ] for cross-defendant *(name each)*:

6. Amount.
   a. [X] Defendant named in item 5a above must
      pay plaintiff on the complaint:

   c. [ ] Cross-defendant named in item 5c above must pay
      cross-complainant on the cross-complaint:

| | | | | | | |
|---|---|---|---|---|---|---|
| (1) [X] Damages | $ | 3,565,284.00 | (1) [ ] Damages | $ | | |
| (2) [ ] Prejudgment interest at the annual rate of __%| $ | | (2) [ ] Prejudgment interest at the annual rate of __% | $ | | |
| (3) [ ] Attorney fees | $ | | (3) [ ] Attorney fees | $ | | |
| (4) [ ] Costs | $ | | (4) [ ] Costs | $ | | |
| (5) [ ] Other *(specify)*: | $ | | (5) [ ] Other *(specify)*: | $ | | |
| (6)   TOTAL | $ | 3,565,284.00 | (6)   TOTAL | $ | | 0.00 |

   b. [ ] Plaintiff to receive nothing from defendant
      named in item 5b.
      [ ] Defendant named in item 5b to recover
      costs $
      [ ] and attorney fees $

   d. [ ] Cross-complainant to receive nothing from
      cross-defendant named in item 5d.
      [ ] Cross-defendant named in item 5d to recover
      costs $
      [ ] and attorney fees $

7. [X] Other *(specify)*:   See attached findings.

Date: 1/9/18

[X] _____ ALLAN D. HARDCASTLE

Date: _____

[ ] Clerk, by _____, Deputy

---

(SEAL)

CLERK'S CERTIFICATE *(Optional)*

I certify that this is a true copy of the original judgment on file in the court.

Date: 1-9-18

Clerk, by _____ Deputy

Christine Reynoso

Page 2 of 2

JUD-100 [New January 1, 2002]

CEB | Essential Forms
ceb.com

JUDGMENT

Attachment to JUDGMENT BY COURT:
Lewis v. EcoSmart
SCV 256907

Jeffrey Lewis

## FINDINGS:

1.     Defendant ECOSMART, INC. (ECOSMART) is a California Corporation with its principal place of business 3641 Holdredge Avenue, Los Angeles, California.

2.     ECOSMART is 90% owned by Defendant THE FIRE COMPANY, PTY, LTD (THE FIRE COMPANY).

3.     ECOSMART has one director, Stephane Thomas, who is also CEO. He is also managing director and CEO of THE FIRE COMPANY.

4.     ECOSMART was incorporated to act as a sales and distribution company for the products designed and sold by THE FIRE COMPANY.

5.     e-NRG is denatured alcohol and is produced and bottled by Defendant CHEMISPHERE CORPORATION (CHEMISPHERE) for ECOSMART. ECOSMART then sells and distributes e-NRG throughout the U.S. and Canada.

6.     The e-NRG product line includes one gallon HDPE fuel containers CHEMISPHERE for bottling and packaging.

7.     Prior to July 1, 2014, e-NRG one gallon fuel containers did not have flame arrestors.

8.     Flame arrestor technology has been in use since the late 1800s and is commonly used in industry. Flame arrestors were used by competitors of ECOSMART prior to the time ECOSMART incorporated them into their fuel containers.

9.     Flame arrestors typically cost a few cents to manufacture.

10.     Flame arrestors are a safety feature designed to quench flames and prevent them from entering fuel container and causing the accidental explosion of fuel and fuel vapors within the container.

11.     Ethanol alcohol, the fuel used in e-NRG, produces vapor that is in the explosive range at room temperature.

1

DEFAULT JUDGMENT AGAINST ECOSMART, INC. BY COURT AFTER HEARING (PLAINTIFF JEFFREY LEWIS)

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ, LLP

12.     e-NRG one gallon fuel containers without flame arrestors create a severe burn hazard because fuel vapors can ignite and travel back into the fuel container, igniting the fuel vapor and air in the headspace of the bottle causing an explosive discharge of flaming fuel and vapor.

13.     e-NRG one gallon fuel containers manufactured prior to July 1, 2014, were not equipped with flame arrestors creating a foreseeable risk of harm and therefore are defective.

14.     ECOSMART was aware of the unreasonable risk of harm their one gallon fuel containers created prior to June 8, 2014, because ECOSMART was aware of at least two other severe burn injuries suffered by consumers using e-NRG fuel containers which lacked flame arrestors.

15.     In February 2014, ECOSMART hired REAX Engineering to do a fire safety analysis of its e-NRG fuel containers and REAX Engineering concluded that all e-NRG fuel containers should be equipped with flame arrestors due to the severe burn hazard caused when used in a foreseeable manner by consumers.

16.     As early as 2011 Alexander Eburne, CEO of ECOSMART, was aware of the national recall of pourable gel alcohol containers that did not have flame arrestors due to the severe burn hazard created when used in a foreseeable manner by consumers.

17.     ECOSMART was negligent for selling fuel containers that were not equipped with flame arrestors knowing that an explosive discharge of flaming fuel was a risk when used in a foreseeable manner by consumers.

18.     ECOSMART started a national recall of its fuel containers due to lack of flame arrestors in May, 2014, but never contacted or notified Plaintiffs of the recall and the danger of using e-NRG fuel containers.

19.     On April 7, 2014, Plaintiff MARGRETT LEWIS purchased four one gallon fuel containers of e-NRG from retailer Defendant OUTDORA and was not advised of the severe risk of harm she was exposing herself and her family by purchasing ethanol fuel containers which were not equipped with flame arrestors.

20.     On June 8, 2014, Plaintiffs NICOLETTE LEWIS, ALEXIS LEWIS and two

2

DEFAULT JUDGMENT AGAINST ECOSMART, INC. BY COURT AFTER HEARING (PLAINTIFF JEFFREY LEWIS)

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

1    friends were cooking marshmallows over a Hampton Model 530 fire bowl sold and distributed

2    by Defendant REAL FLAME COMPANY, INC. (REAL FLAME) when the flame appeared

3    to die out requiring refueling.

4         21.     ALEXIS LEWIS, using an approximately half full one gallon container of e-

5    NRG, attempted to refuel the fire bowl, when burning vapor and fuel discharged in an

6    explosion, covering NICOLETTE LEWIS in flames.

7         22.     During the explosive discharge of ethanol fuel from the e-NRG fuel container,

8    ALEXIS LEWIS suffered burn injuries to her lower extremities.

9         23.     MARGRETT LEWIS, hearing horrific screams from NICOLETTE, ran out

10    onto the front porch and in an effort to smother NICOLETTE's flames and to remove

11    NICOLETTE'S shirt which was engulfed in flames, MARGRETT suffered severe burn

12    injuries to both her hands and arms.

13         24.     Plaintiff JEFFREY LEWIS, also hearing the screams of NICOLETTE, ran out

14    onto the front patio and suffered burn injuries to his right leg and lower extremities as he

15    attempted to put the flames out.

16         25.     As a result of the explosion of the e-NRG fuel containers ALEXIS LEWIS

17    suffered burn injuries to her leg.

18         26.     If the one gallon fuel container of e-NRG that ALEXIS was pouring at the time

19    of the accident had a flame arrestor, there would have been no explosive discharge and none of

20    the Lewis family members would have been burned.

21         27.     NICOLETTE LEWIS suffered burn injuries to 26% of her body and 12% of

22    were third degree burns. The burn injuries to NICOLETTE were to her face, ear, neck, chest,

23    abdomen, both arms, both legs and both feet. To cover the burn areas in grafts, skin from 30%

24    of her body was harvested, including skin from her legs, torso and back.

25         28.     JEFFREY LEWIS has suffered post-traumatic stress disorder, severe anxiety

26    and emotional trauma that caused physical injuries as a result of insomnia, eating disorders and

27    mental exhaustion. The future cost of psychiatric and psychological treatment for JEFFREY

28    LEWIS is $66,365.20 .

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

3

DEFAULT JUDGMENT AGAINST ECOSMART, INC. BY COURT AFTER HEARING (PLAINTIFF
JEFFREY LEWIS)

JUD-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address): | FOR COURT USE ONLY |
|---|---|
| William D. Anderson, SBN 53071<br>Perry, Johnson, Anderson, Miller & Moskowitz, LLP<br>438 First Street, 4th Floor<br>Santa Rosa, CA 95401<br>TELEPHONE NO.: (707) 525-8800    FAX NO. (Optional): (707) 545-8242<br>E-MAIL ADDRESS (Optional): anderson@perrylaw.net<br>ATTORNEY FOR (Name): Plaintiffs MARGRETT LEWIS, et al. | **F I L E D**<br><br>JAN 09 2018<br><br>Clerk of Superior Court of California,<br>County of Sonoma<br>By<br>Deputy Clerk |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF   SONOMA<br>STREET ADDRESS: 3055 Cleveland Avenue<br>MAILING ADDRESS: Department 19<br>CITY AND ZIP CODE: Santa Rosa, CA 95403<br>BRANCH NAME: Unlimited Civil Case | |
| PLAINTIFF: MARGRETT LEWIS, et al.<br><br>DEFENDANT: ECOSMART, INC., et al. | |
| JUDGMENT<br>☐ By Clerk      ☒ By Default      ☐ After Court Trial<br>☒ By Court      ☐ On Stipulation      ☐ Defendant Did Not<br>                                              Appear at Trial | CASE NUMBER:<br>SCV-256907 |

<div align="center">JUDGMENT</div>

1. ☒ **BY DEFAULT**
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. ☐ Clerk's Judgment (Code Civ. Proc., § 585(a)). Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
   e. ☒ Court Judgment (Code Civ. Proc., § 585(b)). The court considered
      (1) ☒ plaintiff's testimony and other evidence.
      (2) ☐ Plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. ☐ **ON STIPULATION**
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and
   b. ☐ the signed written stipulation was filed in the case.
   c. ☐ the stipulation was stated in open court   ☐ the stipulation was stated on the record.

3. ☒ **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.
   a. The case was tried on (date and time): January 9, 2018, 8:30 a.m
      before (name of judicial officer): Hon Allan D. Hardcastle.
   b. Appearances by:
      ☒ Plaintiff (name each):                        ☒ Plaintiff's attorney (name each):
         (1) MARGRETT LEWIS                              (1) WILLIAM D. ANDERSON
         (2) JEFFREY LEWIS                               (2) HEATHER-ANN YOUNG
      ☐ Continued on Attachment 3b.

      ☐ Defendant (name each):                        ☐ Defendant's attorney (name each):
         (1)                                             (1)
         (2)                                             (2)
      ☐ Continued on Attachment 3b.

   c. ☐ Defendant did not appear at trial. Defendant was properly served with notice of trial.

   d. ☐ A statement of decision (Code Civ. Proc., § 632) ☐ was not ☐ was   requested.

Form Approved for Optional Use<br>Judicial Council of California<br>JUD-100 [New January 1, 2002]<br>CEB | Essential<br>ceb.com | Forms

<div align="center">JUDGMENT</div>

Code of Civil Procedure, §§ 585, 664.6

| | |
|---|---|
| PLAINTIFF: MARGRETT LEWIS, et al. | CASE NUMBER:<br>SCV-256907 |
| DEFENDANT: ECOSMART, INC., et al. | |

JUDGMENT IS ENTERED AS FOLLOWS BY:   [X] THE COURT   [ ] THE CLERK

4. [ ] Stipulated Judgment. Judgment is entered according to the stipulation of the parties.

5. Parties. Judgment is
   a. [X] for plaintiff *(name each)* :
   ALEXIS LEWIS

   and against defendant *(names)* :
   ECOSMART, INC.

   [ ] Continued on Attachment 5a.

   b. [ ] for defendant *(name each)* :

   c. [ ] for cross-complainant *(name each)* :

   and against cross-defendant *(name each)* :

   [ ] Continued on Attachment 5c.

   d. [ ] for cross-defendant *(name each)* :

6. Amount.
   a. [X] Defendant named in item 5a above must pay plaintiff on the complaint:

| | | | |
|---|---|---|---|
| (1) [X] Damages | $ | | 4,095,763.00 |
| (2) [ ] Prejudgment interest at the annual rate of % | $ | | |
| (3) [ ] Attorney fees | $ | | |
| (4) [ ] Costs | $ | | |
| (5) [ ] Other *(specify)* : | $ | | |
| (6)    TOTAL | $ | | 4,095,763.00 |

   c. [ ] Cross-defendant named in item 5c above must pay cross-complainant on the cross-complaint:

| | | | |
|---|---|---|---|
| (1) [ ] Damages | $ | | |
| (2) [ ] Prejudgment interest at the annual rate of % | $ | | |
| (3) [ ] Attorney fees | $ | | |
| (4) [ ] Costs | $ | | |
| (5) [ ] Other *(specify)* : | $ | | |
| (6)    TOTAL | $ | | 0.00 |

   b. [ ] Plaintiff to receive nothing from defendant named in item 5b.
   [ ] Defendant named in item 5b to recover costs $
   [ ] and attorney fees $

   d. [ ] Cross-complainant to receive nothing from cross-defendant named in item 5d.
   [ ] Cross-defendant named in item 5d to recover costs $
   [ ] and attorney fees $

7. [X] Other *(specify)* :   See attached findings.

Date: 1/9/18

[ ] _____ ALLAN D. HARDCASTLE
                                    JUDGE OF THE SUPERIOR COURT

Date:

[ ] Clerk, by _____, Deputy

(SEAL)

CLERK'S CERTIFICATE *(Optional)*

I certify that this is a true copy of the original judgment on file in the court.

Date: 1-9-18

Clerk, by _____, Deputy

Christine Reynoso

JUD-100 [New January 1, 2002]                    JUDGMENT                    Page 2 of 2

CEB | Essential
ceb.com | Forms

Attachment to JUDGMENT BY COURT:
Lewis v. EcoSmart

Alexis Lewis

<div align="center">FINDINGS:</div>

1.      Defendant ECOSMART, INC. (ECOSMART) is a California Corporation with
its principal place of business 3641 Holdredge Avenue, Los Angeles, California.

2.      ECOSMART is 90% owned by Defendant THE FIRE COMPANY, PTY, LTD
(THE FIRE COMPANY).

3.      ECOSMART has one director, Stephane Thomas, who is also CEO.  He is also
managing director and CEO of THE FIRE COMPANY.

4.      ECOSMART was incorporated to act as a sales and distribution company for
the products designed and sold by THE FIRE COMPANY.

5.      e-NRG is denatured alcohol and is produced and bottled by Defendant
CHEMISPHERE CORPORATION (CHEMISPHERE) for ECOSMART.  ECOSMART then
sells and distributes e-NRG throughout the U.S. and Canada.

6.      The e-NRG product line includes one gallon HDPE fuel containers
CHEMISPHERE for bottling and packaging.

7.      Prior to July 1, 2014, e-NRG one gallon fuel containers did not have flame
arrestors.

8.      Flame arrestor technology has been in use since the late 1800s and is commonly
used in industry.  Flame arrestors were used by competitors of ECOSMART prior to the time
ECOSMART incorporated them into their fuel containers.

9.      Flame arrestors typically cost a few cents to manufacture.

10.     Flame arrestors are a safety feature designed to quench flames and prevent them
from entering fuel container and causing the accidental explosion of fuel and fuel vapors
within the container.

11.     Ethanol alcohol, the fuel used in e-NRG, produces vapor that is in the explosive
range at room temperature.

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ, LLP

---

1

DEFAULT JUDGMENT AGAINST ECOSMART, INC. BY COURT AFTER HEARING (PLAINTIFF
ALEXIS LEWIS)

12.     e-NRG one gallon fuel containers without flame arrestors create a severe burn hazard because fuel vapors can ignite and travel back into the fuel container, igniting the fuel vapor and air in the headspace of the bottle causing an explosive discharge of flaming fuel and vapor.

13.     e-NRG one gallon fuel containers manufactured prior to July 1, 2014, were not equipped with flame arrestors creating a foreseeable risk of harm and therefore are defective.

14.     ECOSMART was aware of the unreasonable risk of harm their one gallon fuel containers created prior to June 8, 2014, because ECOSMART was aware of at least two other severe burn injuries suffered by consumers using e-NRG fuel containers which lacked flame arrestors.

15.     In February 2014, ECOSMART hired REAX Engineering to do a fire safety analysis of its e-NRG fuel containers and REAX Engineering concluded that all e-NRG fuel containers should be equipped with flame arrestors due to the severe burn hazard caused when used in a foreseeable manner by consumers.

16.     As early as 2011 Alexander Eburne, CEO of ECOSMART, was aware of the national recall of pourable gel alcohol containers that did not have flame arrestors due to the severe burn hazard created when used in a foreseeable manner by consumers.

17.     ECOSMART was negligent for selling fuel containers that were not equipped with flame arrestors knowing that an explosive discharge of flaming fuel was a risk when used in a foreseeable manner by consumers.

18.     ECOSMART started a national recall of its fuel containers due to lack of flame arrestors in May, 2014, but never contacted or notified Plaintiffs of the recall and the danger of using e-NRG fuel containers.

19.     On April 7, 2014, Plaintiff MARGRETT LEWIS purchased four one gallon fuel containers of e-NRG from retailer Defendant OUTDORA and was not advised of the severe risk of harm she was exposing herself and her family by purchasing ethanol fuel containers which were not equipped with flame arrestors.

20.     On June 8, 2014, Plaintiffs NICOLETTE LEWIS, ALEXIS LEWIS and two

2

DEFAULT JUDGMENT AGAINST ECOSMART, INC. BY COURT AFTER HEARING (PLAINTIFF ALEXIS LEWIS)

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

1  friends were cooking marshmallows over a Hampton Model 530 fire bowl sold and distributed
2  by Defendant REAL FLAME COMPANY, INC. (REAL FLAME) when the flame appeared
3  to die out requiring refueling.

4      21.   ALEXIS LEWIS, using an approximately half full one gallon container of e-
5  NRG, attempted to refuel the fire bowl, when burning vapor and fuel discharged in an
6  explosion, covering NICOLETTE LEWIS in flames.

7      22.   During the explosive discharge of ethanol fuel from the e-NRG fuel container,
8  ALEXIS LEWIS suffered burn injuries to her lower extremities.

9      23.   MARGRETT LEWIS, hearing horrific screams from NICOLETTE, ran out
10  onto the front porch and in an effort to smother NICOLETTE's flames and to remove
11  NICOLETTE'S shirt which was engulfed in flames, MARGRETT suffered severe burn
12  injuries to both her hands and arms.

13     24.   Plaintiff JEFFREY LEWIS, also hearing the screams of NICOLETTE, ran out
14  onto the front patio and suffered burn injuries to his right leg and lower extremities as he
15  attempted to put the flames out.

16     25.   As a result of the explosion of the e-NRG fuel containers ALEXIS LEWIS
17  suffered burn injuries to her leg.

18     26.   If the one gallon fuel container of e-NRG that ALEXIS was pouring at the time
19  of the accident had a flame arrestor, there would have been no explosive discharge and none of
20  the Lewis family members would have been burned.

21     27.   ALEXIS LEWIS has suffered from depression, anxiety and post-traumatic
22  stress disorder. ALEXIS LEWIS suffered physical injury from her post-traumatic stress
23  disorder resulting in severe loss of weight, sleep disorder and anxiety. The total medical bills
24  for ALEXIS LEWIS are $11,031.64 and of the total $9,482.54 have been paid. The future
25  treatment costs of psychiatric and psychological treatment for ALEXIS LEWIS is $84,731.

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ, LLP

3

DEFAULT JUDGMENT AGAINST ECOSMART, INC. BY COURT AFTER HEARING (PLAINTIFF ALEXIS LEWIS)

# EXHIBIT B

**Liberty International Underwriters**

Combined General & Products Liability Policy





**Liberty**
International
Underwriters

## Policy Schedule

| | | |
|---|---|---|
| 1. | POLICY NUMBER: | ME-CAS-12-438176 |
| 2. | INSURED: | The Fire Company Pty Ltd and EcoSmart Inc |
| 3. | PERIOD OF INSURANCE: | From: 30th April 2013 at 4pm local standard time<br>To: 30th April 2014 at 4pm local standard time |
| 4. | INSURED'S BUSINESS: | Design, manufacture, distribution, retailer, wholesale and importer of ethanol fire places, burners and accessories. |
| 5. | LIMIT OF INDEMNITY: | AUD20,000,000 any one Occurrence in respect of public liability and in the aggregate during the Period of Insurance in respect of Product liability. |
| 6. | DEDUCTIBLES: | AUD10,000 each and every Occurrence (costs inclusive).<br><br>AUD25,000 each and every Occurrence (costs inclusive) for losses in North America |
| 7. | POLICY WORDING: | LIU Combined General & Products Liability Policy form LIU-AUS-CAS-CGL-2000001 and attached endorsements. |
| 8. | PREMIUM: | AUD86,000 (minimum and non-adjustable) plus charges. |

This Schedule attaches to and forms part of LIU Combined General & Products Liability Policy Form LIU-AUS-CAS-CGL-2000001 and is valid only if it is signed and dated below by a person duly authorised by Liberty International Underwriters.



3rd May 2013

For and on behalf of                    Date
Liberty International Underwriters



## Combined General & Products Liability Policy

In consideration of the premium being paid by the Insured to LIU and in reliance upon the written statements and declarations contained in the proposal or insurance broker's quotation submission, LIU agrees to indemnify the Insured in accordance with the attached Schedule, Policy wording and endorsements where applicable.

## 1   Insuring Clause

Subject to the terms of this Policy, LIU will pay to or on behalf of the Insured all sums which the Insured shall become legally liable to pay by way of compensation in respect of Injury and/or Damage first happening during the Period of Insurance as a result of an Occurrence in connection with the Insured's Business.

## 2   Definitions

2.1    "Asbestos" means:

2.1.1    That group of natural fibrous silicate minerals that comprises Actinolite, Amosite, Anthophyllite, Chrysotile, Crocidolite and Tremolite; or

2.1.2    That group of man made mineral fibres that comprises mineral wool, rockwool, glass fibre, ceramic fibres and superfine fibres,

And includes Asbestos Products and Products containing Asbestos.

2.2    "Damage" means:

2.2.1    Physical damage to or destruction of tangible property including all resulting loss of use of that property. All such loss of use shall be deemed to happen at the time of the physical damage that caused it; or

2.2.2    Loss of use of tangible property that is not physically damaged or destroyed provided such loss of use is caused by physical damage to other tangible property which first happened during the Period of Insurance. All such loss of use shall be deemed to happen at the time of the physical damage or destruction that caused it.

2.3    "Employment Practices" means any wrongful or unfair dismissal, denial of natural justice, defamation, misleading representation or advertising, unfair contracts, harassment or discrimination (sexual or otherwise) in respect of employment by the Insured.

2.4    "Injury" means:

2.4.1    Bodily injury, death, sickness, disease, disability, shock, fright, mental anguish and mental injury;

2.4.2    False arrest, wrongful detention or imprisonment, malicious prosecution;

2.4.3    Wrongful entry or eviction;



2.4.4   Assault and battery not committed by or at the direction of the Insured unless committed for the purpose of preventing Injury and/or Damage or eliminating danger; or

2.4.5   Libel, slander, defamation of character or invasion of right of privacy.

2.5   "Insured" wherever used in this Policy means the Insured named in the Schedule and:

2.5.1   Any subsidiary company of the Insured incorporated within Australia including subsidiaries thereof; or

2.5.2   Any other entity incorporated within Australia controlled by the Insured and over which the Insured assumes active management.

2.6   "Insured's Business" is the business shown in the Schedule.

2.7   "LIU" means Liberty International Underwriters. Liberty International Underwriters is a trading name of Liberty Mutual Insurance Company (ABN 61 086 083 605). Incorporated in Massachusetts, USA (The liability of members is limited).

2.8   "Limit of Indemnity" means the amount stated in the Schedule pursuant to Clause 5 of this Policy.

2.9   "Occurrence" means an event, including continuous or repeated exposure to substantially the same general conditions, which results in Injury and/or Damage neither expected nor intended from the standpoint of the Insured. All events of a series consequent on or attributable to one source or original cause shall be deemed one Occurrence.

2.10   "Period of Insurance" is the period shown in the Policy.

2.11   "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapour, soot, fumes, cinders, dust, odours, noise, acids, alkalis, chemicals or waste. Waste includes materials to be recycled, reconditioned or reclaimed.

2.12   "Product" means any commodity, article or thing (after it has ceased to be in the possession or under the control of the Insured) which is or is deemed (whether by law or otherwise) to have been manufactured, constructed, grown, extracted, produced, processed, assembled, erected, installed, treated, altered, serviced, repaired, sold, handled, supplied or distributed by the Insured or by others trading under the name of the Insured (including any container thereof other than a motor vehicle).

2.13   "Terrorism" means an act or acts:

2.13.1   That are violent in nature or are dangerous to human life:

2.13.1.1   That are a violation of the criminal laws of the United States of America or Australia or of any State or Territory of the United States of America or Australia or that would be a criminal violation if committed within the jurisdiction of the United States of America or Australia or any State or Territory of the United States of America or Australia and that have the apparent intent of:

2.13.1.1.1   Intimidating or coercing any civilian population;

2.13.1.1.2   Influencing the policy of any government by intimidation or coercion; or



| | | |
|---|---|---|
| 2.13.1.1.3 | | Affecting the conduct of any government by mass destruction, assassination or kidnapping, |

Or

2.13.2   That result in:

| | | |
|---|---|---|
| 2.13.2.1 | | The denial of access to or services from web sites, computer networks or telecommunication equipment; or |
| 2.13.2.2 | | The malfunction or degradation of web sites, computer networks, telecommunications equipment, mechanical equipment or the interruption to the functioning of web sites or such properties, |

And that have the apparent intent of intimidating or coercing any civilian population or influencing the policy of any government by intimidation or coercion.

2.14   "Worker" means any person employed by the Insured or deemed to be employed by the Insured whether pursuant to any Workers' Compensation Law or otherwise.

2.15   "Workers' Compensation Law" means any law relating to compensation for injury to Workers or employees.

# 3   Indemnity to Others

Subject to the terms of this Policy and in accordance with Insuring Clause 1, this Policy will extend to pay to or on behalf of:

3.1   Any principal, in respect of that principal's vicarious liability for the negligent acts or omissions of the Insured pursuant to Definition 2.5 and arising out of the Insured's Business, but this Policy does not extend to the liability of any principal howsoever arising out of the negligence, breach of contract or breach of duty of such principal;

3.2   Any director, executive officer or Worker of the Insured or, where the Insured is a partnership, any partner of the Insured, but only while acting within the scope of their duties in such capacity;

3.3   The officers, committee and members of the Insured's canteen, social, sports, first aid/medical, fire fighting and employee welfare organisations in their respective capacity as such; or

3.4   The legal personal representative of any person entitled to indemnity under this Clause 3 in circumstances giving rise to indemnity under this Policy.

Provided always that all such persons or parties shall, whilst not being a party to this contract, observe, fulfil and be subject to the terms of this Policy in so far as they can apply as though they were the Insured.

# 4   Cross Liabilities

Subject at all times to the terms of this Policy, each person or party indemnified is separately indemnified in respect of claims made by any of them against any other of them provided that LIU's total liability shall not exceed the Limit of Indemnity for all claims under this Policy



## 5   Limit of Indemnity

LIU's liability to pay compensation shall not exceed the sum stated in the Schedule in respect of any one claim or series of claims arising from one Occurrence.

The total aggregate liability of LIU for any one Period of Insurance for all claims in respect of or in any way connected with the Insured's Products shall not exceed the Limit of Indemnity stated in the Schedule.

## 6   Defence Costs

In addition to the Limit of Indemnity, LIU will pay all reasonable legal costs and/or expenses incurred with LIU's prior written consent in connection with any claim for which the Insured is indemnified by this Policy.

Provided that LIU shall not be liable for legal costs and/or expenses where indemnity is not provided by this Policy.

Provided that LIU shall not be liable for legal costs and/or expenses for or in respect of representation at any formal legal inquiry involving an accident resulting in Injury or at any coroner's inquiry or defending any proceedings in a court of summary jurisdiction.

Provided that LIU shall not pay any legal costs and/or expenses in respect of any Occurrence after LIU has paid compensation up to the Limit of Indemnity.

Provided further that the legal costs and/or expenses incurred in connection with claims made and/or actions instituted within the United States of America or Canada and their respective territories and protectorates or any other territory coming within the jurisdiction of the courts of these countries, shall form part of the Limit of Indemnity and will not be payable by LIU in addition to the Limit of Indemnity.

In the event the Insured is a party to a demand, legal proceedings, inquiry or hearing which is covered only in part by this Policy, the Insured and LIU will use their best efforts to agree upon a fair and proper allocation of legal costs and/or expenses or any other amount insured under this Policy which relate solely to what is covered under this Policy.

In the event that an agreement cannot be reached, a Senior Counsel (to be mutually agreed upon by LIU and the Insured) shall, as an expert and not an arbitrator, determine a fair and proper allocation. Until the Senior Counsel has made a determination LIU may, in its absolute discretion, pay such legal costs and/or expenses or any other amount insured under this Policy as it considers appropriate.

## 7   Exclusions

This Policy does not cover liability directly or indirectly caused by, arising out of or in any way connected with:

    7.1    The ownership, maintenance, operation, possession, use, loading or unloading by or on behalf of the Insured of any motor vehicle or trailer which is required by law to be registered or in respect of which there is required by law to be in force a policy of compulsory liability insurance or in relation to which there existed a statutory scheme providing compensation for Injury, but this exclusion does not apply to:

        7.1.1    Injury for which no indemnity is or would be available to the Insured under the said policy of compulsory liability insurance had the Insured complied with its obligations pursuant to such law;



7.1.2    Injury caused by the use of any tool or plant forming part of or attached to or used in connection with any motor vehicle or trailer for which no indemnity is or would be available to the Insured under the said policy of compulsory liability insurance had the Insured complied with its obligations pursuant to such law;

7.1.3    Damage caused by the use of any tool or plant forming part of or attached to or used in connection with any motor vehicle or trailer;

7.1.4    Damage to any bridge, weighbridge or road, or anything beneath such bridge, weighbridge or road caused by the weight of any motor vehicle or trailer or of the load carried thereon; or

7.1.5    Damage to any motor vehicle or trailer (not owned, leased or hired by, under hire purchase, on loan or rented to the Insured) temporarily in the Insured's custody or control for the purpose of parking and directly arising out of such parking.

7.2    Damage to property owned, leased, hired by, under hire purchase, on loan or rented to the Insured or otherwise in the Insured's care, custody or control other than:

7.2.1    Premises (or to contents thereof) temporarily occupied by the Insured for the purpose of carrying out works thereto or thereon, but no indemnity is granted for liability in respect of physical damage to or destruction of that part of any premises or contents on which the Insured is or has been working on if the physical damage or destruction arises from such work;

7.2.2    Premises tenanted by the Insured;

7.2.3    Directors', employees' and visitors' clothing and personal effects; or

7.2.4    Other property not owned by the Insured but temporarily in the Insured's possession provided:

         7.2.4.1    No indemnity is granted for liability in respect of physical damage to or destruction of that part of any property upon which the Insured is or has been working on if the physical damage or destruction arises from such work; and

         7.2.4.2    LIU's limit of liability under this Clause 7.2.4 does not exceed AUD100,000 each and every Occurrence and in the aggregate for any one Period of Insurance.

         Provided further that no indemnity is granted under this Policy in respect of liability assumed by the Insured under any contract or agreement which requires the Insured to effect material damage insurance on premises, property or goods not owned by the Insured.

7.3    Damages claimed for, and/or the costs of withdrawal, recall, inspection, repair, replacement, disposal or loss of use of the Insured's Products or of any property of which such Products form a part, if such Products or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

7.4    Damage to the Insured's Products if such Damage is attributable to any defect therein or harmful nature or unsuitability thereof.

7.5    The cost of performing, completing, correcting or improving any work undertaken by the Insured.



7.6 Any Product guarantee or warranty given by or on behalf of the Insured but this exclusion shall not apply to the requirements of any Federal or State legislation with respect to Product safety and information.

7.7 Liability assumed under the terms of a contract, agreement or warranty unless and only to the extent that the Insured would have been liable in the absence of such contract, agreement or warranty.

7.8 Liability assumed where the Insured may have been able to recover from another party but for an agreement between the Insured and such party where the Insured has waived, released or abandoned any right of recourse or recovery against any party.

7.9 Any Product which is incorporated into the structure, machinery or controls of any aircraft, aerial device, watercraft or hovercraft.

7.10 Injury to any Worker.

Provided that if the Insured:

7.10.1 Is required by law to insure or otherwise fund, whether through self insurance, statutory fund or other statutory scheme, all or part of any common law liability (whether limited in amount or not) for such Injury; or

7.10.2 Is not required to so insure or otherwise fund such liability by reason only that the Injury is to a person who is not a Worker or "employee" within the meaning of the relevant Workers' Compensation Law or the Injury is not an Injury which is subject to such Law,

Then this Policy will respond to the extent that the Insured's liability would not be covered under any such fund, scheme, policy of insurance or self insurance arrangement had the Insured complied with it's obligations pursuant to such Law.

7.11 7.11.1 Any Workers' Compensation Law;

7.11.2 The provisions of any industrial award or agreement or determination or any contract of employment or workplace agreement where such liability would not have been imposed in the absence of such industrial award or agreement or determination; or

7.11.3 Employment Practices.

7.12 Libel, slander and/or other defamation:

7.12.1 Made prior to the commencement of the Period of Insurance;

7.12.2 Made at the Insured's direction or with the Insured's authority or with knowledge of its falsity; or

7.12.3 Related to advertising, broadcasting, telecasting or publishing activities conducted by or on behalf of the Insured.

7.13 The loss of use of tangible property which has not been physically damaged or destroyed resulting from:

7.13.1 A delay in or lack of performance by or on behalf of the Insured of any contract or agreement; or



7.13.2   The failure of any Product to meet the level of performance, quality, fitness or durability expressly or impliedly warranted or represented by the Insured but this exclusion does not apply to loss of use of other tangible property directly or indirectly caused by, arising out of or in any way connected with or resulting from the sudden and accidental physical damage to or destruction of the Product after such Product has been put to use by any person or organisation other than the Insured.

7.14   Any change in the nature of the Insured's Business which:

7.14.1   Occurred during the currency of this Policy, and

7.14.2   Was known by the Insured, or would have been known by a reasonable person in the circumstances, to be likely to increase the risk of Injury or Damage for which indemnity is provided by this Policy.

For the purposes of this exclusion, where the Insured is a corporate body, the knowledge of any director or officer of the Insured shall be deemed to be the knowledge of the Insured.

7.15   The rendering of or failure to render professional advice or service or any error or omission connected therewith given for a fee by the Insured or any person covered by Clause 3 of this Policy.

Provided that this exclusion does not apply to the rendering of first aid or medical services on the Insured's premises by medical persons employed by the Insured.

7.16   7.16.1   The actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants;

7.16.2   Testing, monitoring, clean up, removal, containment, treatment, detoxifying or neutralising of Pollutants or their effect;

7.16.3   The actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants caused by any Product that has been discarded, dumped, abandoned or thrown away by others; or

7.16.4   Any expenses for the prevention of the actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants.

Provided always that exclusions 7.16.1, 7.16.2 and 7.16.3 shall not apply to liability which is directly caused by a sudden, accidental, instantaneous, unintended, identifiable and unexpected happening which takes place in its entirety at a specific time and place.

The total aggregate liability of LIU for all claims covered in any one Period of Insurance in respect of the proviso above shall not exceed the Limit of Indemnity shown in the Schedule

7.17   Injury sustained due to the inhalation or ingestion of, or exposure to:

7.17.1   Tobacco or tobacco smoke; or

7.17.2   Any ingredient or additive present in any articles, items or goods which contain or include tobacco.

7.18   7.18.1   Ionising radiations or contamination from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.   Combustion shall include any self sustaining process of nuclear fission or fusion; or



7.18.2   Nuclear weapons material.

7.19      And regardless of any other cause or event contributing concurrently or in any other sequence to the loss:

    7.19.1   War and military action which includes without limitation the following:

        7.19.1.1   War, including undeclared or civil war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), military or usurped power or confiscation, nationalisation, requisition, destruction of or damage to property by or under the order of any government or public or local authority;

        7.19.1.2   Warlike action by military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

        7.19.1.3   Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

    7.19.2   Any actual or threatened act of domestic or international Terrorism committed by a person or persons acting;

        7.19.2.1   Alone or on behalf of or in connection with any organisation; or

        7.19.2.2   With the goal of furthering any political, social, religious, ideological or similar objective.

    7.19.3   Action taken to prevent or defend against an act of Terrorism.

    If an act of Terrorism involves chemical or biological weapons, this Terrorism exclusion will still apply.

    If an act of Terrorism involves nuclear reaction, nuclear radiation or radioactive contamination, this Terrorism exclusion will apply to liabilities that result from such nuclear reaction or nuclear radiation or radioactive contamination in place of Exclusion 7.18.

7.20      The ownership, maintenance, operation, possession or use by or on behalf of the Insured of:

    7.20.1   Any aircraft or aerial device;

    7.20.2   Any watercraft exceeding 10 metres in length; or

    7.20.3   Any hovercraft.

7.21      The Deductible and/or self insured retention shown in the Schedule.

7.22      The erection, demolition, alteration of and/or addition to buildings by or on behalf of the Insured except for contracts not exceeding in cost the sum of AUD500,000 or 10% of the Limit of Indemnity whichever is the lesser.

7.23      Asbestos.

7.24      7.24.1   Claims made and actions instituted within the United States of America or Canada and their respective territories and protectorates, and any other territory coming within the jurisdiction of the courts of the United States of America or Canada; or



7.24.2    Claims and actions to which the laws of the United States of America or Canada and their respective territories and protectorates apply.

Provided that this exclusion does not apply to claims and actions caused by an employee of the Insured who normally resides in Australia while such employee is temporarily travelling on behalf of the Insured outside Australia.

7.25    Fines, penalties, punitive damages, exemplary damages, multiplication of compensatory damages, liquidated damages and/or aggravated damages.

7.26    Any alleged or actual fraudulent, dishonest, malicious, wilful or criminal act or omission of the Insured or any person covered by Clause 3 of this Policy.

## 8    General Conditions

8.1    The Insured shall give written notice to LIU as soon as possible of any claim under this Policy and shall give all such additional information as LIU may require.

8.2    No admission, offer, promise, or payment shall be made or given by or on behalf of the Insured without the prior written consent of LIU who shall be entitled but not obligated to take over the conduct in the name of the Insured of the defence or settlement of any claim or to prosecute in the name of the Insured for their own benefit any claim for indemnity or damages or otherwise and shall have full discretion in the conduct of any proceedings and in the settlement of any claim and the Insured shall give all such information and assistance as LIU shall require.

8.3    This Policy and any endorsements attached to this Policy shall be read together as one contract and any word or expression to which a specific meaning has been attached in any part of this Policy or the Schedule shall bear such specific meaning wherever it may appear.

8.4    The amount shown within the Schedule as a Deductible and/or self insured retention is the first amount for all claims arising out of any one Occurrence which is to be borne by the Insured or any person covered by Clause 3 of this Policy.

8.5    LIU may at any time discharge its total liability to the Insured in respect of any one claim or series of claims arising from one Occurrence by paying to or on behalf of the Insured:

8.5.1    The total amount in respect of such claim to which the Insured is entitled to indemnity under this Policy;

8.5.2    The total amount sought by the claimant for such claim; or

8.5.3    The total amount for which such claim can be settled,

And in addition to such payment LIU will pay Defence Costs incurred up to the date of payment as provided for by Clause 6 of this Policy.

Upon such payment, LIU shall relinquish conduct or control of such claim and be under no further liability under this Policy in connection with such claim including but not limited to Defence Costs.

8.6    This Policy shall be interpreted in accordance with the laws of Australia and all claims for indemnity under this Policy shall be decided in accordance with those laws.  All matters arising from or relating to the construction, operation or interpretation of the Policy shall be submitted to the exclusive jurisdiction of the Australian Courts.



8.7     The Insured must:

    8.7.1     Exercise reasonable care that only competent Workers and/or employees are employed and take reasonable measures to maintain all premises, fittings and plant in sound condition;

    8.7.2     Take all reasonable precautions to:

        8.7.2.1     Prevent Injury and Damage;

        8.7.2.2     Prevent the manufacture, sale or supply of defective Products; and

        8.7.2.3     Comply and ensure that its Workers, servants and agents comply with all statutory obligations, by-laws or regulations imposed by any public authority for the safety of persons or property;

    8.7.3     At its own expense take reasonable action to trace, recall or modify any Products containing any defect or deficiency which defect or deficiency the Insured has knowledge of or has reason to suspect; and

    8.7.4     Assist and co-operate fully and promptly with LIU in the investigation, settlement or defence of any claim or matters relating or in connection thereto.

The amount of any benefit under this Policy for any liability caused or contributed to by the lack of such precautions, measures and compliances shall be reduced by the amount that fairly represents the extent to which LIU's interests have been prejudiced thereby.

8.8     Where the premium is provisionally based on the Insured's estimates, the Insured shall keep accurate records and after expiry of the Period of Insurance declare as soon as possible such details as LIU requires and the premium shall be adjusted and any difference paid by or allowed to the Insured as the case may be subject to any minimum premium that may apply.

8.9     The Insured may cancel this Policy at any time by giving notice in writing to LIU.

LIU may cancel this Policy at any time where:

    8.9.1     It is entitled to do so pursuant to the *Insurance Contracts Act 1984* or any amendments thereto;

    8.9.2     The Insured has failed to notify LIU of any specific act or omission where such notification is required under the terms or conditions of this Policy; or

    8.9.3     The Insured has acted in contravention of or omitted to act in compliance with any term of this Policy which empowers LIU to refuse to pay a claim in the event of such contravention or omission.

Any notice of cancellation given by LIU shall take effect either at the time when another contract of insurance between the Insured and LIU or some other insurer (being a contract that is intended by the Insured to replace this Policy) is entered into or at 4pm on the 3rd business day after the date on which notice was given to the Insured by LIU, whichever is the earlier.



Liberty
International
Underwriters

Where the Insured comprises more than one person or company, it is agreed that the Insured referred to in the Schedule shall be the agent of each of the other Insured persons or companies or others indemnified by Clause 3 for the purposes of receiving any notice of cancellation pursuant to this General Condition, or any other notice, statement, document or information relating to this Policy.

Where the Insured has a broker, nothing shall restrict LIU's right to notify the broker as agent of the Insured.

8.10    Notwithstanding anything else to the contrary in the Policy, whenever coverage provided by this Policy would be in violation of any applicable economic, trade or other sanction or law, such coverage shall be null and void and LIU has no obligation to pay a claim if to do so would breach that sanction or law.

8.11    8.11.1    Words importing persons shall include corporations and other legal entities;

    8.11.2    References in the singular shall be deemed to include the plural and vice versa;

    8.11.3    Words depicting any gender include reference to all other genders;

    8.11.4    References to any legislation or subordinate instruments shall refer to such legislation or subordinate instruments as amended from time to time and in force; and

    8.11.5    Headings have been included for ease of reference and it is understood and agreed that this Policy is not to be construed or interpreted by reference to such headings.

8.12    Each Insured agrees that LIU may issue by electronic mail or post any notices required to be given under the Insurance Contracts Act or otherwise.

8.13    Liberty International Underwriters is a trading name of Liberty Mutual Insurance Company ("LMIC"), a stock insurance company incorporated in Massachusetts USA. LMIC is an indirect subsidiary of Liberty Mutual Holding Company Inc. ("LMHC"), a Massachusetts USA mutual holding company. NOTICE IS HEREBY GIVEN that the annual meeting of LMHC is held on the second Wednesday in April of each year at ten o'clock in the morning, local time, at LMHC's office at 175 Berkeley Street, Boston, Massachusetts USA. This notice is for members of LMHC only. One becomes a member of LMHC by virtue of being a policyholder of LMIC. Membership rights terminate when one ceases to be a policyholder of LMIC. Members of LMHC may request a copy of LMHC's annual financial statements, which are posted on Liberty Mutual's website at www.libertymutual.com by writing to Liberty Mutual Holding Company Inc., 175 Berkeley Street, Boston, Massachusetts 02116.

Signed on behalf of Liberty International Underwriters



_____
For and on behalf of
Liberty International Underwriters

3ʳᵈ May 2013
_____
Date

LIU-AUS-CAS-CGL-2000001



Endorsements attaching to and forming part of Policy Number ME-CAS-12-438176

Insured: The Fire Company Pty Ltd and EcoSmart Inc

Endorsements effective from: 30ᵗʰ April 2013

Endorsement 1.

USA – Canada (incl. Domiciled Operations & Jurisdiction)

The following amendments are made to this Policy in respect of the Insured's operations and the Insured's Products exported by the Insured to the United States of America or Canada:

1.   In respect to the Insured's operations domiciled in the United States of America or Canada only and Products exported to the United States of America or Canada, Exclusion 7.16 is deleted and replaced by the following:

   7.16   7.16.1   The actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants;

        7.16.2   Any expenses for the prevention of the actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants;

        7.16.3   Testing, monitoring, clean up, removal, containment, treatment, detoxifying or neutralising of Pollutants or their effect;

        7.16.4   The actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants caused by any Product that has been discarded, dumped, abandoned or thrown away by others.

2.   Exclusion 7.24 is deleted.

Endorsement 2.

Vendors Liability

1.   Clause 3 Indemnity to Others, is extended to include the following:

   3.5   Any person or organisation designated below in the Schedule of Vendors (herein referred to as "Vendor") but only with respect to the distribution or sale of the Insured's Products provided always that the Vendor shall observe, fulfill and be subject to the terms, conditions, limitations and exclusions of this Policy in so far as they can apply as though they were the Insured.

        This endorsement does not cover liability directly or indirectly caused by, arising out of or in any way connected with:

        1.   Any warranty given by the Vendor;

        2.   Any liability assumed by the Vendor under contract or agreement which would not have attached in the absence of such contract or agreement;

        3.   The distribution or sale for a purpose unauthorised by the Insured;

        4.   Any act, error or omission of the Vendor which changes the condition of any Product;

        5.   The failure by the Vendor to maintain any Product in merchantable condition;



6    Any failure to make such inspections, adjustments, tests or servicing as the Vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of any Product;

7.   Any Product which after distribution or sale by the Insured has been labelled, relabelled, packaged, repackaged or replaced by the Vendor;

8.   Any Product which after distribution or sale by the Insured is used as a container, part or ingredient of any other product, thing or substance by or for the Vendor;

9.   The demonstration, assembly, installation, servicing or repair of any Product by the Vendor;

10.  Any Injury or Damage happening within the Vendor's premises;

11.  The liability of any person or organisation from whom the Insured has acquired any Product or any ingredient or part contained in or forming part of such Product or container accompanying or containing such Product; or

12.  Any Product design, formula or specification supplied by the Vendor.

2.   **Schedule Of Vendors**

**Name**
Room and Board Inc

**Address**
4600 Olson Memorial Hwy Frontage Road
Minneapolis, MN 55422 USA

Nothing contained in these endorsements shall in any way serve to increase the Limit of Indemnity stated in the Schedule.

Other than as amended above, the terms of this Policy shall continue to apply.

3rd May 2013

For and on behalf of
Liberty International Underwriters

Date

Case No. SCV261819
01-26-2018
Proof of Service of First Amended
Summons and First Amended Complaint
(Liberty Mutual Insurance Company)

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY:<br>Leslie Perry   (062390)<br>Perry, Johnson, Anderson, Miller & Moskowitz, LLP<br>438 First Street<br>4th Floor<br>Santa Rosa, CA 95401<br><br>  TELEPHONE NO.: (707) 525-8800<br>  ATTORNEY FOR: Plaintiff | FOR COURT USE ONLY<br><br># FILED<br><br>**JAN 2 6 2018**<br><br>Clerk of the Superior Court of California<br>County of Sonoma<br>By_____<br>Deputy Clerk |
|---|---|

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA<br>  STREET ADDRESS: 600 Administration Drive<br>  MAILING ADDRESS:<br>  CITY AND ZIP CODE: Santa Rosa, 95403<br>  BRANCH NAME: Hall of Justice | |

| PLAINTIFF: Nicolette Lewis; et al.<br>DEFENDANT: Liberty Mutual Insurance Company; et al. | CASE NUMBER:<br>SCV-261819 |
|---|---|

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1.  At the time of service I was at least 18 years of age and not a party to this action.
2.  I served copies of:
    a. ☐ summons
    b. ☐ complaint
    c. ☐ Alternative Dispute Resolution (ADR) package
    d. ☒ Civil Case Cover Sheet (served in complex cases only)
    e. ☐ cross-complaint
    f. ☒ other (specify documents):
       First Amended Summons; First Amended Complaint; Notice of Assignment to One Judge for All Purposes, Notice of
       Case Management Conference, and Order to Show Cause

3.  a. Party served *(specify name of party as shown on documents served):*
       Liberty Mutual Insurance Company
    b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
          under item 5b on whom substituted service was made)
       Mai Yang / Designated to Accept Service

4.  Address where the party was served:
       CSC Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA
       95833

5.  I served the party *(check proper box)*
    a. ☒ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
          receive service of process for the party (1) on *(date):* 01/24/2018  (2) at *(time):* 1:25 PM
    b. ☐ **by substituted service.** On *(date):*          at *(time):*          I left the documents listed in item 2 with
          or in the presence of *(name and title or relationship to person indicated in item 3):*

       (1) ☐  **(business)** a person at least 18 years of age apparently in charge at the office or usual place of
                business of the person to be served. I informed him or her of the general nature of the papers.
       (2) ☐  **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or
                usual place of abode of the party. I informed him or her of the general nature of the papers.
       (3) ☐  **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual
                mailing address of the person to be served, other than a United States Postal Service post office box.
                I informed him or her of the general nature of the papers.
       (4) ☐  I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be
                served at the place where copies were left (Code Civ. Proc., 415.20). I mailed the documents on
                *(date):*          from *(city):*          or ☐
       a declaration of mailing is attached.

Page 1 of 2

| PLAINTIFF: Nicolette Lewis; et al. | CASE NUMBER: |
|---|---|
| DEFENDANT: Liberty Mutual Insurance Company; et al. | SCV-261819 |

c.
(5) [ ] I attached a **declaration of diligence** stating actions taken first to attempt personal service.

[ ] **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date):*      (2) from *(city):*

(3) [ ] with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., 415.30.)

(4) [ ] to an address outside California with return receipt requested. (Code Civ. Proc., 415.40.)

d. [ ] **by other means** *(specify means of service and authorizing code section):*

[ ] Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
a. [ ] as an individual defendant.
b. [ ] as the person sued under the fictitious name of *(specify):*
c. [ ] as occupant.
d. [ X ] On behalf of *(specify):* Liberty Mutual Insurance Company
under the following Code of Civil Procedure section:

[ X ] 416.10 (corporation)      [ ] 415.95 (business organization, form unknown)
[ ] 416.20 (defunct corporation)      [ ] 416.60 (minor)
[ ] 416.30 (joint stock company/association)      [ ] 416.70 (ward or conservatee)
[ ] 416.40 (association or partnership)      [ ] 416.90 (authorized person)
[ ] 416.50 (public entity)      [ ] 415.46 (occupant)
     [ ] other:

7. **Person who served papers**
a. Name: Demian Ross
Firm: TriStar Attorney Service
b. Address: 725 Farmers Lane, #6, Santa Rosa, CA 95405
c. Telephone number: (707) 578-8458
d. The fee for the service was: $ 250.00 RUSH/TIME
e. I am:
(1) [ ] not a registered California process server.
(2) [ ] exempt from registration under Business and Professions Code section 22350(b).
(3) [ X ] a registered California process server:
(i) [ ] owner [ ] employee [ X ] independent contractor.
(ii) Registration No.: RPS #2011-66
(iii) County: Sacramento

8. [ X ] I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9. [ ] I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date:    1/24/2018

Demian Ross
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶           *(SIGNATURE)*

**Electronic Signature as Allowed by California Civil Code 1633.7**

**Page 2 of 2**

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**      Job Number BMS-2018000081

2018 JAN 26  PM 1 27

Case No. SCV261819
02-02-2018
Proof of Service of First Amended
Summons and First Amended Complaint
(Liberty International Underwriters)

POS-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY:**<br>Leslie Perry  (062390)<br>Perry, Johnson, Anderson, Miller & Moskowitz, LLP<br>438 First Street<br>4th Floor<br>Santa Rosa, CA 95401<br><br>TELEPHONE NO.: (707) 525-8800<br>ATTORNEY FOR: Plaintiff | **FOR COURT USE ONLY**<br><br># FILED<br><br>FEB - 2 2018<br><br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SONOMA<br>BY___MB___DEPUTY CLERK |

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA**<br>STREET ADDRESS: 600 Administration Drive<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Santa Rosa, 95403<br>BRANCH NAME: Hall of Justice | |
| **PLAINTIFF:** Nicolette Lewis; et al.<br>**DEFENDANT:** Liberty Mutual Insurance Company; et al. | **CASE NUMBER:**<br>SCV-261819 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   - a. ☐ summons
   - b. ☐ complaint
   - c. ☐ Alternative Dispute Resolution (ADR) package
   - d. ☒ Civil Case Cover Sheet (served in complex cases only)
   - e. ☐ cross-complaint
   - f. ☒ other (specify documents):
     First Amended Summons; First Amended Complaint; Notice of Assignment to One Judge for All Purposes, Notice of Case Management Conference, and Order to Show Cause

3. a. Party served *(specify name of party as shown on documents served)*:
      Liberty International Underwriters
   b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made)
      Jeanne Zhen / Designated to Accept Service

4. Address where the party was served:
   CSC Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833

5. I served the party *(check proper box)*
   a. ☒ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*:01/29/2018  (2) at *(time)*: 1:15 PM
   b. ☐ **by substituted service.** On *(date)*:              at *(time)*:              I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where copies were left (Code Civ. Proc., 415.20). I mailed the documents on *(date)*:              from *(city)*:              or ☐

   a declaration of mailing is attached.

Page 1 of 2

| | |
|---|---|
| PLAINTIFF: Nicolette Lewis; et al.<br>DEFENDANT: Liberty Mutual Insurance Company; et al. | CASE NUMBER:<br>SCV-261819 |

c. ___

    (5) ☐   I attached a **declaration of diligence** stating actions taken first to attempt personal service.

    **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*          (2) from *(city):*

    (3) ☐   with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. (*Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., 415.30.)

    (4) ☐   to an address outside California with return receipt requested. (Code Civ. Proc., 415.40.)

d. ___    **by other means** *(specify means of service and authorizing code section):*

    ☐   Additional page describing service is attached.

6.   The "Notice to the Person Served" (on the summons) was completed as follows:

    a. ☐   as an individual defendant.

    b. ☐   as the person sued under the fictitious name of *(specify):*

    c. ☐   as occupant.

    d. ☒   On behalf of *(specify):* Liberty International Underwriters

      under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7.   **Person who served papers**

    a.   Name: Demian Ross

       Firm: TriStar Attorney Service

    b.   Address: 725 Farmers Lane, #6, Santa Rosa, CA 95405

    c.   Telephone number: (707) 578-8458

    d.   **The fee** for the service was: $ 150.00 (mileage/copies)

    e.   I am:

      (1) ☐   not a registered California process server.

      (2) ☐   exempt from registration under Business and Professions Code section 22350(b).

      (3) ☒   a registered California process server:

         (i) ☐ owner ☐ employee ☒ independent contractor.

         (ii) Registration No.: RPS #2011-66

         (iii) County: Sacramento

8.   ☒   **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

     or

9.   ☐   **I am a California sheriff or marshal** and I certify that the foregoing is true and correct.

Date:   1/29/2018

Demian Ross

(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

                                (SIGNATURE)

**Electronic Signature as Allowed by California Civil Code 1633.7**

Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Job Number BMS-2018000088

2018 FEB  2  PM 1 12

Case No. SCV261819
02-05-2018
Discovery Served on Liberty Mutual
Insurance Company



# Notice of Service of Process

**null / ALL**
**Transmittal Number: 17729291**
**Date Processed: 02/06/2018**

| | |
|---|---|
| Primary Contact: | Bruce Buttaro<br>Liberty Mutual Insurance Company<br>175 Berkeley Street<br>Boston, MA 02116 |

| | |
|---|---|
| **Entity:** | Liberty Mutual Insurance Company<br>Entity ID Number  1765547 |
| **Entity Served:** | Liberty Mutual Insurance Company |
| **Title of Action:** | Nicolette Lewis vs. Liberty Mutual Insurance Company |
| **Document(s) Type:** | Interrogatories |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Sonoma County Superior Court, California |
| **Case/Reference No:** | 261819 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 02/05/2018 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Heather-Ann T. Young<br>707-525-8800 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674  (888) 690-2882  |  sop@cscglobal.com

1  LESLIE R. PERRY (SBN 062390)
   JOHN J. JOHNSON (SBN 114902)
2  HEATHER-ANN T. YOUNG (SBN 283211)
   PERRY, JOHNSON, ANDERSON,
3  MILLER & MOSKOWITZ, LLP
   438 First Street, Fourth Floor
4  Santa Rosa, CA 95401
   Telephone: (707) 525-8800
5  Facsimile: (707) 545-8242

6  Attorney for Plaintiffs
   MARGRETT LEWIS, NICOLETTE LEWIS,
7  ALEXIS LEWIS, and JEFFREY LEWIS

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                          COUNTY OF SONOMA

10  NICOLETTE LEWIS, ALEXIS LEWIS,         ) CASE No. 261819
    MARGRETT LEWIS; and JEFFREY LEWIS      )
11                                         ) Unlimited Civil Action
                                           )
12              Plaintiff(s).              ) **PLAINTIFF NICOLETTE LEWIS'**
                                           ) **DECLARATION FOR ADDITIONAL**
13          vs.                            ) **DISCOVERY**
                                           )
14  LIBERTY MUTUAL INSURANCE COMPANY,      )
    LIBERTY INTERNATIONAL UNDERWRITERS,    ) Department: 16
15  and DOES 1 through 50, inclusive,      ) Judge: Hon. Patrick Broderick
                                           ) Trial Date: not yet set
16                                         )
                Defendant(s).              )
17                                         )
                                           )
18                                         )
                                           )
19                                         )

20  I, HEATHER-ANN T. YOUNG, declare:

21
22      1.      I am one of the attorneys for Plaintiffs in this action.  The following is true of my

23  personal knowledge and if called as a witness I would competently testify thereto.

24      2.      I am propounding to Defendant LIBERTY MUTUAL INSURANCE COMPANY,

25  the set of Special Interrogatories, Set One served herewith.

26      3.      This set of Special Interrogatories will cause the total number of requests

27  propounded to the party to whom they are directed to exceed the number of requests permitted by

28  Section 2030.030 of the Civil Code Procedure.

                                           1

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

4.     I have not propounded previous sets of Special Interrogatories.  This set contains 71 Special Interrogatories.  Form Interrogatories Set One is being served with these Special Interrogatories.

5.     I am familiar with the issues and the previous discovery conducted by all the parties in this case.

6.     I have personally examined the interrogatories in this set.

7.     This number of Special Interrogatories is warranted under Section 2030.010 of the Civil Code of Procedure because of the complexity of this litigation and the numerous factual issues related to the underlying case.   These interrogatories are needed to determine a liability analysis and uncover key factual questions.

8.     None of the interrogatories is being propounded for any improper purpose, such as to harass the party, or the attorney for the party, to whom it is directed, or to cause unnecessary delay or needless increase in the cost of litigation.

I declare under penalty and perjury under the laws of California that the foregoing is true and correct.  Executed this 1st day of February, 2018.

HEATHER-ANN T. YOUNG
Attorney for Plaintiffs

Plaintiff Nicolette Lewis' Declaration for Additional Discovery - Special Interrogatories Set One to Defendant Liberty Mutual

Case No. SCV261819
02-05-2018
Form Interrogatories Served on Liberty
Mutual Insurance Company

DISC-001

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* <br> Leslie R. Perry 062390 <br> Perry, Johnson, Anderson, Miller & Mosk <br> 438 First Street, 4th Floor <br> Santa Rosa, CA 95401 <br> TELEPHONE NO.: (707) 525-8800 <br> FAX NO. *(Optional):* (707) 545-8242 <br> E-MAIL ADDRESS *(Optional):* perry@perrylaw.net <br> ATTORNEY FOR *(Name):* Plaintiffs | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF      Sonoma

SHORT TITLE OF CASE:
Lewis v. Liberty Mutual Insurance Company

| **FORM INTERROGATORIES-GENERAL** | CASE NUMBER: |
|---|---|
| **Asking Party:** Plaintiff Nicolette Lewis | SCV 261819 |
| **Answering Party:** Defn Liberty Mutual Insurance Company <br> **Set No.:** One | |

### Sec. 1. Instructions to All Parties

(a) Interrogatories are written questions prepared by a party to an action that are sent to any other party in the action to be answered under oath. The interrogatories below are form interrogatories approved for use in civil cases.

(b) For time limitations, requirements for service on other parties, and other details, see Code of Civil Procedure sections 2030.010-2030.410 and the cases construing those sections.

(c) These form interrogatories do not change existing law relating to interrogatories nor do they affect an answering party's right to assert any privilege or make any objection.

### Sec. 2. Instructions to the Asking Party

(a) These interrogatories are designed for optional use by parties in unlimited civil cases where the amount demanded exceeds $25,000. Separate interrogatories, *Form Interrogatories - Limited Civil Cases (Economic Litigation)* (form DISC-004), which have no subparts, are designed for use in limited civil cases where the amount demanded is $25,000 or less; however, those interrogatories may also be used in unlimited civil cases.

(b) Check the box next to each interrogatory that you want the answering party to answer. Use care in choosing those interrogatories that are applicable to the case.

(c) You may insert your own definition of **INCIDENT** in Section 4, but only where the action arises from a course of conduct or a series of events occurring over a period of time.

(d) The interrogatories in section 16.0, Defendant's Contentions-Personal Injury, should not be used until the defendant has had a reasonable opportunity to conduct an investigation or discovery of plaintiff's injuries and damages.

(e) Additional interrogatories may be attached.

### Sec. 3. Instructions to the Answering Party

(a) An answer or other appropriate response must be given to each interrogatory checked by the asking party.

(b) As a general rule, within 30 days after you are served with these interrogatories, you must serve your responses on the asking party and serve copies of your responses on all other parties to the action who have appeared. See Code of Civil Procedure sections 2030.260-2030.270 for details.

(c) Each answer must be as complete and straightforward as the information reasonably available to you, including the information possessed by your attorneys or agents, permits. If an interrogatory cannot be answered completely, answer it to the extent possible.

(d) If you do not have enough personal knowledge to fully answer an interrogatory, say so, but make a reasonable and good faith effort to get the information by asking other persons or organizations, unless the information is equally available to the asking party.

(e) Whenever an interrogatory may be answered by referring to a document, the document may be attached as an exhibit to the response and referred to in the response. If the document has more than one page, refer to the page and section where the answer to the interrogatory can be found.

(f) Whenever an address and telephone number for the same person are requested in more than one interrogatory, you are required to furnish them in answering only the first interrogatory asking for that information.

(g) If you are asserting a privilege or making an objection to an interrogatory, you must specifically assert the privilege or state the objection in your written response.

(h) Your answers to these interrogatories must be verified, dated, and signed. You may wish to use the following form at the end of your answers:

*I declare under penalty of perjury under the laws of the State of California that the foregoing answers are true and correct.*

_____      _____
    *(DATE)*               *(SIGNATURE)*

### Sec. 4. Definitions

Words in **BOLDFACE CAPITALS** in these interrogatories are defined as follows:

(a) *(Check one of the following):*

☐ (1) **INCIDENT** includes the circumstances and events surrounding the alleged accident, injury, or other occurrence or breach of contract giving rise to this action or proceeding.

Page 1 of 8

☐ (2) **INCIDENT** means *(insert your definition here or on a separate, attached sheet labeled "Sec. 4(a)(2)"):*

(b) **YOU OR ANYONE ACTING ON YOUR BEHALF** includes you, your agents, your employees, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf.

(c) **PERSON** includes a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

(d) **DOCUMENT** means a writing, as defined in Evidence Code section 250, and includes the original or a copy of handwriting, typewriting, printing, photostats, photographs, electronically stored information, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds, or symbols, or combinations of them.

(e) **HEALTH CARE PROVIDER** includes any **PERSON** referred to in Code of Civil Procedure section 667.7(e)(3).

(f) **ADDRESS** means the street address, including the city, state, and zip code.

**Sec. 5. Interrogatories**

The following interrogatories have been approved by the Judicial Council under Code of Civil Procedure section 2033.710:

## CONTENTS

1.0 Identity of Persons Answering These Interrogatories
2.0 General Background Information - Individual
3.0 General Background Information - Business Entity
4.0 Insurance
5.0 *[Reserved]*
6.0 Physical, Mental, or Emotional Injuries
7.0 Property Damage
8.0 Loss of Income or Earning Capacity
9.0 Other Damages
10.0 Medical History
11.0 Other Claims and Previous Claims
12.0 Investigation - General
13.0 Investigation - Surveillance
14.0 Statutory or Regulatory Violations
15.0 Denials and Special or Affirmative Defenses
16.0 Defendant's Contentions Personal Injury
17.0 Responses to Request for Admissions
18.0 *[Reserved]*
19.0 *[Reserved]*
20.0 How the Incident Occurred - Motor Vehicle
25.0 *[Reserved]*
30.0 *[Reserved]*
40.0 *[Reserved]*
50.0 Contract
60.0 *[Reserved]*
70.0 Unlawful Detainer *[See separate form DISC-003]*
101.0 Economic Litigation *[See separate form DISC-004]*
200.0 Employment Law *[See separate form DISC-002]*
       Family Law *[See separate form FL-145]*

**1.0 Identity of Persons Answering These Interrogatories**

☒ 1.1 State the name, **ADDRESS**, telephone number, and relationship to you of each **PERSON** who prepared or assisted in the preparation of the responses to these interrogatories. *(Do not identify anyone who simply typed or reproduced the responses.)*

**2.0 General Background Information - individual**

☐ 2.1 State:
(a) your name;
(b) every name you have used in the past; and
(c) the dates you used each name.

☐ 2.2 State the date and place of your birth.

☐ 2.3 At the time of the **INCIDENT**, did you have a driver's license? If so state:
(a) the state or other issuing entity;
(b) the license number and type;
(c) the date of issuance; and
(d) all restrictions.

☐ 2.4 At the time of the **INCIDENT**, did you have any other permit or license for the operation of a motor vehicle? If so, state:
(a) the state or other issuing entity;
(b) the license number and type;
(c) the date of issuance; and
(d) all restrictions.

☐ 2.5 State:
(a) your present residence **ADDRESS**;
(b) your residence **ADDRESSES** for the past five years; and
(c) the dates you lived at each **ADDRESS.**

☐ 2.6 State:
(a) the name, **ADDRESS**, and telephone number of your present employer or place of self-employment; and
(b) the name, **ADDRESS**, dates of employment, job title, and nature of work for each employer or self-employment you have had from five years before the **INCIDENT** until today.

☐ 2.7 State:
(a) the name and **ADDRESS** of each school or other academic or vocational institution you have attended, beginning with high school;
(b) the dates you attended;
(c) the highest grade level you have completed; and
(d) the degrees received.

☐ 2.8 Have you ever been convicted of a felony? If so, for each conviction state:
(a) the city and state where you were convicted;
(b) the date of conviction;
(c) the offense; and
(d) the court and case number.

☐ 2.9 Can you speak English with ease? If not, what language and dialect do you normally use?

☐ 2.10 Can you read and write English with ease? If not, what language and dialect do you normally use?

☐ 2.41 At the time of the **INCIDENT** were you acting as an agent or employee for any **PERSON**? If so, state:
(a) the name, **ADDRESS**, and telephone number of that **PERSON**; and
(b) a description of your duties.

☐ 2.12 At the time of the **INCIDENT** did you or any other person have any physical, emotional, or mental disability or condition that may have contributed to the occurrence of the **INCIDENT**? If so, for each person state:
(a) the name, **ADDRESS**, and telephone number;
(b) the nature of the disability or condition; and
(c) the manner in which the disability or condition contributed to the occurrence of the **INCIDENT**.

☐ 2.13 Within 24 hours before the **INCIDENT** did you or any person involved in the **INCIDENT** use or take any of the following substances: alcoholic beverage, marijuana, or other drug or medication of any kind (prescription or not)? If so, for each person state:
(a) the name, **ADDRESS**, and telephone number;
(b) the nature or description of each substance;
(c) the quantity of each substance used or taken;
(d) the date and time of day when each substance was used or taken;
(e) the **ADDRESS** where each substance was used or taken;
(f) the name, **ADDRESS**, and telephone number of each person who was present when each substance was used or taken; and
(g) the name, **ADDRESS**, and telephone number of any **HEALTH CARE PROVIDER** who prescribed or furnished the substance and the condition for which it was prescribed or furnished.

### 3.0  General Background Information - Business Entity

☒ 3.1  Are you a corporation? If so, state:
(a) the name stated in the current articles of incorporation;
(b) all other names used by the corporation during the past 10 years and the dates each was used;
(c) the date and place of incorporation;
(d) the **ADDRESS** of the principal place of business; and
(e) whether you are qualified to do business in California.

☒ 3.2  Are you a partnership? If so, state:
(a) the current partnership name;
(b) all other names used by the partnership during the past 10 years and the dates each was used;
(c) whether you are a limited partnership and, if so, under the laws of what jurisdiction;
(d) the name and **ADDRESS** of each general partner; and
(e) the **ADDRESS** of the principal place of business.

☒ 3.3  Are you a limited liability company? If so, state:
(a) the name stated in the current articles of organization;
(b) all other names used by the company during the past 10 years and the date each was used;
(c) the date and place of filing of the articles of organization;
(d) the **ADDRESS** of the principal place of business; and
(e) whether you are qualified to do business in California.

☒ 3.4  Are you a joint venture? If so, state:
(a) the current joint venture name;
(b) all other names used by the joint venture during the past 10 years and the dates each was used;
(c) the name and **ADDRESS** of each joint venture; and
(d) the **ADDRESS** of the principal place of business.

☒ 3.5  Are you an unincorporated association? If so, state:
(a) the current unincorporated association name;
(b) all other names used by the unincorporated association during the past 10 years and the dates each was used; and
(c) the **ADDRESS** of the principal place of business.

☒ 3.6  Have you done business under a fictitious name during the past 10 years? If so, for each fictitious name state:
(a) the name;
(b) the dates each was used;
(c) the state and county of each fictitious name filing; and
(d) the **ADDRESS** of the principal place of business.

☒ 3.7  Within the past five years has any public entity registered or licensed your business? If so, for each license or registration:
(a) identify the license or registration;
(b) state the name of the public entity; and
(c) state the dates of issuance and expiration.

### 4.0  Insurance

☐ 4.1  At the time of the **INCIDENT**, was there in effect any policy of insurance through which you were or might be insured in any manner (for example, primary, pro-rata, or excess liability coverage or medical expense coverage) for the damages, claims, or actions that have arisen out of the **INCIDENT**? If so, for each policy state:
(a) the kind of coverage;
(b) the name and **ADDRESS** of the insurance company;
(c) the name, **ADDRESS**, and telephone number of each named insured;
(d) the policy number;
(e) the limits of coverage for each type of coverage contained in the policy;
(f) whether any reservation of rights or controversy or coverage dispute exists between you and the insurance company; and
(g) the name, **ADDRESS**, and telephone number of the custodian of the policy.

☐ 4.2  Are you self-insured under any statute for the damages, claims, or actions that have arisen out of the **INCIDENT**? If so, specify the statute.

### 5.0  *[Reserved]*

### 6.0  Physical, Mental, or Emotional Injuries

☐ 6.1  Do you attribute any physical, mental, or emotional injuries to the **INCIDENT**? *(If your answer is "no," do not answer interrogatories 6.2 through 6.7).*

☐ 6.2  Identify each injury you attribute to the **INCIDENT** and the area of your body affected.

CEB® | Essential
ceb.com | Forms®

DISC-001

6.3  Do you still have any complaints that you attribute to the 'INCIDENT? If so, for each complaint state:
(a)  a description;
(b)  whether the complaint is subsiding, remaining the same, or becoming worse; and
(c)  the frequency and duration.

6.4  Did you receive any consultation or examination (except from expert witnesses covered by Code of Civil Procedure sections 2034.210-2034.310) or treatment from a HEALTH CARE PROVIDER for any injury you attribute to the INCIDENT? If so, for each HEALTH CARE PROVIDER state:
(a)  the name, ADDRESS, and telephone number;
(b)  the type of consultation, examination, or treatment provided;
(c)  the dates you received consultation, examination, or treatment; and
(d)  the charges to date.

6.5  Have you taken any medication, prescribed or not, as a result of injuries that you attribute to the INCIDENT? If so, for each medication state:
(a)  the name;
(b)  the PERSON who prescribed or furnished it;
(c)  the date it was prescribed or furnished;
(d)  the dates you began and stopped taking it; and
(e)  the cost to date.

6.6  Are there any other medical services necessitated by the injuries that you attribute to the INCIDENT that were not previously listed (for example, ambulance, nursing, prosthetics)? If so, for each service state:
(a)  the nature;
(b)  the date;
(c)  the cost; and
(d)  the name, ADDRESS, and telephone number of each provider.

6.7  Has any HEALTH CARE PROVIDER advised that you may require future or additional treatment for any injuries that you attribute to the INCIDENT? If so, for each injury state:
(a)  the name and ADDRESS of each HEALTH CARE PROVIDER;
(b)  the complaints for which the treatment was advised; and
(c)  the nature, duration, and estimated cost of the treatment.

7.0  Property Damage
7.1  Do you attribute any loss of or damage to a vehicle or other property to the INCIDENT? If so, for each item of property:
(a)  describe the property;
(b)  describe the nature and location of the damage to the property;
(c)  state the amount of damage you are claiming for each item of property and how the amount was calculated; and
(d)  if the property was sold, state the name, ADDRESS, and telephone number of the seller, the date of sale, and the sale price.

7.2  Has a written estimate or evaluation been made for any item of property referred to in your answer to the preceding interrogatory? If so, for each estimate or evaluation state:
(a)  the name, ADDRESS, and telephone number of the PERSON who prepared it and the date prepared;
(b)  the name, ADDRESS, and telephone number of each PERSON who has a copy of it; and
(c)  the amount of damage stated.

7.3  Has any item of property referred to in your answer to interrogatory 7.1 been repaired? If so, for each item state:
(a)  the date repaired;
(b)  a description of the repair;
(c)  the repair cost;
(d)  the name, ADDRESS, and telephone number of the PERSON who repaired it;
(e)  the name, ADDRESS, and telephone number of the PERSON who paid for the repair.

8.0  Loss of Income or Earning Capacity
8.1  Do you attribute any loss of income or earning capacity to the INCIDENT? (If your answer is "no," do not answer interrogatory 8.2 through 8.8).

8.2  State:
(a)  the nature of your work;
(b)  your job title at the time of the INCIDENT; and
(c)  the date your employment began.

8.3  State the last date before the INCIDENT that you worked for compensation.

8.4  State your monthly income at the time of the INCIDENT and how the amount was calculated.

8.5  State the date you returned to work at each place of employment following the INCIDENT.

8.6  State the dates you did not work and for which you lost income as a result of the INCIDENT.

8.7  State the total income you have lost to date as a result of the INCIDENT and how the amount was calculated.

8.8  Will you lose income in the future as a result of the INCIDENT? If so, state:
(a)  the facts upon which you base this contention;
(b)  an estimate of the amount;
(c)  an estimate of how long you will be unable to work; and
(d)  how the claim for future income is calculated.

## 9.0 Other Damages

☐ 9.1 Are there any other damages that you attribute to the INCIDENT? If so, for each item of damage state:

(a) the nature;

(b) the date it occurred;

(c) the amount; and

(d) the name, ADDRESS, and telephone number of each PERSON to whom an obligation was incurred.

☐ 9.2 Do any DOCUMENTS support the existence or amount of any item of damages claimed in interrogatory 9.1? If so, describe each document and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

## 10.0 Medical History

☐ 10.1 At any time before the INCIDENT did you have complaints or injuries that involved the same part of your body claimed to have been injured in the INCIDENT? If so, for each state:

(a) a description of the complaint or injury;

(b) the dates it began and ended; and

(c) the name, ADDRESS, and telephone number of each HEALTH CARE PROVIDER whom you consulted or who examined or treated you.

☐ 10.2 List all physical, mental, and emotional disabilities you had immediately before the INCIDENT. *(You may omit mental or emotional disabilities unless you attribute any mental or emotional injury to the INCIDENT.)*

☐ 10.3 At any time after the INCIDENT, did you sustain injuries of the kind for which you are now claiming damages? If so, for each incident giving rise to an injury state:

(a) the date and the place it occurred;

(b) the name, ADDRESS, and telephone number of any other PERSON involved;

(c) the nature of any injuries you sustained;

(d) the name, ADDRESS, and telephone number of each HEALTH CARE PROVIDER who you consulted or who examined or treated you; and

(e) the nature of the treatment and its duration.

## 11.0 Other Claims and Previous Claims

☐ 11.1 Except for this action, in the past 10 years have you filed an action or made a written claim or demand for compensation for your personal injuries? If so, for each action, claim, or demand state:

(a) the date, time, and place and location (closest street ADDRESS or intersection) of the INCIDENT giving rise to the action, claim, or demand;

(b) the name, ADDRESS, and telephone number of each PERSON against whom the claim or demand was made or the action filed;

(c) the court, names of the parties, and case number of any action filed;

(d) the name, ADDRESS, and telephone number of any attorney representing you;

(e) whether the claim or action has been resolved or is pending; and

(f) a description of the injury.

☐ 11.2 In the past 10 years have you made a written claim or demand for workers' compensation benefits? If so, for each claim or demand state:

(a) the date, time, and place of the INCIDENT giving rise to the claim;

(b) the name, ADDRESS, and telephone number of your employer at the time of the injury;

(c) the name, ADDRESS, and telephone number of the workers' compensation insurer and the claim number;

(d) the period of time during which you received workers' compensation benefits;

(e) a description of the injury;

(f) the name, ADDRESS, and telephone number of any HEALTH CARE PROVIDER who provided services; and

(g) the case number at the Workers' Compensation Appeals Board.

## 12.0 Investigation-General

☐ 12.1 State the name, ADDRESS, and telephone number of each individual:

(a) who witnessed the INCIDENT or the events occurring immediately before or after the INCIDENT;

(b) who made any statement at the scene of the INCIDENT;

(c) who heard any statements made about the INCIDENT by any individual at the scene; and

(d) who YOU OR ANYONE ACTING ON YOUR BEHALF claim has knowledge of the INCIDENT (except for expert witnesses covered by Code of Civil Procedure section 2034).

☐ 12.2 Have YOU OR ANYONE ACTING ON YOUR BEHALF interviewed any individual concerning the INCIDENT? If so, for each individual state:

(a) the name, ADDRESS, and telephone number of the individual interviewed;

(b) the date of the interview; and

(c) the name, ADDRESS, and telephone number of the PERSON who conducted the interview.

☐ 12.3 Have YOU OR ANYONE ACTING ON YOUR BEHALF obtained a written or recorded statement from any individual concerning the INCIDENT? If so, for each statement state:

(a) the name, ADDRESS, and telephone number of the individual from whom the statement was obtained;

(b) the name, ADDRESS, and telephone number of the individual who obtained the statement;

(c) the date the statement was obtained; and

(d) the name, ADDRESS, and telephone number of each PERSON who has the original statement or a copy.

DISC-001

**12.4 Do YOU OR ANYONE ACTING ON YOUR BEHALF** know of any photographs, films, or videotapes depicting any place, object, or individual concerning the **INCIDENT** or plaintiff's injuries? If so, state:

(a)  the number of photographs or feet of film or videotape;
(b)  the places, objects, or persons photographed, filmed, or videotaped;
(c)  the date the photographs, films, or videotapes were taken;
(d)  the name, **ADDRESS**, and telephone number of the individual taking the photographs, films, or videotapes; and
(e)  the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy of the photographs, films, or videotapes.

**12.5 Do YOU OR ANYONE ACTING ON YOUR BEHALF** know of any diagram, reproduction, or model of any place or thing (except for items developed by expert witnesses covered by Code of Civil Procedure sections 2034.210-2034.310) concerning the **INCIDENT**? If so, for each item state:

(a)  the type (i.e., diagram, reproduction, or model);
(b)  the subject matter; and
(c)  the name, **ADDRESS**, and telephone number of each **PERSON** who has it.

**12.6** Was a report made by any **PERSON** concerning the **INCIDENT**? If so, state:

(a)  the name, title, identification number, and employer of the **PERSON** who made the report;
(b)  the date and type of report made;
(c)  the name, **ADDRESS**, and telephone number of the **PERSON** for whom the report was made; and
(d)  the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy of the report.

**12.7 Have YOU OR ANYONE ACTING ON YOUR BEHALF** inspected the scene of the **INCIDENT**? If so, for each inspection state:

(a)  the name, **ADDRESS**, and telephone number of the individual making the inspection (except for expert witnesses covered by Code of Civil Procedure sections 2034.210-2034.310); and
(b)  the date of the inspection.

**13.0 Investigation-Surveillance**

**13.1 Have YOU OR ANYONE ACTING ON YOUR BEHALF** conducted surveillance of any individual involved in the **INCIDENT** or any party to this action? If so, for each surveillance state:

(a)  the name, **ADDRESS**, and telephone number of the individual or party;
(b)  the time, date, and place of the surveillance;
(c)  the name, **ADDRESS**, and telephone number of the individual who conducted the surveillance; and
(d)  the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy of any surveillance photograph, film, or videotape.

**13.2** Has a written report been prepared on the surveillance? If so, for each written report state:

(a)  the title;
(b)  the date;
(c)  the name, **ADDRESS**, and telephone number of the individual who prepared the report; and
(d)  the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy.

**14.0 Statutory or Regulatory Violations**

**14.1 Do YOU OR ANYONE ACTING ON YOUR BEHALF** contend that any **PERSON** involved in the **INCIDENT** violated any statute, ordinance, or regulation and that the violation was a legal (proximate) cause of the **INCIDENT**? If so, identify the name, **ADDRESS**, and telephone number of each **PERSON** and the statute, ordinance, or regulation that was violated.

**14.2** Was any **PERSON** cited or charged with a violation of any statute, ordinance, or regulation as a result of this **INCIDENT**? If so, for each **PERSON** state:

(a)  the name, **ADDRESS**, and telephone number of the **PERSON**;
(b)  the statute, ordinance, or regulation allegedly violated;
(c)  whether the **PERSON** entered a plea in response to the citation or charge and, if so, the plea entered; and
(d)  the name and **ADDRESS** of the court or administrative agency, names of the parties, and case number.

**15.0 Denials and Special or Affirmative Defenses**

**15.1** Identify each denial of a material allegation and each special or affirmative defense in your pleadings and for each:

(a)  state all facts upon which you base the denial or special or affirmative defense;
(b)  state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of those facts; and
(c)  identify all **DOCUMENTS** and other tangible things that support your denial or special or affirmative defense, and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT**.

**16.0 Defendant's Contentions-Personal Injury**

**16.1** Do you contend that any **PERSON**, other than you or plaintiff, contributed to the occurrence of the **INCIDENT** or the injuries or damages claimed by plaintiff? If so, for each **PERSON**:

(a)  state the name, **ADDRESS**, and telephone number of the **PERSON**;
(b)  state all facts upon which you base your contention;
(c)  state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d)  identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

**16.2** Do you contend that plaintiff was not injured in the **INCIDENT**? If so:

(a)  state all facts upon which you base your contention;
(b)  state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(c)  identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.3 Do you contend that the injuries or the extent of the injuries claimed by plaintiff as disclosed in discovery proceedings thus far in this case were not caused by the **INCIDENT**? If so, for each injury:

(a) identify it;

(b) state all facts upon which you base your contention;

(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and

(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.4 Do you contend that any of the services furnished by any **HEALTH CARE PROVIDER** claimed by plaintiff in discovery proceedings thus far in this case were not due to the **INCIDENT**? If so:

(a) identify each service;

(b) state all facts upon which you base your contention;

(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and

(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.5 Do you contend that any of the costs of services furnished by any **HEALTH CARE PROVIDER** claimed as damages by plaintiff in discovery proceedings thus far in this case were not necessary or unreasonable? If so:

(a) identify each cost;

(b) state all facts upon which you base your contention;

(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and

(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.6 Do you contend that any part of the loss of earnings or income claimed by plaintiff in discovery proceedings thus far in this case was unreasonable or was not caused by the **INCIDENT**? If so:

(a) identify each part of the loss;

(b) state all facts upon which you base your contention;

(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and

(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.7 Do you contend that any of the property damage claimed by plaintiff in discovery Proceedings thus far in this case was not caused by the **INCIDENT**? If so:

(a) identify each item of property damage;

(b) state all facts upon which you base your contention;

(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and

(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.8 Do you contend that any of the costs of repairing the property damage claimed by plaintiff in discovery proceedings thus far in this case were unreasonable? If so:

(a) identify each cost item;

(b) state all facts upon which you base your contention;

(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and

(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.9 Do **YOU OR ANYONE ACTING ON YOUR BEHALF** have any **DOCUMENT** (for example, insurance bureau index reports) concerning claims for personal injuries made before or after the **INCIDENT** by a plaintiff in this case? If so, for each plaintiff state:

(a) the source of each **DOCUMENT**;

(b) the date each claim arose;

(c) the nature of each claim; and

(d) the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT.**

☐ 16.10 Do **YOU OR ANYONE ACTING ON YOUR BEHALF** have any **DOCUMENT** concerning the past or present physical, mental, or emotional condition of any plaintiff in this case from a **HEALTH CARE PROVIDER** not previously identified (except for expert witnesses covered by Code of Civil Procedure sections 2034.210-2034.310)? If so, for each plaintiff state:

(a) the name, **ADDRESS,** and telephone number of each **HEALTH CARE PROVIDER;**

(b) a description of each **DOCUMENT**; and

(c) the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT.**

**17.0 Responses to Request for Admissions**

☐ 17.1 Is your response to each request for admission served with these interrogatories an unqualified admission? If not, for each response that is not an unqualified admission:

(a) state the number of the request;

(b) state all facts upon which you base your response;

(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of those facts; and

(d) identify all **DOCUMENTS** and other tangible things that support your response and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

**18.0** *[Reserved]*

**19.0** *[Reserved]*

**20.0 How the Incident Occurred-Motor Vehicle**

☐ 20.1 State the date, time, and place of the **INCIDENT** (closest street **ADDRESS** or intersection).

☐ 20.2 For each vehicle involved in the **INCIDENT**, state:

(a) the year, make, model, and license number;

(b) the name, **ADDRESS,** and telephone number of the driver;

CEB | Essential
ceb.com | Forms

DISC-001

(c) the name, **ADDRESS,** and telephone number of each occupant other than the driver:

(d) the name, **ADDRESS,** and telephone number of each registered owner;

(e) the name, **ADDRESS,** and telephone number of each lessee;

(f) the name, **ADDRESS,** and telephone number of each owner other than the registered owner or lien holder; and

(g) the name of each owner who gave permission or consent to the driver to operate the vehicle.

☐ 20.3 State the **ADDRESS** and location where your trip began and the **ADDRESS** and location of your destination.

☐ 20.4 Describe the route that you followed from the beginning of your trip to the location of the **INCIDENT,** and state the location of each stop, other than routine traffic stops, during the trip leading up to the **INCIDENT.**

☐ 20.5 State the name of the street or roadway, the lane of travel, and the direction of travel of each vehicle involved in the **INCIDENT** for the 500 feet of travel before the **INCIDENT.**

☐ 20.6 Did the **INCIDENT** occur at an intersection? If so, describe all traffic control devices, signals, or signs at the intersection.

☐ 20.7 Was there a traffic signal facing you at the time of the **INCIDENT?** If so, state:

(a) your location when you first saw it;

(b) the color;

(c) the number of seconds it had been that color; and

(d) whether the color changed between the time you first saw it and the **INCIDENT.**

☐ 20.8 State how the **INCIDENT** occurred, giving the speed, direction, and location of each vehicle involved:

(a) just before the **INCIDENT;**

(b) at the time of the **INCIDENT;** and (c) just after the **INCIDENT.**

☐ 20.9 Do you have information that a malfunction or defect in a vehicle caused the **INCIDENT?** If so:

(a) identify the vehicle;

(b) identify each malfunction or defect;

(c) state the name, **ADDRESS,** and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and

(d) state the name, **ADDRESS,** and telephone number of each **PERSON** who has custody of each defective part.

☐ 20.10 Do you have information that any malfunction or defect in a vehicle contributed to the injuries sustained in the **INCIDENT?** If so:

(a) identify the vehicle;

(b) identify each malfunction or defect;

(c) state the name, **ADDRESS,** and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and

(d) state the name, **ADDRESS,** and telephone number of each **PERSON** who has custody of each defective part.

☐ 20.11 State the name, **ADDRESS,** and telephone number of each owner and each **PERSON** who has had possession since the **INCIDENT** of each vehicle involved in the **INCIDENT.**

**25.0** *[Reserved]*
**30.0** *[Reserved]*
**40.0** *[Reserved]*

**50.0 Contract**

☐ 50.1 For each agreement alleged in the pleadings:

(a) identify each **DOCUMENT** that is part of the agreement and for each state the name, **ADDRESS,** and telephone number of each **PERSON** who has the **DOCUMENT;**

(b) state each part of the agreement not in writing, the name, **ADDRESS,** and telephone number of each **PERSON** agreeing to that provision, and the date that part of the agreement was made;

(c) identify all **DOCUMENTS** that evidence any part of the agreement not in writing and for each state the name, **ADDRESS,** and telephone number of each **PERSON** who has the **DOCUMENT;**

(d) identify all **DOCUMENTS** that are part of any modification to the agreement, and for each state the name, **ADDRESS,** and telephone number of each **PERSON** who has the **DOCUMENT;**

(e) state each modification not in writing, the date, and the name, **ADDRESS,** and telephone number of each **PERSON** agreeing to the modification, and the date the modification was made;

(f) identify all **DOCUMENTS** that evidence any modification of the agreement not in writing and for each state the name, **ADDRESS,** and telephone number of each **PERSON** who has the **DOCUMENT.**

☐ 50.2 Was there a breach of any agreement alleged in the pleadings? If so, for each breach describe and give the date of every act or omission that you claim is the breach of the agreement.

☐ 50.3 Was performance of any agreement alleged in the pleadings excused? If so, identify each agreement excused and state why performance was excused.

☐ 50.4 Was any agreement alleged in the pleadings terminated by mutual agreement, release, accord and satisfaction, or novation? If so, identify each agreement terminated, the date of termination, and the basis of the termination.

☐ 50.5 Is any agreement alleged in the pleadings unenforce-able? If so, identify each unenforceable agreement and state why it is unenforceable.

☐ 50.6 Is any agreement alleged in the pleadings ambiguous? If so, identify each ambiguous agreement and state why it is ambiguous.

**60.0** *[Reserved]*

**FORM INTERROGATORIES - GENERAL**

CEB | Essential
ceb.com | Forms

Case No. SCV261819
02-05-2018
Special Interrogatories Served on Liberty
Mutual Insurance Company

1 | LESLIE R. PERRY (SBN 062390)
JOHN J. JOHNSON (SBN 114902)
2 | HEATHER-ANN T. YOUNG (SBN 283211)
PERRY, JOHNSON, ANDERSON,
3 | MILLER & MOSKOWITZ, LLP
438 First Street, Fourth Floor
4 | Santa Rosa, CA 95401
Telephone: (707) 525-8800
5 | Facsimile: (707) 545-8242

6 | Attorney for Plaintiffs
MARGRETT LEWIS, NICOLETTE LEWIS,
7 | ALEXIS LEWIS, and JEFFREY LEWIS

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF SONOMA

10 | NICOLETTE LEWIS, ALEXIS LEWIS,   ) CASE No. 261819
MARGRETT LEWIS; and JEFFREY LEWIS )
11 | ) Unlimited Civil Action
)
12 | Plaintiff(s), ) **PLAINTIFF NICOLETTE LEWIS'**
) **SPECIAL INTERROGATORIES TO**
13 | vs. ) **DEFENDANT LIBERTY MUTUAL**
) **INSURANCE COMPANY**
14 | LIBERTY MUTUAL INSURANCE COMPANY , ) **[SET ONE]**
LIBERTY INTERNATIONAL UNDERWRITERS, )
15 | and DOES 1 through 50, inclusive, )
) Department: 16
16 | ) Judge: Hon. Patrick Broderick
Defendant(s). ) Trial Date: not yet set
17 | )
)
18 | )
)
19 | )

20 |

21 | REQUESTING PARTY:   Plaintiff NICOLETTE LEWIS

22 | RESPONDING PARTIES:   Defendant LIBERTY MUTUAL INSURANCE COMPANY
23 |

24 | SET NUMBER:   ONE

25 | Pursuant to Code of Civil Procedure section 2030.010 et seq., Plaintiff NICOLETTE

26 | LEWIS requests that Defendant LIBERTY MUTUAL INSURANCE COMPANY, answer the

27 | following interrogatories under oath within 30 days from the date of service.

28 |

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

1

## DEFINITIONS

2

A.    As used herein the word "BROKER" means anyone or entity transacting insurance on

3

behalf of ECOSMART, including, but not limited to representative or agent of OAMPS Insurance

4

Brokers and/or Arthur J. Gallagher Insurance Brokers (including James Forster and/or Melissa

5

Mudge).

6

B.    As used herein the words "CALIFORNIA BUSINESSES" means a company that you

7

believed conducted business in California.

8

9

C.    As used herein the word "CHANGED" or "CHANGES" means to modify, alter, change or

10

restrict the terms or coverage of in any way between INSURANCE POLICY #1 and

11

INSURANCE POLICY #2.

12

D.    As used herein the words "CLAIMS MADE" means any claim made during the policy

13

period, regardless of when the act that gave rise to the claim took place.

14

E.    As used herein the words "COMBINED GENERAL & PRODUCTS LIABILITY

15

POLICIES" means policies providing the same or similar general coverage to that contained in

16

INSURANCE POLICY #1.

17

18

F.    As used herein, the word "COMMUNICATION(S)" means any form of communication,

19

including, but not limited to emails, letters (delivered by mail, personal delivery or otherwise),

20

text, memorandum, facsimile, documents made available on the internet for viewing, downloading

21

OR uploading (e.g. sharing Google Documents, Sharefile, Dropbox, etc.) and includes direct

22

communications and also communications in which an individual is copied, blind copied, or in

23

some fashion included in, or made privy to, the COMMUNICATION.

24

G.    As used herein the words "DEFEND" or "DEFENDED" means to defend and indemnify

25

in accordance with INSURANCE POLICY #1.

26

H.    As used herein, the word "DOCUMENT" or "DOCUMENTS" is used herein to mean all

27

"writings" as defined in California Evidence Code Section 250 (see text, below), including, but

28

not limited to, all written, recorded, or graphic material, however produced or reproduced, of any

2

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

1    kind in your possession, custody, or control, or in the possession, custody, or control of any

2    officers, members, partners, employees, servants, or your agents or representatives, including,

3    without limitation, letters, correspondence, telegrams, memoranda, records, minutes, contracts,

4    agreements, memoranda, or records of telephone or personal conversations or conferences,

5    interoffice communications, emails, sound recordings, handwritings, ELECTRONICALLY

6    STORED INFORMATION, electronic data processing inputs, and memories of all kinds,

7    including hard drives, CD ROM data, tapes and discs, computer reports and printouts, microfilm,

8    bulletins, circulars, pamphlets, studies, notices, summaries, reports, books, teletype messages, bills

9    of lading, invoices, work sheets, and index cards, or copies of such documents where originals are

10    not available. The term "document" or "documents" includes any and all matter that relates in

11    whole or in part to the subject referred to in a demand to produce. Where a document has been

12    prepared in several copies that are not identical (or which by reason of subsequent modification,

13    addition, or notation are no longer identical), each non-identical copy is a separate "document."

14    DOCUMENT includes any COMMUNICATION.

15

16            Evidence Code Section 250:  "Writing" means handwriting, typewriting, printing,

17            photostating, photographing, photocopying, transmitting by electronic mail or facsimile,

18            and every other means of recording upon any tangible thing, any form of communication

19            or representation, including letters, words, pictures, sounds, or symbols, or combinations

20            thereof, and any record thereby created, regardless of the manner in which the record has

21            been stored."

22    I.      As used herein the word "ECOSMART" means EcoSmart, Inc., its agents, employees,

23    attorneys, accountants,  investigators, insurance broker(s) and anyone else acting on its behalf,

24    The Fire Company Pty Ltd, Esmart Group Pty Ltd, any employee, representative or agent of

25    OAMPS Insurance Brokers and/or Arthur J. Gallagher Insurance Brokers (including James Forster

26    and/or Melissa Mudge).

27    J.      As used herein the words "ECOSMART PRODUCT(S)" means any fuel produced by

28    ECOSMART that is intended for use by consumers, including but not limited to E-NRG.

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

K.     As used herein the word "ELECTRONIC" means RELATING to technology having electrical, digital, magnetic, wireless, optical, electromagnetic, or similar capabilities.

L.     As used herein the words "ELECTRONICALLY STORED INFORMATION" means information that is stored in an ELECTRONIC medium.

M.     As used herein the word "FIRE COMPANY" means The Fire Company, Pty, Ltd., its agents, employees, attorneys, accountants,  investigators, insurance broker(s) and anyone else acting on its behalf.

N.     As used herein, the words, "FLAME ARRESTOR" means deflagration and detonation prevention device, flashback arrestor, vapor flashback quencher, flame retarder, vapor flashback quenching guard or flame mitigation device.

O.     As used herein the word "IDENTIFY" when referring to:

    a.     INSURANCE POLICY means:

        (i)     List in detail all policies covering negligence, product defect or any other form of legal action or claim and include:

            (1)     Name of policy;

            (2)     Coverage period

            (3)     Amount of coverage

            (4)     All individuals and ENTITIES covered by the policy

            (5)     Type of coverage

            (6)     Limits or exclusions of the policy

            (7)  .   All DOCUMENTSRELATING to the policy in relation to ECOSMART.

    b.   NOTICE means to:

        i. State the type of COMMUNICATION used to convey the NOTICE;

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

4

1

    ii.  State the date of the NOTICE; and

2

3

    iii.  Provide sufficient detail so that the NOTICE, if written, can be correctly identified when requesting production of it if it is a DOCUMENT.

4

5

  c.  COMMUNICATION means to:

6

    i.  State the type of communication, e.g., verbal, e-mail, letter, etc.;

7

    ii.  State the date of the communication;
    iii.  Summarize briefly what the communication related to and/or involved;

8

9

    iv.  Name the individuals who signed the document and provide their address, telephone number and position with any entity, company or organization they represented when the signed the communication.
    v.  State generally what the COMMUNICATIONS related to and involved.

10

    vi.  Provide sufficient definition of the communication so that if it is a DOCUMENT it can be requested to be produced without ambiguity.

11

  d.  DOCUMENT means to:

12

13

    i.  Name the DOCUMENT consistent with its content and which YOU will recognize in relation to a demand to produce that DOCUMENT;

14

    ii.  Provide a brief summary of the document;

15

    iii.  Date of the DOCUMENT;

16

    iv.  Purpose of the DOCUMENT;

17

    v.  If executed, who signed the DOCUMENT, including the signator's name, address, telephone number, and position with YOU.

18

19  O.    As used herein the word INSURANCE means any form of liability insurance including,

20  but not limited to General, Products OR Combined General & Products Liability Policies

21  (including INSURANCE POLICY #1 OR INSURANCE POLICY #2).

22

23  P.    As used herein the words "INSURANCE POLICY" (other than specific references to

INSURANCE POLICY #1 and INSURANCE POLICY #2) means any form of insurance which

24

provides coverage (including indemnity) for claims made against the insured.

25

26  Q.    As used herein the words "INSURANCE POLICY #1" means Liberty International

Underwriters Combined General & Products Liability Policy #ME-CAS-12-438176 with a period

27

of insurance 4 p.m. April 30, 2013 to 4 p.m. April 30, 2014. (Exhibit 1)

28

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

5

R.    As used herein the words "INSURANCE POLICY #2" means Liberty International Underwriters Combined General & Products Liability Policy #SY-CAS-13-438167 with a period of insurance 4 p.m. April 30, 2014 to 4 p.m. April 30, 2015.  (Exhibit 2)

S.    As used herein the word "LAWSUIT(S)" means any lawsuit based on personal injuries or death resulting from an ECOSMART product.

T.    As used herein the words "LEWIS V. ECOSMART" means Lewis v. EcoSmart et al., Case No. SCV-256907 (Exhibit 3) and also includes any amendments thereto.

U.    As used herein the words LIBERTY INTERNATIONAL UNDERWRITERS and any agent, employees, representatives, attorneys (as to non-privileged communications), investigators, and anyone else acting on either entities' behalf or of any subsidiary or entity related to either named entity.

V.    As used herein the word "NOTICE" means notice as required by Insurance Code § 678.1.

W.    As used herein the words "NOTIFY" or "NOTIFIED" means put on notice or advise or report to in any manner, whether formally, informally or otherwise.

X.    As used herein the word "OR" means and/or.

Y.    As used herein, the words "PRINCIPAL OFFICE" means the place designated on the California Secretary of State Statement of Information or the office of the headquarters of the company.

Z.    As used herein the words "PRODUCTS LIABILITY POLICIES" mean any insurance policy that includes Products Liability coverage, whether exclusively or in combination with another form of coverage.

AA.    As used herein the words "REGARDING" or "RELATING" when used with respect to documents shall mean any and all documents that in any way or in any manner refer to, relate to, reflect, concern, contain, embody, or describe the subject matter referred to in the list of documents to be produced as identified below.

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

6

1    BB.  As used herein, the word "REGARDING" OR "RELATING" when used with respect to a

2    fact or person includes referring to, alluding to, responding to, concerning, connected with,

3    commenting on, about, regarding, discussing, constituting, evidencing or pertaining to.

4    CC.  As used herein the word "RELATIONSHIP" means any way that Liberty Mutual Insurance

5    Company is connected to or involved with Liberty International Underwriters, whether as an

6    owner, subsidiary, a division, a trading company for, or otherwise.

7
8    DD.     As used herein, the word, "RISK" means the exposure to danger or harm.

9    EE.     As used herein, the word "TERM" means the clauses, coverages, conditions, limitations,

10   endorsements, and any other provision of the insurance policy.

11   FF.     As used herein, the words "TRADING NAME" refers to meaning as that term is used in

12   INSURANCE POLICY #1 and INSURANCE POLICY #2

13
14   GG.     As used herein, the words, "YOU" and "YOUR" means Liberty Mutual Insurance

15   Company and any agent, employees, representatives, attorneys (as to non-privileged

16   communications), investigators, and anyone else acting on behalf of Liberty Mutual Insurance

17   Company or of any subsidiary or entity(ies) related thereto.

18        For Interrogatories 17-19, 27-40 and 47-49, YOU also means LIBERTY

19   INTERNATIONAL UNDERWRITING.

20   **SPECIAL INTERROGATORY NO. 1:**

21
22        IDENTIFY all COMMUNICATIONS between YOU and LIBERTY INTERNATIONAL

23   UNDERWRITERS RELATING to INSURANCE POLICY #1.

24   **SPECIAL INTERROGATORY NO. 2:**

25        IDENTIFY all COMMUNICATIONS between YOU and LIBERTY INTERNATIONAL

26   UNDERWRITERS RELATING to INSURANCE POLICY #2.

27   ///

28

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

7

**SPECIAL INTERROGATORY NO. 3:**

IDENTIFY all INSURANCE POLICIES issued by YOU covering ECOSMART from April 1, 2013 to April 1, 2016.

**SPECIAL INTERROGATORY NO. 4:**

IDENTIFY all INSURANCE POLICIES issued by LIBERTY INTERNATIONAL UNDERWRITING covering ECOSMART from April 1, 2013 to April 1, 2016.

**SPECIAL INTERROGATORY NO. 5:**

IDENTIFY all COMMUNICATIONS between YOU and ECOSMART RELATING to INSURANCE POLICY #1.

**SPECIAL INTERROGATORY NO. 6:**

IDENTIFY all COMMUNICATIONS between YOU and ECOSMART RELATING to INSURANCE POLICY #2.

**SPECIAL INTERROGATORY NO. 7:**

IDENTIFY all COMMUNICATIONS between YOU and LIBERTY INTERNATIONAL UNDERWRITERS RELATING to INSURANCE POLICY #1.

**SPECIAL INTERROGATORY NO. 8:**

IDENTIFY all COMMUNICATIONS between YOU and LIBERTY INTERNATIONAL UNDERWRITERS RELATING to INSURANCE POLICY #2.

**SPECIAL INTERROGATORY NO. 9:**

IDENTIFY all COMMUNICATIONS between YOU and LIBERTY INTERNATIONAL UNDERWRITERS RELATING to the denial of coverage to ECOSMART in *LEWIS V. ECOSMART*.

///

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

**SPECIAL INTERROGATORY NO. 10:**

IDENTIFY all COMMUNICATIONS between YOU and BROKER RELATING to INSURANCE POLICY #1.

**SPECIAL INTERROGATORY NO. 11:**

IDENTIFY all COMMUNICATIONS between YOU a and BROKER RELATING to INSURANCE POLICY #2.

**SPECIAL INTERROGATORY NO. 12:**

IDENTIFY all COMMUNICATIONS between YOU and BROKER to the denial of coverage to ECOSMART in *LEWIS V. ECOSMART*.

**SPECIAL INTERROGATORY NO. 13:**

IDENTIFY all COMMUNICATIONS between YOU and FIRE COMPANY RELATING to INSURANCE POLICY #1.

**SPECIAL INTERROGATORY NO. 14:**

IDENTIFY all COMMUNICATIONS between YOU and FIRE COMPANY RELATING to INSURANCE POLICY #2.

**SPECIAL INTERROGATORY NO. 15:**

IDENTIFY all COMMUNICATIONS between YOU and FIRE COMPANY to the denial of coverage to ECOSMART in *LEWIS V. ECOSMART*.

**SPECIAL INTERROGATORY NO. 16:**

Why did YOU decline to provide a defense to ECOSMART in *LEWIS V. ECOSMART*?

**SPECIAL INTERROGATORY NO.17:**

Why did YOU decline to indemnify ECOSMART in *LEWIS V. ECOSMART*?

///

**SPECIAL INTERROGATORY NO. 18:**

Why did LIBERTY INTERNATIONAL UNDERWRITERS decline to provide a defense to ECOSMART in *LEWIS V. ECOSMART*?

**SPECIAL INTERROGATORY NO. 19:**

Why did LIBERTY INTERNATIONAL UNDERWRITERS decline to indemnify ECOSMART in *LEWIS V. ECOSMART*?

**SPECIAL INTERROGATORY NO. 20:**

REGARDING the statement by Angus Kench in an email dated April 21, 2015 (Exhibit 4), to wit "Based on the summons and in particular the circumstances summarised above the policy **will not respond** to this current claim" [emphasis added], would INSURANCE POLICY #1 have "responded" to the claims if it were still in effect as of June 8, 2014.

**SPECIAL INTERROGATORY NO. 21:**

If INSURANCE POLICY #1 was in full effect when Nicolette Lewis was injured as noted in *LEWIS v. ECOSMART*, would YOU have declined to indemnify ECOSMART in *LEWIS V. ECOSMART*?

**SPECIAL INTERROGATORY NO. 22:**

Would YOU have agreed to indemnify ECOSMART in *LEWIS v. ECOSMART* if INSURANCE POLICY #1 was in full effect when Nicolette Lewis was injured as noted in *LEWIS v. ECOSMART*.

**SPECIAL INTERROGATORY NO. 23:**

If INSURANCE POLICY #1 were in full effect when Nicolette Lewis was injured as noted in *LEWIS V. ECOSMART*, would YOU have DEFENDED ECOSMART in *LEWIS V. ECOSMART*?

///

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

**SPECIAL INTERROGATORY NO. 24:**

State in detail all facts RELATING to YOUR acceptance or declination to DEFEND ECOSMART in *LEWIS v. ECOSMART* if INSURANCE POLICY #1 was in full effect when Nicolette Lewis was injured, as noted in *LEWIS v. ECOSMART*.

**SPECIAL INTERROGATORY NO. 25:**

What time frame was INSURANCE POLICY #1 in effect?

**SPECIAL INTERROGATORY NO. 26:**

Were the TERMS of policy INSURANCE POLICY #1 CHANGED?

**SPECIAL INTERROGATORY NO. 27:**

If the terms of policy INSURANCE POLICY #1 CHANGED, state in detail what TERMS were CHANGED.

**SPECIAL INTERROGATORY NO. 28:**

If the terms of policy INSURANCE POLICY #1 CHANGED, state in detail all facts RELATING to the CHANGE.

**SPECIAL INTERROGATORY NO. 29:**

If the terms of policy INSURANCE POLICY #1 CHANGED, state in detail why CHANGES were made.

**SPECIAL INTERROGATORY NO. 30:**

If the terms of policy INSURANCE POLICY #1 CHANGED, IDENTIFY all DOCUMENTS RELATING to the CHANGE.

**SPECIAL INTERROGATORY NO. 31:**

If the terms of policy INSURANCE POLICY #1 CHANGED, IDENTIFY all persons with knowledge RELATING to the CHANGE.

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

11

Plaintiff Nicolette Lewis' Special Interrogatories Set One to Defendant Liberty Mutual

1    **SPECIAL INTERROGATORY NO. 32:**

2        If the terms of policy INSURANCE POLICY #1 CHANGED, IDENTIFY all facts YOU

3    believe each person with knowledge RELATING to the CHANGE has RELATING to the

4    CHANGE.

5

6    **SPECIAL INTERROGATORY NO. 33:**

7        Do YOU contend that YOU were justified in denying ECOSMART'S insurance coverage

8    for *LEWIS V. ECOSMART*?

9    **SPECIAL INTERROGATORY NO. 34:**

10

11       If YOU contend that YOU were justified in denying ECOSMART'S insurance coverage

12   for *LEWIS V. ECOSMART*, state all facts REGARDING this contention.

13   **SPECIAL INTERROGATORY NO. 35:**

14       If YOU contend that YOU were justified in denying ECOSMART'S insurance coverage

15   for *LEWIS V. ECOSMART*, IDENTIFY all DOCUMENTS REGARDING this contention.

16
     **SPECIAL INTERROGATORY NO. 36:**
17

18       If YOU contend that YOU were justified in denying ECOSMART'S insurance coverage

19   for *LEWIS v. ECOSMART*, IDENTIFY all persons with knowledge REGARDING YOUR

20   contention.

21   **SPECIAL INTERROGATORY NO. 37:**

22
         If YOU contend that YOU were justified in denying ECOSMART'S insurance for *LEWIS
23
     *v. ECOSMART*, for each person with knowledge REGARDING YOUR contention, state in detail
24
     what YOU believe that person has knowledge of.
25

26   **SPECIAL INTERROGATORY NO. 38:**

27       Do YOU contend that YOU provided NOTICE to ECOSMART REGARDING

28   CHANGES to INSURANCE POLICY #1?

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

---

12

**SPECIAL INTERROGATORY NO. 39:**

If YOU contend that YOU provided NOTICE to ECOSMART REGARDING CHANGES to INSURANCE POLICY #1, IDENTIFY the NOTICE.

**SPECIAL INTERROGATORY NO. 40:**

If YOU contend that YOU provided NOTICE to ECOSMART REGARDING CHANGES to INSURANCE POLICY #1, state all facts REGARDING YOUR contention.

**SPECIAL INTERROGATORY NO. 41:**

If YOU contend that YOU provided NOTICE to ECOSMART REGARDING CHANGES to INSURANCE POLICY #1, IDENTIFY all DOCUMENTS REGARDING YOUR contention.

**SPECIAL INTERROGATORY NO. 42:**

If YOU contend that YOU provided NOTICE to ECOSMART REGARDING CHANGES to INSURANCE POLICY #1, IDENTIFY all persons with knowledge REGARDING YOUR contention.

**SPECIAL INTERROGATORY NO. 43:**

If YOU contend that YOU provided NOTICE to ECOSMART REGARDING CHANGES to INSURANCE POLICY #1, for each person with knowledge REGARDING YOUR contention, state in detail what YOU believe that person has knowledge of.

**SPECIAL INTERROGATORY NO. 44:**

Do YOU contend that YOU did not provide NOTICE to ECOSMART REGARDING CHANGES to INSURANCE POLICY #1?

**SPECIAL INTERROGATORY NO. 45:**

If YOU contend that YOU did not provide NOTICE to ECOSMART REGARDING CHANGES to INSURANCE POLICY #1, state all facts REGARDING YOUR contention.

///

13

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

1    **SPECIAL INTERROGATORY NO. 46:**

2        If YOU contend that YOU did not provide NOTICE to ECOSMART REGARDING

3    CHANGES to INSURANCE POLICY #1, for each person with knowledge REGARDING YOUR

4    contention, state in detail what YOU believe that person has knowledge of.

5

6    **SPECIAL INTERROGATORY NO. 47:**

7        Why was the date June 18, 2014 included in paragraph 7.24.3.3 of INSURANCE POLICY

8    #2?

9    **SPECIAL INTERROGATORY NO. 48:**

10

11        IDENTIFY all COMMUNICATIONS REGARDING June 18, 2014 being the date

12    included in paragraph 7.24.3.3 of INSURANCE POLICY #2?

13    **SPECIAL INTERROGATORY NO. 49:**

14        IDENTIFY all persons with knowledge REGARDING June 18, 2014 being the date

15    included in paragraph 7.24.3.3 of INSURANCE POLICY #2?

16

17    **SPECIAL INTERROGATORY NO. 50:**

18        IDENTIFY all DOCUMENTS REGARDING June 18, 2014 being the date included in

19    paragraph 7.24.3.3 of INSURANCE POLICY #2?

20    **SPECIAL INTERROGATORY NO. 51:**

21

22        IDENTIFY each person who signed INSURANCE POLICY #1.

23    **SPECIAL INTERROGATORY NO. 52:**

24        IDENTIFY each person who signed INSURANCE POLICY #2.

25    **SPECIAL INTERROGATORY NO. 53:**

26        IDENTIFY all INSURANCE POLICIES YOU issued to ECOSMART during the last 10

27    years.

28

14

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

**SPECIAL INTERROGATORY NO. 54:**

How many COMBINED GENERAL & PRODUCTS LIABILITY POLICIES have YOU issued to ECOSMART in the past ten years?

**SPECIAL INTERROGATORY NO. 55:**

How many insurance policies have YOU underwritten for CALIFORNIA BUSINESSES from January 1, 2008 to the date of YOUR response to this interrogatory?

**SPECIAL INTERROGATORY NO. 56:**

How many insurance policies for CALIFORNIA BUSINESSES did YOU have in effect on April 30, 2014?

**SPECIAL INTERROGATORY NO. 57:**

How many PRODUCTS LIABILITY POLICIES for CALIFORNIA BUSINESSES did YOU have in effect on April 30, 2014?

**SPECIAL INTERROGATORY NO. 58:**

How many COMBINED GENERAL & PRODUCTS LIABILITY POLICIES for CALIFORNIA BUSINESSES did YOU have in effect on April 30, 2014?

**SPECIAL INTERROGATORY NO. 59:**

Describe the RELATIONSHIP between YOU and LIBERTY INTERNATIONAL UNDERWRITERS.

**SPECIAL INTERROGATORY NO. 60:**

What does TRADING NAME mean as used in YOUR insurance policies?

**SPECIAL INTERROGATORY NO. 61:**

IDENTIFY all DOCUMENTS REGARDING what TRADING NAME means as used in YOUR insurance policies.

///

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

15

**SPECIAL INTERROGATORY NO. 62:**

Did YOU COMMUNICATE with a BROKER REGARDING INSURANCE for ECOSMART from April 30, 2013 to present?

**SPECIAL INTERROGATORY NO. 63:**

If YOU COMMUNICATED with a BROKER REGARDING INSURANCE for ECOSMART from April 30, 2013 to present, IDENTIFY the COMMUNICATION(S).

**SPECIAL INTERROGATORY NO. 64:**

What is the LEGAL RELATIONSHIP between YOU and LIBERTY INTERNATIONAL UNDERWRITERS?

**SPECIAL INTERROGATORY NO. 65:**

What is the corporate form and status of LIBERTY INTERNATIONAL UNDERWRITERS in Australia (or any state jurisdiction therein)?

**SPECIAL INTERROGATORY NO. 66:**

How did LIBERTY MUTUAL INSURANCE COMPANY's acquisition of Ironshore Inc. affect LIBERTY INTERNATIONAL UNDERWRITERS in Australia (or any state jurisdiction therein)?

**SPECIAL INTERROGATORY NO. 67:**

If you contend LIBERTY INTERNATIONAL UNDERWRITERS is a separately organized business entity, describe the ownership and voting interests held or controlled by LIBERTY MUTUAL INSURANCE COMPANY?

**SPECIAL INTERROGATORY NO. 68:**

If you contend LIBERTY INTERNATIONAL UNDERWRITERS is a separately organized business entity, describe any special rights held by LIBERTY MUTUAL INSURANCE COMPANY to direct the operations of LIBERTY INTERNATIONAL UNDERWRITERS,

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

16

1    including but not limited to the power to nominate, elect, or appoint its directors and officers.

2    **SPECIAL INTERROGATORY NO. 69:**

3        IDENTIFY any and all licenses YOU've held in California for the past 10 years.

4    **SPECIAL INTERROGATORY NO. 70:**

5

6        Were you continuously admitted as a commercial insurance company in California from

7    April 1, 2013 to August 1, 2015?

8    **SPECIAL INTERROGATORY NO. 71:**

9        IDENTIFY what type of entity(ies) YOU have been for the past 10 years.

10

11                                         PERRY, JOHNSON, ANDERSON,
                                           MILLER & MOSKOWITZ, LLP
12

13   DATED: February 1, 2018       By:
                                           LESLIE R. PERRY
14                                         HEATHER-ANN YOUNG
                                           Attorneys for Plaintiffs
15                                         NICOLETTE LEWIS, ALEXIS LEWIS,
                                           MARGRETT LEWIS and JEFFREY
16                                         LEWIS

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Nicolette Lewis' Special Interrogatories Set One to Defendant Liberty Mutual





**Liberty International Underwriters**

**Combined General & Products Liability Policy**



Liberty
International
Underwriters



## Policy Schedule

| | | |
|---|---|---|
| 1. | **POLICY NUMBER:** | ME-CAS-12-438176 |
| 2. | **INSURED:** | The Fire Company Pty Ltd and EcoSmart Inc |
| 3. | **PERIOD OF INSURANCE:** | From:  30th April 2013 at 4pm local standard time<br>To:  30th April 2014 at 4pm local standard time |
| 4. | **INSURED'S BUSINESS:** | Design, manufacture, distribution, retailer, wholesale and importer of ethanol fire places, burners and accessories. |
| 5. | **LIMIT OF INDEMNITY:** | AUD20,000,000 any one Occurrence in respect of public liability and in the aggregate during the Period of Insurance in respect of Product liability. |
| 6. | **DEDUCTIBLES:** | AUD10,000 each and every Occurrence (costs inclusive).<br><br>AUD25,000 each and every Occurrence (costs inclusive) for losses in North America |
| 7. | **POLICY WORDING:** | LIU Combined General & Products Liability Policy form LIU-AUS-CAS-CGL-2000001 and attached endorsements. |
| 8. | **PREMIUM:** | AUD86,000 (minimum and non-adjustable) plus charges. |

This Schedule attaches to and forms part of LIU Combined General & Products Liability Policy Form LIU-AUS-CAS-CGL-2000001 and is valid only if it is signed and dated below by a person duly authorised by Liberty International Underwriters.

 

3rd May 2013

For and on behalf of
Liberty International Underwriters

Date



## Combined General & Products Liability Policy

In consideration of the premium being paid by the Insured to LIU and in reliance upon the written statements and declarations contained in the proposal or insurance broker's quotation submission, LIU agrees to indemnify the Insured in accordance with the attached Schedule, Policy wording and endorsements where applicable.

## 1    Insuring Clause

Subject to the terms of this Policy, LIU will pay to or on behalf of the Insured all sums which the Insured shall become legally liable to pay by way of compensation in respect of Injury and/or Damage first happening during the Period of Insurance as a result of an Occurrence in connection with the Insured's Business.

## 2    Definitions

2.1    "Asbestos" means:

2.1.1    That group of natural fibrous silicate minerals that comprises Actinolite, Amosite, Anthophyllite, Chrysotile, Crocidolite and Tremolite; or

2.1.2    That group of man made mineral fibres that comprises mineral wool, rockwool, glass fibre, ceramic fibres and superfine fibres,

And includes Asbestos Products and Products containing Asbestos.

2.2    "Damage" means:

2.2.1    Physical damage to or destruction of tangible property including all resulting loss of use of that property. All such loss of use shall be deemed to happen at the time of the physical damage that caused it; or

2.2.2    Loss of use of tangible property that is not physically damaged or destroyed provided such loss of use is caused by physical damage to other tangible property which first happened during the Period of Insurance. All such loss of use shall be deemed to happen at the time of the physical damage or destruction that caused it.

2.3    "Employment Practices" means any wrongful or unfair dismissal, denial of natural justice, defamation, misleading representation or advertising, unfair contracts, harassment or discrimination (sexual or otherwise) in respect of employment by the Insured.

2.4    "Injury" means:

2.4.1    Bodily injury, death, sickness, disease, disability, shock, fright, mental anguish and mental injury;

2.4.2    False arrest, wrongful detention or imprisonment, malicious prosecution;

2.4.3    Wrongful entry or eviction;



2.4.4   Assault and battery not committed by or at the direction of the Insured unless committed for the purpose of preventing Injury and/or Damage or eliminating danger; or

2.4.5   Libel, slander, defamation of character or invasion of right of privacy.

2.5   "Insured" wherever used in this Policy means the Insured named in the Schedule and:

2.5.1   Any subsidiary company of the Insured incorporated within Australia including subsidiaries thereof; or

2.5.2   Any other entity incorporated within Australia controlled by the Insured and over which the Insured assumes active management.

2.6   "Insured's Business" is the business shown in the Schedule.

2.7   "LIU" means Liberty International Underwriters. Liberty International Underwriters is a trading name of Liberty Mutual Insurance Company (ABN 61 086 083 605). Incorporated in Massachusetts, USA (The liability of members is limited).

2.8   "Limit of Indemnity" means the amount stated in the Schedule pursuant to Clause 5 of this Policy.

2.9   "Occurrence" means an event, including continuous or repeated exposure to substantially the same general conditions, which results in Injury and/or Damage neither expected nor intended from the standpoint of the Insured. All events of a series consequent on or attributable to one source or original cause shall be deemed one Occurrence.

2.10   "Period of Insurance" is the period shown in the Policy.

2.11   "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapour, soot, fumes, cinders, dust, odours, noise, acids, alkalis, chemicals or waste.   Waste includes materials to be recycled, reconditioned or reclaimed.

2.12   "Product" means any commodity, article or thing (after it has ceased to be in the possession or under the control of the Insured) which is or is deemed (whether by law or otherwise) to have been manufactured, constructed, grown, extracted, produced, processed, assembled, installed, treated, altered, serviced, repaired, sold, handled, supplied or distributed by the Insured or by others trading under the name of the Insured (including any container thereof other than a motor vehicle).

2.13   "Terrorism" means an act or acts:

2.13.1   That are violent in nature or are dangerous to human life:

2.13.1.1   That are a violation of the criminal laws of the United States of America or Australia or of any State or Territory of the United States of America or Australia or that would be a criminal violation if committed within the jurisdiction of the United States of America or Australia or any State or Territory of the United States of America or Australia and that have the apparent intent of:

2.13.1.1.1   Intimidating or coercing any civilian population;

2.13.1.1.2   Influencing the policy of any government by intimidation or coercion; or



2.13.1.1.3   Affecting the conduct of any government by mass destruction, assassination or kidnapping,

Or

2.13.2   That result in:

2.13.2.1   The denial of access to or services from web sites, computer networks or telecommunication equipment; or

2.13.2.2   The malfunction or degradation of web sites, computer networks, telecommunications equipment, mechanical equipment or the interruption to the functioning of web sites or such properties,

And that have the apparent intent of intimidating or coercing any civilian population or influencing the policy of any government by intimidation or coercion.

2.14   "Worker" means any person employed by the Insured or deemed to be employed by the Insured whether pursuant to any Workers' Compensation Law or otherwise.

2.15   "Workers' Compensation Law" means any law relating to compensation for Injury to Workers or employees.

## 3   Indemnity to Others

Subject to the terms of this Policy and in accordance with Insuring Clause 1, this Policy will extend to pay to or on behalf of:

3.1   Any principal, in respect of that principal's vicarious liability for the negligent acts or omissions of the Insured pursuant to Definition 2.5 and arising out of the Insured's Business, but this Policy does not extend to the liability of any principal howsoever arising out of the negligence, breach of contract or breach of duty of such principal;

3.2   Any director, executive officer or Worker of the Insured or, where the Insured is a partnership, any partner of the Insured, but only while acting within the scope of their duties in such capacity;

3.3   The officers, committee and members of the Insured's canteen, social, sports, first aid/medical, fire fighting and employee welfare organisations in their respective capacity as such; or

3.4   The legal personal representative of any person entitled to indemnity under this Clause 3 in circumstances giving rise to indemnity under this Policy.

Provided always that all such persons or parties shall, whilst not being a party to this contract, observe, fulfil and be subject to the terms of this Policy in so far as they can apply as though they were the Insured.

## 4   Cross Liabilities

Subject at all times to the terms of this Policy, each person or party indemnified is separately indemnified in respect of claims made by any of them against any other of them provided that LIU's total liability shall not exceed the Limit of Indemnity for all claims under this Policy.



## 5   Limit of Indemnity

LIU's liability to pay compensation shall not exceed the sum stated in the Schedule in respect of any one claim or series of claims arising from one Occurrence.

The total aggregate liability of LIU for any one Period of Insurance for all claims in respect of or in any way connected with the Insured's Products shall not exceed the Limit of Indemnity stated in the Schedule.

## 6   Defence Costs

In addition to the Limit of Indemnity, LIU will pay all reasonable legal costs and/or expenses incurred with LIU's prior written consent in connection with any claim for which the Insured is indemnified by this Policy.

Provided that LIU shall not be liable for legal costs and/or expenses where indemnity is not provided by this Policy.

Provided that LIU shall not be liable for legal costs and/or expenses for or in respect of representation at any formal legal inquiry involving an accident resulting in Injury or at any coroner's inquiry or defending any proceedings in a court of summary jurisdiction.

Provided that LIU shall not pay any legal costs and/or expenses in respect of any Occurrence after LIU has paid compensation up to the Limit of Indemnity.

Provided further that the legal costs and/or expenses incurred in connection with claims made and/or actions instituted within the United States of America or Canada and their respective territories and protectorates or any other territory coming within the jurisdiction of the courts of these countries, shall form part of the Limit of Indemnity and will not be payable by LIU in addition to the Limit of Indemnity.

In the event the Insured is a party to a demand, legal proceedings, inquiry or hearing which is covered only in part by this Policy, the Insured and LIU will use their best efforts to agree upon a fair and proper allocation of legal costs and/or expenses or any other amount insured under this Policy which relate solely to what is covered under this Policy.

In the event that an agreement cannot be reached, a Senior Counsel (to be mutually agreed upon by LIU and the Insured) shall, as an expert and not an arbitrator, determine a fair and proper allocation. Until the Senior Counsel has made a determination LIU may, in its absolute discretion, pay such legal costs and/or expenses or any other amount insured under this Policy as it considers appropriate.

## 7   Exclusions

This Policy does not cover liability directly or indirectly caused by, arising out of or in any way connected with:

    7.1    The ownership, maintenance, operation, possession, use, loading or unloading by or on behalf of the Insured of any motor vehicle or trailer which is required by law to be registered or in respect of which there is required by law to be in force a policy of compulsory liability insurance or in relation to which there existed a statutory scheme providing compensation for Injury, but this exclusion does not apply to:

        7.1.1    Injury for which no indemnity is or would be available to the Insured under the said policy of compulsory liability insurance had the Insured complied with its obligations pursuant to such law;



7.1.2    Injury caused by the use of any tool or plant forming part of or attached to or used in connection with any motor vehicle or trailer for which no indemnity is or would be available to the Insured under the said policy of compulsory liability insurance had the Insured complied with its obligations pursuant to such law;

7.1.3    Damage caused by the use of any tool or plant forming part of or attached to or used in connection with any motor vehicle or trailer;

7.1.4    Damage to any bridge, weighbridge or road, or anything beneath such bridge, weighbridge or road caused by the weight of any motor vehicle or trailer or of the load carried thereon; or

7.1.5    Damage to any motor vehicle or trailer (not owned, leased or hired by, under hire purchase, on loan or rented to the Insured) temporarily in the Insured's custody or control for the purpose of parking and directly arising out of such parking.

7.2    Damage to property owned, leased, hired by, under hire purchase, on loan or rented to the Insured or otherwise in the Insured's care, custody or control other than:

7.2.1    Premises (or to contents thereof) temporarily occupied by the Insured for the purpose of carrying out works thereto or thereon, but no indemnity is granted for liability in respect of physical damage to or destruction of that part of any premises or contents on which the Insured is or has been working on if the physical damage or destruction arises from such work;

7.2.2    Premises tenanted by the Insured;

7.2.3    Directors', employees' and visitors' clothing and personal effects; or

7.2.4    Other property not owned by the Insured but temporarily in the Insured's possession provided:

7.2.4.1    No indemnity is granted for liability in respect of physical damage to or destruction of that part of any property upon which the Insured is or has been working on if the physical damage or destruction arises from such work; and

7.2.4.2    LIU's limit of liability under this Clause 7.2.4 does not exceed AUD100,000 each and every Occurrence and in the aggregate for any one Period of Insurance.

Provided further that no indemnity is granted under this Policy in respect of liability assumed by the Insured under any contract or agreement which requires the Insured to effect material damage insurance on premises, property or goods not owned by the Insured.

7.3    Damages claimed for, and/or the costs of withdrawal, recall, inspection, repair, replacement, disposal or loss of use of the Insured's Products or of any property of which such Products form a part, if such Products or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

7.4    Damage to the Insured's Products if such Damage is attributable to any defect therein or harmful nature or unsuitability thereof.

7.5    The cost of performing, completing, correcting or improving any work undertaken by the Insured.



7.6     Any Product guarantee or warranty given by or on behalf of the Insured but this exclusion shall not apply to the requirements of any Federal or State legislation with respect to Product safety and information.

7.7     Liability assumed under the terms of a contract, agreement or warranty unless and only to the extent that the Insured would have been liable in the absence of such contract, agreement or warranty.

7.8     Liability assumed where the Insured may have been able to recover from another party but for an agreement between the Insured and such party where the Insured has waived, released or abandoned any right of recourse or recovery against any party.

7.9     Any Product which is incorporated into the structure, machinery or controls of any aircraft, aerial device, watercraft or hovercraft.

7.10    Injury to any Worker.

        Provided that if the Insured:

        7.10.1  Is required by law to insure or otherwise fund, whether through self insurance, statutory fund or other statutory scheme, all or part of any common law liability (whether limited in amount or not) for such Injury; or

        7.10.2  Is not required to so insure or otherwise fund such liability by reason only that the Injury is to a person who is not a Worker or "employee" within the meaning of the relevant Workers' Compensation Law or the Injury is not an Injury which is subject to such Law,

        Then this Policy will respond to the extent that the Insured's liability would not be covered under any such fund, scheme, policy of insurance or self insurance arrangement had the Insured complied with it's obligations pursuant to such Law.

7.11    7.11.1  Any Workers' Compensation Law;

        7.11.2  The provisions of any industrial award or agreement or determination or any contract of employment or workplace agreement where such liability would not have been imposed in the absence of such industrial award or agreement or determination; or

        7.11.3  Employment Practices.

7.12    Libel, slander and/or other defamation:

        7.12.1  Made prior to the commencement of the Period of Insurance;

        7.12.2  Made at the Insured's direction or with the Insured's authority or with knowledge of its falsity; or

        7.12.3  Related to advertising, broadcasting, telecasting or publishing activities conducted by or on behalf of the Insured.

7.13    The loss of use of tangible property which has not been physically damaged or destroyed resulting from:

        7.13.1  A delay in or lack of performance by or on behalf of the Insured of any contract or agreement; or



7.13.2 The failure of any Product to meet the level of performance, quality, fitness or durability expressly or impliedly warranted or represented by the Insured but this exclusion does not apply to loss of use of other tangible property directly or indirectly caused by, arising out of or in any way connected with or resulting from the sudden and accidental physical damage to or destruction of the Product after such Product has been put to use by any person or organisation other than the Insured.

7.14 Any change in the nature of the Insured's Business which:

7.14.1 Occurred during the currency of this Policy; and

7.14.2 Was known by the Insured, or would have been known by a reasonable person in the circumstances, to be likely to increase the risk of Injury or Damage for which indemnity is provided by this Policy.

For the purposes of this exclusion, where the Insured is a corporate body, the knowledge of any director or officer of the Insured shall be deemed to be the knowledge of the Insured.

7.15 The rendering of or failure to render professional advice or service or any error or omission connected therewith given for a fee by the Insured or any person covered by Clause 3 of this Policy.

Provided that this exclusion does not apply to the rendering of first aid or medical services on the Insured's premises by medical persons employed by the Insured.

7.16 7.16.1 The actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants;

7.16.2 Testing, monitoring, clean up, removal, containment, treatment, detoxifying or neutralising of Pollutants or their effect;

7.16.3 The actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants caused by any Product that has been discarded, dumped, abandoned or thrown away by others; or

7.16.4 Any expenses for the prevention of the actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants.

Provided always that exclusions 7.16.1, 7.16.2 and 7.16.3 shall not apply to liability which is directly caused by a sudden, accidental, instantaneous, unintended, identifiable and unexpected happening which takes place in its entirety at a specific time and place.

The total aggregate liability of LIU for all claims covered in any one Period of Insurance in respect of the proviso above shall not exceed the Limit of Indemnity shown in the Schedule.

7.17 Injury sustained due to the inhalation or ingestion of, or exposure to:

7.17.1 Tobacco or tobacco smoke; or

7.17.2 Any ingredient or additive present in any articles, items or goods which contain or include tobacco.

7.18 7.18.1 Ionising radiations or contamination from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel. Combustion shall include any self sustaining process of nuclear fission or fusion; or



7.18.2   Nuclear weapons material.

7.19   And regardless of any other cause or event contributing concurrently or in any other sequence to the loss:

7.19.1   War and military action which includes without limitation the following:

7.19.1.1   War, including undeclared or civil war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), military or usurped power or confiscation, nationalisation, requisition, destruction of or damage to property by or under the order of any government or public or local authority;

7.19.1.2   Warlike action by military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

7.19.1.3   Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

7.19.2   Any actual or threatened act of domestic or international Terrorism committed by a person or persons acting:

7.19.2.1   Alone or on behalf of or in connection with any organisation; or

7.19.2.2   With the goal of furthering any political, social, religious, ideological or similar objective.

7.19.3   Action taken to prevent or defend against an act of Terrorism.

If an act of Terrorism involves chemical or biological weapons, this Terrorism exclusion will still apply.

If an act of Terrorism involves nuclear reaction, nuclear radiation or radioactive contamination, this Terrorism exclusion will apply to liabilities that result from such nuclear reaction or nuclear radiation or radioactive contamination in place of Exclusion 7.18.

7.20   The ownership, maintenance, operation, possession or use by or on behalf of the Insured of:

7.20.1   Any aircraft or aerial device;

7.20.2   Any watercraft exceeding 10 metres in length; or

7.20.3   Any hovercraft.

7.21   The Deductible and/or self insured retention shown in the Schedule.

7.22   The erection, demolition, alteration of and/or addition to buildings by or on behalf of the Insured except for contracts not exceeding in cost the sum of AUD500,000 or 10% of the Limit of Indemnity whichever is the lesser.

7.23   Asbestos.

7.24   7.24.1   Claims made and actions instituted within the United States of America or Canada and their respective territories and protectorates, and any other territory coming within the jurisdiction of the courts of the United States of America or Canada; or



7.24.2    Claims and actions to which the laws of the United States of America or Canada and their respective territories and protectorates apply.

Provided that this exclusion does not apply to claims and actions caused by an employee of the Insured who normally resides in Australia while such employee is temporarily travelling on behalf of the Insured outside Australia.

7.25    Fines, penalties, punitive damages, exemplary damages, multiplication of compensatory damages, liquidated damages and/or aggravated damages.

7.26    Any alleged or actual fraudulent, dishonest, malicious, wilful or criminal act or omission of the Insured or any person covered by Clause 3 of this Policy.

## 8    General Conditions

8.1    The Insured shall give written notice to LIU as soon as possible of any claim under this Policy and shall give all such additional information as LIU may require.

8.2    No admission, offer, promise, or payment shall be made or given by or on behalf of the Insured without the prior written consent of LIU who shall be entitled but not obligated to take over the conduct in the name of the Insured of the defence or settlement of any claim or to prosecute in the name of the Insured for their own benefit any claim for indemnity or damages or otherwise and shall have full discretion in the conduct of any proceedings and in the settlement of any claim and the Insured shall give all such information and assistance as LIU shall require.

8.3    This Policy and any endorsements attached to this Policy shall be read together as one contract and any word or expression to which a specific meaning has been attached in any part of this Policy or the Schedule shall bear such specific meaning wherever it may appear.

8.4    The amount shown within the Schedule as a Deductible and/or self insured retention is the first amount for all claims arising out of any one Occurrence which is to be borne by the Insured or any person covered by Clause 3 of this Policy.

8.5    LIU may at any time discharge its total liability to the Insured in respect of any one claim or series of claims arising from one Occurrence by paying to or on behalf of the Insured:

8.5.1    The total amount in respect of such claim to which the Insured is entitled to indemnity under this Policy;

8.5.2    The total amount sought by the claimant for such claim; or

8.5.3    The total amount for which such claim can be settled,

And in addition to such payment LIU will pay Defence Costs incurred up to the date of payment as provided for by Clause 6 of this Policy.

Upon such payment, LIU shall relinquish conduct or control of such claim and be under no further liability under this Policy in connection with such claim including but not limited to Defence Costs.

8.6    This Policy shall be interpreted in accordance with the laws of Australia and all claims for indemnity under this Policy shall be decided in accordance with those laws. All matters arising from or relating to the construction, operation or interpretation of the Policy shall be submitted to the exclusive jurisdiction of the Australian Courts.



8.7    The Insured must:

8.7.1    Exercise reasonable care that only competent Workers and/or employees are employed and take reasonable measures to maintain all premises, fittings and plant in sound condition;

8.7.2    Take all reasonable precautions to:

8.7.2.1    Prevent Injury and Damage;

8.7.2.2    Prevent the manufacture, sale or supply of defective Products; and

8.7.2.3    Comply and ensure that its Workers, servants and agents comply with all statutory obligations, by-laws or regulations imposed by any public authority for the safety of persons or property;

8.7.3    At its own expense take reasonable action to trace, recall or modify any Products containing any defect or deficiency which defect or deficiency the Insured has knowledge of or has reason to suspect; and

8.7.4    Assist and co-operate fully and promptly with LIU in the investigation, settlement or defence of any claim or matters relating or in connection thereto.

The amount of any benefit under this Policy for any liability caused or contributed to by the lack of such precautions, measures and compliances shall be reduced by the amount that fairly represents the extent to which LIU's interests have been prejudiced thereby.

8.8    Where the premium is provisionally based on the Insured's estimates, the Insured shall keep accurate records and after expiry of the Period of Insurance declare as soon as possible such details as LIU requires and the premium shall be adjusted and any difference paid by or allowed to the Insured as the case may be subject to any minimum premium that may apply.

8.9    The Insured may cancel this Policy at any time by giving notice in writing to LIU.

LIU may cancel this Policy at any time where:

8.9.1    It is entitled to do so pursuant to the *Insurance Contracts Act 1984* or any amendments thereto;

8.9.2    The Insured has failed to notify LIU of any specific act or omission where such notification is required under the terms or conditions of this Policy; or

8.9.3    The Insured has acted in contravention of or omitted to act in compliance with any term of this Policy which empowers LIU to refuse to pay a claim in the event of such contravention or omission.

Any notice of cancellation given by LIU shall take effect either at the time when another contract of insurance between the Insured and LIU or some other insurer (being a contract that is intended by the Insured to replace this Policy) is entered into or at 4pm on the 3rd business day after the date on which notice was given to the Insured by LIU, whichever is the earlier.



Where the Insured comprises more than one person or company, it is agreed that the Insured referred to in the Schedule shall be the agent of each of the other Insured persons or companies or others indemnified by Clause 3 for the purposes of receiving any notice of cancellation pursuant to this General Condition, or any other notice, statement, document or information relating to this Policy.

Where the Insured has a broker, nothing shall restrict LIU's right to notify the broker as agent of the Insured.

8.10    Notwithstanding anything else to the contrary in the Policy, whenever coverage provided by this Policy would be in violation of any applicable economic, trade or other sanction or law, such coverage shall be null and void and LIU has no obligation to pay a claim if to do so would breach that sanction or law.

8.11    8.11.1    Words importing persons shall include corporations and other legal entities;

        8.11.2    References in the singular shall be deemed to include the plural and vice versa;

        8.11.3    Words depicting any gender include reference to all other genders;

        8.11.4    References to any legislation or subordinate instruments shall refer to such . legislation or subordinate instruments as amended from time to time and in force; and

        8.11.5    Headings have been included for ease of reference and it is understood and agreed that this Policy is not to be construed or interpreted by reference to such headings.

8.12    Each Insured agrees that LIU may issue by electronic mail or post any notices required to be given under the Insurance Contracts Act or otherwise.

8.13    Liberty International Underwriters is a trading name of Liberty Mutual Insurance Company ("LMIC"), a stock insurance company incorporated in Massachusetts USA. LMIC is an indirect subsidiary of Liberty Mutual Holding Company Inc. ("LMHC"), a Massachusetts USA mutual holding company. NOTICE IS HEREBY GIVEN that the annual meeting of LMHC is held on the second Wednesday in April of each year at ten o'clock in the morning, local time, at LMHC's office at 175 Berkeley Street, Boston, Massachusetts USA. This notice is for members of LMHC only. One becomes a member of LMHC by virtue of being a policyholder of LMIC. Membership rights terminate when one ceases to be a policyholder of LMIC. Members of LMHC may request a copy of LMHC's annual financial statements, which are posted on Liberty Mutual's website at www.libertymutual.com by writing to Liberty Mutual Holding Company Inc., 175 Berkeley Street, Boston, Massachusetts 02116.

Signed on behalf of Liberty International Underwriters



3rd May 2013

For and on behalf of
Liberty International Underwriters

Date



Insured: The Fire Company Pty Ltd and EcoSmart Inc

Endorsements effective from: 30th April 2013

**Endorsement 1.**

**USA – Canada (incl. Domiciled Operations & Jurisdiction)**

The following amendments are made to this Policy in respect of the Insured's operations and the Insured's Products exported by the Insured to the United States of America or Canada:

1.    In respect to the Insured's operations domiciled in the United States of America or Canada only and Products exported to the United States of America or Canada, Exclusion 7.16 is deleted and replaced by the following:

       7.16    7.16.1    The actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants;

               7.16.2    Any expenses for the prevention of the actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants;

               7.16.3    Testing, monitoring, clean up, removal, containment, treatment, detoxifying or neutralising of Pollutants or their effect;

               7.16.4    The actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants caused by any Product that has been discarded, dumped, abandoned or thrown away by others.

2.    Exclusion 7.24 is deleted.

**Endorsement 2.**

**Vendors Liability**

1.    Clause 3 **Indemnity to Others**, is extended to include the following:

       3.5    Any person or organisation designated below in the Schedule of Vendors (herein referred to as "Vendor") but only with respect to the distribution or sale of the Insured's Products provided always that the Vendor shall observe, fulfil and be subject to the terms, conditions, limitations and exclusions of this Policy in so far as they can apply as though they were the Insured.

           This endorsement does not cover liability directly or indirectly caused by, arising out of or in any way connected with:

           1.    Any warranty given by the Vendor;

           2.    Any liability assumed by the Vendor under contract or agreement which would not have attached in the absence of such contract or agreement;

           3.    The distribution or sale for a purpose unauthorised by the Insured;

           4.    Any act, error or omission of the Vendor which changes the condition of any Product;

           5.    The failure by the Vendor to maintain any Product in merchantable condition;



6.  Any failure to make such inspections, adjustments, tests or servicing as the Vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of any Product;

7.  Any Product which after distribution or sale by the Insured has been labelled, relabelled, packaged, repackaged or replaced by the Vendor;

8.  Any Product which after distribution or sale by the Insured is used as a container, part or ingredient of any other product, thing or substance by or for the Vendor;

9.  The demonstration, assembly, installation, servicing or repair of any Product by the Vendor;

10.  Any Injury or Damage happening within the Vendor's premises;

11.  The liability of any person or organisation from whom the Insured has acquired any Product or any ingredient or part contained in or forming part of such Product or container accompanying or containing such Product; or

12.  Any Product design, formula or specification supplied by the Vendor.

2.  **Schedule Of Vendors**

**Name**
Room and Board Inc

**Address**
4600 Olson Memorial Hwy Frontage Road
Minneapolis, MN 55422 USA

Nothing contained in these endorsements shall in any way serve to increase the Limit of Indemnity stated in the Schedule.

Other than as amended above, the terms of this Policy shall continue to apply.

3rd May 2013

For and on behalf of                                      Date
Liberty International Underwriters

Ex. 2



Liberty International Underwriters

## Combined General & Products Liability Policy





Liberty
International
Underwriters

## Policy Schedule

| | | |
|---|---|---|
| 1. | **POLICY NUMBER:** | SY-CAS-13-438176 |
| 2. | **INSURED:** | The Fire Company Pty Ltd and EcoSmart Inc |
| 3. | **PERIOD OF INSURANCE:** | From: 30th April 2014 at 4pm local standard time<br>To: 30th April 2015 at 4pm local standard time |
| 4. | **INSURED'S BUSINESS:** | Design, manufacture, distribution, retailer, wholesaler and importer of ethanol fireplaces, burners and accessories. |
| 5. | **LIMIT OF INDEMNITY:** | AUD20,000,000 any one Occurrence in respect of public liability and in the aggregate during the Period of Insurance in respect of Product liability. |
| 6. | **DEDUCTIBLES:** | AUD10,000 each and every Occurrence (costs inclusive).<br><br>Other than in respect of claims for Injury to contractors, subcontractors and/or labour hire workers for which the Deductible is AUD 25,000 any one Occurrence (costs inclusive) and for losses in North America arising out of any fuel whether supplied by the Insured or by a third party vendor and/or any device intended to hold, store, decant or transport fuel which is AUD 250,000 any one Occurrence (cost inclusive). |
| 7. | **POLICY WORDING:** | LIU Combined General & Products Liability Policy form LIU-AUS-CAS-CGL-2000001 and attached endorsements. |
| 8. | **PREMIUM:** | AUD150,000 plus charges. |

This Schedule attaches to and forms part of LIU Combined General & Products Liability Policy Form LIU-AUS-CAS-CGL-2000001 and is valid only if it is signed and dated below by a person duly authorised by Liberty International Underwriters.



8th July 2014

_____                    _____
For and on behalf of                             Date
Liberty International Underwriters



## Combined General & Products Liability Policy

In consideration of the premium being paid by the Insured to LIU and in reliance upon the written statements and declarations contained in the proposal or insurance broker's quotation submission, LIU agrees to indemnify the Insured in accordance with the attached Schedule, Policy wording and endorsements where applicable.

## 1   Insuring Clause

Subject to the terms of this Policy, LIU will pay to or on behalf of the Insured all sums which the Insured shall become legally liable to pay by way of compensation in respect of Injury and/or Damage first happening during the Period of Insurance as a result of an Occurrence in connection with the Insured's Business.

## 2   Definitions

2.1   "Asbestos" means:

    2.1.1   That group of natural fibrous silicate minerals that comprises Actinolite, Amosite, Anthophyllite, Chrysotile, Crocidolite and Tremolite; or

    2.1.2   That group of man made mineral fibres that comprises mineral wool, rockwool, glass fibre, ceramic fibres and superfine fibres,

    And includes Asbestos Products and Products containing Asbestos.

2.2   "Damage" means:

    2.2.1   Physical damage to or destruction of tangible property including all resulting loss of use of that property. All such loss of use shall be deemed to happen at the time of the physical damage that caused it; or

    2.2.2   Loss of use of tangible property that is not physically damaged or destroyed provided such loss of use is caused by physical damage to other tangible property which first happened during the Period of Insurance. All such loss of use shall be deemed to happen at the time of the physical damage or destruction that caused it.

2.3   "Employment Practices" means any wrongful or unfair dismissal, denial of natural justice, defamation, misleading representation or advertising, unfair contracts, harassment or discrimination (sexual or otherwise) in respect of employment by the Insured.

2.4   "Injury" means:

    2.4.1   Bodily injury, death, sickness, disease, disability, shock, fright, mental anguish and mental injury;

    2.4.2   False arrest, wrongful detention or imprisonment, malicious prosecution;

    2.4.3   Wrongful entry or eviction;



2.4.4     Assault and battery not committed by or at the direction of the Insured unless committed for the purpose of preventing Injury and/or Damage or eliminating danger; or

2.4.5     Libel, slander, defamation of character or invasion of right of privacy

2.5     "Insured" wherever used in this Policy means the Insured named in the Schedule and:

2.5.1     Any subsidiary company of the Insured incorporated within Australia including subsidiaries thereof; or

2.5.2     Any other entity incorporated within Australia controlled by the Insured and over which the Insured assumes active management.

2.6     "Insured's Business" is the business shown in the Schedule.

2.7     "LIU" means Liberty International Underwriters. Liberty International Underwriters is a trading name of Liberty Mutual Insurance Company (ABN 61 086 083 605). Incorporated in Massachusetts, USA (The liability of members is limited).

2.8     "Limit of Indemnity" means the amount stated in the Schedule pursuant to Clause 5 of this Policy.

2.9     "Occurrence" means an event, including continuous or repeated exposure to substantially the same general conditions, which results in Injury and/or Damage neither expected nor intended from the standpoint of the Insured. All events of a series consequent on or attributable to one source or original cause shall be deemed one Occurrence.

2.10     "Period of Insurance" is the period shown in the Policy.

2.11     "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapour, soot, fumes, cinders, dust, odours, noise, acids, alkalis, chemicals or waste. Waste includes materials to be recycled, reconditioned or reclaimed.

2.12     "Product" means any commodity, article or thing (after it has ceased to be in the possession or under the control of the Insured) which is or is deemed (whether by law or otherwise) to have been manufactured, constructed, grown, extracted, produced, processed, assembled, erected, installed, treated, altered, serviced, repaired, sold, handled, supplied or distributed by the Insured or by others trading under the name of the Insured (including any container thereof other than a motor vehicle).

2.13     "Terrorism" means an act or acts:

2.13.1     That are violent in nature or are dangerous to human life:

2.13.1.1     That are a violation of the criminal laws of the United States of America or Australia or of any State or Territory of the United States of America or Australia or that would be a criminal violation if committed within the jurisdiction of the United States of America or Australia or any State or Territory of the United States of America or Australia and that have the apparent intent of:

2.13.1.1.1     Intimidating or coercing any civilian population;

2.13.1.1.2     Influencing the policy of any government by intimidation or coercion; or



2.13.1.1.3      Affecting the conduct of any government by mass destruction, assassination or kidnapping,

Or

2.13.2      That result in:

2.13.2.1      The denial of access to or services from web sites, computer networks or telecommunication equipment; or

2.13.2.2      The malfunction or degradation of web sites, computer networks, telecommunications equipment, mechanical equipment or the interruption to the functioning of web sites or such properties,

And that have the apparent intent of intimidating or coercing any civilian population or influencing the policy of any government by intimidation or coercion.

2.14      "Worker" means any person employed by the Insured or deemed to be employed by the Insured whether pursuant to any Workers' Compensation Law or otherwise.

2.15      "Workers' Compensation Law" means any law relating to compensation for Injury to Workers or employees.

## 3      Indemnity to Others

Subject to the terms of this Policy and in accordance with Insuring Clause 1, this Policy will extend to pay to or on behalf of:

3.1      Any principal, in respect of that principal's vicarious liability for the negligent acts or omissions of the Insured pursuant to Definition 2.5 and arising out of the Insured's Business, but this Policy does not extend to the liability of any principal howsoever arising out of the negligence, breach of contract or breach of duty of such principal;

3.2      Any director, executive officer or Worker of the Insured or, where the Insured is a partnership, any partner of the Insured, but only while acting within the scope of their duties in such capacity;

3.3      The officers, committee and members of the Insured's canteen, social, sports, first aid/medical, fire fighting and employee welfare organisations in their respective capacity as such; or

3.4      The legal personal representative of any person entitled to indemnity under this Clause 3 in circumstances giving rise to indemnity under this Policy.

Provided always that all such persons or parties shall, whilst not being a party to this contract, observe, fulfil and be subject to the terms of this Policy in so far as they can apply as though they were the Insured.

## 4      Cross Liabilities

Subject at all times to the terms of this Policy, each person or party indemnified is separately indemnified in respect of claims made by any of them against any other of them provided that LIU's total liability shall not exceed the Limit of Indemnity for all claims under this Policy.



## 5    Limit of Indemnity

LIU's liability to pay compensation shall not exceed the sum stated in the Schedule in respect of any one claim or series of claims arising from one Occurrence.

The total aggregate liability of LIU for any one Period of Insurance for all claims in respect of or in any way connected with the Insured's Products shall not exceed the Limit of Indemnity stated in the Schedule.

## 6    Defence Costs

In addition to the Limit of Indemnity, LIU will pay all reasonable legal costs and/or expenses incurred with LIU's prior written consent in connection with any claim for which the Insured is indemnified by this Policy.

Provided that LIU shall not be liable for legal costs and/or expenses where indemnity is not  provided by this Policy.

Provided that LIU shall not be liable for legal costs and/or expenses for or in respect of representation at any formal legal inquiry involving an accident resulting in Injury or at any coroner's inquiry or defending any proceedings in a court of summary jurisdiction.

Provided that LIU shall not pay any legal costs and/or expenses in respect of any Occurrence after LIU has paid compensation up to the Limit of Indemnity.

Provided further that the legal costs and/or expenses incurred in connection with claims made and/or actions instituted within the United States of America or Canada and their respective territories and protectorates or any other territory coming within the jurisdiction of the courts of these countries, shall form part of the Limit of Indemnity and will not be payable by LIU in addition to the Limit of Indemnity.

In the event the Insured is a party to a demand, legal proceedings, inquiry or hearing which is covered only in part by this Policy, the Insured and LIU will use their best efforts to agree upon a fair and proper allocation of legal costs and/or expenses or any other amount insured under this Policy which relate solely to what is covered under this Policy.

In the event that an agreement cannot be reached, a Senior Counsel (to be mutually agreed upon by LIU and the Insured) shall, as an expert and not an arbitrator, determine a fair and proper allocation. Until the Senior Counsel has made a determination LIU may, in its absolute discretion, pay such legal costs and/or expenses or any other amount insured under this Policy as it considers appropriate.

## 7    Exclusions

This Policy does not cover liability directly or indirectly caused by, arising out of or in any way connected with:

> 7.1    The ownership, maintenance, operation, possession, use, loading or unloading by or on behalf of the Insured of any motor vehicle or trailer which is required by law to be registered or in respect of which there is required by law to be in force a policy of compulsory liability insurance or in relation to which there existed a statutory scheme providing compensation for Injury, but this exclusion does not apply to:
>
>> 7.1.1    Injury for which no indemnity is or would be available to the Insured under the said policy of compulsory liability insurance had the Insured complied with its obligations pursuant to such law;



7.1.2   Injury caused by the use of any tool or plant forming part of or attached to or used in connection with any motor vehicle or trailer for which no indemnity is or would be available to the Insured under the said policy of compulsory liability insurance had the Insured complied with its obligations pursuant to such law;

7.1.3   Damage caused by the use of any tool or plant forming part of or attached to or used in connection with any motor vehicle or trailer;

7.1.4   Damage to any bridge, weighbridge or road, or anything beneath such bridge, weighbridge or road caused by the weight of any motor vehicle or trailer or of the load carried thereon; or

7.1.5   Damage to any motor vehicle or trailer (not owned, leased or hired by, under hire purchase, on loan or rented to the Insured) temporarily in the Insured's custody or control for the purpose of parking and directly arising out of such parking.

7.2   Damage to property owned, leased, hired by, under hire purchase, on loan or rented to the Insured or otherwise in the Insured's care, custody or control other than:

7.2.1   Premises (or to contents thereof) temporarily occupied by the Insured for the purpose of carrying out works thereto or thereon, but no indemnity is granted for liability in respect of physical damage to or destruction of that part of any premises or contents on which the Insured is or has been working on if the physical damage or destruction arises from such work;

7.2.2   Premises tenanted by the Insured;

7.2.3   Directors', employees' and visitors' clothing and personal effects; or

7.2.4   Other property not owned by the Insured but temporarily in the Insured's possession provided:

7.2.4.1   No indemnity is granted for liability in respect of physical damage to or destruction of that part of any property upon which the Insured is or has been working on if the physical damage or destruction arises from such work; and

7.2.4.2   LIU's limit of liability under this Clause 7.2.4 does not exceed AUD100,000 each and every Occurrence and in the aggregate for any one Period of Insurance.

Provided further that no indemnity is granted under this Policy in respect of liability assumed by the Insured under any contract or agreement which requires the Insured to effect material damage insurance on premises, property or goods not owned by the Insured.

7.3   Damages claimed for, and/or the costs of withdrawal, recall, inspection, repair, replacement, disposal or loss of use of the Insured's Products or of any property of which such Products form a part, if such Products or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

7.4   Damage to the Insured's Products if such Damage is attributable to any defect therein or harmful nature or unsuitability thereof.

7.5   The cost of performing, completing, correcting or improving any work undertaken by the Insured.



7.6     Any Product guarantee or warranty given by or on behalf of the Insured but this exclusion shall not apply to the requirements of any Federal or State legislation with respect to Product safety and information.

7.7     Liability assumed under the terms of a contract, agreement or warranty unless and only to the extent that the Insured would have been liable in the absence of such contract, agreement or warranty.

7.8     Liability assumed where the Insured may have been able to recover from another party but for an agreement between the Insured and such party where the Insured has waived, released or abandoned any right of recourse or recovery against any party.

7.9     Any Product which is incorporated into the structure, machinery or controls of any aircraft, aerial device, watercraft or hovercraft.

7.10    Injury to any Worker.

        Provided that if the Insured:

        7.10.1   Is required by law to insure or otherwise fund, whether through self insurance, statutory fund or other statutory scheme, all or part of any common law liability (whether limited in amount or not) for such Injury; or

        7.10.2   Is not required to so insure or otherwise fund such liability by reason only that the Injury is to a person who is not a Worker or "employee" within the meaning of the relevant Workers' Compensation Law or the Injury is not an Injury which is subject to such Law,

        Then this Policy will respond to the extent that the Insured's liability would not be covered under any such fund, scheme, policy of insurance or self insurance arrangement had the Insured complied with it's obligations pursuant to such Law.

7.11    7.11.1   Any Workers' Compensation Law;

        7.11.2   The provisions of any industrial award or agreement or determination or any contract of employment or workplace agreement where such liability would not have been imposed in the absence of such industrial award or agreement or determination; or

        7.11.3   Employment Practices.

7.12    Libel, slander and/or other defamation:

        7.12.1   Made prior to the commencement of the Period of Insurance;

        7.12.2   Made at the Insured's direction or with the Insured's authority or with knowledge of its falsity; or

        7.12.3   Related to advertising, broadcasting, telecasting or publishing activities conducted by or on behalf of the Insured.

7.13    The loss of use of tangible property which has not been physically damaged or destroyed resulting from:

        7.13.1   A delay in or lack of performance by or on behalf of the Insured of any contract or agreement; or



7.13.2    The failure of any Product to meet the level of performance, quality, fitness or durability expressly or impliedly warranted or represented by the Insured but this exclusion does not apply to loss of use of other tangible property directly or indirectly caused by, arising out of or in any way connected with or resulting from the sudden and accidental physical damage to or destruction of the Product after such Product has been put to use by any person or organisation other than the Insured.

7.14    Any change in the nature of the Insured's Business which:

     7.14.1    Occurred during the currency of this Policy; and

     7.14.2    Was known by the Insured, or would have been known by a reasonable person in the circumstances, to be likely to increase the risk of Injury or Damage for which indemnity is provided by this Policy.

For the purposes of this exclusion, where the Insured is a corporate body, the knowledge of any director or officer of the Insured shall be deemed to be the knowledge of the Insured.

7.15    The rendering of or failure to render professional advice or service or any error or omission connected therewith given for a fee by the Insured or any person covered by Clause 3 of this Policy.

Provided that this exclusion does not apply to the rendering of first aid or medical services on the Insured's premises by medical persons employed by the Insured.

7.16    7.16.1    The actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants;

     7.16.2    Testing, monitoring, clean up, removal, containment, treatment, detoxifying or neutralising of Pollutants or their effect;

     7.16.3    The actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants caused by any Product that has been discarded, dumped, abandoned or thrown away by others; or

     7.16.4    Any expenses for the prevention of the actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants.

Provided always that exclusions 7.16.1, 7.16.2 and 7.16.3 shall not apply to liability which is directly caused by a sudden, accidental, instantaneous, unintended, identifiable and unexpected happening which takes place in its entirety at a specific time and place.

The total aggregate liability of LIU for all claims covered in any one Period of Insurance in respect of the proviso above shall not exceed the Limit of Indemnity shown in the Schedule.

7.17    Injury sustained due to the inhalation or ingestion of, or exposure to:

     7.17.1    Tobacco or tobacco smoke; or

     7.17.2    Any ingredient or additive present in any articles, items or goods which contain or include tobacco.

7.18    7.18.1    Ionising radiations or contamination from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel. Combustion shall include any self sustaining process of nuclear fission or fusion; or



7.18.2   Nuclear weapons material.

7.19   And regardless of any other cause or event contributing concurrently or in any other sequence to the loss:

7.19.1   War and military action which includes without limitation the following:

7.19.1.1   War, including undeclared or civil war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), military or usurped power or confiscation, nationalisation, requisition, destruction of or damage to property by or under the order of any government or public or local authority;

7.19.1.2   Warlike action by military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

7.19.1.3   Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

7.19.2   Any actual or threatened act of domestic or international Terrorism committed by a person or persons acting:

7.19.2.1   Alone or on behalf of or in connection with any organisation; or

7.19.2.2   With the goal of furthering any political, social, religious, ideological or similar objective.

7.19.3   Action taken to prevent or defend against an act of Terrorism.

If an act of Terrorism involves chemical or biological weapons, this Terrorism exclusion will still apply.

If an act of Terrorism involves nuclear reaction, nuclear radiation or radioactive contamination, this Terrorism exclusion will apply to liabilities that result from such nuclear reaction or nuclear radiation or radioactive contamination in place of Exclusion 7.18.

7.20   The ownership, maintenance, operation, possession or use by or on behalf of the Insured of:

7.20.1   Any aircraft or aerial device;

7.20.2   Any watercraft exceeding 10 metres in length; or

7.20.3   Any hovercraft.

7.21   The Deductible and/or self insured retention shown in the Schedule.

7.22   The erection, demolition, alteration of and/or addition to buildings by or on behalf of the Insured except for contracts not exceeding in cost the sum of AUD500,000 or 10% of the Limit of Indemnity whichever is the lesser.

7.23   Asbestos.

7.24   7.24.1   Claims made and actions instituted within the United States of America or Canada and their respective territories and protectorates, and any other territory coming within the jurisdiction of the courts of the United States of America or Canada; or



7.24.2   Claims and actions to which the laws of the United States of America or Canada and their respective territories and protectorates apply.

Provided that this exclusion does not apply to claims and actions caused by an employee of the Insured who normally resides in Australia while such employee is temporarily travelling on behalf of the Insured outside Australia.

7.25   Fines, penalties, punitive damages, exemplary damages, multiplication of compensatory damages, liquidated damages and/or aggravated damages.

7.26   Any alleged or actual fraudulent, dishonest, malicious, wilful or criminal act or omission of the Insured or any person covered by Clause 3 of this Policy.

## 8   General Conditions

8.1   The Insured shall give written notice to LIU as soon as possible of any claim under this Policy and shall give all such additional information as LIU may require.

8.2   No admission, offer, promise, or payment shall be made or given by or on behalf of the Insured without the prior written consent of LIU who shall be entitled but not obligated to take over the conduct in the name of the Insured of the defence or settlement of any claim or to prosecute in the name of the Insured for their own benefit any claim for indemnity or damages or otherwise and shall have full discretion in the conduct of any proceedings and in the settlement of any claim and the Insured shall give all such information and assistance as LIU shall require.

8.3   This Policy and any endorsements attached to this Policy shall be read together as one contract and any word or expression to which a specific meaning has been attached in any part of this Policy or the Schedule shall bear such specific meaning wherever it may appear.

8.4   The amount shown within the Schedule as a Deductible and/or self insured retention is the first amount for all claims arising out of any one Occurrence which is to be borne by the Insured or any person covered by Clause 3 of this Policy.

8.5   LIU may at any time discharge its total liability to the Insured in respect of any one claim or series of claims arising from one Occurrence by paying to or on behalf of the Insured:

8.5.1   The total amount in respect of such claim to which the Insured is entitled to indemnity under this Policy;

8.5.2   The total amount sought by the claimant for such claim; or

8.5.3   The total amount for which such claim can be settled,

And in addition to such payment LIU will pay Defence Costs incurred up to the date of payment as provided for by Clause 6 of this Policy.

Upon such payment, LIU shall relinquish conduct or control of such claim and be under no further liability under this Policy in connection with such claim including but not limited to Defence Costs.

8.6   This Policy shall be interpreted in accordance with the laws of Australia and all claims for indemnity under this Policy shall be decided in accordance with those laws. All matters arising from or relating to the construction, operation or interpretation of the Policy shall be submitted to the exclusive jurisdiction of the Australian Courts.



8.7    The Insured must:

    8.7.1    Exercise reasonable care that only competent Workers and/or employees are employed and take reasonable measures to maintain all premises, fittings and plant in sound condition;

    8.7.2    Take all reasonable precautions to:

        8.7.2.1    Prevent Injury and Damage;

        8.7.2.2    Prevent the manufacture, sale or supply of defective Products; and

        8.7.2.3    Comply and ensure that its Workers, servants and agents comply with all statutory obligations, by-laws or regulations imposed by any public authority for the safety of persons or property;

    8.7.3    At its own expense take reasonable action to trace, recall or modify any Products containing any defect or deficiency which defect or deficiency the Insured has knowledge of or has reason to suspect; and

    8.7.4    Assist and co-operate fully and promptly with LIU in the investigation, settlement or defence of any claim or matters relating or in connection thereto.

The amount of any benefit under this Policy for any liability caused or contributed to by the lack of such precautions, measures and compliances shall be reduced by the amount that fairly represents the extent to which LIU's interests have been prejudiced thereby.

8.8    Where the premium is provisionally based on the Insured's estimates, the Insured shall keep accurate records and after expiry of the Period of Insurance declare as soon as possible such details as LIU requires and the premium shall be adjusted and any difference paid by or allowed to the Insured as the case may be subject to any minimum premium that may apply.

8.9    The Insured may cancel this Policy at any time by giving notice in writing to LIU.

LIU may cancel this Policy at any time where:

    8.9.1    It is entitled to do so pursuant to the *Insurance Contracts Act 1984* or any amendments thereto;

    8.9.2    The Insured has failed to notify LIU of any specific act or omission where such notification is required under the terms or conditions of this Policy; or

    8.9.3    The Insured has acted in contravention of or omitted to act in compliance with any term of this Policy which empowers LIU to refuse to pay a claim in the event of such contravention or omission.

Any notice of cancellation given by LIU shall take effect either at the time when another contract of insurance between the Insured and LIU or some other insurer (being a contract that is intended by the Insured to replace this Policy) is entered into or at 4pm on the 3rd business day after the date on which notice was given to the Insured by LIU, whichever is the earlier.



Where the Insured comprises more than one person or company, it is agreed that the Insured referred to in the Schedule shall be the agent of each of the other Insured persons or companies or others indemnified by Clause 3 for the purposes of receiving any notice of cancellation pursuant to this General Condition, or any other notice, statement, document or information relating to this Policy.

Where the Insured has a broker, nothing shall restrict LIU's right to notify the broker as agent of the Insured.

8.10    Notwithstanding anything else to the contrary in the Policy, whenever coverage provided by this Policy would be in violation of any applicable economic, trade or other sanction or law, such coverage shall be null and void and LIU has no obligation to pay a claim if to do so would breach that sanction or law.

8.11    8.11.1    Words importing persons shall include corporations and other legal entities;

8.11.2    References in the singular shall be deemed to include the plural and vice versa;

8.11.3    Words depicting any gender include reference to all other genders;

8.11.4    References to any legislation or subordinate instruments shall refer to such legislation or subordinate instruments as amended from time to time and in force; and

8.11.5    Headings have been included for ease of reference and it is understood and agreed that this Policy is not to be construed or interpreted by reference to such headings.

8.12    Each Insured agrees that LIU may issue by electronic mail or post any notices required to be given under the Insurance Contracts Act or otherwise.

8.13    Liberty International Underwriters is a trading name of Liberty Mutual Insurance Company ("LMIC"), a stock insurance company incorporated in Massachusetts USA. LMIC is an indirect subsidiary of Liberty Mutual Holding Company Inc. ("LMHC"), a Massachusetts USA mutual holding company. NOTICE IS HEREBY GIVEN that the annual meeting of LMHC is held on the second Wednesday in April of each year at ten o'clock in the morning, local time, at LMHC's office at 175 Berkeley Street, Boston, Massachusetts USA. This notice is for members of LMHC only. One becomes a member of LMHC by virtue of being a policyholder of LMIC. Membership rights terminate when one ceases to be a policyholder of LMIC. Members of LMHC may request a copy of LMHC's annual financial statements, which are posted on Liberty Mutual's website at www.libertymutual.com by writing to Liberty Mutual Holding Company Inc., 175 Berkeley Street, Boston, Massachusetts 02116.

Signed on behalf of Liberty International Underwriters



For and on behalf of
Liberty International Underwriters

8th July 2014

Date



Endorsements attaching to and forming part of Policy Number SY-CAS-13-438176

Insured: The Fire Company Pty Ltd

Endorsements effective from: 30th April 2014

Endorsement 1.

Contractual Liability Extension for Designated Contracts (Waiver of Subrogation and Indemnity)

Exclusions 7.7 and 7.8 are deleted and replaced by the following:

7.7     Liability assumed under the terms of a contract, agreement or warranty unless and only to the extent that the Insured would have been liable in the absence of such contract, agreement or warranty;

7.8     Liability assumed where the Insured may have been able to recover from another party but for an agreement between the Insured and such party where the Insured has waived, released or abandoned any right of recourse or recovery against any party.

Provided that these exclusions shall not apply to the following Designated Contracts:

**DESIGNATED CONTRACTS**

Trademark License Agreement with Brown Jordan International Inc.

Endorsement 2.

Vendors Liability

1.     Clause 3 Indemnity to Others, is extended to include the following:

3.5     Any person or organisation designated below in the Schedule of Vendors (herein referred to as "Vendor") but only with respect to the distribution or sale of the Insured's Products provided always that the Vendor shall observe, fulfill and be subject to the terms, conditions, limitations and exclusions of this Policy in so far as they can apply as though they were the Insured.

This endorsement does not cover liability directly or indirectly caused by, arising out of or in any way connected with:

1.     Any warranty given by the Vendor;

2.     Any liability assumed by the Vendor under contract or agreement which would not have attached in the absence of such contract or agreement;

3.     The distribution or sale for a purpose unauthorised by the Insured;

4.     Any act, error or omission of the Vendor which changes the condition of any Product;

5.     The failure by the Vendor to maintain any Product in merchantable condition;

6.     Any failure to make such inspections, adjustments, tests or servicing as the Vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of any Product;



7.  Any Product which after distribution or sale by the Insured has been labelled, relabelled, packaged, repackaged or replaced by the Vendor;

8.  Any Product which after distribution or sale by the Insured is used as a container, part or ingredient of any other product, thing or substance by or for the Vendor;

9.  The demonstration, assembly, installation, servicing or repair of any Product by the Vendor;

10. Any Injury or Damage happening within the Vendor's premises;

11. The liability of any person or organisation from whom the Insured has acquired any Product or any ingredient or part contained in or forming part of such Product or container accompanying or containing such Product; or

12. Any Product design, formula or specification supplied by the Vendor.

2.  **Schedule Of Vendors**

| Name | Address |
|------|---------|
| Room and Board Inc | 4600 Olson Memorial Highway, Frontage Road Minneapolis, MN 55422 USA |

**Endorsement 3.**

**USA/Canada Domiciled Operations & Jurisdiction**

Definitions

For the avoidance of doubt, the definitions contained in clause 2 of the Policy apply for the purposes of this endorsement and no regard shall be had to specific definitions included for the purpose of other endorsements.

The Policy is amended as set out below but only in respect of:

a.  the Insured's operations domiciled in the United States of America and/or Canada; and

b.  any Product manufactured, distributed or exported within the United States of America and/or Canada.

1.  Exclusion 7.16 is deleted and replaced by the following:

7.16   7.16.1   The actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants;

       7.16.2   Testing, monitoring, clean up, removal, containment, treatment, detoxifying or neutralising of Pollutants or their effect;

       7.16.3   The actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants caused by any Product that has been discarded, dumped, abandoned or thrown away by others; or



7.16.4   Any expenses for the prevention of the actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants.

2.   Exclusion 7.24 is deleted and replaced with the following.

7.24   Claims made and actions instituted within the United States of America or Canada and their respective territories and protectorates, and any other territory coming within the jurisdiction of the courts of the United States of America or Canada arising out of or anyway connected with:

7.24.1   any fuel; and/or

7.24.2   any Product intended to hold, store, decant, or transport fuel of any kind.

7.24.3   However, this exclusion shall not apply to any fuel or Product intended to hold, store, decant, or transport fuel of any kind that:

7.24.3.1   was manufactured by or at the direction of the Insured in strict compliance with the engineering specifications expressly approved by LIU; and

7.24.3.2   was fitted with a flame arrester in circumstances where both the flame arrester and the manner of installation were each expressly approved by LIU; and

7.24.3.3   is the subject of definitive evidence showing that the fuel or Product intended to hold, store, decant, or transport fuel was purchased by a third party (not including a retailer or wholesaler) on or after 18th June 2014.

LIU's Limit of Indemnity under clause 7.24.3 shall not, in any event, exceed AUD 2,500,000 each and every Occurrence and in the aggregate for any one Period of Insurance.

Furthermore, the Insured is entitled under clause 7.24.3 to a maximum of two (2) Product liability limit reinstatements. Accordingly, LIU will provide two (2) reinstatement/s of AUD 2,500,000 any one Occurrence and in the aggregate, in respect of Product liability if the Limit of Indemnity applying to clause 7.24.3 is exhausted due to the payment of amounts insured under this Policy, but:

a.   LIU will only provide such reinstatement/s if cover available under any policy or policies in excess of this Policy has been exhausted; and



b.   provided always that LIU will pay no more than a single Limit of Indemnity in respect of each Occurrence insured under this Policy.

Endorsement 4.

Existing Products Endorsement (Claims Made)

Retroactive Date:                                30th April 2014
Endorsement Period:                          From: 30th April 2014
                                                       To: 30th June 2014
                                                       At 4pm local standard time

1.    Notice to the Insured

This endorsement provides cover on a Claims made and notified basis.

1.1    A Claim must be made against the Insured during the Endorsement Period; and

1.2    The Insured must notify LIU in writing of such Claim during the Endorsement Period.

2.    Insuring Clause

Subject to the terms and conditions of the Policy and this endorsement, LIU will pay to or on behalf of the Insured all sums which the Insured shall become legally liable to pay by way of compensation as a result of a Claim both first made against the Insured and notified to LIU during the Endorsement Period for Injury and/or Damage, first happening after the Retroactive Date as a result of an Occurrence in connection with the Insured's Product exported to or distributed within North America.

3.    Definitions

3.1    "Claim" means:

3.1.1    Any writ, statement of claim, summons, application or other originating legal or arbitral process, cross claim, counterclaim or third or similar party notice issued against or served upon the Insured; or

3.1.2    The receipt by the Insured of any written or verbal notice of demand for compensation made by a third party against the Insured.

3.2    For the purposes of this extension only, Definition 2.12 "Product" is deleted and replaced by the following:

"Product" means any fuel source or device intended to house, store, decant, or transport fuel which has not been fitted a flame arrester.



3.3    "Retroactive Date" means the date specified in this Endorsement.

3.4    "Endorsement Period" means the period specified in this endorsement.

4.    Limit of Indemnity

LIU's liability to pay compensation under this endorsement shall not exceed AUD 2,500,000 any one Claim and in the aggregate during the Endorsement Period.

Further, all payments made under this endorsement will also contribute towards the exhaustion of the aggregate Limit of Indemnity in respect of Products liability shown on the Policy Schedule.

All claims of a series consequent on or attributable to one source or original cause shall be deemed one Claim.

A deductible of AUD 250,000 each and every Claim (costs inclusive) shall be borne by the Insured at their own risk and LIU's liability shall only be in excess of this amount.

5.    Defence Costs

LIU agrees to pay all legal costs and expenses incurred with LIU's prior written consent in connection with any Claim for which indemnity is available under this endorsement, provided that such legal costs and expenses are included within the Limit of Indemnity applicable to this endorsement.

Provided that LIU shall not be liable for legal costs and/or expenses where indemnity is not provided by this endorsement.

In the event the Insured is a party to a demand, legal proceedings, inquiry or hearing which is covered only in part by this endorsement, the Insured and LIU will use their best efforts to agree upon a fair and proper allocation of legal costs and/or expenses or any other amount insured under this endorsement which relate solely to what is covered under this endorsement.

In the event that an agreement cannot be reached, a Senior Counsel (to be mutually agreed upon by LIU and the Insured) shall, as an expert and not an arbitrator, determine a fair and proper allocation. Until the Senior Counsel has made a determination LIU may, in its absolute discretion, pay such legal costs and/or expenses or any other amount insured under this endorsement as it considers appropriate.

6.    Exclusions



For the purposes of this endorsement only:

6.1    Exclusion 7.16 is deleted and replaced by the following:

7.16

7.16.1  The actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants;

7.16.2 Testing, monitoring, clean up, removal, containment, treatment, detoxifying or neutralising of Pollutants or their effect;

7.16.3 The actual, alleged or threatened discharge, dispersal, release; seepage, migration or escape of Pollutants caused by any Product that has been discarded, dumped, abandoned or thrown away by others; or

7.16.4 Any expenses for the prevention of the actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants.

6.2    Exclusion 7.24 is deleted

6.3    The following additional exclusions apply:

6.3.1  Any Claim arising out of an Injury / Damage first happening prior to the Retroactive Date.

6.3.2  Any Claim made prior to or existing at the inception of this endorsement.

6.3.3  Any Claim in respect of any fact or circumstance known to the Insured prior to or existing at the inception of this endorsement and which the Insured knew or ought reasonably to have known might give rise to a Claim.

6.3.4  Any Claim or circumstances likely to give rise to a Claim stated in the underwriting submission or proposal form, being the basis of the contract.

7.    Conditions

7.1    In the event of a Claim, the Insured must give immediate notice in writing to LIU of such Claim and such information as LIU may require to reasonably investigate the Claim and to enable LIU to determine its liability under this Policy.

Nothing contained in these endorsements shall in any way serve to increase the Limit of Indemnity stated in the Schedule.



Other than as amended above, the terms of this Policy shall continue to apply

For and on behalf of
Liberty International Underwriters

8th July 2014

Date

Ex. 3

1   William D. Anderson, Bar No. 53071
    David F. Beach, Bar No. 127135
2   PERRY, JOHNSON, ANDERSON,
    MILLER & MOSKOWITZ, LLP
3   438 1st Street, 4th Floor
    Santa Rosa, California 95401
4   Telephone: (707) 525-8800
    Facsimile: (707) 545-8242
5
    Attorneys for Plaintiffs
6   MARGRETT LEWIS, individually and as
    Guardian Ad Litem for NICOLETTE
7   LEWIS and ALEXIS LEWIS; and JEFFREY
    LEWIS
8                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                             COUNTY OF SONOMA

10

11  MARGRETT LEWIS, individually and as          Case No.  SCV-256907
    Guardian Ad Litem for NICOLETTE
12  LEWIS and ALEXIS LEWIS; and                  PLAINTIFFS' SECOND AMENDED
    JEFFREY LEWIS,                               COMPLAINT
13                                               1) PRODUCT LIABILITY DESIGN
            Plaintiffs,                          DEFECT
14                                               2) PRODUCT LIABILITY
        v.                                       MANUFACTURING DEFECT
15                                               3) NEGLIGENCE
    ECOSMART, INC.; THE FIRE                     4) NEGLIGENT INFLICTION OF
16  COMPANY, PTY, LTD; OUTDOOR                   EMOTIONAL DISTRESS
    ARCHITECTURAL ACCENTS, a                     5) PIERCING THE CORPORATE VEIL:
17  California Corporation dba OUTDORA;          ALTER EGO
    ESMART GROUP, PTY LIMITED,                   6) PRODUCT DEFECT
18  previously sued as DOE 21; ONE CLICK
    SHOPS, a California Corporation dba          Judge:      CHOUTEAU
19  OUTDORA, previously sued as DOE 1;           Dept:       18
    JENSEN METAL PRODUCTS, INC.,
20  previously sued as DOE 26; REAL
    FLAME COMPANY, Inc., previously
21  sued as DOE 27; CHEMISPHERE
    CORPORATION, previously sued as DOE
22  11; C.L. SMITH COMPANY, previously
    sued as DOE 12; and DOES 1 to 50,
23  inclusive,

24          Defendants.
                                              /
25

26      Plaintiffs MARGRETT LEWIS, individually, and as Guardian Ad Litem for

27  NICOLETTE LEWIS and ALEXIS LEWIS; and JEFFREY LEWIS complain of Defendants,

28  and each of them, as follows:

                                           1
    Plaintiffs' Second Amended Complaint

## THE PARTIES

1.      Plaintiffs are and at all times relevant herein have been residents of Sonoma, California.

2.      Defendants Outdoor Architectural Accents, a California Corporation, doing business as Outdora ("Outdora"), and Does 1 through 10 are the retail sellers of E-NRG (a bioethanol fuel) and are located at 128 West Napa Street, Sonoma, California.

3.      Defendant Ecosmart, Inc. ("Ecosmart") is a California corporation wholly owned, operated, managed and controlled by Esmart Group, Pty, Ltd ("Esmart"), also known as The Fire Company Pty, Ltd ("The Fire Company"), and Does 11 through 20, are doing business throughout California bottling, packaging, selling and distributing a bioethanol fuel for both indoor and outdoor use under the name E-NRG ("ethanol product".)

4.      Defendants The Fire Company, and Does 21 through 25, are Australian business entities that are in the business of designing, manufacturing, selling and distributing indoor and outdoor heating products and flammable fluids made out of denatured alcohol, including a bioethanol fuel known as E-NRG, to California residents, and otherwise doing business in California. E-NRG is intended to be used in indoor and outdoor applications, including stoves, heaters and architectural accents that require the use of E-NRG.

5.      Upon filing this Complaint Plaintiffs were ignorant of the true names of Defendants and therefore designated Defendants as Does.  Plaintiffs have identified the true name of a defendant to be: Defendant One Click Shops, a California Corporation, doing business as Outdora, as Doe 1.  One Click Shops is a retail seller of E-NRG located at 128 West Napa Street, Sonoma, California.

6.      Upon filing this Complaint Plaintiffs were ignorant of the true names of Defendants and therefore designated Defendants as Does.  Plaintiffs have identified the true names of defendants to be: Jensen Metal Products, Inc., as Doe 26 and Real Flame Company, Inc., as Doe 27, the designers, manufacturers and distributors of the product known as a Real Flame, Model #530 Hampton Firebowl (the "fire pit product") which was defective in design

///

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

2

Plaintiffs' Second Amended Complaint

1   and manufacture and contributed to the catastrophic burn injuries suffered by plaintiff

2   Nicolette Lewis.

3          7.        Defendant Jensen Metal Products, Inc. and Defendant Real Flame Company,

4   Inc. are Wisconsin corporations.  Defendants Jenson Metal Products, Inc. and Real Flame

5   Company, Inc.'s principal place of business is 7800 Northwestern Avenue, Racine, WI 53406.

6   Defendants Jensen Metal Products, Inc., and Real Flame Company, Inc., designed,

7   manufactured, sold and distributed a fire pit product intended for outdoor use with bioethanol

8   fuel under the trade name of Real Flame called a Model #530 Hampton Firebowl which was

9   involved in the catastrophic burn injuries suffered by plaintiff Nicolette Lewis.  Defendants

10  Jensen Metal Products, Inc. and Real Flame Company, Inc. are actively doing business

11  throughout California by advertising on the internet and using the internet to sell products to

12  California residents.

13         8.        Upon the filing of this Complaint, Plaintiffs were ignorant of the true name of a

14  Defendant, and therefore designated defendant in the Complaint by the fictitious name of Doe.

15  Plaintiffs have identified the true name of a defendant to be: Defendant Esmart Group, Pty,

16  Ltd, previously sued as Doe 21, an Australian business doing business in the United States.

17  Esmart is the owner of all of the United States patents, including the patent for the defective

18  product at issue, E-NRG, bioethanol fuel. As of 2007, The Fire Company is the operating

19  company for Esmart (SEE EXHIBIT A, para. 12). As of 2007, Esmart is the only parent

20  company of The Fire Company (SEE EXHIBIT B). Esmart is also the new name for The Fire

21  Company, which changed its name with the Australian Securities & Investment Commission

22  in 2002. However, Esmart kept the same address previously used for The Fire Company.

23         9.        Upon the filing of this Complaint, Plaintiffs were ignorant of the true name of a

24  Defendant, and therefore designated defendant in the Complaint by the fictitious name of Doe.

25  Plaintiffs have identified the true name of defendants to be:  Defendant Chemisphere

26  Corporation, previously sued as Doe 11, a Missouri corporation doing business in California,

27  and Defendant C.L. Smith Company, previously sued as Doe 12, a Missouri corporation doing

28  business in California.  Plaintiffs are informed and believe that Defendants Chemisphere,

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

3

1    Corporation. and C.L. Smith Company were key participants in the bottling, packaging,

2    labeling and shipping of E-NRG to consumers located in California and are legally liable for

3    product defects in the design and manufacture of E-NRG as key participants in the chain of

4    distribution of E-NRG in bottles that were not equipped with flame arrestors.

5         10.    Plaintiffs do not currently know the names of Does 2 through 10, 13, 20, 22

6    through 25 and 28, and therefore sue said Defendants by said fictitious names.  Plaintiffs

7    allege that each of these Defendants is in some way liable and at fault for the events and

8    happenings referred to herein, and each is responsible for the damages incurred by Plaintiffs.

9    Plaintiffs will amend this Complaint to allege each Defendant's true name and capacity when

10   ascertained.

11        11.    Plaintiffs are informed and believe and thereupon allege that Defendants and

12   Doe Defendants at all times mentioned herein, were the agents, servants, employees, joint

13   venturers, co-conspirators, franchises and alter egos of the remaining Defendants, and each of

14   them, and at all times relevant were acting within the course and scope of such agency,

15   employment, partnership, joint venture or franchise.

16                              **GENERAL ALLEGATIONS**

17        12.    In or about April 8, 2014, Plaintiff Margrett Lewis purchased bottles of E-NRG

18   from Defendant Outdora for use in the fire pit product, at the family home in Sonoma,

19   California.  Prior to June 8, 2014, the Lewis family had used the outdoor fire pit product for

20   many years without incident.

21        13.    On June 8, 2014, Plaintiffs Nicolette Lewis and Alexis Lewis and two friends

22   were using the outdoor fire pit product to cook s'mores when they thought the fire pit reservoir

23   was out of fuel and needed to be refilled.  Plaintiff Alexis Lewis was pouring a gallon bottle of

24   E-NRG, denatured alcohol, which Defendants, and each of them, sold and distributed to

25   Plaintiff Margrett Lewis as set forth above, into the reservoir of the fire pit product when a fire

26   ball of denatured alcohol exploded out of the bottle covering Plaintiff Nicolette Lewis with

27   flaming alcohol, causing third degree burns to over 26% of her body, including severe burns to

28   her face, neck, chest, torso, upper arms, elbows and hands, legs, feet and toes (hereinafter

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

4

Plaintiffs' Second Amended Complaint

1   referred to as the "Incident".) As a consequence of the severe burns to her body, Plaintiff

2   Nicolette Lewis has had to undergo skin harvesting from undamaged skin to graft skin over the

3   damaged skin in her neck, chest and toe areas, and faces multiple skin grafting procedures in

4   the future to reconstruct areas severely damaged by fire.

5       14.    Plaintiff Alexis Lewis watched in horror as her twin sister was consumed in

6   flames. She shouted for her mother. Plaintiff Margrett Lewis came running out of the house

7   and tried to put out the flames which were engulfing her daughter. In the process, Plaintiff

8   Margrett Lewis suffered burns to her hands and arms. Plaintiff Jeffrey Lewis followed

9   Plaintiff Margrett Lewis out of the house with a bath towel and was eventually able to smother

10  the flames consuming his daughter. In the process of smothering the flames Plaintiff Jeffrey

11  Lewis suffered burns to his leg and the top of his foot.

12      15.    The bottle of E-NRG that Plaintiff Alexis Lewis used to fill the fire pit

13  product's reservoir was manufactured, bottled, sold and distributed without a flame arrestor.

14  The flame arrestor is an inexpensive mesh designed to fit in the neck of the bottle to prevent

15  vapor, once ignited, from traveling back up into the bottle and causing an explosive discharge

16  like the fireball that torched Plaintiff Nicolette Lewis. Defendants, and each of them, were

17  aware of the need for flame arrestors in their bottles of denatured alcohol for several years

18  prior to the subject accident. For economic reasons Defendants, and each of them, did not

19  manufacture, distribute or sell their bottles with flame arrestors nor did they attempt to recall

20  bottles without flame arrestors which had been sold or distributed into the chain of commerce

21  prior to the date of sale of E-NRG to plaintiff Margrett Lewis.

22      16.    After the date of manufacture and/or bottling of the subject bottle of E-NRG,

23  Defendants, and each of them, recognizing the extreme hazards to consumers who used their

24  product in a reasonably foreseeable manner, redesigned the bottle and caps to allow for a flame

25  arrestor to be placed in the neck of the bottle during manufacture, and placed a warning on the

26  label of the bottle warning consumers of the hazard of removing the flame arrestor.

27      17.    Defendants, and each of them, were made aware that other consumers of E-

28  NRG had been consumed by fire in the same way that Plaintiff Nicolette Lewis was injured,

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

5

1   having defended several lawsuits where fire from alcohol vapors ignited bottles of their

2   product causing severe burns. Defendants were also aware of the dangerous and highly

3   flammable nature of their product and knew that other manufacturers in their industry had the

4   same problems with bottles of denatured alcohol sold without flame arrestors prior to the

5   incident giving rise to this action. Plaintiff Nicolette Lewis suffered severe emotional and

6   physical injuries and her twin sister, Plaintiff Alexis Lewis, has suffered severe emotional

7   trauma which could have been avoided had defendants, and each of them, acted reasonably to

8   modify their product to include flame arrestors in the years preceding the injury to Plaintiff

9   Nicolette Lewis.

10   ## FIRST CAUSE OF ACTION

11   **(Product Liability Design Defect- Against Ecosmart, The Fire Company, Esmart,**

12   **Outdora, Chemisphere and C.L. Smith)**

13   18.   Plaintiffs incorporate by reference each of the allegations set forth in

14   paragraphs 1 through 17 above.

15   19.   On or about June 8, 2014, Plaintiff Nicolette Lewis and Plaintiff Alexis Lewis

16   were using the fire pit product in a reasonably foreseeable manner when a bottle of E-NRG

17   bioethanol fuel erupted in flames, spewing burning ethanol on Plaintiff Nicolette Lewis

18   causing severe third degree burns over 26% of her body and causing permanent disfiguring

19   injuries to her face, neck, chest, torso, upper arms, elbows and hands, legs, feet and toes.

20   20.   At the time of the Incident, Plaintiff Nicolette Lewis and Plaintiff Alexis Lewis

21   were using the bottle of E-NRG as intended, to fill the reservoir of the fire pit product, and in a

22   manner Defendants could and should reasonably have expected.

23   21.   The bottles of E-NRG purchased by Plaintiff Margrett Lewis did not have

24   flame arrestors and there was no modification, change or abuse of the bottle prior to the

25   Incident.

26   22.   The Incident and the burn injuries to Plaintiff Nicolette Lewis, Plaintiff

27   Margrett Lewis and Plaintiff Jeffrey Lewis were due to defects in the bottle as a result of a

28   ///

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

6

Plaintiffs' Second Amended Complaint

1   design that did not include a flame arrestor.  A flame arrestor would have prevented the

2   Incident from occurring.

3        23.    As a further legal cause of the defect in the bottle design which led to the

4   Incident, Plaintiff Nicolette Lewis suffered permanent and disfiguring injuries which include

5   third degree burns to her face, neck, chest, torso, upper arms, elbows and hands, legs, feet and

6   toes.

7        24.    As a further proximate and legal cause of the defect in the bottle of E-NRG

8   involved in the Incident, Plaintiff Nicolette Lewis and her parents were required to incur

9   expenses for medical care and treatment for her physical and emotional injuries, and will incur

10   in the future medical care to reconstruct the burn sites and the donor sites which have

11   hypertrophic scarring with keloid components in some areas.  Plaintiffs pray leave to amend

12   this Complaint when the full extent of Plaintiff Nicolette Lewis' medical treatment and billing

13   are finally determined.

14        25.    Plaintiff Nicolette Lewis and her parents have suffered special damages

15   (economic) in excess of the jurisdictional minimum of this Court and have incurred general

16   damages (non-economic) in excess of the jurisdictional minimum of this Court.

17        26.    Defendants, and each of them, acted with fraud, oppression and malice and with

18   conscious disregard for the rights and safety of Plaintiffs by marketing and selling bottles of E-

19   NRG biofuel without flame arrestors when they knew that consumers throughout the United

20   States were suffering burns due to the ignition of vapors from their bottles manufactured

21   without flame arrestors.  Defendants were aware of multiple incidents where bottles of E-NRG

22   exploded in the same way as in the Incident and were aware that some of their competitors

23   were having the same problem yet continued to manufacture, sell and distribute bottles without

24   flame arrestors.

25        Wherefore, Plaintiff Nicolette Lewis, Plaintiff Margrett Lewis and Plaintiff Jeffrey

26   Lewis pray for judgment against Defendants, and each of them, as hereinafter set forth.

27   ///

28   ///

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

7

## SECOND CAUSE OF ACTION

**(Product Liability Manufacturing Defect- Against Ecosmart, The Fire Company,**

**Esmart, Outdora, Chemisphere, and C.L. Smith)**

27.     Plaintiffs incorporate by reference each of the allegations set forth in paragraphs 1 through 26 above.

28.     At the time of the Incident, the bottle of E-NRG Plaintiffs were using was defective in manufacture in that it was manufactured and sold without a flame arrestor.  The lack of a flame arrestor is not something that an ordinary consumer using the product in a reasonably foreseeable manner would notice and would not appreciate the risk of harm of using the bottle.  The lack of a flame arrestor is not something that would likely be detected by consumers.

29.     At all times relevant hereto, Plaintiffs were using the bottle of E-NRG in filling the reservoir of the fire pit product in a reasonably foreseeable manner and as reasonably expected by Defendants, and each of them.

30.     Due to the manufacturing defect of the subject bottle of E-NRG, the bottle expelled a fireball of burning alcohol on Plaintiff Nicolette Lewis causing severe and permanent physical and emotional injuries as set forth above, making Defendants, and each of them, strictly liable for Plaintiff Nicolette Lewis, Plaintiff Margrett Lewis and Plaintiff Jeffry Lewis' injuries.

31.     Due to the manufacturing defect in the subject bottle of E-NRG, Plaintiffs have incurred and will continue to incur medical expense to treat their physical and emotional injuries.  The exact amount of Plaintiffs' medical expenses is unknown and Plaintiffs will seek to amend this Complaint when the full extent of medical costs has been ascertained.

Wherefore, Plaintiff Nicolette, Plaintiff Margrett Lewis and Plaintiff Jeffrey Lewis pray for judgment against Defendants, and each of them, as hereinafter set forth.

///

///

///

8

Plaintiffs' Second Amended Complaint

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

## THIRD CAUSE OF ACTION

### (Negligence- Against Ecosmart, The Fire Company, Esmart, Outdora, Chemisphere, and C.L. Smith)

32.     Plaintiffs incorporate by reference each of the allegations set forth in paragraphs 1 through 31 above.

33.     At all times relevant hereto, Defendants, and each of them, knew or should have known with the exercise of reasonable care that manufacturing, distributing or selling denatured alcohol in a plastic bottle without a flame arrestor was likely to cause injury to consumers using their products.

34.     At all times relevant to this action, Defendants, and each of them, were negligent in the design, manufacture, testing, distribution and sale of E-NRG, denatured alcohol, in bottles equipped without flame arrestors, which made these bottles unreasonably dangerous when used by consumers in a reasonably foreseeable manner.

35.     At no time did Defendants, and each of them, advise or make it known to consumers of their product that their product was not equipped with flame arrestors and that vapor from their bottles could cause the bottles to explode into flames.

36.     Due to the negligence of Defendants, and each of them, Plaintiff Nicolette Lewis suffered devastating burn injuries to over 26% of her body resulting in permanent disfigurement.  Plaintiff Margrett Lewis suffered burns to her arms try to put out the flames consuming her daughter.  Plaintiff Jeffrey Lewis suffered burns to his leg and the top of his foot extinguishing the flames on his daughter.

37.     Due to the negligence of Defendants, and each of them, Plaintiff Nicolette Lewis and her parents incurred medical expenses to treat her severe burns and will incur future medical expenses to reconstruct the areas burned and the areas where skin grafts were taken, the exact amount is unknown at this time and Plaintiffs will pray for leave to amend the Complaint when the full medical specials are determined.

Wherefore, Plaintiff Nicolette Lewis, Plaintiff Margrett Lewis and Plaintiff Jeffrey Lewis pray for judgment against Defendants, and each of them, as hereinafter set forth.

9

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

## FOURTH CAUSE OF ACTION

### (Negligent Infliction of Emotional Distress- Against Ecosmart, Esmart, The Fire Company, Outdora, Chemisphere, and C.L. Smith)

38.     Plaintiffs incorporate by reference each of the allegations set forth in paragraphs 1 through 37 above.

39.     At all times relevant hereto Defendants, and each of them, were negligent in the design, manufacture, distribution and sale of plastic containers filled with denatured alcohol and sold under the name of E-NRG, which proximately and legally caused severe burn injuries to Plaintiff Nicolette Lewis in the Incident described above.

40.     Plaintiff Alexis Lewis, the twin sister of Plaintiff Nicolette Lewis, saw her sister covered in flaming alcohol as it exploded from the bottle of E-NRG, heard her scream and cry and saw her flesh being consumed.  Plaintiff Margrett Lewis and Plaintiff Jeffrey Lewis came to the rescue of Plaintiff Nicolette Lewis and saw her flesh burning, smelled her flesh burning, heard her screams of agony and helped to put out the flames.  They saw their beautiful daughter being consumed and disfigured by flames.

41.     Plaintiffs suffered extreme emotional distress due to the negligence of Defendants, and each of them, and have suffered nightmares, anxiety and depression resulting in problems sleeping and engaging in their normal activities of daily living.

42.     Plaintiffs' emotional distress has been so severe that they have required medical and psychiatric treatment to deal with the emotional trauma of witnessing the Incident.  The past and future medical and psychiatric treatment is unknown at this time and Plaintiffs will seek leave to amend the Complaint when the costs have finally been determined.

Wherefore Plaintiff Alexis Lewis, Plaintiff Margrett Lewis and Plaintiff Jeffrey Lewis pray for judgment against Defendants, and each of them, as hereinafter set forth.

///

///

///

///

Plaintiffs' Second Amended Complaint

## FIFTH CAUSE OF ACTION

### (Piercing the Corporate Veil: Alter Ego - Against Esmart, The Fire Company, and Ecosmart)

43.    Plaintiffs incorporate by reference each of the allegations set forth in the paragraphs 1 through 42 above.

44.    The Fire Company (also known as Esmart Group, Pty, Ltd) acted as the alter ego of Ecosmart, Inc. Both The Fire Company and Ecosmart, Inc. owed a duty to Plaintiffs to protect them from their faulty product, E-NRG bioethanol fuel.

45.    There exists, and at all times herein mentioned there existed, a unity of interest and ownership between The Fire Company and Ecosmart, such that any individuality and separateness between them have ceased, and The Fire Company is the alter ego of Ecosmart.

46.    Ecosmart is wholly owned, operated, managed and controlled by Esmart, aka The Fire Company. Ecosmart and The Fire Company are participating in a common venture with respect to manufacture and distribution of bioethanol fuel. They tend to benefit jointly from transactions entered into by one of them.

47.    Ecosmart, Inc., is the main brand of The Fire Company. Both The Fire Company and Ecosmart's websites are cross linked and they share the same Head Office.

48.    Ecosmart's Australian patents are registered to The Fire Company. Ecosmart's United States patents are registered at the same mailing address as is used by The Fire Company.

49.    Ecosmart and The Fire Company share common directors and officers. Ecosmart's Statement of Information provided to the California Secretary of State lists Stephane Thomas as a chief executive of both businesses: he is the Secretary, Director and Chief Financial Officer of Ecosmart (EXHIBIT C) and the Chief Executive Operator for The Fire Company (EXHIBIT D).

50.    Ecosmart, Inc. and the Fire Company have pooled their assets. Ecosmart has recently claimed that it has no insurance and no assets. Ecosmart has failed to adequately capitalize itself.

11

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

51.     Ecosmart, Inc. is a mere instrumentality of The Fire Company, set up for the improper purpose of avoiding liability for its defective products by manipulating assets and liabilities so as to concentrate the assets in one and the liabilities in another. Thus, absent application of the alter ego doctrine, Plaintiffs will be left with no way to satisfy a valid judgment, producing an inequitable result.

52.     Ecosmart and The Fire Company have a unity of ownership and interest, and acted in bad faith when they manufactured and distributed a defective product. Adherence to the fiction that Ecosmart and The Fire Company are different entities would unjustly benefit Defendants, bring about unequitable results, promote injustice, and/or sanction a fraud.

53.     Plaintiffs are informed, believe and thereupon allege that Defendants acted fraudulently, maliciously, and oppressively with a conscious disregard of the probable detrimental and economic consequences to Plaintiffs and to the direct benefit of Defendants, knowing that Defendants' conduct was substantially certain to vex, annoy, and injure Plaintiffs, by (1) releasing into the marketplace products which they knew to be defectively designed and manufactured and foreseeably likely to cause serious injuries; (2) failing to recall their defective products even after they began releasing newer, safer products; (3) manipulating their corporate entities so as to shield themselves financially from valid judgments. Plaintiffs are therefore entitled to punitive damages under California Civil Code section 3294, in an amount sufficient to punish or to make an example of Defendants.

Wherefore, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

## SIXTH CAUSE OF ACTION

**(Product Defect: Jensen Metal Products, Inc., Real Flame Company, Inc.)**

54.     Plaintiffs incorporate by reference each of the allegations set forth in the paragraphs 1 through 17 above.

55.     Plaintiff Margrett Lewis was the original purchaser of the fire pit product, sold under the name Real Flame, over the internet for use as an outdoor fire pit. The fire pit product was intended to burn bioethanol fuel. Bioethanol fuel does not give off smoke or odor

12

Plaintiffs' Second Amended Complaint

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

1    and can be used both indoors and outdoors. Bioethanol flames are not always visible,
2    especially as the fuel in the reservoir is depleted.

3       56.    The subject fire pit product has decorative rock which both surrounds the fuel
4    reservoir and is spread on top of a sliding plate which is intended to be used to open and close
5    the fuel reservoir for the fire pit. The fire pit product is defective in design because the rocks,
6    in combination with the height of the reservoir, make it difficult to move and close the sliding
7    plate which shuts off air and extinguishes any fire in the reservoir. The hand held piece called
8    a "scraper tool" is inadequate to move the "damper" to ensure the fire is completely out before
9    new fuel is added to the reservoir.

10      57.    Due to the design defects in the fire pit product, and the damping mechanism,
11    there was a small residual flame in the reservoir which was not readily observable to Plaintiffs,
12    who thought the fire was out and that it was safe to refuel, which was the ignition source for
13    the vapor fire and explosion which caused catastrophic burn injuries to Plaintiff Nicolette
14    Lewis.

15      58.    The subject fire product was also defective in design in that there were no
16    warnings on the pit or in the packaging material that residual ethanol flames might be present,
17    but not visible, and that the reservoir should be completely closed before refueling to ensure all
18    flames are out before refueling and failed to warn that vapor fires could occur if ethanol fuel
19    was poured from a bottle which was not equipped with a flame arrestor.

20      59.    The Incident and burn injuries to Plaintiffs were due to the defect in design of
21    the fire pit product as set forth above and due to the failure to warn that refueling of the fire pit
22    with bottles which were not equipped with flame arrestors could lead to an explosive vapor
23    fire, and the risk of severe burn injuries if the reservoir was not completely closed each time
24    before adding fuel to ensure all flames were extinguished.

25      60.    As a further legal cause of the fire pit product design and failure to warn which
26    led to the Incident, Plaintiff Nicolette Lewis suffered permanent and disfiguring injuries which
27    include third degree burns to her face, neck, chest, torso, upper arms, elbows, hands, legs, face
28    and toes.

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

13

Plaintiffs' Second Amended Complaint

61.     As a further proximate and legal cause of the defect in the fire pit product as set forth above, Plaintiffs were required to incur expenses for the medical care and treatment of the mental and physical injuries suffered by Nicolette Lewis, Alexis Lewis and Margrett Lewis. Future care of Nicolette Lewis will include reconstruction of burn and donor sites throughout Nicolette's body which have hypertrophic scarring with keloid components. Nicolette Lewis, Alexis Lewis and Margrett Lewis will need continued psychological care for severe emotional distress. Plaintiffs pray leave to amend this Complaint when the full extent of Plaintiffs Nicolette Lewis, Alexis Lewis and Margrett Lewis' medical and psychiatric medical treatment and billing are finally determined.

62.     Plaintiffs, and each of them, have suffered special (economic) and general (non-economic) damages in excess of the jurisdictional minimum of this Court.

Wherefore, Plaintiff Nicolette Lewis, Plaintiff Alexis Lewis, Plaintiff Margrett Lewis and Plaintiff Jeffrey Lewis pray for judgment against Defendants, and each of them, as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### (Negligence: Jensen Metal Products, Inc., Real Flame Company, Inc.)

63.     Plaintiffs incorporate by reference each of the allegations set forth in paragraphs 1 through 17 and 54 through 62 above.

64.     Defendants, and each of them, were at all times mentioned herein in the business of selling fire pits for home use which require the use of pourable ethanol based products to create a smokeless flame which allows their products to be used both indoors and outdoors. Defendants were aware that ethanol is highly flammable and when poured, vapor from the ethanol is released and that the vapor can be ignited and, if ignited, can travel back into the container from which it has been poured igniting the contents of the container causing a sudden and unexpected explosive discharge of flaming ethanol, creating a deadly risk of injury to anyone close to the discharge. The hazard occurs when consumers attempt to pour ethanol into the reservoir of the fire pit because of a combination of the characteristics of ethanol, it is odorless, colorless and smokeless barely visible when the reservoir of ethanol is

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

14

1    nearly depleted, and the design of the reservoir.  The configuration of the fire pit product's

2    reservoir, with the sliding plate which sits on top of the reservoir, conceals the flame making it

3    difficult to see there is flame in the reservoir, thus, creating a risk of explosive discharge of

4    ethanol should a consumer attempt to pour ethanol into the reservoir.

5         65.    Defendants, and each of them, knew or should have known that the

6    configuration of their product, coupled with the explosive nature of ethanol when poured from

7    a container without a flame arrestor, created an unreasonably dangerous condition likely to

8    cause serious injury to consumers of their fire pit product.  Defendants, and each of them, were

9    negligent in the design, manufacturing, marketing, sale and distribution of their product and as

10   a consequence of their negligence Plaintiff Nicolette Lewis suffered devastating burn injuries

11   to over 26% of her body resulting in permanent disfigurement.  Plaintiff Margrett Lewis and

12   Plaintiff Jeffrey Lewis suffered burns trying to extinguish flames consuming their daughter.

13        66.    Due to the negligence of Defendants, and each of them, Plaintiff Nicolette

14   Lewis and her parents incurred medical expenses to treat her severe burns and will incur future

15   medical expenses to reconstruct the areas burned and the areas where skin grafts were taken,

16   the exact amount is unknown at this time and Plaintiffs will pray for leave to amend the

17   Complaint when the full medical specials are determined.

18        Wherefore, Plaintiff Nicolette Lewis and Plaintiff Margrett Lewis and Plaintiff Jeffrey

19   Lewis pray for judgment against Defendants, and each of them, as hereinafter set forth.

20                        **EIGHTH CAUSE OF ACTION**

21        **(Negligent Infliction of Emotional Distress against Jensen Metal Products, Inc.,**

22                        **Real Flame Company, Inc.)**

23        67.    Plaintiffs incorporate by reference each of the allegations set forth in

24   paragraphs 1 through 17 and 54 through 66 above.

25        68.    At all times relevant hereto, Defendants, and each of them, were negligent in

26   the design, manufacture, marketing, sale and distribution of their product which proximately

27   and legally caused severe burn injuries to Plaintiff Nicolette Lewis during the Incident

28   described above.

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

                                    15

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ, LLP

1    69.    Plaintiff Alexis Lewis, the twin sister of Plaintiff Nicolette Lewis, saw her

2    sister covered in flaming alcohol as it exploded from the bottle of E-NRG, heard her scream

3    and cry and saw flesh being consumed by flame. Plaintiff Margrett Lewis and Plaintiff Jeffrey

4    Lewis came to the rescue of Nicolette Lewis and saw her flesh burning, smelled her flesh

5    burning, and heard screams of agony as they attempted to put out the flames. They saw their

6    beautiful daughter being consumed and disguised by burning ethanol.

7    70.    Plaintiffs suffered extreme emotional distress due to the negligence of

8    Defendants, and each of them, and have suffered nightmares, flashbacks, anxiety and

9    depression resulting in problems sleeping and engaging in the normal activities of daily living.

10    71.    Plaintiffs' emotional distress has been so severe that they have medical and

11    psychiatric care and counseling to deal with the emotional trauma of witnessing the Incident.

12    The past and future medical, psychiatric and psychological counseling is unknown at this time

13    and Plaintiffs will seek leave to amend the Complaint when the costs have been fully

14    determined.

15    Wherefore, Plaintiff Alexis Lewis, Plaintiff Margrett Lewis and Plaintiff Jeffrey Lewis

16    pray for judgment against Defendants, and each of them, as hereinafter set forth.

17    <div align="center">**PRAYER**</div>

18    Wherefore, Plaintiffs pray for judgment as follows:

19    1.    An award of general damages for each Plaintiff according to proof;

20    2.    An award of special damages for each Plaintiff according to proof;

21    3.    An award of post-judgment interest at the legal rate;

22    4.    An award of costs of suit;

23    5.    An award of punitive damages in an amount to punish and deter as to

24    Defendants Ecosmart, INC., The Fire Company, PTY, LTD, and Esmart Group,

25    PTY Limited;

26    ///

27    ///

28    ///

16

1        6.    All such other and further relief as the Court determines is just and proper.

2                                          PERRY, JOHNSON, ANDERSON,
                                           MILLER & MOSKOWITZ, LLP

3

4    DATED: January 12, 2016          By: _____

5                                          WILLIAM D. ANDERSON
                                         Attorneys for Plaintiffs

6                                        MARGRETT LEWIS, individually and as
                                         Guardian Ad Litem for NICOLETTE

7                                        LEWIS and ALEXIS LEWIS; and
                                         JEFFREY LEWIS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' Second Amended Complaint

EXHIBIT A

**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
SUITE 700
2375 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016
(602) 445-8000

John Alan Doran, SBN 012112, DoranJ@gtlaw.com
Kimberly A. Warshawsky, SBN 022083, WarshawskyK@gtlaw.com
Laura Sixkiller, SBN 022014, SixkillerL@gtlaw.com
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| ESMART GROUP PTY LIMITED and THE FIRE COMPANY PTY LIMITED, | No. |
| Plaintiffs, | **COMPLAINT** |
| v. | (Patent Infringement) |
| MIKE GROUT, | (Jury Trial Demanded) |
| Defendant. | |

Plaintiffs Esmart Group Pty Limited and The Fire Company Pty Limited, by and through their attorneys, for their Complaint against Defendant Mike Grout, on information and belief, allege as follows:

**THE PARTIES**

1.     Plaintiff Esmart Group Pty Limited ("ESMART") is a company existing under the laws of the country of Australia, with its principal place of business at 9/5 Vuko Place, Warriewood NSW 2102, Australia.

2.     Plaintiff The Fire Company Pty Limited ("FIRE COMPANY") is a company existing under the laws of the country of Australia, with its principal place of business at 9/5 Vuko Place, Warriewood NSW 2102, Australia.

3.     Upon information and belief, Defendant Mike Grout is a citizen of Arizona and resides at 4632 North 40th Street, Phoenix, Arizona 85018.

HX3281712281

<div style="text-align:left; margin-left:auto;">
LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000
</div>

## JURISDICTION AND VENUE

4.      This action arises under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*

5.      This Court has subject matter jurisdiction over this action pursuant to the laws of the United States governing actions related to patents, 28 U.S.C. §§ 1331 and 1338(a).

6.      Defendant conducts business in this district.   This Court therefore has general personal jurisdiction over Defendant.

7.      Defendant has committed acts of patent infringement in this district.

8.      Upon information and belief, Defendant continues to commit acts of patent infringement in this district.

9.      This Court also has specific personal jurisdiction over Defendant.

10.     Venue in this judicial district is proper under 28 U.S.C. §§ 1391 (b), (c) and (d) and 1400(b) because Defendant resides in this judicial district, has committed acts of patent infringement in this district, and has conducted business in this district.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

11.     Plaintiffs are engaged in, among other things, the development, manufacture, and sale of alternative fuel fireplaces that do not require flues. Homeowners, housing developers, and restaurants are common purchasers of these products.

12.     On October 30, 2007, U.S. Patent No. 7,287,979 ("the '979 Patent") was duly and legally issued by the United States Patent and Trademark Office.   The '979 Patent was assigned to Plaintiff ESMART, who is the owner of all right, title, and interest in and to the '979 Patent, including the right to sue for infringement and recover damages

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA  85016
(602) 445-8000

1   resulting therefrom.   Plaintiff FIRE COMPANY is the operating company for Plaintiff

2   ESMART.

3         13.   A copy of the '979 Patent is attached hereto as Exhibit A and is made a part

4   of this Complaint.

5         14.   Plaintiffs are and have been selling, within this judicial district, products in

6   accordance with the '979 Patent.

7         15.   Upon information and belief, Defendant is and has been selling products

8   embodying the invention claimed in the '979 Patent within the United States of America,

9   including within this judicial district.

10        16.   At all relevant times, Defendant has been and continues to be the sole

11   member and owner of the Arizona limited liability company, Innovations M2, LLC

12   ("INNOVATIONS"), having a principal place of business at 4632 North 40th Street,

13   Phoenix, Arizona, 85018.

14        17.   As the sole member of INNOVATIONS, Defendant has operated

15   INNOVATIONS out of his personal residence and exercised total control over all of

16   INNOVATIONS' activities.

17                            COUNT I
               Infringement of United States Patent No. 7,287,979
18                      (35 U.S.C. §§ 1, et seq.)

19        18.   Plaintiffs re-allege and incorporate by reference each of the allegations of

20   Paragraphs 1 through 17 as if fully set forth herein.

21        19.   At all relevant times, INNOVATIONS functioned as Defendant's alter ego

22   as Defendant completely dominated and exercised total control over INNOVATIONS'

23   policies and business practices.

24        20.   Among the policies and business practices implemented by Defendant were

25   INNOVATIONS' infringement of the '979 Patent.

26

-3-

1     21.    The extent of Defendant's control over INNOVATIONS renders

2    INNOVATIONS' separate corporate existence from Defendant a mere fiction.

3     22.    Observance of this corporate fiction would effectively sanction Defendant's

4    and INNOVATIONS' willful conduct and unjustly allow Defendant and INNOVATIONS

5    to retain the benefits of their infringing action to the detriment of Plaintiffs.

6     23.    Because Defendant is the alter ego of INNOVATIONS, he may be held

7    directly, jointly and severally liable for INNOVATIONS' infringement of the '979 Patent.

8     24.    Accordingly, INNOVATIONS' liability shield should be pierced and

9    Defendant held directly, jointly and severally liable for INNOVATIONS' infringement of

10    the '979 Patent.

11     25.    Upon information and belief, all of Defendant's acts were and are

12    intentional and willful.

13     26.    Defendant's acts have damaged Plaintiffs and, unless enjoined, will

14    continue to damage and cause irreparable injury to Plaintiffs.

15     27.    Plaintiffs have no adequate remedy at law.

16                **RELIEF REQUESTED**

17    WHEREFORE, Plaintiffs respectfully request judgment against Defendant as

18    follows:

19    A.    A Judgment that Defendant is directly and personally liable for

20    INNOVATIONS' infringing of one or more of the claims of the '979 Patent in violation

21    of 35 U.S.C. § 271(a);

22    B.    A temporary, preliminary and permanent injunction enjoining Defendant,

23    his agents, employees, licensees, and all those in privity with him, including

24    INNOVATIONS, from infringing the '979 Patent;

25    C.    An award of damages against Defendant sufficient to compensate Plaintiffs

26    for the injury caused by INNOVATIONS' infringement of the '979 Patent;

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

-4-

1      D.     An award trebling the damages pursuant to 35 U.S.C. § 284 based upon

2   INNOVATIONS' willful infringement of the '979 Patent;

3      E.     An assessment of costs, including reasonable attorneys fees pursuant to 35

4   U.S.C. § 285, and prejudgment interest against Defendant; and

5      F.     Such other and further relief as this Court may deem just and proper.

6   RESPECTFULLY SUBMITTED this 7th day of April, 2008.

7                        GREENBERG TRAURIG, LLP

8                  By:   /s/ Kimberly A. Warshawsky
                          John Alan Doran

9                          Kimberly A. Warshawsky
                          Laura Sixkiller

10                        Attorneys for Plaintiffs

11   Of counsel:
    Angelo J. Bufalino, Esq.

12   Michael J. Turgeon, Esq.
    Robert S. Rigg, Esq.

13   Vedder Price P.C.
    222 N. LaSalle St., Suite 2600

14   Chicago, Illinois 60601-1003
    (312) 609-7500 – Tel

15   (312) 609-5005 – Fax

16

17

18

19

20

21

22

23

24

25

26

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

PHX 328171228 1

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ESMART GROUP PTY LIMITED, and
THE FIRE COMPANY PTY LIMITED,

        Plaintiffs,

v.

INNOVATIONS M2, LLC, and
BRAD BLAYLOCK,

        Defendant.

Court File No.: 07-CV-06137

Judge Suzanne B. Conlon

Magistrate Judge Nolan

## NOTIFICATION OF AFFILIATES
## DISCLOSURE STATEMENT PURSUANT TO LOCAL RULE 3.2

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure and Local Rule 3.2, Plaintiffs, Esmart Group Pty Limited ("Esmart") and The Fire Company Pty Limited ("Fire Co."), state that: (1) Esmart is an Australian private company, it has no parent company or corporation and no publicly-held company owns 10% or more of Esmart's ownership interests; and (2) Fire Co. is an Australian private company, Esmart is its only parent company and no publicly-held company owns 10% or more of Fire Co.'s ownership interests.

Respectfully submitted,

ESMART GROUP PTY LIMITED
THE FIRE COMPANY PTY LIMITED

By: s/ Michael J. Turgeon
             One of Their Attorneys

Angelo J. Bufalino, Esq.
Robert S. Rigg, Esq.
Michael J. Turgeon, Esq.
VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
222 North LaSalle Street, Suite 2600
Chicago, IL 60601-1003
Telephone: 312/609-7500
Facsimile: 312/609-5005

Dated: December 7, 2007

- 2 -

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2007, I electronically filed the foregoing NOTIFICATION OF

AFFILIATES DISCLOSURE STATEMENT PURSUANT TO LOCAL RULE 3.2 with the Clerk of the Court

using the CM/ECF system, and will send notification of such filing to the following via Federal Express:

> Gary Rogers, Solicitor
> Blueprint Law
> Suite 602
> Level 6
> Westfield Towers
> 100 William Street
> Sydney, New South Wales 2011
> AUSTRALIA

> _s/ Michael J. Turgeon_

EXHIBIT C

M-658078



# State of California
## Secretary of State

**S**

**51**

### Statement of Information
(Domestic Stock and Agricultural Cooperative Corporations)

FEES (Filing and Disclosure): $25.00. If amendment, see instructions.
**IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

**FILED**
In the office of the Secretary of State
of the State of California

**FEB 2 4 2011**

*A*

This Space for Filing Use Only

1. CORPORATE NAME

EcoSmart, Inc.
C3017592

**Due Date:**

Complete Addresses for the Following (Do not abbreviate the name of the city. Items 2 and 3 cannot be P.O. Boxes.)

| | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 2. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | | | | |
| 3641 HOLDREGE AVE., SUITE B | | LOS ANGELES | CA. | 90016 |
| 3. STREET ADDRESS OF PRINCIPAL BUSINESS IN CALIFORNIA, IF ANY | | | | |
| 3641 HOLDREGE AVE., SUITE B | | LOS ANGELES | CA | 90016 |
| 4. MAILING ADDRESS OF THE CORPORATION, IF DIFFERENT THAN ITEM 2 | | | | |

Names and Complete Addresses of the Following Officers (The corporation must list these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 5. CHIEF EXECUTIVE OFFICER/ | | | | |
| ALEXANDER EBURNE | 3641 HOLDREGE AVE., SUITE B | LOS ANGELES | CA | 90016 |
| 6. SECRETARY | | | | |
| STEPHANE THOMAS | 3641 HOLDREGE AVE., SUITE B | LOS ANGELES | CA | 90016 |
| 7. CHIEF FINANCIAL OFFICER/ | | | | |
| STEPHANE THOMAS | 3641 HOLDREGE AVE., SUITE B | LOS ANGELES | CA | 90016 |

Names and Complete Addresses of All Directors, Including Directors Who are Also Officers (The corporation must have at least one director. Attach additional pages, if necessary.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 8. NAME | | | | |
| STEPHANE THOMAS | 3641 HOLDREGE AVE., SUITE B | LOS ANGELES | CA | 90016 |
| 9. NAME | | | | |
| 10. NAME | | | | |

11. NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY:

Agent for Service of Process (If the agent is an individual, the agent must reside in California and Item 13 must be completed with a California street address (a P.O. Box is not acceptable). If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 13 must be left blank.)

12. NAME OF AGENT FOR SERVICE OF PROCESS

A and A Companies, Inc.

C 2399516

| 13. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE | ZIP CODE |
|---|---|---|---|
| | | CA | |

**Type of Business**

14. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION

Investment business

15. BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE CALIFORNIA SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| 02/21/2011 | Michael J. Minkus | Agent | | |
|---|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | | SIGNATURE |

SI-200 C (REV 10/2010)

APPROVED BY SECRETARY OF STATE



# State of California
## Secretary of State

### Statement of Information
(Domestic Stock and Agricultural Cooperative Corporations)
FEES (Filing and Disclosure): $25.00.
If this is an amendment, see instructions.
IMPORTANT -- READ INSTRUCTIONS BEFORE COMPLETING THIS FORM

| | S |
|---|---|

EU97696

## FILED

In the office of the Secretary of State
of the State of California

NOV-06 2013

**1. CORPORATE NAME**

ECOSMART, INC.

**2. CALIFORNIA CORPORATE NUMBER**    C3017592

This Space for Filing Use Only

**No Change Statement** (Not applicable if agent address of record is a P.O. Box address. See instructions.)

3   If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no statement of information has been previously filed, this form must be completed in its entirety.
☑   If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed to Item 17.

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| 4   STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 5.   STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | | CITY | STATE | ZIP CODE |
| 6.   MAILING ADDRESS OF CORPORATION, IF DIFFERENT THAN ITEM 4 | | CITY | STATE | ZIP CODE |

**Names and Complete Addresses of the Following Officers** (The corporation must list these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| 7.   CHIEF EXECUTIVE OFFICER/ | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 8.   SECRETARY | ADDRESS | CITY | STATE | ZIP CODE |
| 9.   CHIEF FINANCIAL OFFICER/ | ADDRESS | CITY | STATE | ZIP CODE |

**Names and Complete Addresses of All Directors, Including Directors Who are Also Officers** (The corporation must have at least one director. Attach additional pages, if necessary.)

| 10.  NAME | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 11.  NAME | ADDRESS | CITY | STATE | ZIP CODE |
| 12.  NAME | ADDRESS | CITY | STATE | ZIP CODE |

13   NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY:

**Agent for Service of Process** If the agent is an individual, the agent must reside in California and Item 15 must be completed with a California street address, a P.O. Box address is not acceptable. If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 15 must be left blank.

| 14   NAME OF AGENT FOR SERVICE OF PROCESS | | | |
|---|---|---|---|

| 15.  STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL  CITY | | STATE | ZIP CODE |
|---|---|---|---|

**Type of Business**

16.  DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION

17.  BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE CALIFORNIA SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| 11/06/2013 | GRACE REGINA HERRERA | OFFICE MANAGER | |
|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |

S1-200 (REV 01/2013)

APPROVED BY SECRETARY OF STATE

EXHIBIT D

Current & Historical Company Extract

ESMART GROUP PTY LIMITED
ACN 099 603 568

| Organisation Details | | Document Number |
|---|---|---|

**Current Organisation Details**

| | | |
|---|---|---|
| Name: | ESMART GROUP PTY LIMITED | 022554280 |
| ACN: | 099 603 568 | |
| ABN: | 14099603568 | |
| Registered in: | New South Wales | |
| Registration date: | 15/02/2002 | |
| Next review date: | 15/02/2016 | |
| Name start date: | 30/11/2005 | |
| Status: | Registered | |
| Company type: | Australian Proprietary Company | |
| Class: | Limited By Shares | |
| Subclass: | Proprietary Company | |

**Previous Organisation Details from 15/02/2002 to 29/11/2005**

| | | |
|---|---|---|
| Name: | THE FIRE COMPANY PTY LTD | 017783466 |
| Name start: | 15/02/2002 | |
| Status: | Registered | |
| Company type: | Australian Proprietary Company | |
| Class: | Limited By Shares | |
| Subclass: | Proprietary Company | |

| Address Details | | Document Number |
|---|---|---|

**Current**

| | | |
|---|---|---|
| Registered address: | THE FIRE COMPANY PTY LIMITED, 'Showroom 3 & 4', 40-42 O'Riordan Street, ALEXANDRIA NSW 2015 | 1F0386224 |
| Start date: | 20/03/2012 | |
| Principal Place Of Business address: | 'Showroom 3 & 4', 40-42 O'Riordan Street, ALEXANDRIA NSW 2015 | 1F0386224 |
| Start date: | 21/02/2012 | |

**Historical**

| | | |
|---|---|---|
| Registered address: | THE FIRE COMPANY PTY LIMITED, 10 Apollo Street, WARRIEWOOD NSW 2102 | 025668834 |
| Start date: | 31/07/2009 | |
| Cease date: | 19/03/2012 | |
| Registered address: | THE FIRE COMPANY PTY LIMITED, 10 Apollo Street, WARRIEWOOD NSW 2102 | 024905714 |
| Start date: | 30/07/2008 | |
| Cease date: | 30/07/2009 | |
| Registered address: | Unit 9, 5 Vuko Place, WARRIEWOOD NSW 2102 | 1F0117218 |
| Start date: | 03/07/2006 | |
| Cease date: | 29/07/2008 | |
| Registered address: | Unit 10, 14 Polo Avenue, MONA VALE NSW 2103 | 020416661 |
| Start date: | 28/06/2004 | |
| Cease date: | 02/07/2006 | |

Current & Historical Company Extract

**ESMART GROUP PTY LIMITED**
ACN 099 603 568

| | | |
|---|---|---|
| Registered address: | THE ALLEN HALL PARTNERSHIP, Level 3, 685 Pittwater Road, DEE WHY NSW 2099 | 017783466 |
| Start date: | 15/02/2002 | |
| Cease date: | 27/06/2004 | |
| Principal Place Of Business address: | 10 Apollo Street, WARRIEWOOD NSW 2102 | 024905714 |
| Start date: | 04/07/2008 | |
| Cease date: | 20/02/2012 | |
| Principal Place Of Business address: | Unit 9, 5 Vuko Place, WARRIEWOOD NSW 2102 | 1F0117218 |
| Start date: | 01/07/2006 | |
| Cease date: | 03/07/2008 | |
| Principal Place Of Business address: | Unit 10, 14 Polo Avenue, MONA VALE NSW 2103 | 020416661 |
| Start date: | 18/06/2004 | |
| Cease date: | 30/06/2006 | |
| Principal Place Of Business address: | 25 Kananook Avenue, BAYVIEW NSW 2104 | 0E7736169 |
| Start date: | 23/09/2002 | |
| Cease date: | 17/06/2004 | |
| Principal Place Of Business address: | Unit 8, 7 Darley Street, MONA VALE NSW 2103 | 017783466 |
| Start date: | 15/02/2002 | |
| Cease date: | 22/09/2002 | |

**Contact Address**

Section 146A of the Corporations Act 2001 states 'A contact address is the address to which communications and notices are sent from ASIC to the company'.

| | |
|---|---|
| Address: | PO BOX 6340, FRENCHS FOREST NSW 2086 |
| Start date: | 28/06/2003 |

**Officeholders and Other Roles**                              Document Number
Director

| | | |
|---|---|---|
| Name: | TAMIR HAIKIN | 026443554 |
| Address: | 19 Haig Street, MAROUBRA NSW 2035 | |
| Born: | 25/10/1976, PETAH TIKVA, ISRAEL | |
| Appointment date: | 23/03/2010 | |
| Name: | STEPHANE WILFRID THOMAS | 1F0386224 |
| Address: | Unit 3, 2-10 Le Vesinet Drive, HUNTERS HILL NSW 2110 | |
| Born: | 07/07/1973, LOBREVILLE, GABON | |
| Appointment date: | 18/06/2004 | |

**Previous Director**

| | | |
|---|---|---|
| Name: | UWE BERNHARD BACKES | 024313336 |
| Address: | 20 Iluka Avenue, ELANORA HEIGHTS NSW 2101 | |
| Born: | 21/11/1962, DORTMUND, GERMANY | |
| Appointment date: | 15/02/2002 | |
| Cease date: | 20/12/2010 | |

**Previous Secretary**

| | | |
|---|---|---|
| Name: | UWE BERNHARD BACKES | 024313336 |

# PROOF OF SERVICE

I declare that:

    I am and was at the time of service of the papers herein, over the age of eighteen (18) years and am not a party to the action. I am employed in the County of Sonoma, California, and my business address is 438 1st Street, 4th Floor, Santa Rosa, California 95401.

    On January 14, 2016, I served the following document, described as set forth below on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes, at Sonoma, addressed as follows:

## PLAINTIFFS' SECOND AMENDED COMPLAINT

| | |
|---|---|
| Sigrid Irias<br>Law Offices of Santana, Tcheng, Vierra &<br>Symonds<br>71 Stevenson Street, Ste. 700<br>San Francisco, CA 94105 | Attorney for defendant<br>Outdoor Architectural Accents; a<br>California Cooperation dba Outdora |
| John Samberg<br>Simon Aron<br>Wolf, Rifkin, Shapiro, Schulman & Rabkin,<br>LLP<br>5594-B Longley Lane<br>Reno, NV 89511 | Attorney for defendant<br>Ecosmart, Inc |

☒   **BY FIRST-CLASS MAIL:** I caused such envelopes to be deposited in the United States mail, at Santa Rosa, California, with postage thereon fully prepaid, individually, addressed to the parties as indicated. I am readily familiar with the firm's practice of collection and processing correspondence in mailing. It is deposited with the United States postal service each day and that practice was followed in the ordinary course of business for the service herein attested to.

☐   **BY FACSIMILE TRANSMISSION:** By use of facsimile machine number (707)545-8288, I served a copy of the within document(s) on the above interested parties at the facsimile numbers listed above. The transmission was reported as complete and without error. The transmission report was properly issued by the transmitting facsimile machine.

☐   **BY ELECTRONIC FILING SERVICE:** My electronic business address is tuscano@perrylaw.net and I caused such document(s) to be electronically served for the above-entitled case to those parties on the Service List below. The file transmission was reported complete and a copy will be maintained with the original document(s) in our office.

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

1

2        I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

3

4        Executed on January 14, 2016, at Santa Rosa, California.

5

6                                    Stephanie Caron

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP



3/15/2016     MAD DESIGN GROUP Mail - LIU claim ref: SYDCAS000100386 - The Fire Company Pty Ltd / EcoSmart Inc re US proceedings by Margrett Lewis & Ors



Alexander Eburne <alex@ecosmartfire.com>

www.ecosmartfire.com

## LIU claim ref: SYDCAS000100386 - The Fire Company Pty Ltd / EcoSmart Inc re US proceedings by Margrett Lewis & Ors

2 messages

**Melissa Mudge** <melissa.mudge@ajg.com.au>                         Mon, Feb 1, 2016 at 8:34 PM
To: Alexander Eburne <alex@ecosmartfire.com>
Cc: "stephane@thefirecompany.com.au" <stephane@thefirecompany.com.au>, James Forster
<james.forster@ajg.com.au>, Adam Sulway <adam.sulway@ajg.com.au>

Hi Alex

Thank you for sending through a copy of the Plaintiffs' Second Amended Complaint in respect of the above matter.

As instructed, we provided the amended pleadings to Liberty and requested that the coverage position be reviewed in light of the amendments. Unfortunately, you will see from Liberty's email below that there was no new information contained in the amended document which materially impacted its position on cover. Accordingly, Liberty maintains its original position which is outlined in the email from Angus Kench of Liberty to AJG dated 21 April 2016 (**attached**).

We specifically requested that the coverage position be provided on letterhead. However, we have again received their response by email. I would be grateful if you could let me know whether the attached email with Liberty's sign off image is acceptable. If not, we will press for the response to be provided on letterhead.

Kind regards

Melissa Mudge

Senior Claims Executive, Claims National Technical, Arthur J. Gallagher

| Ext: 2 9424 1826 | Fax: +61 2 9424 1800

melissa.mudge@ajg.com.au | www.ajg.com.au

**From:** Taylor, Michael [mailto:michael.taylor@LibertyIU.com]
**Sent:** Tuesday, 2 February 2016 2:24 PM
**To:** Melissa Mudge <melissa.mudge@ajg.com.au>

ES-001549

3/15/2016      MAD DESIGN GROUP Mail - LIU claim ref: SYDCAS000100386   The Fire Company Pty Ltd / EcoSmart Inc re US proceedings by Margrett Lewis & Ors

**Subject:** RE: LIU claim ref: SYDCAS000100386 - The Fire Company Pty Ltd / EcoSmart Inc re US proceedings by Margrett Lewis & Ors

Hi Melissa,

I have attached the original declination email Sent by Angus Kench to Colin Bentley.

I would advise that there was no new information in the amended document which would cause us to deviate from our initial position on coverage which was previously conveyed to the insured in the attached email, core of yourselves.

Let me know if you would like to discuss further.

Kind regards,

**Michael Taylor**
**NSW Casualty Claims Manager**
Liberty International Underwriters

T:  +61 2 8298 5971

M: +61 405 636 091

www.liuaustralia.com.au



**Important Notice about Privacy:**

1. If you are providing LIU with Personal Information click here for LIU's Privacy Notice.
2. LIU may transfer your Personal Information to an overseas recipient as part of its internal data storage and claims management procedures. You may give or withhold consent for this transfer, which may be express or implied. If you consent, LIU is not obliged to ensure that the overseas recipient does not breach the Australian Privacy Principles, but LIU endeavours to do so.
3. If you are providing Personal Information to LIU on behalf of another individual LIU relies on you to

ES-001550

provide its Privacy Notice to them. If you have not done this, you must tell LIU before you provide the relevant data.

The information in this e-mail and in any attachments may be confidential or legally privileged. If you are not the intended recipient neither is waived or lost by mistaken delivery and you are prohibited from retaining, distributing, disclosing or using any information contained herein. Please notify the sender by return email and delete the message and any attachments from your system if you are not the intended recipient. Liberty International Underwriters may monitor the content of e-mails sent and received via its network for viruses or unauthorised use and for other lawful business purpose, but accepts no liability caused by viruses or unauthorised use. Further information about Liberty International Underwriters is available at www.liuasiapacific.com.

This email is confidential and may contain legally privileged information. If you are not the intended recipient, you must not disclose or use the information contained in it. If you have received this email in error, please notify us immediately by return email and delete the document.

---------- Forwarded message ----------
From: "Kench, Angus" <Angus.Kench@libertyiu.com>
To: Collin Bentley <collin.bentley@ajg.com.au>
Cc: "Taylor, Michael" <michael.taylor@libertyiu.com>
Date: Tue, 21 Apr 2015 05:51:18 +0000
Subject: FW: Ecosmart, Inc. - Summons and Complaint (Margarett Lewis)

LIU Claim Number: SYDCAS000100386

Collin

Further to our further telephone conversation today I note the above mentioned Summons, issued in Sonoma County, California, refers to certain particulars of importance: -

- The action was filed on 1 April 2015

- The general allegations refer to the Plaintiff purchasing bottles of E-NRG from Defendant Outdora on or about March 2014

- On June 8, 2014 whilst using an outdoor fire pit the plaintiffs used the above mentioned E-NRG and sustained injury

- The said bottle was "manufactured, bottled, sold and distributed without a flame arrestor"

The relevant LIU Combined General & Products Liability Policy #SY-CAS-13-438176 contains a number of terms, conditions, exclusions and endorsements. Of specific import to this claim is Endorsement 3, Exclusion 7.24 and Endorsement 4 Existing Products Endorsement (Claims Made) with relevant endorsement period being 30th April 2014 to 30th June 2014.

Based on the summons and in particular the circumstances summarised above the policy will not respond to this current claim.

ES-001551

Case 3:18-cv-01138-WHO Document 1-1 Filed 02/22/18 Page 177 of 322

3/15/2016     MAD DESIGN GROUP Mail - LIU claim ref: SYDCAS000100386 - The Fire Company Pty Ltd / EcoSmart Inc re US proceedings by Margrett Lewis & Ors

This response is based on the information provided to date however should further information come to light which affects the above circumstances please forward such information and we can review the matter again.

If you or your client has any queries in relation to this please do not hesitate to contact us.

Regards

**Angus Kench**
**Assistant Vice President, Casualty Claims - Asia Pacific**
Liberty International Underwriters

T: +61 2 8298 5975

M: +61 412 570 931



**Privacy Notice:** If you are providing LIU with Personal Information **click here for LIU's Privacy Notice.** If you are providing Personal Information to LIU on behalf of another individual LIU relies on you to provide its Privacy Notice to them. If you have not done this, you must tell LIU before you provide the relevant data.

**From:** Kench, Angus
**Sent:** Monday, 20 April 2015 11:26 AM
**To:** 'Collin Bentley'
**Cc:** Melissa Mudge; Taylor, Michael
**Subject:** RE: Ecosmart, Inc. - Summons and Complaint (Margarett Lewis)

Collin

Thank you for your email. I have spoken briefly with our underwriter, John Nicholls who has briefed me about discussions he held with AJG last Friday during which issues surrounding indemnity were discussed.

I note that John has advised me: -

*"I can confirm that I met with the broker Friday afternoon and we did discuss the potential of there being no indemnity under the policy for this matter. Even before I met with the broker he indicated that he discussed the*
ES-001552

3/15/2016    MAD DESIGN GROUP Mail - LIU claim ref: SYDCAS000100386 - The Fire Company Pty Ltd / EcoSmart Inc re US proceedings by Margrett Lewis & Ors

*potential for there being no indemnity with the client. Because of this and the potential need to lodge a response I suggested that it might be prudent for the client's US office to contact Esther Holm of Lewis Brisbois Bisgaard & Smith LLP as Esther handled the client's previous matter relating to Friscia as well as working with the client on label improvements etc. It was stressed at that point that the client's should act as a prudent uninsured".*

We are currently reviewing all information and will be in contact again very shortly with our initial formal acknowledgement and position.

If you have any questions in the meantime please do not hesitate to contact me.

**Angus Kench**
**Assistant Vice President, Casualty Claims - Asia Pacific**
Liberty International Underwriters

T:  +61 2 8298 5975

M: +61 412 570 931



**Privacy Notice:** If you are providing LIU with Personal Information **click here for LIU's Privacy Notice.** If you are providing Personal Information to LIU on behalf of another individual LIU relies on you to provide its Privacy Notice to them. If you have not done this, you must tell LIU before you provide the relevant data.

---

**From:** Collin Bentley [mailto:collin.bentley@ajg.com.au]
**Sent:** Monday, 20 April 2015 9:23 AM
**To:** Kench, Angus
**Cc:** Melissa Mudge
**Subject:** FW: Ecosmart, Inc. - Summons and Complaint (Margarett Lewis)

Dear Angus,

**GENERAL & PRODUCTS LIABILITY CLAIM - THE FIRE COMPANY / ECOSMART**

**CLAIMANT:**    Nicolette Lewis

**DOL:**    **8 June 2014**

**POLICY:**    **SY-CAS-13-438176 $20M x $10K**

ES-001553

3/15/2016                         MAD DESIGN GROUP Mail - Re: Ecosmart, Inc. - Summons and Complaint (Margarett Lewis)


www.ecosmartfire.com

**Alexander Eburne <alex@ecosmartfire.com>**

---

## Re: Ecosmart, Inc. - Summons and Complaint (Margarett Lewis)

**James Forster** <james.forster@ajg.com.au>                    Tue, Apr 21, 2015 at 5:10 PM
To: "stephane@thefirecompany.com.au" <stephane@thefirecompany.com.au>, "Alexander Eburne
(alex@ecosmartfire.com)" <alex@ecosmartfire.com>

Good morning Gentlemen

Please find below Liberty's formal response to the Summons and Complaint (Margarett Lewis).

I'm about to ring Liberty for renewal terms and will be in touch soon

**James Forster**

Senior Account Manager, Sydney Corporate, Arthur J. Gallagher

Direct: +61 2 9424 1846  | Ext: 21846 | Mobile: +61 439 660 063 | Fax: +61 2 9424 1800

james.forster@ajg.com.au | www.ajg.com.au

---

**From:** Kench, Angus [mailto:Angus.Kench@LibertyIU.com]
**Sent:** Tuesday, April 21, 2015 3:51 PM
**To:** Collin Bentley
**Cc:** Taylor, Michael
**Subject:** FW: Ecosmart, Inc. - Summons and Complaint (Margarett Lewis)

LIU Claim Number: SYDCAS000100386

Collin

Further to our further telephone conversation today I note the above mentioned Summons, issued in Sonoma
County, California, refers to certain particulars of importance: -

ES-001554

-   The action was filed on 1 April 2015

-   The general allegations refer to the Plaintiff purchasing bottles of E-NRG from Defendant Outdora on or about March 2014

-   On June 8, 2014 whilst using an outdoor fire pit the plaintiffs used the above mentioned E-NRG and sustained injury

-   The said bottle was "manufactured, bottled, sold and distributed without a flame arrestor"

The relevant LIU Combined General & Products Liability Policy #SY-CAS-13-438176 contains a number of terms, conditions, exclusions and endorsements. Of specific import to this claim is Endorsement 3, Exclusion 7.24 and Endorsement 4 Existing Products Endorsement (Claims Made) with relevant endorsement period being 30th April 2014 to 30th June 2014.

Based on the summons and in particular the circumstances summarised above the policy will not respond to this current claim.

This response is based on the information provided to date however should further information come to light which affects the above circumstances please forward such information and we can review the matter again.

If you or your client has any queries in relation to this please do not hesitate to contact us.

Regards

**Angus Kench**
**Assistant Vice President, Casualty Claims - Asia Pacific**
Liberty International Underwriters

T:  +61 2 8298 5975

M: +61 412 570 931



**Privacy Notice:** If you are providing LIU with Personal Information **click here for LIU's Privacy Notice.** If you are providing Personal Information to LIU on behalf of another individual LIU relies on you to provide its Privacy Notice to them. If you have not done this, you must tell LIU before you provide the relevant data.

**OAMPS Insurance Brokers is now Arthur J. Gallagher. Your broker relationship is the same. The services**

**you expect will continue and be enhanced by greater global capability.**

This email is confidential and may contain legally privileged information. If you are not the intended recipient, you must not disclose or use the information contained in it. If you have received this email in error, please notify us immediately by return email and delete the document.

# Case No. SCV261819
# 02-05-2018
# Request for Production of Documents Served on Liberty Mutual Insurance Company

1  LESLIE R. PERRY (SBN 062390)
2  JOHN J. JOHNSON (SBN 114902)
   HEATHER-ANN T. YOUNG (SBN 283211)
3  PERRY, JOHNSON, ANDERSON,
   MILLER & MOSKOWITZ, LLP
   438 First Street, Fourth Floor
4  Santa Rosa, CA 95401
   Telephone: (707) 525-8800
5  Facsimile: (707) 545-8242

6  Attorney for Plaintiffs
   MARGRETT LEWIS, NICOLETTE LEWIS,
7  ALEXIS LEWIS, and JEFFREY LEWIS

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF SONOMA

10  NICOLETTE LEWIS, ALEXIS LEWIS,        )  CASE No. 261819
    MARGRETT LEWIS; and JEFFREY LEWIS     )
11                                        )  Unlimited Civil Action
                                          )
12              Plaintiff(s),             )  **PLAINTIFF NICOLETTE LEWIS'**
                                          )  **REQUEST FOR PRODUCTION OF**
13         vs.                            )  **DOCUMENTS TO DEFENDANT**
                                          )  **LIBERTY MUTUAL INSURANCE**
14  LIBERTY MUTUAL INSURANCE COMPANY ,    )  **COMPANY**
    LIBERTY INTERNATIONAL UNDERWRITERS,   )  **[SET ONE]**
15  and DOES 1 through 50, inclusive,     )
                                          )
16                                        )  Department: 16
              Defendant(s).               )  Judge: Hon. Patrick Broderick
17                                        )  Trial Date: not yet set
                                          )
18                                        )
                                          )
19  ─────────────────────────────────────)

20

21  REQUESTING PARTY:      Plaintiff NICOLETTE LEWIS

22  RESPONDING PARTIES:    Defendant LIBERTY MUTUAL INSURANCE COMPANY

23
    SET NUMBER:            ONE
24

25      Pursuant to Code of Civil Procedure section 2031.010 et seq., Plaintiff NICOLETTE

26  LEWIS demands that Defendant LIBERTY MUTUAL INSURANCE COMPANY, produce for

27  inspection and copying at the Law Offices of Perry, Johnson, Anderson, Miller & Moskowitz,

28  LLP, 438 First Street, 4th Floor, Santa Rosa, California 95401 within the time proscribed by Code

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

1  of Civil Procedure section 2031.260, the following specified items in Defendants' possession,

2  custody or control.

### DEFINITIONS

A.     As used herein the word "BROKER" means any person or entity transacting insurance on

behalf of ECOSMART, including, but not limited to any representative or agent of OAMPS

Insurance Brokers and/or Arthur J. Gallagher Insurance Brokers (including James Forster and/or

Melissa Mudge).

B.     As used herein the word "CHANGE" means a difference or reduction in coverage, risk,

premium.

C.     As used herein the words "CLAIMS MADE" means any claim made during the policy

period, , regardless of when the act that gave rise to the claim took place.

D.     As used herein, the word "COMMUNICATION(S)" means any form of communication,

including, but not limited to emails, letters (delivered by mail, personal delivery or otherwise),

text, memorandum, facsimile, documents made available on the internet for viewing, downloading

OR uploading (e.g. sharing Google Documents, Sharefile, Dropbox, etc.) and includes direct

communications and also communications in which an individual is copied, blind copied, or in

some fashion included in, or made privy to, the COMMUNICATION.

E.     As used herein the words "DATE OF PRODUCTION" means the date on which the

DOCUMENTS are produced.

F.     As used herein, the word "DOCUMENT" or "DOCUMENTS" is used herein to mean all

"writings" as defined in California Evidence Code Section 250 (see text, below), including, but

not limited to, all written, recorded, or graphic material, however produced or reproduced, of any

kind in your possession, custody, or control, or in the possession, custody, or control of any

officers, members, partners, employees, servants, or your agents or representatives, including,

without limitation, letters, correspondence, telegrams, memoranda, records, minutes, contracts,

agreements, memoranda, or records of telephone or personal conversations or conferences,

interoffice communications, emails, sound recordings, handwritings, ELECTRONICALLY

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

2

1  STORED INFORMATION, electronic data processing inputs, and memories of all kinds,

2  including hard drives, CD ROM data, tapes and discs, computer reports and printouts, microfilm,

3  bulletins, circulars, pamphlets, studies, notices, summaries, reports, books, teletype messages, bills

4  of lading, invoices, work sheets, and index cards, or copies of such documents where originals are

5  not available. The term "document" or "documents" includes any and all matter that relates in

6  whole or in part to the subject referred to in a demand to produce. Where a document has been

7  prepared in several copies that are not identical (or which by reason of subsequent modification,

8  addition, or notation are no longer identical), each non-identical copy is a separate "document."

9  DOCUMENT includes any COMMUNICATION.

11          Evidence Code Section 250: "Writing" means handwriting, typewriting, printing,

12       photostating, photographing, photocopying, transmitting by electronic mail or facsimile,

13       and every other means of recording upon any tangible thing, any form of communication

14       or representation, including letters, words, pictures, sounds, or symbols, or combinations

15       thereof, and any record thereby created, regardless of the manner in which the record has

16       been stored."

17  G.    As used herein the word "ECOSMART" means EcoSmart, Inc., its agents, employees,

18  attorneys, accountants,  investigators, insurance broker(s) and anyone else acting on its behalf,

19  The Fire Company Pty Ltd, Esmart Group Pty Ltd, any employee, representative or agent of

20  OAMPS Insurance Brokers and/or Arthur J. Gallagher Insurance Brokers (including James Forster

21  and/or Melissa Mudge).

22  H.    As used herein the words "ECOSMART PRODUCT(S)" means any fuel produced by

23  ECOSMART that is intended for use by consumers, including but not limited to E-NRG.

24  I.    As used herein the word "ELECTRONIC" means relating to technology having electrical,

25  digital, magnetic, wireless, optical, electromagnetic, or similar capabilities.

27  J.    As used herein the words "ELECTRONICALLY STORED INFORMATION" means

28  information that is stored in an ELECTRONIC medium.

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

K.      As used herein the word "EMPLOYEE" means an employee as defined in Cal. Labor Code §3351 to wit: every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed.

L.      As used herein the word "INSURANCE" means any form of liability insurance including, but not limited to General, Products OR Combined General & Products Liability Policies (including INSURANCE POLICY #1 or INSURANCE POLICY #2).

M.      As used herein the words "INSURANCE POLICY #1" means Liberty International Underwriters Combined General & Products Liability Policy #ME-CAS-12-438176 with a period of insurance 4 p.m. April 30, 2013 to 4 p.m. April 30, 2014. (Exhibit 1)

N.      As used herein the words "INSURANCE POLICY #2" means Liberty International Underwriters Combined General & Products Liability Policy #SY-CAS-13-438167 with a period of insurance 4 p.m. April 30, 2014 to 4 p.m. April 30, 2015.  (Exhibit 2)

O.      As used herein the word "LAWSUIT(S)" means any lawsuit based on personal injuries or death resulting from an ECOSMART product.

P.      As used herein the words "LEWIS V. ECOSMART" means Lewis v. EcoSmart et al., Sonoma County Superior Court Case No. SCV-256907. (Exhibit 3)

Q.      As used herein the words "LIBERTY INTERNATIONAL UNDERWRITERS" means Liberty International Underwriters and any agent, employees, representatives, attorneys (as to non-privileged communications), investigators, and anyone else acting on its or Liberty International Underwriters' behalf, or of any subsidiary or entity related to either named entity.

R.      As used herein the words "NOTIFY" or "NOTIFIED" means put on notice or advise or report to in any manner, whether formally, informally or otherwise.

S.      As used herein the word "OR" means and/or.

T.      As used herein the word "PERSON" includes a natural person, firm, association,

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

4

1 | organization, partnership, business, trust, corporation or public entity.

2 | U.    As used herein the word "PRODUCE" shall mean to present the original document for

3 | copying at the offices of Perry, Johnson, Anderson, Miller & Moskowitz at 438 First Street,

4 | Fourth Floor, Santa Rosa, California 95401 or, in the alternative, to supply Plaintiffs' attorneys

5 | with an exact copy of the document.  If any document or portion thereof is not produced, you are

6 | asked to identify the document and to give the reason that it is not produced.

7 | 

8 | V.    As used herein, the words "REGARDING" or "RELATING" when used with respect to

9 | documents shall mean any and all documents which in in any or in any manner refer to, relate to,

10 | reflect, concern, contain, embody, or describe the subject matter referred to in any of the particular

11 | document demands made below.

12 | W.    As used herein the word "RELATIONSHIP" means any way that Liberty Mutual

13 | Insurance Company is connected to or involved with Liberty International Underwriters, whether

14 | as an owner, subsidiary, a division, a trading company for, or otherwise.

15 | X.    As used herein the word "RENEWAL" means the continuation of insurance coverage.

16 | 

17 | Y.    As used herein the words "TRADING NAME" refers to "trading name" as that term is

18 | used in INSURANCE POLICY #1 and INSURANCE POLICY #2.

19 | Z.    As used herein, the words, "YOU" and "YOUR" means Liberty Mutual Insurance

20 | Company and any agent, employees, representatives, attorneys (as to non-privileged

21 | communications), investigators, and anyone else acting on behalf of either entity, or of any

22 | subsidiary or entity(ies) related to Liberty Mutual Insurance Company.

23 | 

NON-PRODUCTION

24 | 

25 | If any document falling within the demanding party's request is considered to be excluded

26 | from production on the grounds of an objection or privilege, responding party shall include in the

27 | written responses to said request a list of the documents so withheld from the production,

28 | identifying each document by: date, name, title and address of addressor and addressee; name, title

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

1  and address of each other person to whom a copy of the document was sent; general character of

2  the document to be exempt from production. If responding parties have at any time relinquished

3  possession, custody or control of or destroyed any document falling within demanding party's

4  request, responding parties shall identify each document falling within demanding party's request,

5  responding parties shall identify each document as above and as to existing documents identify the

6  persons, if any, who currently have custody, possession or control of them.

7  For each document which you fail or refuse to produce, you are to provide all of the following

8  information:

10      1.  The exact name and title by which you refer to it;

11      2.  The date and all identifying numbers on it;

12      3.  The identity of each person who wrote, signed, initialed, or otherwise participated in

13         the execution of the document;

14      4.  The identity of each person having custody or control of the document; and

15      5.  Each reason why you have failed or refused to produce such documents.

16  **DOCUMENTS TO BE PRODUCED**

17  **REQUEST NO. 1:**

18      All DOCUMENTS RELATING to any California licenses held by YOU've held in the

19  past 10 years.

20  **REQUEST NO. 2:**

22      All DOCUMENTS RELATING to that portion of the Liability Policy Form LIU-AUS-

23  CAS-CGL-2000001 referenced in INSURANCE POLICY #1 which states "this schedule attaches

24  and forms part of the LIU part of LIU Combined General & Products Liability Policy Form LIU-

25  AUS-CAS-CGL-2000001 and is valid only if it is signed and dated below by a person duly

26  authorized by Liberty International Underwriters."

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

**REQUEST NO. 3:**

All DOCUMENTS RELATING to INSURANCE POLICY #1.

**REQUEST NO. 4:**

All DOCUMENTS RELATING to INSURANCE POLICY #2.

**REQUEST NO. 5:**

All COMMUNICATIONS between YOU and ECOSMART from April 30, 2013 to DATE OF PRODUCTION.

**REQUEST NO. 6:**

All COMMUNICATIONS between YOU and LIBERTY INTERNATIONAL UNDERWRITERS from April 30, 2013 to DATE OF PRODUCTION REGARDING ECOSMART.

**REQUEST NO. 7:**

All COMMUNICATIONS between YOU and ECOSMART RELATING to INSURANCE POLICY #1.

**REQUEST NO. 8:**

All COMMUNICATIONS between YOU and LIBERTY INTERNATIONAL UNDERWRITERS RELATING to INSURANCE POLICY #1.

**REQUEST NO. 9:**

All COMMUNICATIONS between YOU and ECOSMART RELATING to INSURANCE POLICY #2.

**REQUEST NO. 10:**

All COMMUNICATIONS between YOU and a BROKER RELATING to INSURANCE POLICY #1.

Plaintiff Nicolette Lewis' Request for Documents Set One to Defendant Liberty Mutual

**REQUEST NO. 11:**

All COMMUNICATIONS between YOU and a BROKER RELATING to INSURANCE POLICY #2.

**REQUEST NO. 12:**

All COMMUNICATIONS between YOU and a BROKER REGARDING ECOSMART between April 30, 2013 to DATE OF PRODUCTION.

**REQUEST NO. 13:**

All COMMUNICATIONS between YOU and a BROKER REGARDING INSURANCE for ECOSMART from April 30, 2013 to DATE OF PRODUCTION.

**REQUEST NO. 14:**

All COMMUNICATIONS between YOU and ECOSMART RELATING to INSURANCE POLICY #2.

**REQUEST NO. 15:**

All DOCUMENTS RELATING to RENEWAL of INSURANCE POLICY #1.

**REQUEST NO. 16:**

All COMMUNICATIONS involving YOU and ECOSMART RELATING to RENEWAL of INSURANCE POLICY #1.

**REQUEST NO. 17:**

All COMMUNICATIONS involving YOU and LIBERTY INTERNATIONAL UNDERWRITERS RELATING to RENEWAL of INSURANCE POLICY #1.

**REQUEST NO. 18:**

All DOCUMENTS RELATING to any CHANGE in INSURANCE POLICY #1 from April 30, 2013 to DATE OF PRODUCTION.

///

Plaintiff Nicolette Lewis' Request for Documents Set One to Defendant Liberty Mutual

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

**REQUEST NO. 19:**

All COMMUNICATIONS involving YOU and ECOSMART RELATING to any CHANGE in INSURANCE POLICY #1 from April 30, 2013 to DATE OF PRODUCTION.

**REQUEST NO. 20:**

All COMMUNICATIONS involving YOU and LIBERTY INTERNATIONAL UNDERWRITERS -RELATING to any CHANGE in INSURANCE POLICY #1 from April 30, 2013 to DATE OF PRODUCTION.

**REQUEST NO. 21:**

All COMMUNICATIONS involving YOU and a BROKER RELATING to any CHANGE in INSURANCE POLICY #1 from April 30, 2013 to DATE OF PRODUCTION.

**REQUEST NO. 22:**

All COMMUNICATIONS involving YOU and ECOSMART RELATING to INSURANCE POLICY #2.

**REQUEST NO. 23:**

All COMMUNICATIONS involving YOU and LIBERTY INTERNATIONAL UNDERWRITERS RELATING to INSURANCE POLICY #2.

**REQUEST NO. 24:**

All COMMUNICATIONS involving YOU and a BROKER RELATING to INSURANCE POLICY #2.

**REQUEST NO. 25:**

All DOCUMENTS RELATING to the denial of coverage to ECOSMART in *LEWIS V. ECOSMART*.

**REQUEST NO. 26:**

All COMMUNICATIONS between YOU and a BROKER RELATING to the denial of

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

coverage to ECOSMART in *LEWIS V. ECOSMART*.

**REQUEST NO. 27:**

All COMMUNICATIONS between YOU and a BROKER RELATING to the denial of coverage to ECOSMART in *LEWIS V. ECOSMART*.

**REQUEST NO. 28:**

All DOCUMENTS relating to YOUR decision to decline to provide a defense to ECOSMART in *LEWIS V. ECOSMART*.

**REQUEST NO. 29:**

All DOCUMENTS RELATING to the reason for CHANGE to INSURANCE POLICY #1 from April 30, 2013 to DATE OF PRODUCTION.

**REQUEST NO. 30:**

All DOCUMENTS RELATING to NOTICE by YOU to ECOSMART REGARDING any CHANGE to INSURANCE POLICY #1 from April 30, 2013 to DATE OF PRODUCTION.

**REQUEST NO. 31:**

All DOCUMENTS RELATING to NOTICE by YOU to a BROKER REGARDING any CHANGE to INSURANCE POLICY #1 from April 30, 2013 to DATE OF PRODUCTION.

**REQUEST NO. 32:**

All DOCUMENTS RELATING to replacement of Endorsement 3, Exclusion 7.24 in INSURANCE POLICY #2 including, but not limited to, DOCUMENTS RELATING to the decision to include this exclusion in INSURANCE POLICY #2.

**REQUEST NO. 33:**

All DOCUMENTS REGARDING NOTICE to ECOSMART that Exclusion 7.24 was inserted into INSURANCE POLICY #2.

///

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

**REQUEST NO. 34:**

All COMMUNICATIONS involving YOU and ECOSMART relating to Exclusion 7.24 of INSURANCE POLICY #2.

**REQUEST NO. 35:**

All COMMUNICATIONS involving YOU and LIBERTY UNDERWRITERS INTERNATIONAL relating to Exclusion 7.24 of INSURANCE POLICY #2. \

**REQUEST NO. 36:**

All COMMUNICATIONS involving YOU and a BROKER relating to Exclusion 7.24 of INSURANCE POLICY #2.

**REQUEST NO. 37:**

All DOCUMENTS RELATING to Endorsement 4 in INSURANCE POLICY #2 including, but not limited to DOCUMENTS REGARDING the decision to include this Endorsement in INSURANCE POLICY #2.

**REQUEST NO. 38:**

All DOCUMENTS REGARDING NOTICE to ECOSMART that Endorsement 4 was inserted into INSURANCE POLICY #2.

**REQUEST NO. 39:**

All COMMUNICATIONS involving YOU and ECOSMART RELATING to Endorsement 4 of INSURANCE POLICY #2.

**REQUEST NO. 40:**

All COMMUNICATIONS involving YOU and LIBERTY INTERNATIONAL UNDERWRITERS RELATING to Endorsement 4 of INSURANCE POLICY #2.

**REQUEST NO. 41:**

All COMMMUNICATIONS involving YOU and a BROKER RELATING to

11

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

1  Endorsement 4 of INSURANCE POLICY #2.

2  **REQUEST NO. 42:**

3  All DOCUMENTS RELATING to the increase in premium to AUD $150,000 for

4  INSURANCE POLICY #2.

5  **REQUEST NO. 43:**

6
7  All DOCUMENTS REGARDING NOTICE to ECOSMART that the premium for

8  INSURANCE POLICY #2 was AUD $150,000.

9  **REQUEST NO. 44:**

10  All COMMUNICATIONS involving YOU and ECOSMART RELATING to the increase

11  of premium to AUD $150,000 for INSURANCE POLICY #2.

12  **REQUEST NO. 45:**

13
14  All COMMUNICATIONS involving YOU and LIBERTY INTERNATIONAL

15  UNDERWRITERS RELATING to the increase of premium to AUD $150,000 for INSURANCE

16  POLICY #2.

17  **REQUEST NO. 46:**

18
19  All COMMUNICATIONS involving YOU and a BROKER RELATING to the increase of

20  premium to AUD $150,000 for INSURANCE POLICY #2.

21  **REQUEST NO. 47:**

22  All DOCUMENTS RELATING to the liability limit of $2,500,000 in Endorsement 4 to

23  INSURANCE POLICY #2.

24  **REQUEST NO. 48:**

25
26  All DOCUMENTS REGARDING NOTICE to ECOSMART of the liability limit of

27  $2,500,000 in Endorsement 4 to INSURANCE POLICY #2.

28  ///

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

**REQUEST NO. 49:**

All COMMUNICATIONS involving YOU and ECOSMART REGARDING the liability

limit of $2,500,000 in Endorsement 4 to INSURANCE POLICY #2.

**REQUEST NO. 50:**

All COMMUNICATIONS involving YOU and LIBERTY INTERNATIONAL

UNDERWRITERS REGARDING the liability limit of AUD $2,500,000 in Endorsement 4 to

INSURANCE POLICY #2.

**REQUEST NO. 51:**

All COMMUNICATIONS involving YOU and a BROKER REGARDING the liability

limit of $2,500,000 in Endorsement 4 to INSURANCE POLICY #2.

**REQUEST NO. 52:**

All DOCUMENTS RELATING to YOUR denial of coverage to ECOSMART in *LEWIS v.*

*ECOSMART.*

**REQUEST NO. 53:**

All COMMUNICATIONS between YOU and LIBERTY INTERNATIONAL

UNDERWRITERS RELATING to the denial of coverage to ECOSMART in *LEWIS V.*

*ECOSMART.*

**REQUEST NO. 54:**

All DOCUMENTS RELATING to YOUR refusal to indemnify ECOSMART in *LEWIS v.*

*ECOSMART.*

**REQUEST NO. 55:**

All DOCUMENTS RELATING to *LEWIS v. ECOSMART.*

**REQUEST NO. 56:**

All DOCUMENTS RELATING to LAWSUITS against ECOSMART from April 30, 2013

13

to June 30, 2014.

**REQUEST NO. 57:**

All DOCUMENTS RELATING to flame arrestors REGARDING ECOSMART PRODUCT(S).

**REQUEST NO. 58:**

All DOCUMENTS RELATING to YOUR knowledge of burn injuries from ECOSMART PRODUCT(S) from April 30, 2013 to June 30, 2014.

**REQUEST NO. 59:**

All DOCUMENTS RELATING to any CLAIMS MADE against ECOSMART from April 30, 2013 to June 30, 2014.

**REQUEST NO. 60:**

. All DOCUMENTS REGARDING the legal RELATIONSHIP between YOU and LIBERTY INTERNATIONAL UNDERWRITERS.

**REQUEST NO 61:**

DOCUMENTS REGARDING what TRADING NAME means when the term is used by YOU in YOUR insurance policies.

**REQUEST NO. 62:**

ALL DOCUMENTS REGARDING the application for, and renewals of, YOUR Australian Business Number ("ABN").

**REQUEST NO. 63:**

ALL DOCUMENTS REGARDING the corporate formation of LIBERTY INTERNATIONAL UNDERWRITERS in Australia or any state jurisdiction therein.

**REQUEST NO. 64:**

ALL DOCUMENTS REGARDING the class and number of shares YOU hold in

14

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

LIBERTY INTERNATIONAL UNDERWRITERS.

**REQUEST NO. 65:**

ALL DOCUMENTS REGARDING the nomination, election, or appointment of directors and officers of LIBERTY INTERNATIONAL UNDERWRITERS.

**REQUEST NO. 66:**

ALL DOCUMENTS REGARDING periodic, special, or current corporate governance reports from LIBERTY INTERNATIONAL UNDERWRITERS.

**REQUEST NO. 67:**

ALL DOCUMENTS REGARDING the registration of "Liberty International Underwriters" as a TRADING NAME with the Government of Australia or any state or local jurisdiction therein.

**REQUEST NO. 68:**

ALL DOCUMENTS REGARDING the authority of LIBERTY INTERNATIONAL UNDERWRITERS to execute insurance policies using the "Liberty Mutual Insurance Company" name.

**REQUEST NO. 69:**

All DOCUMENTS identified in YOUR responses to Special Interrogatories Set One served herewith .

///

///

///

///

///

///

**REQUEST NO. 70:**

1
2       All DOCUMENTS identified in YOUR responses to Form Interrogatories Set One served

3   herewith.

4                                           PERRY, JOHNSON, ANDERSON,
                                            MILLER & MOSKOWITZ, LLP
5
6   DATED: February 1, 2018          By:
7                                           LESLIE R. PERRY
                                            HEATHER-ANN YOUNG
8                                           Attorneys for Plaintiffs
                                            NICOLETTE LEWIS, ALEXIS LEWIS,
9                                           MARGRETT LEWIS and JEFFREY
                                            LEWIS
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





Liberty International Underwriters

**Combined General & Products Liability Policy**





Liberty
International
Underwriters

## Policy Schedule

| | |
|---|---|
| 1. **POLICY NUMBER:** | ME-CAS-12-438176 |
| 2. **INSURED:** | The Fire Company Pty Ltd and EcoSmart Inc |
| 3. **PERIOD OF INSURANCE:** | From: 30th April 2013 at 4pm local standard time<br>To: 30th April 2014 at 4pm local standard time |
| 4. **INSURED'S BUSINESS:** | Design, manufacture, distribution, retailer, wholesale and importer of ethanol fire places, burners and accessories. |
| 5. **LIMIT OF INDEMNITY:** | AUD20,000,000 any one Occurrence in respect of public liability and in the aggregate during the Period of Insurance in respect of Product liability. |
| 6. **DEDUCTIBLES:** | AUD10,000 each and every Occurrence (costs inclusive).<br><br>AUD25,000 each and every Occurrence (costs inclusive) for losses in North America |
| 7. **POLICY WORDING:** | LIU Combined General & Products Liability Policy form LIU-AUS-CAS-CGL-2000001 and attached endorsements. |
| 8. **PREMIUM:** | AUD86,000 (minimum and non-adjustable) plus charges. |

This Schedule attaches to and forms part of LIU Combined General & Products Liability Policy Form LIU-AUS-CAS-CGL-2000001 and is valid only if it is signed and dated below by a person duly authorised by Liberty International Underwriters.



A.B.N. 61 086 083 605

3rd May 2013

For and on behalf of
Liberty International Underwriters

Date



## Combined General & Products Liability Policy

In consideration of the premium being paid by the Insured to LIU and in reliance upon the written statements and declarations contained in the proposal or insurance broker's quotation submission, LIU agrees to indemnify the Insured in accordance with the attached Schedule, Policy wording and endorsements where applicable.

## 1   Insuring Clause

Subject to the terms of this Policy, LIU will pay to or on behalf of the Insured all sums which the Insured shall become legally liable to pay by way of compensation in respect of Injury and/or Damage first happening during the Period of Insurance as a result of an Occurrence in connection with the Insured's Business.

## 2   Definitions

2.1 "Asbestos" means:

  2.1.1 That group of natural fibrous silicate minerals that comprises Actinolite, Amosite, Anthophyllite, Chrysotile, Crocidolite and Tremolite; or

  2.1.2 That group of man made mineral fibres that comprises mineral wool, rockwool, glass fibre, ceramic fibres and superfine fibres,

  And includes Asbestos Products and Products containing Asbestos.

2.2 "Damage" means:

  2.2.1 Physical damage to or destruction of tangible property including all resulting loss of use of that property. All such loss of use shall be deemed to happen at the time of the physical damage that caused it; or

  2.2.2 Loss of use of tangible property that is not physically damaged or destroyed provided such loss of use is caused by physical damage to other tangible property which first happened during the Period of Insurance. All such loss of use shall be deemed to happen at the time of the physical damage or destruction that caused it.

2.3 "Employment Practices" means any wrongful or unfair dismissal, denial of natural justice, defamation, misleading representation or advertising, unfair contracts, harassment or discrimination (sexual or otherwise) in respect of employment by the Insured.

2.4 "Injury" means:

  2.4.1 Bodily injury, death, sickness, disease, disability, shock, fright, mental anguish and mental injury;

  2.4.2 False arrest, wrongful detention or imprisonment, malicious prosecution;

  2.4.3 Wrongful entry or eviction;



2.4.4    Assault and battery not committed by or at the direction of the Insured unless committed for the purpose of preventing Injury and/or Damage or eliminating danger; or

2.4.5    Libel, slander, defamation of character or invasion of right of privacy.

2.5    "Insured" wherever used in this Policy means the Insured named in the Schedule and:

2.5.1    Any subsidiary company of the Insured incorporated within Australia including subsidiaries thereof; or

2.5.2    Any other entity incorporated within Australia controlled by the Insured and over which the Insured assumes active management.

2.6    "Insured's Business" is the business shown in the Schedule.

2.7    "LIU" means Liberty International Underwriters. Liberty International Underwriters is a trading name of Liberty Mutual Insurance Company (ABN 61 086 083 605). Incorporated in Massachusetts, USA (The liability of members is limited).

2.8    "Limit of Indemnity" means the amount stated in the Schedule pursuant to Clause 5 of this Policy.

2.9    "Occurrence" means an event, including continuous or repeated exposure to substantially the same general conditions, which results in Injury and/or Damage neither expected nor intended from the standpoint of the Insured. All events of a series consequent on or attributable to one source or original cause shall be deemed one Occurrence.

2.10    "Period of Insurance" is the period shown in the Policy.

2.11    "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapour, soot, fumes, cinders, dust, odours, noise, acids, alkalis, chemicals or waste. Waste includes materials to be recycled, reconditioned or reclaimed.

2.12    "Product" means any commodity, article or thing (after it has ceased to be in the possession or under the control of the Insured) which is or is deemed (whether by law or otherwise) to have been manufactured, constructed, grown, extracted, produced, processed, assembled, erected, installed, treated, altered, serviced, repaired, sold, handled, supplied or distributed by the Insured or by others trading under the name of the Insured (including any container thereof other than a motor vehicle).

2.13    "Terrorism" means an act or acts:

2.13.1    That are violent in nature or are dangerous to human life:

2.13.1.1    That are a violation of the criminal laws of the United States of America or Australia or of any State or Territory of the United States of America or Australia or that would be a criminal violation if committed within the jurisdiction of the United States of America or Australia or any State or Territory of the United States of America or Australia and that have the apparent intent of:

2.13.1.1.1    Intimidating or coercing any civilian population;

2.13.1.1.2    Influencing the policy of any government by intimidation or coercion; or



| 2.13.1.1.3 | Affecting the conduct of any government by mass destruction, assassination or kidnapping. |

Or

2.13.2    That result in:

| 2.13.2.1 | The denial of access to or services from web sites, computer networks or telecommunication equipment; or |
| 2.13.2.2 | The malfunction or degradation of web sites, computer networks, telecommunications equipment, mechanical equipment or the interruption to the functioning of web sites or such properties, |

And that have the apparent intent of intimidating or coercing any civilian population or influencing the policy of any government by intimidation or coercion.

2.14    'Worker" means any person employed by the Insured or deemed to be employed by the Insured whether pursuant to any Workers' Compensation Law or otherwise.

2.15    "Workers' Compensation Law" means any law relating to compensation for Injury to Workers or employees.

# 3    Indemnity to Others

Subject to the terms of this Policy and in accordance with Insuring Clause 1, this Policy will extend to pay to or on behalf of:

3.1    Any principal, in respect of that principal's vicarious liability for the negligent acts or omissions of the Insured pursuant to Definition 2.5 and arising out of the Insured's Business, but this Policy does not extend to the liability of any principal howsoever arising out of the negligence, breach of contract or breach of duty of such principal;

3.2    Any director, executive officer or Worker of the Insured or, where the Insured is a partnership, any partner of the Insured, but only while acting within the scope of their duties in such capacity;

3.3    The officers, committee and members of the Insured's canteen, social, sports, first aid/medical, fire fighting and employee welfare organisations in their respective capacity as such; or

3.4    The legal personal representative of any person entitled to indemnity under this Clause 3 in circumstances giving rise to indemnity under this Policy.

Provided always that all such persons or parties shall, whilst not being a party to this contract, observe, fulfil and be subject to the terms of this Policy in so far as they can apply as though they were the Insured.

# 4    Cross Liabilities

Subject at all times to the terms of this Policy, each person or party indemnified is separately indemnified in respect of claims made by any of them against any other of them provided that LIU's total liability shall not exceed the Limit of Indemnity for all claims under this Policy.



## 5   Limit of Indemnity

LIU's liability to pay compensation shall not exceed the sum stated in the Schedule in respect of any one claim or series of claims arising from one Occurrence.

The total aggregate liability of LIU for any one Period of Insurance for all claims in respect of or in any way connected with the Insured's Products shall not exceed the Limit of Indemnity stated in the Schedule.

## 6   Defence Costs

In addition to the Limit of Indemnity, LIU will pay all reasonable legal costs and/or expenses incurred with LIU's prior written consent in connection with any claim for which the Insured is indemnified by this Policy.

Provided that LIU shall not be liable for legal costs and/or expenses where indemnity is not provided by this Policy.

Provided that LIU shall not be liable for legal costs and/or expenses for or in respect of representation at any formal legal inquiry involving an accident resulting in Injury or at any coroner's inquiry or defending any proceedings in a court of summary jurisdiction.

Provided that LIU shall not pay any legal costs and/or expenses in respect of any Occurrence after LIU has paid compensation up to the Limit of Indemnity.

Provided further that the legal costs and/or expenses incurred in connection with claims made and/or actions instituted within the United States of America or Canada and their respective territories and protectorates or any other territory coming within the jurisdiction of the courts of these countries, shall form part of the Limit of Indemnity and will not be payable by LIU in addition to the Limit of Indemnity.

In the event the Insured is a party to a demand, legal proceedings, inquiry or hearing which is covered only in part by this Policy, the Insured and LIU will use their best efforts to agree upon a fair and proper allocation of legal costs and/or expenses or any other amount insured under this Policy which relate solely to what is covered under this Policy.

In the event that an agreement cannot be reached, a Senior Counsel (to be mutually agreed upon by LIU and the Insured) shall, as an expert and not an arbitrator, determine a fair and proper allocation. Until the Senior Counsel has made a determination LIU may, in its absolute discretion, pay such legal costs and/or expenses or any other amount insured under this Policy as it considers appropriate.

## 7   Exclusions

This Policy does not cover liability directly or indirectly caused by, arising out of or in any way connected with:

    7.1    The ownership, maintenance, operation, possession, use, loading or unloading by or on behalf of the Insured of any motor vehicle or trailer which is required by law to be registered or in respect of which there is required by law to be in force a policy of compulsory liability insurance or in relation to which there existed a statutory scheme providing compensation for Injury, but this exclusion does not apply to:

        7.1.1    Injury for which no indemnity is or would be available to the Insured under the said policy of compulsory liability insurance had the Insured complied with its obligations pursuant to such law;



7.1.2     Injury caused by the use of any tool or plant forming part of or attached to or used in connection with any motor vehicle or trailer for which no indemnity is or would be available to the Insured under the said policy of compulsory liability insurance had the Insured complied with its obligations pursuant to such law;

7.1.3     Damage caused by the use of any tool or plant forming part of or attached to or used in connection with any motor vehicle or trailer;

7.1.4     Damage to any bridge, weighbridge or road, or anything beneath such bridge, weighbridge or road caused by the weight of any motor vehicle or trailer or of the load carried thereon; or

7.1.5     Damage to any motor vehicle or trailer (not owned, leased or hired by, under hire purchase, on loan or rented to the Insured) temporarily in the Insured's custody or control for the purpose of parking and directly arising out of such parking.

7.2     Damage to property owned, leased, hired by, under hire purchase, on loan or rented to the Insured or otherwise in the Insured's care, custody or control other than:

7.2.1     Premises (or to contents thereof) temporarily occupied by the Insured for the purpose of carrying out works thereto or thereon, but no indemnity is granted for liability in respect of physical damage to or destruction of that part of any premises or contents on which the Insured is or has been working on if the physical damage or destruction arises from such work;

7.2.2     Premises tenanted by the Insured;

7.2.3     Directors', employees' and visitors' clothing and personal effects; or

7.2.4     Other property not owned by the Insured but temporarily in the Insured's possession provided:

7.2.4.1     No indemnity is granted for liability in respect of physical damage to or destruction of that part of any property upon which the Insured is or has been working on if the physical damage or destruction arises from such work; and

7.2.4.2     LIU's limit of liability under this Clause 7.2.4 does not exceed AUD100,000 each and every Occurrence and in the aggregate for any one Period of Insurance,

Provided further that no indemnity is granted under this Policy in respect of liability assumed by the Insured under any contract or agreement which requires the Insured to effect material damage insurance on premises, property or goods not owned by the Insured.

7.3     Damages claimed for, and/or the costs of withdrawal, recall, inspection, repair, replacement, disposal or loss of use of the Insured's Products or of any property of which such Products form a part, if such Products or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

7.4     Damage to the Insured's Products if such Damage is attributable to any defect therein or harmful nature or unsuitability thereof.

7.5     The cost of performing, completing, correcting or improving any work undertaken by the Insured.



7.6      Any Product guarantee or warranty given by or on behalf of the Insured but this exclusion shall not apply to the requirements of any Federal or State legislation with respect to Product safety and information.

7.7      Liability assumed under the terms of a contract, agreement or warranty unless and only to the extent that the Insured would have been liable in the absence of such contract, agreement or warranty.

7.8      Liability assumed where the Insured may have been able to recover from another party but for an agreement between the Insured and such party where the Insured has waived, released or abandoned any right of recourse or recovery against any party.

7.9      Any Product which is incorporated into the structure, machinery or controls of any aircraft, aerial device, watercraft or hovercraft.

7.10     Injury to any Worker.

Provided that if the Insured:

7.10.1    Is required by law to insure or otherwise fund, whether through self insurance, statutory fund or other statutory scheme, all or part of any common law liability (whether limited in amount or not) for such Injury; or

7.10.2    Is not required to so insure or otherwise fund such liability by reason only that the Injury is to a person who is not a Worker or "employee" within the meaning of the relevant Workers' Compensation Law or the Injury is not an Injury which is subject to such Law,

Then this Policy will respond to the extent that the Insured's liability would not be covered under any such fund, scheme, policy of insurance or self insurance arrangement had the Insured complied with it's obligations pursuant to such Law.

7.11     7.11.1    Any Workers' Compensation Law;

7.11.2    The provisions of any industrial award or agreement or determination or any contract of employment or workplace agreement where such liability would not have been imposed in the absence of such industrial award or agreement or determination; or

7.11.3    Employment Practices.

7.12     Libel, slander and/or other defamation:

7.12.1    Made prior to the commencement of the Period of Insurance;

7.12.2    Made at the Insured's direction or with the Insured's authority or with knowledge of its falsity; or

7.12.3    Related to advertising, broadcasting, telecasting or publishing activities conducted by or on behalf of the Insured.

7.13     The loss of use of tangible property which has not been physically damaged or destroyed resulting from:

7.13.1    A delay in or lack of performance by or on behalf of the Insured of any contract or agreement; or



7.13.2   The failure of any Product to meet the level of performance, quality, fitness or durability expressly or impliedly warranted or represented by the Insured but this exclusion does not apply to loss of use of other tangible property directly or indirectly caused by, arising out of or in any way connected with or resulting from the sudden and accidental physical damage to or destruction of the Product after such Product has been put to use by any person or organisation other than the Insured.

7.14   Any change in the nature of the Insured's Business which:

7.14.1   Occurred during the currency of this Policy; and

7.14.2   Was known by the Insured, or would have been known by a reasonable person in the circumstances, to be likely to increase the risk of Injury or Damage for which indemnity is provided by this Policy.

For the purposes of this exclusion, where the Insured is a corporate body, the knowledge of any director or officer of the Insured shall be deemed to be the knowledge of the Insured.

7.15   The rendering of or failure to render professional advice or service or any error or omission connected therewith given for a fee by the Insured or any person covered by Clause 3 of this Policy.

Provided that this exclusion does not apply to the rendering of first aid or medical services on the Insured's premises by medical persons employed by the Insured.

7.16   7.16.1   The actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants;

7.16.2   Testing, monitoring, clean up, removal, containment, treatment, detoxifying or neutralising of Pollutants or their effect;

7.16.3   The actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants caused by any Product that has been discarded, dumped, abandoned or thrown away by others; or

7.16.4   Any expenses for the prevention of the actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants.

Provided always that exclusions 7.16.1, 7.16.2 and 7.16.3 shall not apply to liability which is directly caused by a sudden, accidental, instantaneous, unintended, identifiable and unexpected happening which takes place in its entirety at a specific time and place.

The total aggregate liability of LIU for all claims covered in any one Period of Insurance in respect of the proviso above shall not exceed the Limit of Indemnity shown in the Schedule.

7.17   Injury sustained due to the inhalation or ingestion of, or exposure to:

7.17.1   Tobacco or tobacco smoke; or

7.17.2   Any ingredient or additive present in any articles, items or goods which contain or include tobacco.

7.18   7.18.1   Ionising radiations or contamination from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.  Combustion shall include any self sustaining process of nuclear fission or fusion; or



7.18.2   Nuclear weapons material.

7.19   And regardless of any other cause or event contributing concurrently or in any other sequence to the loss:

7.19.1   War and military action which includes without limitation the following:

7.19.1.1   War, including undeclared or civil war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), military or usurped power or confiscation, nationalisation, requisition, destruction of or damage to property by or under the order of any government or public or local authority;

7.19.1.2   Warlike action by military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

7.19.1.3   Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

7.19.2   Any actual or threatened act of domestic or international Terrorism committed by a person or persons acting:

7.19.2.1   Alone or on behalf of or in connection with any organisation; or

7.19.2.2   With the goal of furthering any political, social, religious, ideological or similar objective.

7.19.3   Action taken to prevent or defend against an act of Terrorism.

If an act of Terrorism involves chemical or biological weapons, this Terrorism exclusion will still apply.

If an act of Terrorism involves nuclear reaction, nuclear radiation or radioactive contamination, this Terrorism exclusion will apply to liabilities that result from such nuclear reaction or nuclear radiation or radioactive contamination in place of Exclusion 7.18.

7.20   The ownership, maintenance, operation, possession or use by or on behalf of the Insured of:

7.20.1   Any aircraft or aerial device;

7.20.2   Any watercraft exceeding 10 metres in length; or

7.20.3   Any hovercraft.

7.21   The Deductible and/or self insured retention shown in the Schedule.

7.22   The erection, demolition, alteration of and/or addition to buildings by or on behalf of the Insured except for contracts not exceeding in cost the sum of AUD500,000 or 10% of the Limit of Indemnity whichever is the lesser.

7.23   Asbestos.

7.24   7.24.1   Claims made and actions instituted within the United States of America or Canada and their respective territories and protectorates, and any other territory coming within the jurisdiction of the courts of the United States of America or Canada; or



7.24.2    Claims and actions to which the laws of the United States of America or Canada and their respective territories and protectorates apply.

Provided that this exclusion does not apply to claims and actions caused by an employee of the Insured who normally resides in Australia while such employee is temporarily travelling on behalf of the Insured outside Australia.

7.25    Fines, penalties, punitive damages, exemplary damages, multiplication of compensatory damages, liquidated damages and/or aggravated damages.

7.26    Any alleged or actual fraudulent, dishonest, malicious, wilful or criminal act or omission of the Insured or any person covered by Clause 3 of this Policy.

## 8    General Conditions

8.1    The Insured shall give written notice to LIU as soon as possible of any claim under this Policy and shall give all such additional information as LIU may require.

8.2    No admission, offer, promise, or payment shall be made or given by or on behalf of the Insured without the prior written consent of LIU who shall be entitled but not obligated to take over the conduct in the name of the Insured of the defence or settlement of any claim or to prosecute in the name of the Insured for their own benefit any claim for indemnity or damages or otherwise and shall have full discretion in the conduct of any proceedings and in the settlement of any claim and the Insured shall give all such information and assistance as LIU shall require.

8.3    This Policy and any endorsements attached to this Policy shall be read together as one contract and any word or expression to which a specific meaning has been attached in any part of this Policy or the Schedule shall bear such specific meaning wherever it may appear.

8.4    The amount shown within the Schedule as a Deductible and/or self insured retention is the first amount for all claims arising out of any one Occurrence which is to be borne by the Insured or any person covered by Clause 3 of this Policy.

8.5    LIU may at any time discharge its total liability to the Insured in respect of any one claim or series of claims arising from one Occurrence by paying to or on behalf of the Insured:

8.5.1    The total amount in respect of such claim to which the Insured is entitled to indemnity under this Policy;

8.5.2    The total amount sought by the claimant for such claim; or

8.5.3    The total amount for which such claim can be settled,

And in addition to such payment LIU will pay Defence Costs incurred up to the date of payment as provided for by Clause 6 of this Policy.

Upon such payment, LIU shall relinquish conduct or control of such claim and be under no further liability under this Policy in connection with such claim including but not limited to Defence Costs.

8.6    This Policy shall be interpreted in accordance with the laws of Australia and all claims for indemnity under this Policy shall be decided in accordance with those laws. All matters arising from or relating to the construction, operation or interpretation of the Policy shall be submitted to the exclusive jurisdiction of the Australian Courts.



8.7   The Insured must:

8.7.1   Exercise reasonable care that only competent Workers and/or employees are employed and take reasonable measures to maintain all premises, fittings and plant in sound condition;

8.7.2   Take all reasonable precautions to:

8.7.2.1   Prevent Injury and Damage;

8.7.2.2   Prevent the manufacture, sale or supply of defective Products; and

8.7.2.3   Comply and ensure that its Workers, servants and agents comply with all statutory obligations, by-laws or regulations imposed by any public authority for the safety of persons or property;

8.7.3   At its own expense take reasonable action to trace, recall or modify any Products containing any defect or deficiency which defect or deficiency the Insured has knowledge of or has reason to suspect; and

8.7.4   Assist and co-operate fully and promptly with LIU in the investigation, settlement or defence of any claim or matters relating or in connection thereto.

The amount of any benefit under this Policy for any liability caused or contributed to by the lack of such precautions, measures and compliances shall be reduced by the amount that fairly represents the extent to which LIU's interests have been prejudiced thereby.

8.8   Where the premium is provisionally based on the Insured's estimates, the Insured shall keep accurate records and after expiry of the Period of Insurance declare as soon as possible such details as LIU requires and the premium shall be adjusted and any difference paid by or allowed to the Insured as the case may be subject to any minimum premium that may apply.

8.9   The Insured may cancel this Policy at any time by giving notice in writing to LIU.

LIU may cancel this Policy at any time where:

8.9.1   It is entitled to do so pursuant to the *Insurance Contracts Act 1984* or any amendments thereto;

8.9.2   The Insured has failed to notify LIU of any specific act or omission where such notification is required under the terms or conditions of this Policy; or

8.9.3   The Insured has acted in contravention of or omitted to act in compliance with any term of this Policy which empowers LIU to refuse to pay a claim in the event of such contravention or omission.

Any notice of cancellation given by LIU shall take effect either at the time when another contract of insurance between the Insured and LIU or some other insurer (being a contract that is intended by the Insured to replace this Policy) is entered into or at 4pm on the 3rd business day after the date on which notice was given to the Insured by LIU, whichever is the earlier.



Where the Insured comprises more than one person or company, it is agreed that the Insured referred to in the Schedule shall be the agent of each of the other Insured persons or companies or others indemnified by Clause 3 for the purposes of receiving any notice of cancellation pursuant to this General Condition, or any other notice, statement, document or information relating to this Policy.

Where the Insured has a broker, nothing shall restrict LIU's right to notify the broker as agent of the Insured.

8.10 Notwithstanding anything else to the contrary in the Policy, whenever coverage provided by this Policy would be in violation of any applicable economic, trade or other sanction or law, such coverage shall be null and void and LIU has no obligation to pay a claim if to do so would breach that sanction or law.

8.11     8.11.1   Words importing persons shall include corporations and other legal entities;

           8.11.2   References in the singular shall be deemed to include the plural and vice versa;

           8.11.3   Words depicting any gender include reference to all other genders;

           8.11.4   References to any legislation or subordinate instruments shall refer to such legislation or subordinate instruments as amended from time to time and in force; and

           8.11.5   Headings have been included for ease of reference and it is understood and agreed that this Policy is not to be construed or interpreted by reference to such headings.

8.12 Each Insured agrees that LIU may issue by electronic mail or post any notices required to be given under the Insurance Contracts Act or otherwise.

8.13 Liberty International Underwriters is a trading name of Liberty Mutual Insurance Company ("LMIC"), a stock insurance company incorporated in Massachusetts USA. LMIC is an indirect subsidiary of Liberty Mutual Holding Company, Inc. ("LMHC"), a Massachusetts USA mutual holding company. NOTICE IS HEREBY GIVEN that the annual meeting of LMHC is held on the second Wednesday in April of each year at ten o'clock in the morning, local time, at LMHC's office at 175 Berkeley Street, Boston, Massachusetts USA. This notice is for members of LMHC only. One becomes a member of LMHC by virtue of being a policyholder of LMIC. Membership rights terminate when one ceases to be a policyholder of LMIC. Members of LMHC may request a copy of LMHC's annual financial statements, which are posted on Liberty Mutual's website at www.libertymutual.com by writing to Liberty Mutual Holding Company Inc., 175 Berkeley Street, Boston, Massachusetts 02116.

Signed on behalf of Liberty International Underwriters



_____         3rd May 2013

For and on behalf of                    Date
Liberty International Underwriters



Insured: The Fire Company Pty Ltd and EcoSmart Inc

Endorsements effective from: 30th April 2013

## Endorsement 1.

### USA – Canada (incl. Domiciled Operations & Jurisdiction)

The following amendments are made to this Policy in respect of the Insured's operations and the Insured's Products exported by the Insured to the United States of America or Canada:

1.  In respect to the Insured's operations domiciled in the United States of America or Canada only and Products exported to the United States of America or Canada, Exclusion 7.16 is deleted and replaced by the following:

    7.16   7.16.1   The actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants;

    7.16.2   Any expenses for the prevention of the actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants;

    7.16.3   Testing, monitoring, clean up, removal, containment, treatment, detoxifying or neutralising of Pollutants or their effect;

    7.16.4   The actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants caused by any Product that has been discarded, dumped, abandoned or thrown away by others.

2.  Exclusion 7.24 is deleted.

## Endorsement 2.

### Vendors Liability

1.  Clause 3 **Indemnity to Others**, is extended to include the following:

    3.5   Any person or organisation designated below in the Schedule of Vendors (herein referred to as "Vendor") but only with respect to the distribution or sale of the Insured's Products provided always that the Vendor shall observe, fulfill and be subject to the terms, conditions, limitations and exclusions of this Policy in so far as they can apply as though they were the Insured.

    This endorsement does not cover liability directly or indirectly caused by, arising out of or in any way connected with:

    1.   Any warranty given by the Vendor;

    2.   Any liability assumed by the Vendor under contract or agreement which would not have attached in the absence of such contract or agreement;

    3.   The distribution or sale for a purpose unauthorised by the Insured;

    4.   Any act, error or omission of the Vendor which changes the condition of any Product;

    5.   The failure by the Vendor to maintain any Product in merchantable condition;



6.   Any failure to make such inspections, adjustments, tests or servicing as the Vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of any Product;

7.   Any Product which after distribution or sale by the Insured has been labelled, relabelled, packaged, repackaged or replaced by the Vendor;

8.   Any Product which after distribution or sale by the Insured is used as a container, part or ingredient of any other product, thing or substance by or for the Vendor;

9.   The demonstration, assembly, installation, servicing or repair of any Product by the Vendor;

10.  Any Injury or Damage happening within the Vendor's premises;

11.  The liability of any person or organisation from whom the Insured has acquired any Product or any ingredient or part contained in or forming part of such Product or container accompanying or containing such Product; or

12.  Any Product design, formula or specification supplied by the Vendor.

2.   **Schedule Of Vendors**

| **Name** | **Address** |
|---|---|
| Room and Board Inc | 4600 Olson Memorial Hwy Frontage Road |
| | Minneapolis, MN 55422 USA |

Nothing contained in these endorsements shall in any way serve to increase the Limit of Indemnity stated in the Schedule.

Other than as amended above, the terms of this Policy shall continue to apply.



3rd May 2013

For and on behalf of
Liberty International Underwriters

Date

Ex. 2



**Liberty International Underwriters**

Combined General & Products Liability Policy



Liberty
International
Underwriters



Liberty
International
Underwriters

## Policy Schedule

| | | |
|---|---|---|
| 1. | POLICY NUMBER: | SY-CAS-13-438176 |
| 2. | INSURED: | The Fire Company Pty Ltd and EcoSmart Inc |
| 3. | PERIOD OF INSURANCE: | From: 30th April 2014 at 4pm local standard time<br>To: 30th April 2015 at 4pm local standard time |
| 4. | INSURED'S BUSINESS: | Design, manufacture, distribution, retailer, wholesaler and importer of ethanol fireplaces, burners and accessories. |
| 5. | LIMIT OF INDEMNITY: | AUD20,000,000 any one Occurrence in respect of public liability and in the aggregate during the Period of Insurance in respect of Product liability. |
| 6. | DEDUCTIBLES: | AUD10,000 each and every Occurrence (costs inclusive).<br><br>Other than in respect of claims for Injury to contractors, subcontractors and/or labour hire workers for which the Deductible is AUD 25,000 any one Occurrence (costs inclusive) and for losses in North America arising out of any fuel whether supplied by the Insured or by a third party vendor and/or any device intended to hold, store, decant or transport fuel which is AUD 250,000 any one Occurrence (cost inclusive). |
| 7. | POLICY WORDING: | LIU Combined General & Products Liability Policy form LIU-AUS-CAS-CGL-2000001 and attached endorsements. |
| 8. | PREMIUM: | AUD150,000 plus charges. |

This Schedule attaches to and forms part of LIU Combined General & Products Liability Policy Form LIU-AUS-CAS-CGL-2000001 and is valid only if it is signed and dated below by a person duly authorised by Liberty International Underwriters.



_____

For and on behalf of
Liberty International Underwriters

8th July 2014

Date



## Combined General & Products Liability Policy

In consideration of the premium being paid by the Insured to LIU and in reliance upon the written statements and declarations contained in the proposal or insurance broker's quotation submission, LIU agrees to indemnify the Insured in accordance with the attached Schedule, Policy wording and endorsements where applicable.

## 1   Insuring Clause

Subject to the terms of this Policy, LIU will pay to or on behalf of the Insured all sums which the Insured shall become legally liable to pay by way of compensation in respect of Injury and/or Damage first happening during the Period of Insurance as a result of an Occurrence in connection with the Insured's Business.

## 2   Definitions

2.1   "Asbestos" means:

2.1.1   That group of natural fibrous silicate minerals that comprises Actinolite, Amosite, Anthophyllite, Chrysotile, Crocidolite and Tremolite; or

2.1.2   That group of man made mineral fibres that comprises mineral wool, rockwool, glass fibre, ceramic fibres and superfine fibres,

And includes Asbestos Products and Products containing Asbestos.

2.2   "Damage" means:

2.2.1   Physical damage to or destruction of tangible property including all resulting loss of use of that property. All such loss of use shall be deemed to happen at the time of the physical damage that caused it; or

2.2.2   Loss of use of tangible property that is not physically damaged or destroyed provided such loss of use is caused by physical damage to other tangible property which first happened during the Period of Insurance. All such loss of use shall be deemed to happen at the time of the physical damage or destruction that caused it.

2.3   "Employment Practices" means any wrongful or unfair dismissal, denial of natural justice, defamation, misleading representation or advertising, unfair contracts, harassment or discrimination (sexual or otherwise) in respect of employment by the Insured.

2.4   "Injury" means:

2.4.1   Bodily injury, death, sickness, disease, disability, shock, fright, mental anguish and mental injury;

2.4.2   False arrest, wrongful detention or imprisonment, malicious prosecution;

2.4.3   Wrongful entry or eviction;



2.4.4      Assault and battery not committed by or at the direction of the Insured unless committed for the purpose of preventing Injury and/or Damage or eliminating danger; or

2.4.5      Libel, slander, defamation of character or invasion of right of privacy.

2.5      "Insured" wherever used in this Policy means the Insured named in the Schedule and:

2.5.1      Any subsidiary company of the Insured incorporated within Australia including subsidiaries thereof; or

2.5.2      Any other entity incorporated within Australia controlled by the Insured and over which the Insured assumes active management.

2.6      "Insured's Business" is the business shown in the Schedule.

2.7      "LIU" means Liberty International Underwriters. Liberty International Underwriters is a trading name of Liberty Mutual Insurance Company (ABN 61 086 083 605). Incorporated in Massachusetts, USA (The liability of members is limited).

2.8      "Limit of Indemnity" means the amount stated in the Schedule pursuant to Clause 5 of this Policy.

2.9      "Occurrence" means an event, including continuous or repeated exposure to substantially the same general conditions, which results in Injury and/or Damage neither expected nor intended from the standpoint of the Insured. All events of a series consequent on or attributable to one source or original cause shall be deemed one Occurrence.

2.10      "Period of Insurance" is the period shown in the Policy.

2.11      "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to smoke, vapour, soot, fumes, cinders, dust, odours, noise, acids, alkalis, chemicals or waste. Waste includes materials to be recycled, reconditioned or reclaimed.

2.12      "Product" means any commodity, article or thing (after it has ceased to be in the possession or under the control of the Insured) which is or is deemed (whether by law or otherwise) to have been manufactured, constructed, grown, extracted, produced, processed, assembled, erected, installed, treated, altered, serviced, repaired, sold, handled, supplied or distributed by the Insured or by others trading under the name of the Insured (including any container thereof other than a motor vehicle).

2.13      "Terrorism" means an act or acts:

2.13.1      That are violent in nature or are dangerous to human life:

2.13.1.1      That are a violation of the criminal laws of the United States of America or Australia or of any State or Territory of the United States of America or Australia or that would be a criminal violation if committed within the jurisdiction of the United States of America or Australia or any State or Territory of the United States of America or Australia and that have the apparent intent of:

2.13.1.1.1      Intimidating or coercing any civilian population;

2.13.1.1.2      Influencing the policy of any government by intimidation or coercion; or



2.13.1.1.3    Affecting the conduct of any government by mass destruction, assassination or kidnapping,

Or

2.13.2    That result in:

2.13.2.1    The denial of access to or services from web sites, computer networks or telecommunication equipment; or

2.13.2.2    The malfunction or degradation of web sites, computer networks, telecommunications equipment, mechanical equipment or the interruption to the functioning of web sites or such properties,

And that have the apparent intent of intimidating or coercing any civilian population or influencing the policy of any government by intimidation or coercion.

2.14    "Worker" means any person employed by the Insured or deemed to be employed by the Insured whether pursuant to any Workers' Compensation Law or otherwise.

2.15    "Workers' Compensation Law" means any law relating to compensation for Injury to Workers or employees.

## 3    Indemnity to Others

Subject to the terms of this Policy and in accordance with Insuring Clause 1, this Policy will extend to pay to or on behalf of:

3.1    Any principal, in respect of that principal's vicarious liability for the negligent acts or omissions of the Insured pursuant to Definition 2.5 and arising out of the Insured's Business, but this Policy does not extend to the liability of any principal howsoever arising out of the negligence, breach of contract or breach of duty of such principal;

3.2    Any director, executive officer or Worker of the Insured or, where the Insured is a partnership, any partner of the Insured, but only while acting within the scope of their duties in such capacity;

3.3    The officers, committee and members of the Insured's canteen, social, sports, first aid/medical, fire fighting and employee welfare organisations in their respective capacity as such; or

3.4    The legal personal representative of any person entitled to indemnity under this Clause 3 in circumstances giving rise to indemnity under this Policy.

Provided always that all such persons or parties shall, whilst not being a party to this contract, observe, fulfil and be subject to the terms of this Policy in so far as they can apply as though they were the Insured.

## 4    Cross Liabilities

Subject at all times to the terms of this Policy, each person or party indemnified is separately indemnified in respect of claims made by any of them against any other of them provided that LIU's total liability shall not exceed the Limit of Indemnity for all claims under this Policy.



## 5    Limit of Indemnity

LIU's liability to pay compensation shall not exceed the sum stated in the Schedule in respect of any one claim or series of claims arising from one Occurrence.

The total aggregate liability of LIU for any one Period of Insurance for all claims in respect of or in any way connected with the Insured's Products shall not exceed the Limit of Indemnity stated in the Schedule.

## 6    Defence Costs

In addition to the Limit of Indemnity, LIU will pay all reasonable legal costs and/or expenses incurred with LIU's prior written consent in connection with any claim for which the Insured is indemnified by this Policy.

Provided that LIU shall not be liable for legal costs and/or expenses where indemnity is not provided by this Policy.

Provided that LIU shall not be liable for legal costs and/or expenses for or in respect of representation at any formal legal inquiry involving an accident resulting in Injury or at any coroner's inquiry or defending any proceedings in a court of summary jurisdiction.

Provided that LIU shall not pay any legal costs and/or expenses in respect of any Occurrence after LIU has paid compensation up to the Limit of Indemnity.

Provided further that the legal costs and/or expenses incurred in connection with claims made and/or actions instituted within the United States of America or Canada and their respective territories and protectorates or any other territory coming within the jurisdiction of the courts of these countries, shall form part of the Limit of Indemnity and will not be payable by LIU in addition to the Limit of Indemnity.

In the event the Insured is a party to a demand, legal proceedings, inquiry or hearing which is covered only in part by this Policy, the Insured and LIU will use their best efforts to agree upon a fair and proper allocation of legal costs and/or expenses or any other amount insured under this Policy which relate solely to what is covered under this Policy.

In the event that an agreement cannot be reached, a Senior Counsel (to be mutually agreed upon by LIU and the Insured) shall, as an expert and not an arbitrator, determine a fair and proper allocation. Until the Senior Counsel has made a determination LIU may, in its absolute discretion, pay such legal costs and/or expenses or any other amount insured under this Policy as it considers appropriate.

## 7    Exclusions

This Policy does not cover liability directly or indirectly caused by, arising out of or in any way connected with:

7.1      The ownership, maintenance, operation, possession, use, loading or unloading by or on behalf of the Insured of any motor vehicle or trailer which is required by law to be registered or in respect of which there is required by law to be in force a policy of compulsory liability insurance or in relation to which there existed a statutory scheme providing compensation for Injury, but this exclusion does not apply to:

7.1.1     Injury for which no indemnity is or would be available to the Insured under the said policy of compulsory liability insurance had the Insured complied with its obligations pursuant to such law;



7.1.2 Injury caused by the use of any tool or plant forming part of or attached to or used in connection with any motor vehicle or trailer for which no indemnity is or would be available to the Insured under the said policy of compulsory liability insurance had the Insured complied with its obligations pursuant to such law;

7.1.3 Damage caused by the use of any tool or plant forming part of or attached to or used in connection with any motor vehicle or trailer;

7.1.4 Damage to any bridge, weighbridge or road, or anything beneath such bridge, weighbridge or road caused by the weight of any motor vehicle or trailer or of the load carried thereon; or

7.1.5 Damage to any motor vehicle or trailer (not owned, leased or hired by, under hire purchase, on loan or rented to the Insured) temporarily in the Insured's custody or control for the purpose of parking and directly arising out of such parking.

7.2 Damage to property owned, leased, hired by, under hire purchase, on loan or rented to the Insured or otherwise in the Insured's care, custody or control other than:

7.2.1 Premises (or to contents thereof) temporarily occupied by the Insured for the purpose of carrying out works thereto or thereon, but no indemnity is granted for liability in respect of physical damage to or destruction of that part of any premises or contents on which the Insured is or has been working on if the physical damage or destruction arises from such work;

7.2.2 Premises tenanted by the Insured;

7.2.3 Directors', employees' and visitors' clothing and personal effects; or

7.2.4 Other property not owned by the Insured but temporarily in the Insured's possession provided:

7.2.4.1 No indemnity is granted for liability in respect of physical damage to or destruction of that part of any property upon which the Insured is or has been working on if the physical damage or destruction arises from such work; and

7.2.4.2 LIU's limit of liability under this Clause 7.2.4 does not exceed AUD100,000 each and every Occurrence and in the aggregate for any one Period of Insurance,

Provided further that no indemnity is granted under this Policy in respect of liability assumed by the Insured under any contract or agreement which requires the Insured to effect material damage insurance on premises, property or goods not owned by the Insured.

7.3 Damages claimed for, and/or the costs of withdrawal, recall, inspection, repair, replacement, disposal or loss of use of the Insured's Products or of any property of which such Products form a part, if such Products or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

7.4 Damage to the Insured's Products if such Damage is attributable to any defect therein or harmful nature or unsuitability thereof.

7.5 The cost of performing, completing, correcting or improving any work undertaken by the Insured.



7.6    Any Product guarantee or warranty given by or on behalf of the Insured but this exclusion shall not apply to the requirements of any Federal or State legislation with respect to Product safety and information.

7.7    Liability assumed under the terms of a contract, agreement or warranty unless and only to the extent that the Insured would have been liable in the absence of such contract, agreement or warranty.

7.8    Liability assumed where the Insured may have been able to recover from another party but for an agreement between the Insured and such party where the Insured has waived, released or abandoned any right of recourse or recovery against any party.

7.9    Any Product which is incorporated into the structure, machinery or controls of any aircraft, aerial device, watercraft or hovercraft.

7.10    Injury to any Worker.

Provided that if the Insured:

7.10.1    Is required by law to insure or otherwise fund, whether through self insurance, statutory fund or other statutory scheme, all or part of any common law liability (whether limited in amount or not) for such Injury; or

7.10.2    Is not required to so insure or otherwise fund such liability by reason only that the Injury is to a person who is not a Worker or "employee" within the meaning of the relevant Workers' Compensation Law or the Injury is not an Injury which is subject to such Law,

Then this Policy will respond to the extent that the Insured's liability would not be covered under any such fund, scheme, policy of insurance or self insurance arrangement had the Insured complied with it's obligations pursuant to such Law.

7.11    7.11.1    Any Workers' Compensation Law;

7.11.2    The provisions of any industrial award or agreement or determination or any contract of employment or workplace agreement where such liability would not have been imposed in the absence of such industrial award or agreement or determination; or

7.11.3    Employment Practices.

7.12    Libel, slander and/or other defamation:

7.12.1    Made prior to the commencement of the Period of Insurance;

7.12.2    Made at the Insured's direction or with the Insured's authority or with knowledge of its falsity; or

7.12.3    Related to advertising, broadcasting, telecasting or publishing activities conducted by or on behalf of the Insured.

7.13    The loss of use of tangible property which has not been physically damaged or destroyed resulting from:

7.13.1    A delay in or lack of performance by or on behalf of the Insured of any contract or agreement; or



7.13.2   The failure of any Product to meet the level of performance, quality, fitness or durability expressly or impliedly warranted or represented by the Insured but this exclusion does not apply to loss of use of other tangible property directly or indirectly caused by, arising out of or in any way connected with or resulting from the sudden and accidental physical damage to or destruction of the Product after such Product has been put to use by any person or organisation other than the Insured.

7.14   Any change in the nature of the Insured's Business which:

7.14.1   Occurred during the currency of this Policy; and

7.14.2   Was known by the Insured, or would have been known by a reasonable person in the circumstances, to be likely to increase the risk of Injury or Damage for which indemnity is provided by this Policy.

For the purposes of this exclusion, where the Insured is a corporate body, the knowledge of any director or officer of the Insured shall be deemed to be the knowledge of the Insured.

7.15   The rendering of or failure to render professional advice or service or any error or omission connected therewith given for a fee by the Insured or any person covered by Clause 3 of this Policy.

Provided that this exclusion does not apply to the rendering of first aid or medical services on the Insured's premises by medical persons employed by the Insured.

7.16   7.16.1   The actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants;

7.16.2   Testing, monitoring, clean up, removal, containment, treatment, detoxifying or neutralising of Pollutants or their effect;

7.16.3   The actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants caused by any Product that has been discarded, dumped, abandoned or thrown away by others; or

7.16.4   Any expenses for the prevention of the actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants.

Provided always that exclusions 7.16.1, 7.16.2 and 7.16.3 shall not apply to liability which is directly caused by a sudden, accidental, instantaneous, unintended, identifiable and unexpected happening which takes place in its entirety at a specific time and place.

The total aggregate liability of LIU for all claims covered in any one Period of Insurance in respect of the proviso above shall not exceed the Limit of Indemnity shown in the Schedule.

7.17   Injury sustained due to the inhalation or ingestion of, or exposure to:

7.17.1   Tobacco or tobacco smoke; or

7.17.2   Any ingredient or additive present in any articles, items or goods which contain or include tobacco.

7.18   7.18.1   Ionising radiations or contamination from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.  Combustion shall include any self sustaining process of nuclear fission or fusion; or



7.18.2   Nuclear weapons material.

7.19   And regardless of any other cause or event contributing concurrently or in any other sequence to the loss:

   7.19.1   War and military action which includes without limitation the following:

      7.19.1.1   War, including undeclared or civil war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), military or usurped power or confiscation, nationalisation, requisition, destruction of or damage to property by or under the order of any government or public or local authority;

      7.19.1.2   Warlike action by military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

      7.19.1.3   Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

   7.19.2   Any actual or threatened act of domestic or international Terrorism committed by a person or persons acting:

      7.19.2.1   Alone or on behalf of or in connection with any organisation; or

      7.19.2.2   With the goal of furthering any political, social, religious, ideological or similar objective.

   7.19.3   Action taken to prevent or defend against an act of Terrorism.

   If an act of Terrorism involves chemical or biological weapons, this Terrorism exclusion will still apply.

   If an act of Terrorism involves nuclear reaction, nuclear radiation or radioactive contamination, this Terrorism exclusion will apply to liabilities that result from such nuclear reaction or nuclear radiation or radioactive contamination in place of Exclusion 7.18.

7.20   The ownership, maintenance, operation, possession or use by or on behalf of the Insured of:

   7.20.1   Any aircraft or aerial device;

   7.20.2   Any watercraft exceeding 10 metres in length; or

   7.20.3   Any hovercraft.

7.21   The Deductible and/or self insured retention shown in the Schedule.

7.22   The erection, demolition, alteration of and/or addition to buildings by or on behalf of the Insured except for contracts not exceeding in cost the sum of AUD500,000 or 10% of the Limit of Indemnity whichever is the lesser.

7.23   Asbestos.

7.24   7.24.1   Claims made and actions instituted within the United States of America or Canada and their respective territories and protectorates, and any other territory coming within the jurisdiction of the courts of the United States of America or Canada; or



7.24.2    Claims and actions to which the laws of the United States of America or Canada and their respective territories and protectorates apply.

Provided that this exclusion does not apply to claims and actions caused by an employee of the Insured who normally resides in Australia while such employee is temporarily travelling on behalf of the Insured outside Australia.

7.25    Fines, penalties, punitive damages, exemplary damages, multiplication of compensatory damages, liquidated damages and/or aggravated damages.

7.26    Any alleged or actual fraudulent, dishonest, malicious, wilful or criminal act or omission of the Insured or any person covered by Clause 3 of this Policy.

## 8    General Conditions

8.1    The Insured shall give written notice to LIU as soon as possible of any claim under this Policy and shall give all such additional information as LIU may require.

8.2    No admission, offer, promise, or payment shall be made or given by or on behalf of the Insured without the prior written consent of LIU who shall be entitled but not obligated to take over the conduct in the name of the Insured of the defence or settlement of any claim or to prosecute in the name of the Insured for their own benefit any claim for indemnity or damages or otherwise and shall have full discretion in the conduct of any proceedings and in the settlement of any claim and the Insured shall give all such information and assistance as LIU shall require.

8.3    This Policy and any endorsements attached to this Policy shall be read together as one contract and any word or expression to which a specific meaning has been attached in any part of this Policy or the Schedule shall bear such specific meaning wherever it may appear.

8.4    The amount shown within the Schedule as a Deductible and/or self insured retention is the first amount for all claims arising out of any one Occurrence which is to be borne by the Insured or any person covered by Clause 3 of this Policy.

8.5    LIU may at any time discharge its total liability to the Insured in respect of any one claim or series of claims arising from one Occurrence by paying to or on behalf of the Insured:

8.5.1    The total amount in respect of such claim to which the Insured is entitled to indemnity under this Policy;

8.5.2    The total amount sought by the claimant for such claim; or

8.5.3    The total amount for which such claim can be settled.

And in addition to such payment LIU will pay Defence Costs incurred up to the date of payment as provided for by Clause 6 of this Policy.

Upon such payment, LIU shall relinquish conduct or control of such claim and be under no further liability under this Policy in connection with such claim including but not limited to Defence Costs.

8.6    This Policy shall be interpreted in accordance with the laws of Australia and all claims for indemnity under this Policy shall be decided in accordance with those laws. All matters arising from or relating to the construction, operation or interpretation of the Policy shall be submitted to the exclusive jurisdiction of the Australian Courts.



8.7     The Insured must:

8.7.1   Exercise reasonable care that only competent Workers and/or employees are employed and take reasonable measures to maintain all premises, fittings and plant in sound condition;

8.7.2   Take all reasonable precautions to:

8.7.2.1   Prevent Injury and Damage;

8.7.2.2   Prevent the manufacture, sale or supply of defective Products; and

8.7.2.3   Comply and ensure that its Workers, servants and agents comply with all statutory obligations, by-laws or regulations imposed by any public authority for the safety of persons or property;

8.7.3   At its own expense take reasonable action to trace, recall or modify any Products containing any defect or deficiency which defect or deficiency the Insured has knowledge of or has reason to suspect; and

8.7.4   Assist and co-operate fully and promptly with LIU in the investigation, settlement or defence of any claim or matters relating or in connection thereto.

The amount of any benefit under this Policy for any liability caused or contributed to by the lack of such precautions, measures and compliances shall be reduced by the amount that fairly represents the extent to which LIU's interests have been prejudiced thereby.

8.8     Where the premium is provisionally based on the Insured's estimates, the Insured shall keep accurate records and after expiry of the Period of Insurance declare as soon as possible such details as LIU requires and the premium shall be adjusted and any difference paid by or allowed to the Insured as the case may be subject to any minimum premium that may apply.

8.9     The Insured may cancel this Policy at any time by giving notice in writing to LIU.

LIU may cancel this Policy at any time where:

8.9.1   It is entitled to do so pursuant to the *Insurance Contracts Act 1984* or any amendments thereto;

8.9.2   The Insured has failed to notify LIU of any specific act or omission where such notification is required under the terms or conditions of this Policy; or

8.9.3   The Insured has acted in contravention of or omitted to act in compliance with any term of this Policy which empowers LIU to refuse to pay a claim in the event of such contravention or omission.

Any notice of cancellation given by LIU shall take effect either at the time when another contract of insurance between the Insured and LIU or some other insurer (being a contract that is intended by the Insured to replace this Policy) is entered into or at 4pm on the 3rd business day after the date on which notice was given to the Insured by LIU, whichever is the earlier.



Where the Insured comprises more than one person or company, it is agreed that the Insured referred to in the Schedule shall be the agent of each of the other Insured persons or companies or others indemnified by Clause 3 for the purposes of receiving any notice of cancellation pursuant to this General Condition, or any other notice, statement, document or information relating to this Policy.

Where the Insured has a broker, nothing shall restrict LIU's right to notify the broker as agent of the Insured.

8.10   Notwithstanding anything else to the contrary in the Policy, whenever coverage provided by this Policy would be in violation of any applicable economic, trade or other sanction or law, such coverage shall be null and void and LIU has no obligation to pay a claim if to do so would breach that sanction or law.

8.11   8.11.1   Words importing persons shall include corporations and other legal entities;

8.11.2   References in the singular shall be deemed to include the plural and vice versa;

8.11.3   Words depicting any gender include reference to all other genders;

8.11.4   References to any legislation or subordinate instruments shall refer to such legislation or subordinate instruments as amended from time to time and in force; and

8.11.5   Headings have been included for ease of reference and it is understood and agreed that this Policy is not to be construed or interpreted by reference to such headings.

8.12   Each Insured agrees that LIU may issue by electronic mail or post any notices required to be given under the Insurance Contracts Act or otherwise.

8.13   Liberty International Underwriters is a trading name of Liberty Mutual Insurance Company ("LMIC"), a stock insurance company incorporated in Massachusetts USA. LMIC is an indirect subsidiary of Liberty Mutual Holding Company Inc. ("LMHC"), a Massachusetts USA mutual holding company. NOTICE IS HEREBY GIVEN that the annual meeting of LMHC is held on the second Wednesday in April of each year at ten o'clock in the morning, local time, at LMHC's office at 175 Berkeley Street, Boston, Massachusetts USA. This notice is for members of LMHC only. One becomes a member of LMHC by virtue of being a policyholder of LMIC. Membership rights terminate when one ceases to be a policyholder of LMIC. Members of LMHC may request a copy of LMHC's annual financial statements, which are posted on Liberty Mutual's website at www.libertymutual.com by writing to Liberty Mutual Holding Company Inc., 175 Berkeley Street, Boston, Massachusetts 02116.

Signed on behalf of Liberty International Underwriters

8th July 2014

For and on behalf of                                    Date
Liberty International Underwriters



Endorsements attaching to and forming part of Policy Number SY-CAS-13-438176

Insured: The Fire Company Pty Ltd

Endorsements effective from: 30th April 2014

Endorsement 1.

Contractual Liability Extension for Designated Contracts (Waiver of Subrogation and Indemnity)

Exclusions 7.7 and 7.8 are deleted and replaced by the following:

7.7 Liability assumed under the terms of a contract, agreement or warranty unless and only to the extent that the Insured would have been liable in the absence of such contract, agreement or warranty;

7.8 Liability assumed where the Insured may have been able to recover from another party but for an agreement between the Insured and such party where the Insured has waived, released or abandoned any right of recourse or recovery against any party.

Provided that these exclusions shall not apply to the following Designated Contracts:

DESIGNATED CONTRACTS

Trademark License Agreement with Brown Jordan International Inc.

Endorsement 2.

Vendors Liability

1. Clause 3 Indemnity to Others, is extended to include the following:

3.5 Any person or organisation designated below in the Schedule of Vendors (herein referred to as "Vendor") but only with respect to the distribution or sale of the Insured's Products provided always that the Vendor shall observe, fulfill and be subject to the terms, conditions, limitations and exclusions of this Policy in so far as they can apply as though they were the Insured.

This endorsement does not cover liability directly or indirectly caused by, arising out of or in any way connected with:

1. Any warranty given by the Vendor;

2. Any liability assumed by the Vendor under contract or agreement which would not have attached in the absence of such contract or agreement;

3. The distribution or sale for a purpose unauthorised by the Insured;

4. Any act, error or omission of the Vendor which changes the condition of any Product;

5. The failure by the Vendor to maintain any Product in merchantable condition;

6. Any failure to make such inspections, adjustments, tests or servicing as the Vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of any Product;



7.  Any Product which after distribution or sale by the Insured has been labelled, relabelled, packaged, repackaged or replaced by the Vendor;

8.  Any Product which after distribution or sale by the Insured is used as a container, part or ingredient of any other product, thing or substance by or for the Vendor;

9.  The demonstration, assembly, installation, servicing or repair of any Product by the Vendor;

10. Any Injury or Damage happening within the Vendor's premises;

11. The liability of any person or organisation from whom the Insured has acquired any Product or any ingredient or part contained in or forming part of such Product or container accompanying or containing such Product; or

12. Any Product design, formula or specification supplied by the Vendor.

2.  **Schedule Of Vendors**

| Name | Address |
|------|---------|
| Room and Board Inc | 4600 Olson Memorial Highway, Frontage Road Minneapolis, MN 55422 USA |

Endorsement 3.

**USA/Canada Domiciled Operations & Jurisdiction**

Definitions

For the avoidance of doubt, the definitions contained in clause 2 of the Policy apply for the purposes of this endorsement and no regard shall be had to specific definitions included for the purpose of other endorsements.

The Policy is amended as set out below but only in respect of:

a.  the Insured's operations domiciled in the United States of America and/or Canada; and

b.  any Product manufactured, distributed or exported within the United States of America and/or Canada.

1.  Exclusion 7.16 is deleted and replaced by the following:

7.16  7.16.1  The actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants;

7.16.2  Testing, monitoring, clean up, removal, containment, treatment, detoxifying or neutralising of Pollutants or their effect;

7.16.3  The actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants caused by any Product that has been discarded, dumped, abandoned or thrown away by others; or



7.16.4    Any expenses for the prevention of the actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants.

2.    Exclusion 7.24 is deleted and replaced with the following.

7.24    Claims made and actions instituted within the United States of America or Canada and their respective territories and protectorates, and any other territory coming within the jurisdiction of the courts of the United States of America or Canada arising out of or anyway connected with:

7.24.1    any fuel; and/or

7.24.2    any Product intended to hold, store, decant, or transport fuel of any kind.

7.24.3    However, this exclusion shall not apply to any fuel or Product intended to hold, store, decant, or transport fuel of any kind that:

7.24.3.1    was manufactured by or at the direction of the Insured in strict compliance with the engineering specifications expressly approved by LIU; and

7.24.3.2    was fitted with a flame arrester in circumstances where both the flame arrester and the manner of installation were each expressly approved by LIU; and

7.24.3.3    is the subject of definitive evidence showing that the fuel or Product intended to hold, store, decant, or transport fuel was purchased by a third party (not including a retailer or wholesaler) on or after 18th June 2014.

LIU's Limit of Indemnity under clause 7.24.3 shall not, in any event, exceed AUD 2,500,000 each and every Occurrence and in the aggregate for any one Period of Insurance.

Furthermore, the Insured is entitled under clause 7.24.3 to a maximum of two (2) Product liability limit reinstatements. Accordingly, LIU will provide two (2) reinstatement/s of AUD 2,500,000 any one Occurrence and in the aggregate, in respect of Product liability if the Limit of Indemnity applying to clause 7.24.3 is exhausted due to the payment of amounts insured under this Policy, but:

a.    LIU will only provide such reinstatement/s if cover available under any policy or policies in excess of this Policy has been exhausted; and



b.   provided always that LIU will pay no more than a single Limit of
Indemnity in respect of each Occurrence insured under this Policy.

Endorsement 4.

Existing Products Endorsement (Claims Made)

Retroactive Date:                              30th April 2014
Endorsement Period:                        From: 30th April 2014
                                                       To: 30th June 2014
                                                       At 4pm local standard time

1.   Notice to the Insured

This endorsement provides cover on a Claims made and notified basis.

1.1   A Claim must be made against the Insured during the Endorsement Period; and

1.2   The Insured must notify LIU in writing of such Claim during the Endorsement Period.

2.   Insuring Clause

Subject to the terms and conditions of the Policy and this endorsement, LIU will pay to or on
behalf of the Insured all sums which the Insured shall become legally liable to pay by way of
compensation as a result of a Claim both first made against the Insured and notified to LIU
during the Endorsement Period for Injury and/or Damage, first happening after the
Retroactive Date as a result of an Occurrence in connection with the Insured's Product
exported to or distributed within North America.

3.   Definitions

3.1   "Claim" means:

3.1.1   Any writ, statement of claim, summons, application or other originating legal
or arbitral process, cross claim, counterclaim or third or similar party notice
issued against or served upon the Insured; or

3.1.2   The receipt by the Insured of any written or verbal notice of demand for
compensation made by a third party against the Insured.

3.2   For the purposes of this extension only, Definition 2.12 "Product" is deleted and
replaced by the following:

"Product" means any fuel source or device intended to house, store, decant, or
transport fuel which has not been fitted a flame arrester.



3.3    "Retroactive Date" means the date specified in this Endorsement.

3.4    "Endorsement Period" means the period specified in this endorsement.

4.    Limit of Indemnity

LIU's liability to pay compensation under this endorsement shall not exceed AUD 2,500,000 any one Claim and in the aggregate during the Endorsement Period.

Further, all payments made under this endorsement will also contribute towards the exhaustion of the aggregate Limit of Indemnity in respect of Products liability shown on the Policy Schedule.

All claims of a series consequent on or attributable to one source or original cause shall be deemed one Claim.

A deductible of AUD 250,000 each and every Claim (costs inclusive) shall be borne by the Insured at their own risk and LIU's liability shall only be in excess of this amount.

5.    Defence Costs

LIU agrees to pay all legal costs and expenses incurred with LIU's prior written consent in connection with any Claim for which indemnity is available under this endorsement, provided that such legal costs and expenses are included within the Limit of Indemnity applicable to this endorsement.

Provided that LIU shall not be liable for legal costs and/or expenses where indemnity is not provided by this endorsement.

In the event the Insured is a party to a demand, legal proceedings, inquiry or hearing which is covered only in part by this endorsement, the Insured and LIU will use their best efforts to agree upon a fair and proper allocation of legal costs and/or expenses or any other amount insured under this endorsement which relate solely to what is covered under this endorsement.

In the event that an agreement cannot be reached, a Senior Counsel (to be mutually agreed upon by LIU and the Insured) shall, as an expert and not an arbitrator, determine a fair and proper allocation. Until the Senior Counsel has made a determination LIU may, in its absolute discretion, pay such legal costs and/or expenses or any other amount insured under this endorsement as it considers appropriate.

6.    Exclusions



For the purposes of this endorsement only:

6.1     Exclusion 7.16 is deleted and replaced by the following:

7.16

7.16.1  The actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants;

7.16.2  Testing, monitoring, clean up, removal, containment, treatment, detoxifying or neutralising of Pollutants or their effect;

7.16.3  The actual, alleged or threatened discharge, dispersal, release; seepage, migration or escape of Pollutants caused by any Product that has been discarded, dumped, abandoned or thrown away by others; or

7.16.4  Any expenses for the prevention of the actual, alleged or threatened discharge, dispersal, release, seepage, migration or escape of Pollutants.

6.2     Exclusion 7.24 is deleted

6.3     The following additional exclusions apply:

6.3.1   Any Claim arising out of an Injury / Damage first happening prior to the Retroactive Date.

6.3.2   Any Claim made prior to or existing at the inception of this endorsement.

6.3.3   Any Claim in respect of any fact or circumstance known to the Insured prior to or existing at the inception of this endorsement and which the Insured knew or ought reasonably to have known might give rise to a Claim.

6.3.4   Any Claim or circumstances likely to give rise to a Claim stated in the underwriting submission or proposal form, being the basis of the contract.

7.      Conditions

7.1     In the event of a Claim, the Insured must give immediate notice in writing to LIU of such Claim and such information as LIU may require to reasonably investigate the Claim and to enable LIU to determine its liability under this Policy.

Nothing contained in these endorsements shall in any way serve to increase the Limit of Indemnity stated in the Schedule.



Other than as amended above, the terms of this Policy shall continue to apply

8th July 2014

For and on behalf of
Liberty International Underwriters

Date

Ex. 3

1   William D. Anderson, Bar No. 53071
    David F. Beach, Bar No. 127135
2   PERRY, JOHNSON, ANDERSON,
    MILLER & MOSKOWITZ, LLP
3   438 1st Street, 4th Floor
    Santa Rosa, California 95401
4   Telephone: (707) 525-8800
    Facsimile: (707) 545-8242
5
    Attorneys for Plaintiffs
6   MARGRETT LEWIS, individually and as
    Guardian Ad Litem for NICOLETTE
7   LEWIS and ALEXIS LEWIS; and JEFFREY
    LEWIS
8                   SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                              COUNTY OF SONOMA
10
11  MARGRETT LEWIS, individually and as        Case No.  SCV-256907
    Guardian Ad Litem for NICOLETTE
12  LEWIS and ALEXIS LEWIS; and                **PLAINTIFFS' SECOND AMENDED**
    JEFFREY LEWIS,                             **COMPLAINT**
13                                             **1) PRODUCT LIABILITY DESIGN**
              Plaintiffs,                      **DEFECT**
14                                             **2) PRODUCT LIABILITY**
         v.                                    **MANUFACTURING DEFECT**
15                                             **3) NEGLIGENCE**
    ECOSMART, INC.; THE FIRE                   **4) NEGLIGENT INFLICTION OF**
16  COMPANY, PTY, LTD; OUTDOOR                 **EMOTIONAL DISTRESS**
    ARCHITECTURAL ACCENTS, a                   **5) PIERCING THE CORPORATE VEIL:**
17  California Corporation dba OUTDORA;         **ALTER EGO**
    ESMART GROUP, PTY LIMITED,                 **6) PRODUCT DEFECT**
18  previously sued as DOE 21; ONE CLICK
    SHOPS, a California Corporation dba         Judge:    CHOUTEAU
19  OUTDORA, previously sued as DOE 1;         Dept:     18
    JENSEN METAL PRODUCTS, INC.,
20  previously sued as DOE 26; REAL
    FLAME COMPANY, Inc., previously
21  sued as DOE 27; CHEMISPHERE
    CORPORATION, previously sued as DOE
22  11; C.L. SMITH COMPANY, previously
    sued as DOE 12; and DOES 1 to 50,
23  inclusive,
24            Defendants.
                                          /
25
26       Plaintiffs MARGRETT LEWIS, individually, and as Guardian Ad Litem for
27  NICOLETTE LEWIS and ALEXIS LEWIS; and JEFFREY LEWIS complain of Defendants,
28  and each of them, as follows:

                                          1
    Plaintiffs' Second Amended Complaint

## THE PARTIES

1.     Plaintiffs are and at all times relevant herein have been residents of Sonoma, California.

2.     Defendants Outdoor Architectural Accents, a California Corporation, doing business as Outdora ("Outdora"), and Does 1 through 10 are the retail sellers of E-NRG (a bioethanol fuel) and are located at 128 West Napa Street, Sonoma, California.

3.     Defendant Ecosmart, Inc. ("Ecosmart") is a California corporation wholly owned, operated, managed and controlled by Esmart Group, Pty, Ltd ("Esmart"), also known as The Fire Company Pty, Ltd ("The Fire Company"), and Does 11 through 20, are doing business throughout California bottling, packaging, selling and distributing a bioethanol fuel for both indoor and outdoor use under the name E-NRG ("ethanol product".)

4.     Defendants The Fire Company, and Does 21 through 25, are Australian business entities that are in the business of designing, manufacturing, selling and distributing indoor and outdoor heating products and flammable fluids made out of denatured alcohol, including a bioethanol fuel known as E-NRG, to California residents, and otherwise doing business in California. E-NRG is intended to be used in indoor and outdoor applications, including stoves, heaters and architectural accents that require the use of E-NRG.

5.     Upon filing this Complaint Plaintiffs were ignorant of the true names of Defendants and therefore designated Defendants as Does.  Plaintiffs have identified the true name of a defendant to be: Defendant One Click Shops, a California Corporation, doing business as Outdora, as Doe 1.  One Click Shops is a retail seller of E-NRG located at 128 West Napa Street, Sonoma, California.

6.     Upon filing this Complaint Plaintiffs were ignorant of the true names of Defendants and therefore designated Defendants as Does.  Plaintiffs have identified the true names of defendants to be: Jensen Metal Products, Inc., as Doe 26 and Real Flame Company, Inc., as Doe 27, the designers, manufacturers and distributors of the product known as a Real Flame, Model #530 Hampton Firebowl (the "fire pit product") which was defective in design

///

2

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

1   and manufacture and contributed to the catastrophic burn injuries suffered by plaintiff

2   Nicolette Lewis.

3        7.        Defendant Jensen Metal Products, Inc. and Defendant Real Flame Company,

4   Inc. are Wisconsin corporations. Defendants Jenson Metal Products, Inc. and Real Flame

5   Company, Inc.'s principal place of business is 7800 Northwestern Avenue, Racine, WI 53406.

6   Defendants Jensen Metal Products, Inc., and Real Flame Company, Inc., designed,

7   manufactured, sold and distributed a fire pit product intended for outdoor use with bioethanol

8   fuel under the trade name of Real Flame called a Model #530 Hampton Firebowl which was

9   involved in the catastrophic burn injuries suffered by plaintiff Nicolette Lewis. Defendants

10   Jensen Metal Products, Inc. and Real Flame Company, Inc. are actively doing business

11   throughout California by advertising on the internet and using the internet to sell products to

12   California residents.

13        8.        Upon the filing of this Complaint, Plaintiffs were ignorant of the true name of a

14   Defendant, and therefore designated defendant in the Complaint by the fictitious name of Doe.

15   Plaintiffs have identified the true name of a defendant to be: Defendant Esmart Group, Pty,

16   Ltd, previously sued as Doe 21, an Australian business doing business in the United States.

17   Esmart is the owner of all of the United States patents, including the patent for the defective

18   product at issue; E-NRG, bioethanol fuel. As of 2007, The Fire Company is the operating

19   company for Esmart (SEE EXHIBIT A, para. 12). As of 2007, Esmart is the only parent

20   company of The Fire Company (SEE EXHIBIT B). Esmart is also the new name for The Fire

21   Company, which changed its name with the Australian Securities & Investment Commission

22   in 2002. However, Esmart kept the same address previously used for The Fire Company.

23        9.        Upon the filing of this Complaint, Plaintiffs were ignorant of the true name of a

24   Defendant, and therefore designated defendant in the Complaint by the fictitious name of Doe.

25   Plaintiffs have identified the true name of defendants to be: Defendant Chemisphere

26   Corporation, previously sued as Doe 11, a Missouri corporation doing business in California,

27   and Defendant C.L. Smith Company, previously sued as Doe 12, a Missouri corporation doing

28   business in California. Plaintiffs are informed and believe that Defendants Chemisphere,

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

3

1    Corporation, and C.L. Smith Company were key participants in the bottling, packaging,

2    labeling and shipping of E-NRG to consumers located in California and are legally liable for

3    product defects in the design and manufacture of E-NRG as key participants in the chain of

4    distribution of E-NRG in bottles that were not equipped with flame arrestors.

5        10.    Plaintiffs do not currently know the names of Does 2 through 10, 13, 20, 22

6    through 25 and 28, and therefore sue said Defendants by said fictitious names.  Plaintiffs

7    allege that each of these Defendants is in some way liable and at fault for the events and

8    happenings referred to herein, and each is responsible for the damages incurred by Plaintiffs.

9    Plaintiffs will amend this Complaint to allege each Defendant's true name and capacity when

10   ascertained.

11       11.    Plaintiffs are informed and believe and thereupon allege that Defendants and

12   Doe Defendants at all times mentioned herein, were the agents, servants, employees, joint

13   venturers, co-conspirators, franchises and alter egos of the remaining Defendants, and each of

14   them, and at all times relevant were acting within the course and scope of such agency,

15   employment, partnership, joint venture or franchise.

16                              **GENERAL ALLEGATIONS**

17       12.    In or about April 8, 2014, Plaintiff Margrett Lewis purchased bottles of E-NRG

18   from Defendant Outdora for use in the fire pit product, at the family home in Sonoma,

19   California.  Prior to June 8, 2014, the Lewis family had used the outdoor fire pit product for

20   many years without incident.

21       13.    On June 8, 2014, Plaintiffs Nicolette Lewis and Alexis Lewis and two friends

22   were using the outdoor fire pit product to cook s'mores when they thought the fire pit reservoir

23   was out of fuel and needed to be refilled.  Plaintiff Alexis Lewis was pouring a gallon bottle of

24   E-NRG, denatured alcohol, which Defendants, and each of them, sold and distributed to

25   Plaintiff Margrett Lewis as set forth above, into the reservoir of the fire pit product when a fire

26   ball of denatured alcohol exploded out of the bottle covering Plaintiff Nicolette Lewis with

27   flaming alcohol, causing third degree burns to over 26% of her body, including severe burns to

28   her face, neck, chest, torso, upper arms, elbows and hands, legs, feet and toes (hereinafter

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

4

Plaintiffs' Second Amended Complaint

1   referred to as the "Incident".)  As a consequence of the severe burns to her body, Plaintiff

2   Nicolette Lewis has had to undergo skin harvesting from undamaged skin to graft skin over the

3   damaged skin in her neck, chest and toe areas, and faces multiple skin grafting procedures in

4   the future to reconstruct areas severely damaged by fire.

5       14.     Plaintiff Alexis Lewis watched in horror as her twin sister was consumed in

6   flames.  She shouted for her mother.  Plaintiff Margrett Lewis came running out of the house

7   and tried to put out the flames which were engulfing her daughter.  In the process, Plaintiff

8   Margrett Lewis suffered burns to her hands and arms.  Plaintiff Jeffrey Lewis followed

9   Plaintiff Margrett Lewis out of the house with a bath towel and was eventually able to smother

10  the flames consuming his daughter.  In the process of smothering the flames Plaintiff Jeffrey

11  Lewis suffered burns to his leg and the top of his foot.

12      15.     The bottle of E-NRG that Plaintiff Alexis Lewis used to fill the fire pit

13  product's reservoir was manufactured, bottled, sold and distributed without a flame arrestor.

14  The flame arrestor is an inexpensive mesh designed to fit in the neck of the bottle to prevent

15  vapor, once ignited, from traveling back up into the bottle and causing an explosive discharge

16  like the fireball that torched Plaintiff Nicolette Lewis.  Defendants, and each of them, were

17  aware of the need for flame arrestors in their bottles of denatured alcohol for several years

18  prior to the subject accident.  For economic reasons Defendants, and each of them, did not

19  manufacture, distribute or sell their bottles with flame arrestors nor did they attempt to recall

20  bottles without flame arrestors which had been sold or distributed into the chain of commerce

21  prior to the date of sale of E-NRG to plaintiff Margrett Lewis.

22      16.     After the date of manufacture and/or bottling of the subject bottle of E-NRG,

23  Defendants, and each of them, recognizing the extreme hazards to consumers who used their

24  product in a reasonably foreseeable manner, redesigned the bottle and caps to allow for a flame

25  arrestor to be placed in the neck of the bottle during manufacture, and placed a warning on the

26  label of the bottle warning consumers of the hazard of removing the flame arrestor.

27      17.     Defendants, and each of them, were made aware that other consumers of E-

28  NRG had been consumed by fire in the same way that Plaintiff Nicolette Lewis was injured,

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

5

1    having defended several lawsuits where fire from alcohol vapors ignited bottles of their

2    product causing severe burns.  Defendants were also aware of the dangerous and highly

3    flammable nature of their product and knew that other manufacturers in their industry had the

4    same problems with bottles of denatured alcohol sold without flame arrestors prior to the

5    incident giving rise to this action.  Plaintiff Nicolette Lewis suffered severe emotional and

6    physical injuries and her twin sister, Plaintiff Alexis Lewis, has suffered severe emotional

7    trauma which could have been avoided had defendants, and each of them, acted reasonably to

8    modify their product to include flame arrestors in the years preceding the injury to Plaintiff

9    Nicolette Lewis.

## FIRST CAUSE OF ACTION

**(Product Liability Design Defect- Against Ecosmart, The Fire Company, Esmart,**

**Outdora, Chemisphere and C.L. Smith)**

13        18.    Plaintiffs incorporate by reference each of the allegations set forth in

14   paragraphs 1 through 17 above.

15        19.    On or about June 8, 2014, Plaintiff Nicolette Lewis and Plaintiff Alexis Lewis

16   were using the fire pit product in a reasonably foreseeable manner when a bottle of E-NRG

17   bioethanol fuel erupted in flames, spewing burning ethanol on Plaintiff Nicolette Lewis

18   causing severe third degree burns over 26% of her body and causing permanent disfiguring

19   injuries to her face, neck, chest, torso, upper arms, elbows and hands, legs, feet and toes.

20        20.    At the time of the Incident, Plaintiff Nicolette Lewis and Plaintiff Alexis Lewis

21   were using the bottle of E-NRG as intended, to fill the reservoir of the fire pit product, and in a

22   manner Defendants could and should reasonably have expected.

23        21.    The bottles of E-NRG purchased by Plaintiff Margrett Lewis did not have

24   flame arrestors and there was no modification, change or abuse of the bottle prior to the

25   Incident.

26        22.    The Incident and the burn injuries to Plaintiff Nicolette Lewis, Plaintiff

27   Margrett Lewis and Plaintiff Jeffrey Lewis were due to defects in the bottle as a result of a

28   ///

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

6

Plaintiffs' Second Amended Complaint

1   design that did not include a flame arrestor.  A flame arrestor would have prevented the

2   Incident from occurring.

3       23.    As a further legal cause of the defect in the bottle design which led to the

4   Incident, Plaintiff Nicolette Lewis suffered permanent and disfiguring injuries which include

5   third degree burns to her face, neck, chest, torso, upper arms, elbows and hands, legs, feet and

6   toes.

7       24.    As a further proximate and legal cause of the defect in the bottle of E-NRG

8   involved in the Incident, Plaintiff Nicolette Lewis and her parents were required to incur

9   expenses for medical care and treatment for her physical and emotional injuries, and will incur

10  in the future medical care to reconstruct the burn sites and the donor sites which have

11  hypertrophic scarring with keloid components in some areas.  Plaintiffs pray leave to amend

12  this Complaint when the full extent of Plaintiff Nicolette Lewis' medical treatment and billing

13  are finally determined.

14      25.    Plaintiff Nicolette Lewis and her parents have suffered special damages

15  (economic) in excess of the jurisdictional minimum of this Court and have incurred general

16  damages (non-economic) in excess of the jurisdictional minimum of this Court.

17      26.    Defendants, and each of them, acted with fraud, oppression and malice and with

18  conscious disregard for the rights and safety of Plaintiffs by marketing and selling bottles of E-

19  NRG biofuel without flame arrestors when they knew that consumers throughout the United

20  States were suffering burns due to the ignition of vapors from their bottles manufactured

21  without flame arrestors.  Defendants were aware of multiple incidents where bottles of E-NRG

22  exploded in the same way as in the Incident and were aware that some of their competitors

23  were having the same problem yet continued to manufacture, sell and distribute bottles without

24  flame arrestors.

25      Wherefore, Plaintiff Nicolette Lewis, Plaintiff Margrett Lewis and Plaintiff Jeffrey

26  Lewis pray for judgment against Defendants, and each of them, as hereinafter set forth.

27  ///

28  ///

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

7

Plaintiffs' Second Amended Complaint

## SECOND CAUSE OF ACTION

**(Product Liability Manufacturing Defect- Against Ecosmart, The Fire Company, Esmart, Outdora, Chemisphere, and C.L. Smith)**

27.     Plaintiffs incorporate by reference each of the allegations set forth in paragraphs 1 through 26 above.

28.     At the time of the Incident, the bottle of E-NRG Plaintiffs were using was defective in manufacture in that it was manufactured and sold without a flame arrestor. The lack of a flame arrestor is not something that an ordinary consumer using the product in a reasonably foreseeable manner would notice and would not appreciate the risk of harm of using the bottle. The lack of a flame arrestor is not something that would likely be detected by consumers.

29.     At all times relevant hereto, Plaintiffs were using the bottle of E-NRG in filling the reservoir of the fire pit product in a reasonably foreseeable manner and as reasonably expected by Defendants, and each of them.

30.     Due to the manufacturing defect of the subject bottle of E-NRG, the bottle expelled a fireball of burning alcohol on Plaintiff Nicolette Lewis causing severe and permanent physical and emotional injuries as set forth above, making Defendants, and each of them, strictly liable for Plaintiff Nicolette Lewis, Plaintiff Margrett Lewis and Plaintiff Jeffry Lewis' injuries.

31.     Due to the manufacturing defect in the subject bottle of E-NRG, Plaintiffs have incurred and will continue to incur medical expense to treat their physical and emotional injuries. The exact amount of Plaintiffs' medical expenses is unknown and Plaintiffs will seek to amend this Complaint when the full extent of medical costs has been ascertained.

Wherefore, Plaintiff Nicolette, Plaintiff Margrett Lewis and Plaintiff Jeffrey Lewis pray for judgment against Defendants, and each of them, as hereinafter set forth.

///

///

///

8

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

## THIRD CAUSE OF ACTION

### (Negligence- Against Ecosmart, The Fire Company, Esmart, Outdora, Chemisphere, and C.L. Smith)

32.     Plaintiffs incorporate by reference each of the allegations set forth in paragraphs 1 through 31 above.

33.     At all times relevant hereto, Defendants, and each of them, knew or should have known with the exercise of reasonable care that manufacturing, distributing or selling denatured alcohol in a plastic bottle without a flame arrestor was likely to cause injury to consumers using their products.

34.     At all times relevant to this action, Defendants, and each of them, were negligent in the design, manufacture, testing, distribution and sale of E-NRG, denatured alcohol, in bottles equipped without flame arrestors, which made these bottles unreasonably dangerous when used by consumers in a reasonably foreseeable manner.

35.     At no time did Defendants, and each of them, advise or make it known to consumers of their product that their product was not equipped with flame arrestors and that vapor from their bottles could cause the bottles to explode into flames.

36.     Due to the negligence of Defendants, and each of them, Plaintiff Nicolette Lewis suffered devastating burn injuries to over 26% of her body resulting in permanent disfigurement.  Plaintiff Margrett Lewis suffered burns to her arms try to put out the flames consuming her daughter.  Plaintiff Jeffrey Lewis suffered burns to his leg and the top of his foot extinguishing the flames on his daughter.

37.     Due to the negligence of Defendants, and each of them, Plaintiff Nicolette Lewis and her parents incurred medical expenses to treat her severe burns and will incur future medical expenses to reconstruct the areas burned and the areas where skin grafts were taken, the exact amount is unknown at this time and Plaintiffs will pray for leave to amend the Complaint when the full medical specials are determined.

Wherefore, Plaintiff Nicolette Lewis, Plaintiff Margrett Lewis and Plaintiff Jeffrey Lewis pray for judgment against Defendants, and each of them, as hereinafter set forth.

9

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

# FOURTH CAUSE OF ACTION

## (Negligent Infliction of Emotional Distress- Against Ecosmart, Esmart, The Fire Company, Outdora, Chemisphere, and C.L. Smith)

38.     Plaintiffs incorporate by reference each of the allegations set forth in paragraphs 1 through 37 above.

39.     At all times relevant hereto Defendants, and each of them, were negligent in the design, manufacture, distribution and sale of plastic containers filled with denatured alcohol and sold under the name of E-NRG, which proximately and legally caused severe burn injuries to Plaintiff Nicolette Lewis in the Incident described above.

40.     Plaintiff Alexis Lewis, the twin sister of Plaintiff Nicolette Lewis, saw her sister covered in flaming alcohol as it exploded from the bottle of E-NRG, heard her scream and cry and saw her flesh being consumed.  Plaintiff Margrett Lewis and Plaintiff Jeffrey Lewis came to the rescue of Plaintiff Nicolette Lewis and saw her flesh burning, smelled her flesh burning, heard her screams of agony and helped to put out the flames.  They saw their beautiful daughter being consumed and disfigured by flames.

41.     Plaintiffs suffered extreme emotional distress due to the negligence of Defendants, and each of them, and have suffered nightmares, anxiety and depression resulting in problems sleeping and engaging in their normal activities of daily living.

42.     Plaintiffs' emotional distress has been so severe that they have required medical and psychiatric treatment to deal with the emotional trauma of witnessing the Incident.  The past and future medical and psychiatric treatment is unknown at this time and Plaintiffs will seek leave to amend the Complaint when the costs have finally been determined.

Wherefore Plaintiff Alexis Lewis, Plaintiff Margrett Lewis and Plaintiff Jeffrey Lewis pray for judgment against Defendants, and each of them, as hereinafter set forth.

///

///

///

///

10

Plaintiffs' Second Amended Complaint

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

## FIFTH CAUSE OF ACTION

### (Piercing the Corporate Veil: Alter Ego - Against Esmart, The Fire Company, and Ecosmart)

43.     Plaintiffs incorporate by reference each of the allegations set forth in the paragraphs 1 through 42 above.

44.     The Fire Company (also known as Esmart Group, Pty, Ltd) acted as the alter ego of Ecosmart, Inc.  Both The Fire Company and Ecosmart, Inc. owed a duty to Plaintiffs to protect them from their faulty product, E-NRG bioethanol fuel.

45.     There exists, and at all times herein mentioned there existed, a unity of interest and ownership between The Fire Company and Ecosmart, such that any individuality and separateness between them have ceased, and The Fire Company is the alter ego of Ecosmart.

46.     Ecosmart is wholly owned, operated, managed and controlled by Esmart, aka The Fire Company.  Ecosmart and The Fire Company are participating in a common venture with respect to manufacture and distribution of bioethanol fuel. They tend to benefit jointly from transactions entered into by one of them.

47.     Ecosmart, Inc., is the main brand of The Fire Company.  Both The Fire Company and Ecosmart's websites are cross linked and they share the same Head Office.

48.     Ecosmart's Australian patents are registered to The Fire Company.  Ecosmart's United States patents are registered at the same mailing address as is used by The Fire Company.

49.     Ecosmart and The Fire Company share common directors and officers. Ecosmart's Statement of Information provided to the California Secretary of State lists Stephane Thomas as a chief executive of both businesses: he is the Secretary, Director and Chief Financial Officer of Ecosmart (EXHIBIT C) and the Chief Executive Operator for The Fire Company (EXHIBIT D).

50.     Ecosmart, Inc. and the Fire Company have pooled their assets. Ecosmart has recently claimed that it has no insurance and no assets. Ecosmart has failed to adequately capitalize itself.

11

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

51.     Ecosmart, Inc. is a mere instrumentality of The Fire Company, set up for the improper purpose of avoiding liability for its defective products by manipulating assets and liabilities so as to concentrate the assets in one and the liabilities in another. Thus, absent application of the alter ego doctrine, Plaintiffs will be left with no way to satisfy a valid judgment, producing an inequitable result.

52.     Ecosmart and The Fire Company have a unity of ownership and interest, and acted in bad faith when they manufactured and distributed a defective product. Adherence to the fiction that Ecosmart and The Fire Company are different entities would unjustly benefit Defendants, bring about unequitable results, promote injustice, and/or sanction a fraud.

53.     Plaintiffs are informed, believe and thereupon allege that Defendants acted fraudulently, maliciously, and oppressively with a conscious disregard of the probable detrimental and economic consequences to Plaintiffs and to the direct benefit of Defendants, knowing that Defendants' conduct was substantially certain to vex, annoy, and injure Plaintiffs, by (1) releasing into the marketplace products which they knew to be defectively designed and manufactured and foreseeably likely to cause serious injuries; (2) failing to recall their defective products even after they began releasing newer, safer products; (3) manipulating their corporate entities so as to shield themselves financially from valid judgments. Plaintiffs are therefore entitled to punitive damages under California Civil Code section 3294, in an amount sufficient to punish or to make an example of Defendants.

Wherefore, Plaintiffs pray for judgment against Defendants, and each of them, as hereinafter set forth.

### SIXTH CAUSE OF ACTION

**(Product Defect: Jensen Metal Products, Inc., Real Flame Company, Inc.)**

54.     Plaintiffs incorporate by reference each of the allegations set forth in the paragraphs 1 through 17 above.

55.     Plaintiff Margrett Lewis was the original purchaser of the fire pit product, sold under the name Real Flame, over the internet for use as an outdoor fire pit. The fire pit product was intended to burn bioethanol fuel. Bioethanol fuel does not give off smoke or odor

12

1    and can be used both indoors and outdoors. Bioethanol flames are not always visible,
2    especially as the fuel in the reservoir is depleted.

3    56. The subject fire pit product has decorative rock which both surrounds the fuel
4    reservoir and is spread on top of a sliding plate which is intended to be used to open and close
5    the fuel reservoir for the fire pit. The fire pit product is defective in design because the rocks,
6    in combination with the height of the reservoir, make it difficult to move and close the sliding
7    plate which shuts off air and extinguishes any fire in the reservoir. The hand held piece called
8    a "scraper tool" is inadequate to move the "damper" to ensure the fire is completely out before
9    new fuel is added to the reservoir.

10    57. Due to the design defects in the fire pit product, and the damping mechanism,
11    there was a small residual flame in the reservoir which was not readily observable to Plaintiffs,
12    who thought the fire was out and that it was safe to refuel, which was the ignition source for
13    the vapor fire and explosion which caused catastrophic burn injuries to Plaintiff Nicolette
14    Lewis.

15    58. The subject fire product was also defective in design in that there were no
16    warnings on the pit or in the packaging material that residual ethanol flames might be present,
17    but not visible, and that the reservoir should be completely closed before refueling to ensure all
18    flames are out before refueling and failed to warn that vapor fires could occur if ethanol fuel
19    was poured from a bottle which was not equipped with a flame arrestor.

20    59. The Incident and burn injuries to Plaintiffs were due to the defect in design of
21    the fire pit product as set forth above and due to the failure to warn that refueling of the fire pit
22    with bottles which were not equipped with flame arrestors could lead to an explosive vapor
23    fire, and the risk of severe burn injuries if the reservoir was not completely closed each time
24    before adding fuel to ensure all flames were extinguished.

25    60. As a further legal cause of the fire pit product design and failure to warn which
26    led to the Incident, Plaintiff Nicolette Lewis suffered permanent and disfiguring injuries which
27    include third degree burns to her face, neck, chest, torso, upper arms, elbows, hands, legs, face
28    and toes.

13

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

61.     As a further proximate and legal cause of the defect in the fire pit product as set forth above, Plaintiffs were required to incur expenses for the medical care and treatment of the mental and physical injuries suffered by Nicolette Lewis, Alexis Lewis and Margrett Lewis.  Future care of Nicolette Lewis will include reconstruction of burn and donor sites throughout Nicolette's body which have hypertrophic scarring with keloid components. Nicolette Lewis, Alexis Lewis and Margrett Lewis will need continued psychological care for severe emotional distress.  Plaintiffs pray leave to amend this Complaint when the full extent of Plaintiffs Nicolette Lewis, Alexis Lewis and Margrett Lewis' medical and psychiatric medical treatment and billing are finally determined.

62.     Plaintiffs, and each of them, have suffered special (economic) and general (non-economic) damages in excess of the jurisdictional minimum of this Court.

Wherefore, Plaintiff Nicolette Lewis, Plaintiff Alexis Lewis, Plaintiff Margrett Lewis and Plaintiff Jeffrey Lewis pray for judgment against Defendants, and each of them, as hereinafter set forth.

### SEVENTH CAUSE OF ACTION

**(Negligence: Jensen Metal Products, Inc., Real Flame Company, Inc.)**

63.     Plaintiffs incorporate by reference each of the allegations set forth in paragraphs 1 through 17 and 54 through 62 above.

64.     Defendants, and each of them, were at all times mentioned herein in the business of selling fire pits for home use which require the use of pourable ethanol based products to create a smokeless flame which allows their products to be used both indoors and outdoors.  Defendants were aware that ethanol is highly flammable and when poured, vapor from the ethanol is released and that the vapor can be ignited and, if ignited, can travel back into the container from which it has been poured igniting the contents of the container causing a sudden and unexpected explosive discharge of flaming ethanol, creating a deadly risk of injury to anyone close to the discharge. The hazard occurs when consumers attempt to pour ethanol into the reservoir of the fire pit because of a combination of the characteristics of ethanol, it is odorless, colorless and smokeless barely visible when the reservoir of ethanol is

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

14

Plaintiffs' Second Amended Complaint

1  nearly depleted, and the design of the reservoir. The configuration of the fire pit product's
2  reservoir, with the sliding plate which sits on top of the reservoir, conceals the flame making it
3  difficult to see there is flame in the reservoir, thus, creating a risk of explosive discharge of
4  ethanol should a consumer attempt to pour ethanol into the reservoir.

5  65.  Defendants, and each of them, knew or should have known that the
6  configuration of their product, coupled with the explosive nature of ethanol when poured from
7  a container without a flame arrestor, created an unreasonably dangerous condition likely to
8  cause serious injury to consumers of their fire pit product. Defendants, and each of them, were
9  negligent in the design, manufacturing, marketing, sale and distribution of their product and as
10 a consequence of their negligence Plaintiff Nicolette Lewis suffered devastating burn injuries
11 to over 26% of her body resulting in permanent disfigurement. Plaintiff Margrett Lewis and
12 Plaintiff Jeffrey Lewis suffered burns trying to extinguish flames consuming their daughter.

13 66.  Due to the negligence of Defendants, and each of them, Plaintiff Nicolette
14 Lewis and her parents incurred medical expenses to treat her severe burns and will incur future
15 medical expenses to reconstruct the areas burned and the areas where skin grafts were taken,
16 the exact amount is unknown at this time and Plaintiffs will pray for leave to amend the
17 Complaint when the full medical specials are determined.

18 Wherefore, Plaintiff Nicolette Lewis and Plaintiff Margrett Lewis and Plaintiff Jeffrey
19 Lewis pray for judgment against Defendants, and each of them, as hereinafter set forth.

20 **EIGHTH CAUSE OF ACTION**

21 **(Negligent Infliction of Emotional Distress against Jensen Metal Products, Inc.,**
22 **Real Flame Company, Inc.)**

23 67.  Plaintiffs incorporate by reference each of the allegations set forth in
24 paragraphs 1 through 17 and 54 through 66 above.

25 68.  At all times relevant hereto, Defendants, and each of them, were negligent in
26 the design, manufacture, marketing, sale and distribution of their product which proximately
27 and legally caused severe burn injuries to Plaintiff Nicolette Lewis during the Incident
28 described above.

15

Plaintiffs' Second Amended Complaint

69.    Plaintiff Alexis Lewis, the twin sister of Plaintiff Nicolette Lewis, saw her sister covered in flaming alcohol as it exploded from the bottle of E-NRG, heard her scream and cry and saw flesh being consumed by flame.  Plaintiff Margrett Lewis and Plaintiff Jeffrey Lewis came to the rescue of Nicolette Lewis and saw her flesh burning, smelled her flesh burning, and heard screams of agony as they attempted to put out the flames.  They saw their beautiful daughter being consumed and disguised by burning ethanol.

70.    Plaintiffs suffered extreme emotional distress due to the negligence of Defendants, and each of them, and have suffered nightmares, flashbacks, anxiety and depression resulting in problems sleeping and engaging in the normal activities of daily living.

71.    Plaintiffs' emotional distress has been so severe that they have medical and psychiatric care and counseling to deal with the emotional trauma of witnessing the Incident. The past and future medical, psychiatric and psychological counseling is unknown at this time and Plaintiffs will seek leave to amend the Complaint when the costs have been fully determined.

Wherefore, Plaintiff Alexis Lewis, Plaintiff Margrett Lewis and Plaintiff Jeffrey Lewis pray for judgment against Defendants, and each of them, as hereinafter set forth.

## PRAYER

Wherefore, Plaintiffs pray for judgment as follows:

1.    An award of general damages for each Plaintiff according to proof;

2.    An award of special damages for each Plaintiff according to proof;

3.    An award of post-judgment interest at the legal rate;

4.    An award of costs of suit;

5.    An award of punitive damages in an amount to punish and deter as to Defendants Ecosmart, INC., The Fire Company, PTY, LTD, and Esmart Group, PTY Limited;

///

///

///

16

Plaintiffs' Second Amended Complaint

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

1      6.      All such other and further relief as the Court determines is just and proper.

2                                                    PERRY, JOHNSON, ANDERSON,
                                                     MILLER & MOSKOWITZ, LLP
3

4      DATED: January 12, 2016            By:   _____
5                                                WILLIAM D. ANDERSON
                                                 Attorneys for Plaintiffs
6                                                MARGRETT LEWIS, individually and as
                                                 Guardian Ad Litem for NICOLETTE
7                                                LEWIS and ALEXIS LEWIS; and
                                                 JEFFREY LEWIS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        17

EXHIBIT A

**GREENBERG TRAURIG, LLP**
ATTORNEYS AT LAW
SUITE 700
2375 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016
(602) 445-8000

John Alan Doran, SBN 012112, DoranJ@gtlaw.com
Kimberly A. Warshawsky, SBN 022083, WarshawskyK@gtlaw.com
Laura Sixkiller, SBN 022014, SixkillerL@gtlaw.com
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| ESMART GROUP PTY LIMITED and THE FIRE COMPANY PTY LIMITED, | No. |
| Plaintiffs, | **COMPLAINT** |
| v. | **(Patent Infringement)** |
| MIKE GROUT, | **(Jury Trial Demanded)** |
| Defendant. | |

Plaintiffs Esmart Group Pty Limited and The Fire Company Pty Limited, by and through their attorneys, for their Complaint against Defendant Mike Grout, on information and belief, allege as follows:

## THE PARTIES

1.      Plaintiff Esmart Group Pty Limited ("ESMART") is a company existing under the laws of the country of Australia, with its principal place of business at 9/5 Vuko Place, Warriewood NSW 2102, Australia.

2.      Plaintiff The Fire Company Pty Limited ("FIRE COMPANY") is a company existing under the laws of the country of Australia, with its principal place of business at 9/5 Vuko Place, Warriewood NSW 2102, Australia.

3.      Upon information and belief, Defendant Mike Grout is a citizen of Arizona and resides at 4632 North 40th Street, Phoenix, Arizona 85018.

DX3287712281

## JURISDICTION AND VENUE

4.     This action arises under the patent laws of the United States, 35 U.S.C. §§ 1, et seq.

5.     This Court has subject matter jurisdiction over this action pursuant to the laws of the United States governing actions related to patents, 28 U.S.C. §§ 1331 and 1338(a).

6.     Defendant conducts business in this district. This Court therefore has general personal jurisdiction over Defendant.

7.     Defendant has committed acts of patent infringement in this district.

8.     Upon information and belief, Defendant continues to commit acts of patent infringement in this district.

9.     This Court also has specific personal jurisdiction over Defendant.

10.     Venue in this judicial district is proper under 28 U.S.C. §§ 1391 (b), (c) and (d) and 1400(b) because Defendant resides in this judicial district, has committed acts of patent infringement in this district, and has conducted business in this district.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

11.     Plaintiffs are engaged in, among other things, the development, manufacture, and sale of alternative fuel fireplaces that do not require flues. Homeowners, housing developers, and restaurants are common purchasers of these products.

12.     On October 30, 2007, U.S. Patent No. 7,287,979 ("the '979 Patent") was duly and legally issued by the United States Patent and Trademark Office. The '979 Patent was assigned to Plaintiff ESMART, who is the owner of all right, title, and interest in and to the '979 Patent, including the right to sue for infringement and recover damages

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

-2-

1  resulting therefrom.   Plaintiff FIRE COMPANY is the operating company for Plaintiff

2  ESMART.

3       13.   A copy of the '979 Patent is attached hereto as Exhibit A and is made a part

4  of this Complaint.

5       14.   Plaintiffs are and have been selling, within this judicial district, products in

6  accordance with the '979 Patent.

7       15.   Upon information and belief, Defendant is and has been selling products

8  embodying the invention claimed in the '979 Patent within the United States of America,

9  including within this judicial district.

10       16.   At all relevant times, Defendant has been and continues to be the sole

11  member and owner of the Arizona limited liability company, Innovations M2, LLC

12  ("INNOVATIONS"), having a principal place of business at 4632 North 40th Street,

13  Phoenix, Arizona, 85018.

14       17.   As the sole member of INNOVATIONS, Defendant has operated

15  INNOVATIONS out of his personal residence and exercised total control over all of

16  INNOVATIONS' activities.

17
18

<div align="center">

**COUNT I**

**Infringement of United States Patent No. 7,287,979**

**(35 U.S.C. §§ 1, *et seq.*)**

</div>

19       18.   Plaintiffs re-allege and incorporate by reference each of the allegations of

20  Paragraphs 1 through 17 as if fully set forth herein.

21       19.   At all relevant times, INNOVATIONS functioned as Defendant's alter ego

22  as Defendant completely dominated and exercised total control over INNOVATIONS'

23  policies and business practices.

24       20.   Among the policies and business practices implemented by Defendant were

25  INNOVATIONS' infringement of the '979 Patent.

26

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

-3-

21.     The extent of Defendant's control over INNOVATIONS renders INNOVATIONS' separate corporate existence from Defendant a mere fiction.

22.     Observance of this corporate fiction would effectively sanction Defendant's and INNOVATIONS' willful conduct and unjustly allow Defendant and INNOVATIONS to retain the benefits of their infringing action to the detriment of Plaintiffs.

23.     Because Defendant is the alter ego of INNOVATIONS, he may be held directly, jointly and severally liable for INNOVATIONS' infringement of the '979 Patent.

24.     Accordingly, INNOVATIONS' liability shield should be pierced and Defendant held directly, jointly and severally liable for INNOVATIONS' infringement of the '979 Patent.

25.     Upon information and belief, all of Defendant's acts were and are intentional and willful.

26.     Defendant's acts have damaged Plaintiffs and, unless enjoined, will continue to damage and cause irreparable injury to Plaintiffs.

27.     Plaintiffs have no adequate remedy at law.

### RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request judgment against Defendant as follows:

A.     A Judgment that Defendant is directly and personally liable for INNOVATIONS' infringing of one or more of the claims of the '979 Patent in violation of 35 U.S.C. § 271(a);

B.     A temporary, preliminary and permanent injunction enjoining Defendant, his agents, employees, licensees, and all those in privity with him, including INNOVATIONS, from infringing the '979 Patent;

C.     An award of damages against Defendant sufficient to compensate Plaintiffs for the injury caused by INNOVATIONS' infringement of the '979 Patent;

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

-4-

1      D.     An award trebling the damages pursuant to 35 U.S.C. § 284 based upon

2  INNOVATIONS' willful infringement of the '979 Patent;

3      E.     An assessment of costs, including reasonable attorneys fees pursuant to 35

4  U.S.C. § 285, and prejudgment interest against Defendant; and

5      F.     Such other and further relief as this Court may deem just and proper.

6  RESPECTFULLY SUBMITTED this 7th day of April, 2008.

GREENBERG TRAURIG, LLP

By:   /s/ Kimberly A. Warshawsky
      John Alan Doran
      Kimberly A. Warshawsky
      Laura Sixkiller
      Attorneys for Plaintiffs

Of counsel:
Angelo J. Bufalino, Esq.
Michael J. Turgeon, Esq.
Robert S. Rigg, Esq.
Vedder Price P.C.
222 N. LaSalle St., Suite 2600
Chicago, Illinois 60601-1003
(312) 609-7500 – Tel
(312) 609-5005 – Fax

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

PHX3281712281

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ESMART GROUP PTY LIMITED, and THE FIRE COMPANY PTY LIMITED, | |
| Plaintiffs, | Court File No.: 07-CV-06137 |
| v. | Judge Suzanne B. Conlon |
| INNOVATIONS M2, LLC, and BRAD BLAYLOCK, | Magistrate Judge Nolan |
| Defendant. | |

### NOTIFICATION OF AFFILIATES
### DISCLOSURE STATEMENT PURSUANT TO LOCAL RULE 3.2

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure and Local Rule 3.2, Plaintiffs, Esmart Group Pty Limited ("Esmart") and The Fire Company Pty Limited ("Fire Co."), state that: (1) Esmart is an Australian private company, it has no parent company or corporation and no publicly-held company owns 10% or more of Esmart's ownership interests; and (2) Fire Co. is an Australian private company, Esmart is its only parent company and no publicly-held company owns 10% or more of Fire Co.'s ownership interests.

Respectfully submitted,

ESMART GROUP PTY LIMITED
THE FIRE COMPANY PTY LIMITED

By: s/ Michael J. Turgeon
          One of Their Attorneys

Angelo J. Bufalino, Esq.
Robert S. Rigg, Esq.
Michael J. Turgeon, Esq.
VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
222 North LaSalle Street, Suite 2600
Chicago, IL  60601-1003
Telephone:  312/609-7500
Facsimile:  312/609-5005

Dated:  December 7, 2007

- 2 -

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2007, I electronically filed the foregoing NOTIFICATION OF

AFFILIATES DISCLOSURE STATEMENT PURSUANT TO LOCAL RULE 3.2 with the Clerk of the Court

using the CM/ECF system, and will send notification of such filing to the following via Federal Express:

> Gary Rogers, Solicitor
> Blueprint Law
> Suite 602
> Level 6
> Westfield Towers
> 100 William Street
> Sydney, New South Wales 2011
> AUSTRALIA

> _s/ Michael J. Turgeon_____

EXHIBIT C

M-658078



## State of California
### Secretary of State

51

#### Statement of Information
(Domestic Stock and Agricultural Cooperative Corporations)

FEES (Filing and Disclosure): $25.00. If amendment, see instructions.
IMPORTANT – READ INSTRUCTIONS BEFORE COMPLETING THIS FORM

S

**FILED**
In the office of the Secretary of State
of the State of California

FEB 2 4 2011

A

This Space for Filing Use Only

| 1. CORPORATE NAME |
|---|
| EcoSmart, Inc. |
| C3017592 |

**Due Date:**

**Complete Addresses for the Following** (Do not abbreviate the name of the city. Items 2 and 3 cannot be P.O. Boxes.)

| | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 2. STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | | | | |
| 3641 HOLDREGE AVE., SUITE B | | LOS ANGELES | CA | 90016 |
| 3. STREET ADDRESS OF PRINCIPAL BUSINESS IN CALIFORNIA, IF ANY | | | | |
| 3641 HOLDREGE AVE., SUITE B | | LOS ANGELES | CA | 90016 |
| 4. MAILING ADDRESS OF THE CORPORATION, IF DIFFERENT THAN ITEM 2 | | CITY | STATE | ZIP CODE |

**Names and Complete Addresses of the Following Officers** (The corporation must list these three officers. A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 5. CHIEF EXECUTIVE OFFICER/ | | | | |
| ALEXANDER EBURNE | 3641 HOLDREGE AVE., SUITE B | LOS ANGELES | CA | 90016 |
| 6. SECRETARY | ADDRESS | CITY | STATE | ZIP CODE |
| STEPHANE THOMAS | 3641 HOLDREGE AVE., SUITE B | LOS ANGELES | CA | 90016 |
| 7. CHIEF FINANCIAL OFFICER/ | ADDRESS | CITY | STATE | ZIP CODE |
| STEPHANE THOMAS | 3641 HOLDREGE AVE., SUITE B | LOS ANGELES | CA | 90016 |

**Names and Complete Addresses of All Directors, Including Directors Who are Also Officers** (The corporation must have at least one director. Attach additional pages, if necessary.)

| | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 8. NAME | | | | |
| STEPHANE THOMAS | 3641 HOLDREGE AVE., SUITE B | LOS ANGELES | CA | 90016 |
| 9. NAME | ADDRESS | CITY | STATE | ZIP CODE |
| 10. NAME | ADDRESS | CITY | STATE | ZIP CODE |

11. NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY:

**Agent for Service of Process** (If the agent is an individual, the agent must reside in California and Item 13 must be completed with a California street address (a P.O. Box is not acceptable). If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 13 must be left blank.)

| 12. NAME OF AGENT FOR SERVICE OF PROCESS | |
|---|---|
| A and A Companies, Inc. | C 2399516 |
| 13. STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY   STATE   ZIP CODE |
| | CA |

**Type of Business**

14. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION
Investment business

15. BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE CALIFORNIA SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| 02/21/2011 | Michael J. Minkus | Agent | |
|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |

SI-200 C (REV 10/2010)      APPROVED BY SECRETARY OF STATE



# State of California
## Secretary of State

### Statement of Information
(Domestic Stock and Agricultural Cooperative Corporations)
FEES (Filing and Disclosure): $25.00.
If this is an amendment, see instructions.
IMPORTANT -- READ INSTRUCTIONS BEFORE COMPLETING THIS FORM

| S |

EU97696

## FILED

In the office of the Secretary of State
of the State of California

NOV-06 2013

This Space for Filing Use Only

1. CORPORATE NAME

ECOSMART, INC.

2. CALIFORNIA CORPORATE NUMBER

C3017592

No Change Statement  (Not applicable if agent address of record is a P.O. Box address.  See instructions.)
3. If there have been any changes to the information contained in the last Statement of Information filed with the California Secretary of State, or no statement of information has been previously filed, this form must be completed in its entirety.

☑ If there has been no change in any of the information contained in the last Statement of Information filed with the California Secretary of State, check the box and proceed to Item 17.

Complete Addresses for the Following  (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 4. | STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | CITY | STATE | ZIP CODE |
| 5. | STREET ADDRESS OF PRINCIPAL BUSINESS OFFICE IN CALIFORNIA, IF ANY | CITY | STATE | ZIP CODE |
| 6. | MAILING ADDRESS OF CORPORATION, IF DIFFERENT THAN ITEM 4 | CITY | STATE | ZIP CODE |

Names and Complete Addresses of the Following Officers  (The corporation must list these three officers.  A comparable title for the specific officer may be added; however, the preprinted titles on this form must not be altered.)

| | | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| 7. | CHIEF EXECUTIVE OFFICER/ | ADDRESS | CITY | STATE | ZIP CODE |
| 8. | SECRETARY | ADDRESS | CITY | STATE | ZIP CODE |
| 9. | CHIEF FINANCIAL OFFICER/ | ADDRESS | CITY | STATE | ZIP CODE |

Names and Complete Addresses of All Directors, Including Directors Who are Also Officers  (The corporation must have at least one director. Attach additional pages, if necessary.)

| | | | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| 10. | NAME | ADDRESS | CITY | STATE | ZIP CODE |
| 11. | NAME | ADDRESS | CITY | STATE | ZIP CODE |
| 12. | NAME | ADDRESS | CITY | STATE | ZIP CODE |

13. NUMBER OF VACANCIES ON THE BOARD OF DIRECTORS, IF ANY:

Agent for Service of Process  If the agent is an individual, the agent must reside in California and Item 15 must be completed with a California street address, a P.O. Box address is not acceptable.  If the agent is another corporation, the agent must have on file with the California Secretary of State a certificate pursuant to California Corporations Code section 1505 and Item 15 must be left blank.

14. NAME OF AGENT FOR SERVICE OF PROCESS

| 15. | STREET ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | | STATE | ZIP CODE |
|---|---|---|---|---|---|

Type of Business

16. DESCRIBE THE TYPE OF BUSINESS OF THE CORPORATION

17. BY SUBMITTING THIS STATEMENT OF INFORMATION TO THE CALIFORNIA SECRETARY OF STATE, THE CORPORATION CERTIFIES THE INFORMATION CONTAINED HEREIN, INCLUDING ANY ATTACHMENTS, IS TRUE AND CORRECT.

| 11/06/2013 | GRACE REGINA HERRERA | OFFICE MANAGER | |
|---|---|---|---|
| DATE | TYPE/PRINT NAME OF PERSON COMPLETING FORM | TITLE | SIGNATURE |

SI-200 (REV 01/2013)                                                                                APPROVED BY SECRETARY OF STATE

EXHIBIT D

Current & Historical Company Extract

**ESMART GROUP PTY LIMITED**
ACN 099 603 568

## Organisation Details

Document Number

### Current Organisation Details

|  |  |  |
|---|---|---|
| Name: | ESMART GROUP PTY LIMITED | 022554280 |
| ACN: | 099 603 568 | |
| ABN: | 14099603568 | |
| Registered in: | New South Wales | |
| Registration date: | 15/02/2002 | |
| Next review date: | 15/02/2016 | |
| Name start date: | 30/11/2005 | |
| Status: | Registered | |
| Company type: | Australian Proprietary Company | |
| Class: | Limited By Shares | |
| Subclass: | Proprietary Company | |

### Previous Organisation Details from 15/02/2002 to 29/11/2005

|  |  |  |
|---|---|---|
| Name: | THE FIRE COMPANY PTY LTD | 017783466 |
| Name start: | 15/02/2002 | |
| Status: | Registered | |
| Company type: | Australian Proprietary Company | |
| Class: | Limited By Shares | |
| Subclass: | Proprietary Company | |

## Address Details

Document Number

### Current

|  |  |  |
|---|---|---|
| Registered address: | THE FIRE COMPANY PTY LIMITED, 'Showroom 3 & 4', 40-42 O'Riordan Street, ALEXANDRIA NSW 2015 | 1F0386224 |
| Start date: | 20/03/2012 | |
| Principal Place Of Business address: | 'Showroom 3 & 4', 40-42 O'Riordan Street, ALEXANDRIA NSW 2015 | 1F0386224 |
| Start date: | 21/02/2012 | |

### Historical

|  |  |  |
|---|---|---|
| Registered address: | THE FIRE COMPANY PTY LIMITED, 10 Apollo Street, WARRIEWOOD NSW 2102 | 025668834 |
| Start date: | 31/07/2009 | |
| Cease date: | 19/03/2012 | |
| Registered address: | THE FIRE COMPANY PTY LIMITED, 10 Apollo Street, WARRIEWOOD NSW 2102 | 024905714 |
| Start date: | 30/07/2008 | |
| Cease date: | 30/07/2009 | |
| Registered address: | Unit 9, 5 Vuko Place, WARRIEWOOD NSW 2102 | 1F0117218 |
| Start date: | 03/07/2006 | |
| Cease date: | 29/07/2008 | |
| Registered address: | Unit 10, 14 Polo Avenue, MONA VALE NSW 2103 | 020416661 |
| Start date: | 28/06/2004 | |
| Cease date: | 02/07/2006 | |

Current & Historical Company Extract

ESMART GROUP PTY LIMITED

ACN 099 603 568

| | | |
|---|---|---|
| Registered address: | THE ALLEN HALL PARTNERSHIP, Level 3, 685 Pittwater Road, DEE WHY NSW 2099 | 017783466 |
| Start date: | 15/02/2002 | |
| Cease date: | 27/06/2004 | |
| Principal Place Of Business address: | 10 Apollo Street, WARRIEWOOD NSW 2102 | 024905714 |
| Start date: | 04/07/2008 | |
| Cease date: | 20/02/2012 | |
| Principal Place Of Business address: | Unit 9, 5 Vuko Place, WARRIEWOOD NSW 2102 | 1F0117218 |
| Start date: | 01/07/2006 | |
| Cease date: | 03/07/2008 | |
| Principal Place Of Business address: | Unit 10, 14 Polo Avenue, MONA VALE NSW 2103 | 020416661 |
| Start date: | 18/06/2004 | |
| Cease date: | 30/06/2006 | |
| Principal Place Of Business address: | 25 Kananook Avenue, BAYVIEW NSW 2104 | 0E7736169 |
| Start date: | 23/09/2002 | |
| Cease date: | 17/06/2004 | |
| Principal Place Of Business address: | Unit 8, 7 Darley Street, MONA VALE NSW 2103 | 017783466 |
| Start date: | 15/02/2002 | |
| Cease date: | 22/09/2002 | |

## Contact Address

Section 146A of the Corporations Act 2001 states 'A contact address is the address to which communications and notices are sent from ASIC to the company'.

| | |
|---|---|
| Address: | PO BOX 6340, FRENCHS FOREST NSW 2086 |
| Start date: | 28/06/2003 |

| Officeholders and Other Roles | | Document Number |
|---|---|---|
| **Director** | | |
| Name: | TAMIR HAIKIN | 026443554 |
| Address: | 19 Haig Street, MAROUBRA NSW 2035 | |
| Born: | 25/10/1976, PETAH TIKVA, ISRAEL | |
| Appointment date: | 23/03/2010 | |
| Name: | STEPHANE WILFRID THOMAS | 1F0386224 |
| Address: | Unit 3, 2-10 Le Vesinet Drive, HUNTERS HILL NSW 2110 | |
| Born: | 07/07/1973, LOBREVILLE, GABON | |
| Appointment date: | 18/06/2004 | |
| **Previous Director** | | |
| Name: | UWE BERNHARD BACKES | 024313336 |
| Address: | 20 Iluka Avenue, ELANORA HEIGHTS NSW 2101 | |
| Born: | 21/11/1962, DORTMUND, GERMANY | |
| Appointment date: | 15/02/2002 | |
| Cease date: | 20/12/2010 | |
| **Previous Secretary** | | |
| Name: | UWE BERNHARD BACKES | 024313336 |

<div style="text-align:center">

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

</div>

1

## PROOF OF SERVICE

2    I declare that:

3    I am and was at the time of service of the papers herein, over the age of eighteen (18)
years and am not a party to the action. I am employed in the County of Sonoma, California,
4    and my business address is 438 1st Street, 4th Floor, Santa Rosa, California 95401.

5    On January 14, 2016, I served the following document, described as set forth below on
the interested parties in this action by placing true copies thereof enclosed in sealed envelopes,
6    at Sonoma, addressed as follows:

7    **PLAINTIFFS' SECOND AMENDED COMPLAINT**

| | |
|---|---|
| Sigrid Irias<br>Law Offices of Santana, Tcheng, Vierra &<br>Symonds<br>71 Stevenson Street, Ste. 700<br>San Francisco, CA 94105 | Attorney for defendant<br>Outdoor Architectural Accents; a<br>California Cooperation dba Outdora |
| John Samberg<br>Simon Aron<br>Wolf, Rifkin, Shapiro, Schulman & Rabkin,<br>LLP<br>5594-B Longley Lane<br>Reno, NV 89511 | Attorney for defendant<br>Ecosmart, Inc |

15    ☒    **BY FIRST-CLASS MAIL:** I caused such envelopes to be deposited in the United
States mail, at Santa Rosa, California, with postage thereon fully prepaid,
16    individually, addressed to the parties as indicated. I am readily familiar with the
firm's practice of collection and processing correspondence in mailing. It is deposited
17    with the United States postal service each day and that practice was followed in the
ordinary course of business for the service herein attested to.

18

19    ☐    **BY FACSIMILE TRANSMISSION:** By use of facsimile machine number
(707)545-8288, I served a copy of the within document(s) on the above interested
20    parties at the facsimile numbers listed above. The transmission was reported as
complete and without error. The transmission report was properly issued by the
transmitting facsimile machine.

21

22    ☐    **BY ELECTRONIC FILING SERVICE:** My electronic business address is
tuscano@perrylaw.net and I caused such document(s) to be electronically served for
23    the above-entitled case to those parties on the Service List below. The file
transmission was reported complete and a copy will be maintained with the original
document(s) in our office.

24

25

26

27

28

<div style="text-align:center">

1

Proof of Service

</div>

1

2    I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.

3

4        Executed on January 14, 2016, at Santa Rosa, California.

5

6                                                        Stephanie Caron

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

Case No. SCV261819
02-13-2018
Letter



# Superior Court of California
# County of Sonoma

Arlene D. Junior
Court Executive Officer

ACCESS, SERVICE, JUSTICE

To:   Leslie R. Perry, Esq.
Attorney Box #59

Case Number: SCV-261819

Case Name: Lewis vs Liberty Mutual Insurance
Company

Your Proof of Service of Process is being returned because:

☐ The Defendant listed does not match our records

☐ Service cannot be accomplished until after the document has been filed.

☐ One proof of service must be submitted for each defendant

☐ The date, time and place of service must be completed

☐ You must have a court order allowing service by posting or publication

☐ Service must be accomplished by someone over the age of 18 and not a party to the action

☐ Information regarding the server must be completed

☐ The declaration must be dated

☐ This must be submitted on the adopted Judicial Council Form (POS-010)

☒ Other: A Proof of Service is on file for Liberty International Underwriters as of 2/2/2018

If you have any questions, please contact the Civil Clerk's Office at (707) 521-6610 from 8:00am to noon on
regular business days.

Date:   2/13/2018

Arlene D. Junior, Court Executive Officer
**MELYNDA BONAGOFSKI**
By: _____

Melynda Bonagofski, Deputy Clerk

SCV–261819
RECLK
Clerk Return Letter
48808

| Hall of Justice | Empire Annex Courthouse | Civil and Family Law Courthouse | Juvenile Justice Center |
|---|---|---|---|
| 600 Administration Drive | 3035 Cleveland Avenue | 3055 Cleveland Avenue | 7425 Rancho Los Guilicos Road |
| Santa Rosa, CA 95403 | Santa Rosa, CA 95403 | Santa Rosa, CA 95403 | Santa Rosa, CA 95409 |

Case No. SCV261819
02-14-2018
Discovery served on Liberty
International Underwriters



## Notice of Service of Process

**null / ALL**
**Transmittal Number: 17772837**
**Date Processed: 02/15/2018**

Primary Contact:         Bruce Buttaro
                         Liberty Mutual Insurance Company
                         175 Berkeley Street
                         Boston, MA 02116

| | |
|---|---|
| **Entity:** | Liberty Insurance Underwriters Inc<br>Entity ID Number 2538473 |
| **Entity Served:** | Liberty International Underwriters |
| **Title of Action:** | Nicolette Lewis vs. Liberty Mutual Insurance Company; Liberty International Underwriters |
| **Document(s) Type:** | Discovery |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Sonoma County Superior Court, California |
| **Case/Reference No:** | 261819 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 02/14/2018 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Heather-Ann T. Young<br>707-525-8800 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

1   LESLIE R. PERRY (SBN 062390)
    JOHN J. JOHNSON (SBN 114902)
2   HEATHER-ANN T. YOUNG (SBN 283211)
    PERRY, JOHNSON, ANDERSON,
3   MILLER & MOSKOWITZ, LLP
    438 First Street, Fourth Floor
4   Santa Rosa, CA 95401
    Telephone: (707) 525-8800
5   Facsimile: (707) 545-8242

6   Attorney for Plaintiffs
    MARGRETT LEWIS, NICOLETTE LEWIS,
7   ALEXIS LEWIS, and JEFFREY LEWIS

8            SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF SONOMA

10  NICOLETTE LEWIS, ALEXIS LEWIS,          ) CASE No. 261819
    MARGRETT LEWIS; and JEFFREY LEWIS       )
11                                          ) Unlimited Civil Action
                                            )
12                    Plaintiff(s),         ) **PLAINTIFF NICOLETTE LEWIS'**
                                            ) **DECLARATION FOR ADDITIONAL**
13              vs.                         ) **DISCOVERY**
                                            )
14  LIBERTY MUTUAL INSURANCE COMPANY,       )
    LIBERTY INTERNATIONAL UNDERWRITERS,     ) Department: 16
15  and DOES 1 through 50, inclusive,       ) Judge: Hon. Patrick Broderick
                                            ) Trial Date: not yet set
16                    Defendant(s).         )
                                            )
17                                          )
                                            )
18                                          )
                                            )
19  _____ )

20  I, HEATHER-ANN T. YOUNG, declare:

21

22      1.    I am one of the attorneys for Plaintiffs in this action.  The following is true of my

23  personal knowledge and if called as a witness I would competently testify thereto.

24      2.    I am propounding to Defendant LIBERTY INTERNATIONAL

25  UNDERWRITERS, the set of Special Interrogatories, Set One served herewith.

26      3.    This set of Special Interrogatories will cause the total number of requests

27  propounded to the party to whom they are directed to exceed the number of requests permitted by

28  Section 2030.030 of the Civil Code Procedure.

                                        1
    _____
    Plaintiff Nicolette Lewis' Declaration for Additional Discovery - Special Interrogatories Set One
                            to Defendant Liberty International

1    4.    I have not propounded previous sets of Special Interrogatories.  This set contains

2    73 Special Interrogatories.  Form Interrogatories Set One is being served with these Special

3    Interrogatories.

4    5.    I am familiar with the issues and the previous discovery conducted by all the

5    parties in this case.

6    6.    I have personally examined the interrogatories in this set.

7    7.    This number of Special Interrogatories is warranted under Section 2030.010 of the

8    Civil Code of Procedure because of the complexity of this litigation and the numerous factual

9    issues related to the underlying case.   These interrogatories are needed to determine a liability

10   analysis and uncover key factual questions.

11   8.    None of the interrogatories is being propounded for any improper purpose, such as

12   to harass the party, or the attorney for the party, to whom it is directed, or to cause unnecessary

13   delay or needless increase in the cost of litigation.

14       I declare under penalty and perjury under the laws of California that the foregoing is true

15   and correct.  Executed this 13th day of February, 2018.

16

17

18

19       HEATHER-ANN T. YOUNG

20       Attorney for Plaintiffs

21

22

23

24

25

26

27

28

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ, LLP

Plaintiff Nicolette Lewis' Declaration for Additional Discovery - Special Interrogatories Set One
to Defendant Liberty International

Case No. SCV261819
02-05-2018
Form Interrogatories Served on Liberty
Mutual Insurance Company

DISC-001

| |
|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Leslie R. Perry 062390<br>Perry, Johnson, Anderson, Miller & Mosk<br>438 First Street, 4th Floor<br>Santa Rosa, CA 95401<br>TELEPHONE NO.: (707) 525-8800<br>FAX NO. *(Optional):* (707) 545-8242<br>E-MAIL ADDRESS *(Optional):* perry@perrylaw.net<br>ATTORNEY FOR *(Name):* Plaintiffs |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF       Sonoma

SHORT TITLE OF CASE:
Lewis v. Liberty Mutual Insurance Company

| FORM INTERROGATORIES-GENERAL | CASE NUMBER: |
|---|---|
| **Asking Party:** Plaintiff Nicolette Lewis | SCV 261819 |
| **Answering Party:** Defn Liberty International Underwriters | |
| **Set No.:** One | |

**Sec. 1. Instructions to All Parties**

(a)   Interrogatories are written questions prepared by a party to an action that are sent to any other party in the action to be answered under oath. The interrogatories below are form interrogatories approved for use in civil cases.

(b)   For time limitations, requirements for service on other parties, and other details, see Code of Civil Procedure sections 2030.010-2030.410 and the cases construing those sections.

(c)   These form interrogatories do not change existing law relating to interrogatories nor do they affect an answering party's right to assert any privilege or make any objection.

**Sec. 2. Instructions to the Asking Party**

(a)   These interrogatories are designed for optional use by parties in unlimited civil cases where the amount demanded exceeds $25,000. Separate interrogatories, *Form Interrogatories - Limited Civil Cases (Economic Litigation)* (form DISC-004), which have no subparts, are designed for use in limited civil cases where the amount demanded is $25,000 or less; however, those interrogatories may also be used in unlimited civil cases.

(b)   Check the box next to each interrogatory that you want the answering party to answer. Use care in choosing those interrogatories that are applicable to the case.

(c)   You may insert your own definition of **INCIDENT** in Section 4, but only where the action arises from a course of conduct or a series of events occurring over a period of time.

(d)   The interrogatories in section 16.0, Defendant's Contentions-Personal Injury, should not be used until the defendant has had a reasonable opportunity to conduct an investigation or discovery of plaintiff's injuries and damages.

(e)   Additional interrogatories may be attached.

**Sec. 3. Instructions to the Answering Party**

(a)   An answer or other appropriate response must be given to each interrogatory checked by the asking party.

(b)   As a general rule, within 30 days after you are served with these interrogatories, you must serve your responses on the asking party and serve copies of your responses on all other parties to the action who have appeared. See Code of Civil Procedure sections 2030.260-2030.270 for details.

(c)   Each answer must be as complete and straightforward as the information reasonably available to you, including the information possessed by your attorneys or agents, permits. If an interrogatory cannot be answered completely, answer it to the extent possible.

(d)   If you do not have enough personal knowledge to fully answer an interrogatory, say so, but make a reasonable and good faith effort to get the information by asking other persons or organizations, unless the information is equally available to the asking party.

(e)   Whenever an interrogatory may be answered by referring to a document, the document may be attached as an exhibit to the response and referred to in the response. If the document has more than one page, refer to the page and section where the answer to the interrogatory can be found.

(f)   Whenever an address and telephone number for the same person are requested in more than one interrogatory, you are required to furnish them in answering only the first interrogatory asking for that information.

(g)   If you are asserting a privilege or making an objection to an interrogatory, you must specifically assert the privilege or state the objection in your written response.

(h)   Your answers to these interrogatories must be verified, dated, and signed. You may wish to use the following form at the end of your answers:

   *I declare under penalty of perjury under the laws of the State of California that the foregoing answers are true and correct.*

_____        _____
        *(DATE)*                              *(SIGNATURE)*

**Sec. 4. Definitions**

   Words in **BOLDFACE CAPITALS** in these interrogatories are defined as follows:

   (a)   *(Check one of the following):*
   ☐ (1)   **INCIDENT** includes the circumstances and events surrounding the alleged accident, injury, or other occurrence or breach of contract giving rise to this action or proceeding.

Page 1 of 8

DISC-001

☐ (2)   **INCIDENT** means *(insert your definition here or on a separate, attached sheet labeled "Sec. 4(a)(2)")*:

(b)   **YOU OR ANYONE ACTING ON YOUR BEHALF** includes you, your agents, your employees, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf.

(c)   **PERSON** includes a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

(d)   **DOCUMENT** means a writing, as defined in Evidence Code section 250, and includes the original or a copy of handwriting, typewriting, printing, photostats, photographs, electronically stored information, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds, or symbols, or combinations of them.

(e)   **HEALTH CARE PROVIDER** includes any **PERSON** referred to in Code of Civil Procedure section 667.7(e)(3).

(f)   **ADDRESS** means the street address, including the city, state, and zip code.

**Sec. 5. Interrogatories**
The following interrogatories have been approved by the Judicial Council under Code of Civil Procedure section 2033.710:

## CONTENTS

1.0  Identity of Persons Answering These Interrogatories
2.0  General Background Information - Individual
3.0  General Background Information - Business Entity
4.0  Insurance
5.0  *[Reserved]*
6.0  Physical, Mental, or Emotional Injuries
7.0  Property Damage
8.0  Loss of Income or Earning Capacity
9.0  Other Damages
10.0  Medical History
11.0  Other Claims and Previous Claims
12.0  Investigation - General
13.0  Investigation - Surveillance
14.0  Statutory or Regulatory Violations
15.0  Denials and Special or Affirmative Defenses
16.0  Defendant's Contentions Personal Injury
17.0  Responses to Request for Admissions
18.0  *[Reserved]*
19.0  *[Reserved]*
20.0  How the Incident Occurred - Motor Vehicle
25.0  *[Reserved]*
30.0  *[Reserved]*
40.0  *[Reserved]*
50.0  Contract
60.0  *[Reserved]*
70.0  Unlawful Detainer *[See separate form DISC-003]*
101.0  Economic Litigation *[See separate form DISC-004]*
200.0  Employment Law *[See separate form DISC-002]*
        Family Law *[See separate form FL-145]*

**1.0  *Identity 'of Persons Answering These Interrogatories***

☒ 1.1  State the name, **ADDRESS,** telephone number, and relationship to you of each **PERSON** who prepared or assisted in the preparation of the responses to these interrogatories. *(Do not identify anyone who simply typed or reproduced the responses.)*

**2.0  General Background Information - individual**

☐ 2.1  State:
(a)   your name;
(b)   every name you have used in the past; and
(c)   the dates you used each name.

☐ 2.2  State the date and place of your birth.

☐ 2.3  At the time of the **INCIDENT,** did you have a driver's license? If so state:
(a)   the state or other issuing entity;
(b)   the license number and type;
(c)   the date of issuance; and
(d)   all restrictions.

☐ 2.4  At the time of the **INCIDENT,** did you have any other permit or license for the operation of a motor vehicle? If so, state:
(a)   the state or other issuing entity;
(b)   the license number and type;
(c)   the date of issuance; and
(d)   all restrictions.

☐ 2.5  State:
(a)   your present residence **ADDRESS;**
(b)   your residence **ADDRESSES** for the past five years; and
(c)   the dates you lived at each **ADDRESS.**

☐ 2.6  State:
(a)   the name, **ADDRESS,** and telephone number of your present employer or place of self-employment; and
(b)   the name, **ADDRESS,** dates of employment, job title, and nature of work for each employer or self-employment you have had from five years before the **INCIDENT** until today.

☐ 2.7  State:
(a)   the name and **ADDRESS** of each school or other academic or vocational institution you have attended, beginning with high school;
(b)   the dates you attended;
(c)   the highest grade level you have completed; and
(d)   the degrees received.

☐ 2.8  Have you ever been convicted of a felony? If so, for each conviction state:
(a)   the city and state where you were convicted;
(b)   the date of conviction;
(c)   the offense; and
(d)   the court and case number.

☐ 2.9  Can you speak English with ease? If not, what language and dialect do you normally use?

☐ 2.10 Can you read and write English with ease? If not, what language and dialect do you normally use?

DISC-001

☐ 2.11 At the time of the **INCIDENT** were you acting as an agent or employee for any **PERSON?** If so, state:
  (a)  the name, **ADDRESS,** and telephone number of that **PERSON;** and
  (b)  a description of your duties.

☐ 2.12 At the time of the **INCIDENT** did you or any other person have any physical, emotional, or mental disability or condition that may have contributed to the occurrence of the **INCIDENT?** If so, for each person state:
  (a)  the name, **ADDRESS,** and telephone number;
  (b)  the nature of the disability or condition; and
  (c)  the manner in which the disability or condition contributed to the occurrence of the **INCIDENT.**

☐ 2.13 Within 24 hours before the **INCIDENT** did you or any person involved in the **INCIDENT** use or take any of the following substances: alcoholic beverage, marijuana, or other drug or medication of any kind (prescription or not)? If so, for each person state:
  (a)  the name, **ADDRESS,** and telephone number;
  (b)  the nature or description of each substance;
  (c)  the quantity of each substance used or taken;
  (d)  the date and time of day when each substance was used or taken;
  (e)  the **ADDRESS** where each substance was used or taken;
  (f)  the name, **ADDRESS,** and telephone number of each person who was present when each substance was used or taken; and
  (g)  the name, **ADDRESS,** and telephone number of any **HEALTH CARE PROVIDER** who prescribed or furnished the substance and the condition for which it was prescribed or furnished.

**3.0  General Background Information - Business Entity**

☒ 3.1  Are you a corporation? If so, state:
  (a)  the name stated in the current articles of incorporation;
  (b)  all other names used by the corporation during the past 10 years and the dates each was used;
  (c)  the date and place of incorporation;
  (d)  the **ADDRESS** of the principal place of business; and
  (e)  whether you are qualified to do business in California.

☒ 3.2  Are you a partnership? If so, state:
  (a)  the current partnership name;
  (b)  all other names used by the partnership during the past 10 years and the dates each was used;
  (c)  whether you are a limited partnership and, if so, under the laws of what jurisdiction;
  (d)  the name and **ADDRESS** of each general partner; and
  (e)  the **ADDRESS** of the principal place of business.

☒ 3.3  Are you a limited liability company? If so, state:
  (a)  the name stated in the current articles of organization;
  (b)  all other names used by the company during the past 10 years and the date each was used;
  (c)  the date and place of filing of the articles of organization;
  (d)  the **ADDRESS** of the principal place of business; and
  (e)  whether you are qualified to do business in California.

☒ 3.4  Are you a joint venture? If so, state:
  (a)  the current joint venture name;
  (b)  all other names used by the joint venture during the past 10 years and the dates each was used;
  (c)  the name and **ADDRESS** of each joint venture; and
  (d)  the **ADDRESS** of the principal place of business.

☒ 3.5  Are you an unincorporated association? If so, state:
  (a)  the current unincorporated association name;
  (b)  all other names used by the unincorporated association during the past 10 years and the dates each was used; and
  (c)  the **ADDRESS** of the principal place of business.

☒ 3.6  Have you done business under a fictitious name during the past 10 years? If so, for each fictitious name state:
  (a)  the name;
  (b)  the dates each was used;
  (c)  the state and county of each fictitious name filing; and
  (d)  the **ADDRESS** of the principal place of business.

☒ 3.7  Within the past five years has any public entity registered or licensed your business? If so, for each license or registration:
  (a)  identify the license or registration;
  (b)  state the name of the public entity; and
  (c)  state the dates of issuance and expiration.

**4.0  Insurance**

☐ 4.1  At the time of the **INCIDENT,** was there in effect any policy of insurance through which you were or might be insured in any manner (for example, primary, pro-rata, or excess liability coverage or medical expense coverage) for the damages, claims, or actions that have arisen out of the **INCIDENT?** If so, for each policy state:
  (a)  the kind of coverage;
  (b)  the name and **ADDRESS** of the insurance company;
  (c)  the name, **ADDRESS,** and telephone number of each named insured;
  (d)  the policy number;
  (e)  the limits of coverage for each type of coverage contained in the policy;
  (f)  whether any reservation of rights or controversy or coverage dispute exists between you and the insurance company; and
  (g)  the name, **ADDRESS,** and telephone number of the custodian of the policy.

☐ 4.2  Are you self-insured under any statute for the damages, claims, or actions that have arisen out of the **INCIDENT?** If so, specify the statute.

**5.0**  *[Reserved]*

**6.0  Physical, Mental, or Emotional Injuries**

☐ 6.1  Do you attribute any physical, mental, or emotional injuries to the **INCIDENT?** *(If your answer is "no," do not answer interrogatories 6.2 through 6.7).*

☐ 6.2  Identify each injury you attribute to the **INCIDENT** and the area of your body affected.

CEB | Essential
ceb.com | Forms

6.3 Do you still have any complaints that you attribute to the **INCIDENT**? If so, for each complaint state:
(a) a description;
(b) whether the complaint is subsiding, remaining the same, or becoming worse; and
(c) the frequency and duration.

6.4 Did you receive any consultation or examination (except from expert witnesses covered by Code of Civil Procedure sections 2034.210-2034.310) or treatment from a **HEALTH CARE PROVIDER** for any injury you attribute to the **INCIDENT**? If so, for each **HEALTH CARE PROVIDER** state:
(a) the name, **ADDRESS**, and telephone number;
(b) the type of consultation, examination, or treatment provided;
(c) the dates you received consultation, examination, or treatment; and
(d) the charges to date.

6.5 Have you taken any medication, prescribed or not, as a result of injuries that you attribute to the **INCIDENT**? If so, for each medication state:
(a) the name;
(b) the **PERSON** who prescribed or furnished it;
(c) the date it was prescribed or furnished;
(d) the dates you began and stopped taking it; and
(e) the cost to date.

6.6 Are there any other medical services necessitated by the injuries that you attribute to the **INCIDENT** that were not previously listed (for example, ambulance, nursing, prosthetics)? If so, for each service state:
(a) the nature;
(b) the date;
(c) the cost; and
(d) the name, **ADDRESS**, and telephone number of each provider.

6.7 Has any **HEALTH CARE PROVIDER** advised that you may require future or additional treatment for any injuries that you attribute to the **INCIDENT**? If so, for each injury state:
(a) the name and **ADDRESS** of each **HEALTH CARE PROVIDER**;
(b) the complaints for which the treatment was advised; and
(c) the nature, duration, and estimated cost of the treatment.

## 7.0  Property Damage

7.1 Do you attribute any loss of or damage to a vehicle or other property to the **INCIDENT**? If so, for each item of property:
(a) describe the property;
(b) describe the nature and location of the damage to the property;

(c) state the amount of damage you are claiming for each item of property and how the amount was calculated; and
(d) if the property was sold, state the name, **ADDRESS**, and telephone number of the seller, the date of sale, and the sale price.

7.2 Has a written estimate or evaluation been made for any item of property referred to in your answer to the preceding interrogatory? If so, for each estimate or evaluation state:
(a) the name, **ADDRESS**, and telephone number of the **PERSON** who prepared it and the date prepared;
(b) the name, **ADDRESS**, and telephone number of each **PERSON** who has a copy of it; and
(c) the amount of damage stated.

7.3 Has any item of property referred to in your answer to interrogatory 7.1 been repaired? If so, for each item state:
(a) the date repaired;
(b) a description of the repair;
(c) the repair cost;
(d) the name, **ADDRESS**, and telephone number of the **PERSON** who repaired it;
(e) the name, **ADDRESS**, and telephone number of the **PERSON** who paid for the repair.

## 8.0  Loss of Income or Earning Capacity

8.1 Do you attribute any loss of income or earning capacity to the **INCIDENT**? *(If your answer is "no," do not answer interrogatories 8.2 through 8.8).*

8.2 State:
(a) the nature of your work;
(b) your job title at the time of the **INCIDENT**; and
(c) the date your employment began.

8.3 State the last date before the **INCIDENT** that you worked for compensation.

8.4 State your monthly income at the time of the **INCIDENT** and how the amount was calculated.

8.5 State the date you returned to work at each place of employment following the **INCIDENT**.

8.6 State the dates you did not work and for which you lost income as a result of the **INCIDENT**.

8.7 State the total income you have lost to date as a result of the **INCIDENT** and how the amount was calculated.

8.8 Will you lose income in the future as a result of the **INCIDENT**? If so, state:
(a) the facts upon which you base this contention;
(b) an estimate of the amount;
(c) an estimate of how long you will be unable to work; and
(d) how the claim for future income is calculated.

CEB | Essential
ceb.com | Forms

DISC-001

**9.0  Other Damages**

☐ 9.1  Are there any other damages that you attribute to the **INCIDENT**? If so, for each item of damage state:
   (a) the nature;
   (b) the date it occurred;
   (c) the amount; and
   (d) the name, **ADDRESS**, and telephone number of each **PERSON** to whom an obligation was incurred.

☐ 9.2  Do any **DOCUMENTS** support the existence or amount of any item of damages claimed in interrogatory 9.1? If so, describe each document and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT**.

**10.0 Medical History**

☐ 10.1  At any time before the **INCIDENT** did you have complaints or injuries that involved the same part of your body claimed to have been injured in the **INCIDENT**? If so, for each state:
   (a) a description of the complaint or injury;
   (b) the dates it began and ended; and
   (c) the name, **ADDRESS**, and telephone number of each **HEALTH CARE PROVIDER** whom you consulted or who examined or treated you.

☐ 10.2  List all physical, mental, and emotional disabilities you had immediately before the **INCIDENT**. *(You may omit mental or emotional disabilities unless you attribute any mental or emotional injury to the INCIDENT.)*

☐ 10.3  At any time after the **INCIDENT**, did you sustain injuries of the kind for which you are now claiming damages? If so, for each incident giving rise to an injury state:
   (a) the date and the place it occurred;
   (b) the name, **ADDRESS**, and telephone number of any other **PERSON** involved;
   (c) the nature of any injuries you sustained;
   (d) the name, **ADDRESS**, and telephone number of each **HEALTH CARE PROVIDER** who you consulted or who examined or treated you; and
   (e) the nature of the treatment and its duration.

**11.0 Other Claims and Previous Claims**

☐ 11.1  Except for this action, in the past 10 years have you filed an action or made a written claim or demand for compensation for your personal injuries? If so, for each action, claim, or demand state:
   (a) the date, time, and place and location (closest street **ADDRESS** or intersection) of the **INCIDENT** giving rise to the action, claim, or demand;
   (b) the name, **ADDRESS**, and telephone number of each **PERSON** against whom the claim or demand was made or the action filed;

(c) the court, names of the parties, and case number of any action filed;
(d) the name, **ADDRESS**, and telephone number of any attorney representing you;
(e) whether the claim or action has been resolved or is pending; and
(f) a description of the injury.

☐ 11.2  In the past 10 years have you made a written claim or demand for workers' compensation benefits? If so, for each claim or demand state:
   (a) the date, time, and place of the **INCIDENT** giving rise to the claim;
   (b) the name, **ADDRESS**, and telephone number of your employer at the time of the injury;
   (c) the name, **ADDRESS**, and telephone number of the workers' compensation insurer and the claim number;
   (d) the period of time during which you received workers' compensation benefits;
   (e) a description of the injury;
   (f) the name, **ADDRESS**, and telephone number of any **HEALTH CARE PROVIDER** who provided services; and
   (g) the case number at the Workers' Compensation Appeals Board.

**12.0 Investigation-General**

☐ 12.1  State the name, **ADDRESS**, and telephone number of each individual:
   (a) who witnessed the **INCIDENT** or the events occurring immediately before or after the **INCIDENT**;
   (b) who made any statement at the scene of the **INCIDENT**;
   (c) who heard any statements made about the **INCIDENT** by any individual at the scene; and
   (d) who **YOU OR ANYONE ACTING ON YOUR BEHALF** claim has knowledge of the **INCIDENT** (except for expert witnesses covered by Code of Civil Procedure section 2034).

☐ 12.2  Have **YOU OR ANYONE ACTING ON YOUR BEHALF** interviewed any individual concerning the **INCIDENT**? If so, for each individual state:
   (a) the name, **ADDRESS**, and telephone number of the individual interviewed;
   (b) the date of the interview; and
   (c) the name, **ADDRESS**, and telephone number of the **PERSON** who conducted the interview.

☐ 12.3  Have **YOU OR ANYONE ACTING ON YOUR BEHALF** obtained a written or recorded statement from any individual concerning the **INCIDENT**? If so, for each statement state:
   (a) the name, **ADDRESS**, and telephone number of the individual from whom the statement was obtained;
   (b) the name, **ADDRESS**, and telephone number of the individual who obtained the statement;
   (c) the date the statement was obtained; and
   (d) the name, **ADDRESS**, and telephone number of each **PERSON** who has the original statement or a copy.

**12.4 Do YOU OR ANYONE ACTING ON YOUR BEHALF**
know of any photographs, films, or videotapes depicting any
place, object, or individual concerning the INCIDENT or
plaintiff's injuries? If so, state:
- (a) the number of photographs or feet of film or videotape;
- (b) the places, objects, or persons photographed, filmed, or
  videotaped;
- (c) the date the photographs, films, or videotapes were
  taken;
- (d) the name, ADDRESS, and telephone number of the
  individual taking the photographs, films, or videotapes;
  and
- (e) the name, ADDRESS, and telephone number of each
  PERSON who has the original or a copy of the
  photographs, films, or videotapes.

**12.5 Do YOU OR ANYONE ACTING ON YOUR BEHALF**
know of any diagram, reproduction, or model of any place or
thing (except for items developed by expert witnesses
covered by Code of Civil Procedure sections 2034.210-
2034.310) concerning the INCIDENT? If so, for each item
state:
- (a) the type (i.e., diagram, reproduction, or model);
- (b) the subject matter; and
- (c) the name, ADDRESS, and telephone number of each
  PERSON who has it.

**12.6 Was a report made by any PERSON concerning the**
INCIDENT? If so, state:
- (a) the name, title, identification number, and employer of
  the PERSON who made the report;
- (b) the date and type of report made;
- (c) the name, ADDRESS, and telephone number of the
  PERSON for whom the report was made; and
- (d) the name, ADDRESS, and telephone number of each
  PERSON who has the original or a copy of the report.

**12.7 Have YOU OR ANYONE ACTING ON YOUR**
BEHALF inspected the scene of the INCIDENT? If so, for
each inspection state:
- (a) the name, ADDRESS, and telephone number of the
  individual making the inspection (except for expert
  witnesses covered by Code of Civil Procedure
  sections 2034.210-2034.310); and
- (b) the date of the inspection.

**13.0 Investigation-Surveillance**

**13.1 Have YOU OR ANYONE ACTING ON YOUR BEHALF**
conducted surveillance of any individual involved in the
INCIDENT or any party to this action? If so, for each sur-
veillance state:
- (a) the name, ADDRESS, and telephone number of the
  individual or party;
- (b) the time, date, and place of the surveillance;
- (c) the name, ADDRESS, and telephone number of the
  individual who conducted the surveillance; and
- (d) the name, ADDRESS, and telephone number of each
  PERSON who has the original or a copy of any
  surveillance photograph, film, or videotape.

**13.2 Has a written report been prepared on the**
surveillance? If so, for each written report state:
- (a) the title;
- (b) the date;
- (c) the name, ADDRESS, and telephone number of the
  individual who prepared the report; and
- (d) the name, ADDRESS, and telephone number of each
  PERSON who has the original or a copy.

**14.0 Statutory or Regulatory Violations**

**14.1 Do YOU OR ANYONE ACTING ON YOUR BEHALF**
contend that any PERSON involved in the INCIDENT
violated any statute, ordinance, or regulation and that the
violation was a legal (proximate) cause of the INCIDENT? If
so, identify the name, ADDRESS, and telephone number of
each PERSON and the statute, ordinance, or regulation that
was violated.

**14.2 Was any PERSON cited or charged with a violation of**
any statute, ordinance, or regulation as a result of this
INCIDENT? If so, for each PERSON state:
- (a) the name, ADDRESS, and telephone number of the
  PERSON;
- (b) the statute, ordinance, or regulation allegedly violated;
- (c) whether the PERSON entered a plea in response to the
  citation or charge and, if so, the plea entered; and
- (d) the name and ADDRESS of the court or administrative
  agency, names of the parties, and case number.

**15.0 Denials and Special or Affirmative Defenses**

**15.1 Identify each denial of a material allegation and each**
special or affirmative defense in your pleadings and for each:
- (a) state all facts upon which you base the denial or special
  or affirmative defense;
- (b) state the names, ADDRESSES, and telephone numbers
  of all PERSONS who have knowledge of those facts; and
- (c) identify all DOCUMENTS and other tangible things that
  support your denial or special or affirmative defense, and
  state the name, ADDRESS, and telephone number of
  the PERSON who has each DOCUMENT.

**16.0 Defendant's Contentions-Personal Injury**

**16.1 Do you contend that any PERSON, other than you or**
plaintiff, contributed to the occurrence of the INCIDENT or
the injuries or damages claimed by plaintiff? If so, for each
PERSON:
- (a) state the name, ADDRESS, and telephone number of
  the PERSON;
- (b) state all facts upon which you base your contention;
- (c) state the names, ADDRESSES, and telephone numbers
  of all PERSONS who have knowledge of the facts; and
- (d) identify all DOCUMENTS and other tangible things that
  support your contention and state the name, ADDRESS,
  and telephone number of the PERSON who has each
  DOCUMENT or thing.

**16.2 Do you contend that plaintiff was not injured in the**
INCIDENT? If so:
- (a) state all facts upon which you base your contention;
- (b) state the names, ADDRESSES, and telephone numbers
  of all PERSONS who have knowledge of the facts; and
- (c) identify all DOCUMENTS and other tangible things that
  support your contention and state the name, ADDRESS,
  and telephone number of the PERSON who has each
  DOCUMENT or thing.

☐ 16.3 Do you contend that the injuries or the extent of the injuries claimed by plaintiff as disclosed in discovery proceedings thus far in this case were not caused by the **INCIDENT**? If so, for each injury:
(a) identify it;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.4 Do you contend that any of the services furnished by any **HEALTH CARE PROVIDER** claimed by plaintiff in discovery proceedings thus far in this case were not due to the **INCIDENT**? If so:
(a) identify each service;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.5 Do you contend that any of the costs of services furnished by any **HEALTH CARE PROVIDER** claimed as damages by plaintiff in discovery proceedings thus far in this case were not necessary or unreasonable? If so:
(a) identify each cost;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.6 Do you contend that any part of the loss of earnings or income claimed by plaintiff in discovery proceedings thus far in this case was unreasonable or was not caused by the **INCIDENT**? If so:
(a) identify each part of the loss;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.7 Do you contend that any of the property damage claimed by plaintiff in discovery Proceedings thus far in this case was not caused by the **INCIDENT**? If so:
(a) identify each item of property damage; ·
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.8 Do you contend that any of the costs of repairing the property damage claimed by plaintiff in discovery proceedings thus far in this case were unreasonable? If so:
(a) identify each cost item;
(b) state all facts upon which you base your contention;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

☐ 16.9 Do **YOU OR ANYONE ACTING ON YOUR BEHALF** have any **DOCUMENT** (for example, insurance bureau index reports) concerning claims for personal injuries made before or after the **INCIDENT** by a plaintiff in this case? If so, for each plaintiff state:
(a) the source of each **DOCUMENT;**
(b) the date each claim arose;
(c) the nature of each claim; and
(d) the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT.**

☐ 16.10 Do **YOU OR ANYONE ACTING ON YOUR BEHALF** have any **DOCUMENT** concerning the past or present physical, mental, or emotional condition of any plaintiff in this case from a **HEALTH CARE PROVIDER** not previously identified (except for expert witnesses covered by Code of Civil Procedure sections 2034.210-2034.310)? If so, for each plaintiff state:
(a) the name, **ADDRESS,** and telephone number of each **HEALTH CARE PROVIDER;**
(b) a description of each **DOCUMENT;** and
(c) the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT.**

**17.0 Responses to Request for Admissions**

☒ 17.1 Is your response to each request for admission served with these interrogatories an unqualified admission? If not, for each response that is not an unqualified admission:
(a) state the number of the request;
(b) state all facts upon which you base your response;
(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of those facts; and
(d) identify all **DOCUMENTS** and other tangible things that support your response and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

**18.0**     *[Reserved]*

**19.0**     *[Reserved]*

**20.0 How the Incident Occurred-Motor Vehicle**

☐ 20.1 State the date, time, and place of the **INCIDENT** (closest street **ADDRESS** or intersection).

☐ 20.2 For each vehicle involved in the **INCIDENT,** state:
(a) the year, make, model, and license number;
(b) the name, **ADDRESS,** and telephone number of the driver;

CEB | Essential
ceb.com | e Forms

DISC-001

☐ (c) the name, **ADDRESS,** and telephone number of each occupant other than the driver:

☐ (d) the name, **ADDRESS,** and telephone number of each registered owner;

(e) the name, **ADDRESS,** and telephone number of each lessee;

(f) the name, **ADDRESS,** and telephone number of each owner other than the registered owner or lien holder; and

(g) the name of each owner who gave permission or consent to the driver to operate the vehicle.

☐ 20.3 State the **ADDRESS** and location where your trip began and the **ADDRESS** and location of your destination.

☐ 20.4 Describe the route that you followed from the beginning of your trip to the location of the **INCIDENT,** and state the location of each stop, other than routine traffic stops, during the trip leading up to the **INCIDENT.**

☐ 20.5 State the name of the street or roadway, the lane of travel, and the direction of travel of each vehicle involved in the **INCIDENT** for the 500 feet of travel before the **INCIDENT.**

☐ 20.6 Did the **INCIDENT** occur at an intersection? If so, describe all traffic control devices, signals, or signs at the intersection.

☐ 20.7 Was there a traffic signal facing you at the time of the **INCIDENT?** If so, state:
(a) your location when you first saw it;
(b) the color;
(c) the number of seconds it had been that color; and
(d) whether the color changed between the time you first saw it and the **INCIDENT.**

☐ 20.8 State how the **INCIDENT** occurred, giving the speed, direction, and location of each vehicle involved:
(a) just before the **INCIDENT;**
(b) at the time of the **INCIDENT;** and (c) just after the **INCIDENT.**

☐ 20.9 Do you have information that a malfunction or defect in a vehicle caused the **INCIDENT**? If so:
(a) identify the vehicle;
(b) identify each malfunction or defect;
(c) state the name, **ADDRESS,** and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and
(d) state the name, **ADDRESS,** and telephone number of each **PERSON** who has custody of each defective part.

☐ 20.10 Do you have information that any malfunction or defect in a vehicle contributed to the injuries sustained in the **INCIDENT?** If so:
(a) identify the vehicle;
(b) identify each malfunction or defect;
(c) state the name, **ADDRESS,** and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and

(d) state the name, **ADDRESS,** and telephone number of each **PERSON** who has custody of each defective part.

☐ 20.11 State the name, **ADDRESS,** and telephone number of each owner and each **PERSON** who has had possession since the **INCIDENT** of each vehicle involved in the **INCIDENT.**

**25.0** *[Reserved]*
**30.0** *[Reserved]*
**40.0** *[Reserved]*

**50.0 Contract**

☐ 50.1 For each agreement alleged in the pleadings:
(a) identify each **DOCUMENT** that is part of the agreement and for each state the name, **ADDRESS,** and telephone number of each **PERSON** who has the **DOCUMENT;**
(b) state each part of the agreement not in writing, the name, **ADDRESS,** and telephone number of each **PERSON** agreeing to that provision, and the date that part of the agreement was made;
(c) identify all **DOCUMENTS** that evidence any part of the agreement not in writing and for each state the name, **ADDRESS,** and telephone number of each **PERSON** who has the **DOCUMENT;**
(d) identify all **DOCUMENTS** that are part of any modification to the agreement, and for each state the name, **ADDRESS,** and telephone number of each **PERSON** who has the **DOCUMENT;**
(e) state each modification not in writing, the date, and the name, **ADDRESS,** and telephone number of each **PERSON** agreeing to the modification, and the date the modification was made;
(f) identify all **DOCUMENTS** that evidence any modification of the agreement not in writing and for each state the name, **ADDRESS,** and telephone number of each **PERSON** who has the **DOCUMENT.**

☐ 50.2 Was there a breach of any agreement alleged in the pleadings? If so, for each breach describe and give the date of every act or omission that you claim is the breach of the agreement.

☐ 50.3 Was performance of any agreement alleged in the pleadings excused? If so, identify each agreement excused and state why performance was excused.

☐ 50.4 Was any agreement alleged in the pleadings terminated by mutual agreement, release, accord and satisfaction, or novation? If so, identify each agreement terminated, the date of termination, and the basis of the termination.

☐ 50.5 Is any agreement alleged in the pleadings unenforceable? If so, identify each unenforceable agreement and state why it is unenforceable.

☐ 50.6 Is any agreement alleged in the pleadings ambiguous? If so, identify each ambiguous agreement and state why it is ambiguous.

**60.0** *[Reserved]*

Case No. SCV261819
02-14-2018
Request for Production of Documents
served on Liberty International
Underwriters

1   LESLIE R. PERRY (SBN 062390)
    JOHN J. JOHNSON (SBN 114902)
2   HEATHER-ANN T. YOUNG (SBN 283211)
    PERRY, JOHNSON, ANDERSON,
3   MILLER & MOSKOWITZ, LLP
    438 First Street, Fourth Floor
4   Santa Rosa, CA 95401
    Telephone: (707) 525-8800
5   Facsimile: (707) 545-8242

6   Attorney for Plaintiffs
    MARGRETT LEWIS, NICOLETTE LEWIS,
7   ALEXIS LEWIS, and JEFFREY LEWIS

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                              COUNTY OF SONOMA

10  NICOLETTE LEWIS, ALEXIS LEWIS,          ) CASE No. 261819
    MARGRETT LEWIS; and JEFFREY LEWIS       )
11                                          ) Unlimited Civil Action
                                            )
12               Plaintiff(s),              ) **PLAINTIFF NICOLETTE LEWIS'**
                                            ) **REQUEST FOR PRODUCTION OF**
13          vs.                             ) **DOCUMENTS TO DEFENDANT**
                                            ) **LIBERTY INTERNATIONAL**
14  LIBERTY MUTUAL INSURANCE COMPANY ,      ) **UNDERWRITERS**
    LIBERTY INTERNATIONAL UNDERWRITERS,     ) **[SET ONE]**
15  and DOES 1 through 50, inclusive,       )
                                            )
16                                          ) Department: 16
                 Defendant(s).              ) Judge: Hon. Patrick Broderick
17                                          ) Trial Date: not yet set
                                            )
18                                          )
                                            )
19  _____ )

20

21  REQUESTING PARTY:        Plaintiff NICOLETTE LEWIS

22  RESPONDING PARTIES:   Defendant LIBERTY INTERNATIONAL UNDERWRITERS

23
24  SET NUMBER:          ONE

25       Pursuant to Code of Civil Procedure section 2031.010 et seq., Plaintiff NICOLETTE

26  LEWIS demands that Defendant LIBERTY INTERNATIONAL UNDERWRITERS, produce for

27  inspection and copying at the Law Offices of Perry, Johnson, Anderson, Miller & Moskowitz,

28  LLP, 438 First Street, 4th Floor, Santa Rosa, California 95401 within the time proscribed by Code

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

1    of Civil Procedure section 2031.260, the following specified items in Defendants' possession,

2    custody or control.

3                                    **DEFINITIONS**

4

5    A.       As used herein the word "BROKER" means any person or entity transacting insurance on

6    behalf of ECOSMART, including, but not limited to any representative or agent of OAMPS

7    Insurance Brokers and/or Arthur J. Gallagher Insurance Brokers (including James Forster and/or

8    Melissa Mudge).

9    B.       As used herein the word "CHANGE" means a difference or reduction in coverage, risk,

10   premium.

11   C.       As used herein the words "CLAIMS MADE" means any claim made during the policy

12   period, , regardless of when the act that gave rise to the claim took place.

13   D.       As used herein, the word "COMMUNICATION(S)" means any form of communication,

14   including, but not limited to emails, letters (delivered by mail, personal delivery or otherwise),

15   text, memorandum, facsimile, documents made available on the internet for viewing, downloading

16   OR uploading (e.g. sharing Google Documents, Sharefile, Dropbox, etc.) and includes direct

17   communications and also communications in which an individual is copied, blind copied, or in

18   some fashion included in, or made privy to, the COMMUNICATION.

19   E.       As used herein the words "DATE OF PRODUCTION" means the date on which the

20   DOCUMENTS are produced.

21   F.       As used herein, the word "DOCUMENT" or "DOCUMENTS" is used herein to mean all

22   "writings" as defined in California Evidence Code Section 250 (see text, below), including, but

23   not limited to, all written, recorded, or graphic material, however produced or reproduced, of any

24   kind in your possession, custody, or control, or in the possession, custody, or control of any

25   officers, members, partners, employees, servants, or your agents or representatives, including,

26   without limitation, letters, correspondence, telegrams, memoranda, records, minutes, contracts,

27   agreements, memoranda, or records of telephone or personal conversations or conferences,

28   interoffice communications, emails, sound recordings, handwritings, ELECTRONICALLY

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

2

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

1  STORED INFORMATION, electronic data processing inputs, and memories of all kinds,

2  including hard drives, CD ROM data, tapes and discs, computer reports and printouts, microfilm,

3  bulletins, circulars, pamphlets, studies, notices, summaries, reports, books, teletype messages, bills

4  of lading, invoices, work sheets, and index cards, or copies of such documents where originals are

5  not available. The term "document" or "documents" includes any and all matter that relates in

6  whole or in part to the subject referred to in a demand to produce. Where a document has been

7  prepared in several copies that are not identical (or which by reason of subsequent modification,

8  addition, or notation are no longer identical), each non-identical copy is a separate "document."

9  DOCUMENT includes any COMMUNICATION.

10        Evidence Code Section 250:  "Writing" means handwriting, typewriting, printing,

11        photostating, photographing, photocopying, transmitting by electronic mail or facsimile,

12        and every other means of recording upon any tangible thing, any form of communication

13        or representation, including letters, words, pictures, sounds, or symbols, or combinations

14        thereof, and any record thereby created, regardless of the manner in which the record has

15        been stored."

16

17  G.    As used herein the word "ECOSMART" means EcoSmart, Inc., its agents, employees,

18  attorneys, accountants,  investigators, insurance broker(s) and anyone else acting on its behalf,

19  The Fire Company Pty Ltd, Esmart Group Pty Ltd, any employee, representative or agent of

20  OAMPS Insurance Brokers and/or Arthur J. Gallagher Insurance Brokers (including James Forster

21  and/or Melissa Mudge).

22  H.    As used herein the words "ECOSMART PRODUCT(S)" means any fuel produced by

23  ECOSMART that is intended for use by consumers, including but not limited to E-NRG.

24  I.    As used herein the word "ELECTRONIC" means relating to technology having electrical,

25  digital, magnetic, wireless, optical, electromagnetic, or similar capabilities.

26

27  J.    As used herein the words "ELECTRONICALLY STORED INFORMATION" means

28  information that is stored in an ELECTRONIC medium.

---

3

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

K.      As used herein the word "EMPLOYEE" means an employee as defined in Cal. Labor
Code §3351 to wit: every person in the service of an employer under any appointment or contract
of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully
employed.

L.      As used herein the word "INSURANCE" means any form of liability insurance including,
but not limited to General, Products OR Combined General & Products Liability Policies
(including INSURANCE POLICY #1 or INSURANCE POLICY #2).

M.      As used herein the words "INSURANCE POLICY #1" means Liberty International
Underwriters Combined General & Products Liability Policy #ME-CAS-12-438176 with a period
of insurance 4 p.m. April 30, 2013 to 4 p.m. April 30, 2014. (Exhibit 1)

N.      As used herein the words "INSURANCE POLICY #2" means Liberty International
Underwriters Combined General & Products Liability Policy #SY-CAS-13-438167 with a period
of insurance 4 p.m. April 30, 2014 to 4 p.m. April 30, 2015.  (Exhibit 2)

O.      As used herein the word "LAWSUIT(S)" means any lawsuit based on personal injuries or
death resulting from an ECOSMART product.

P.      As used herein the words "LEWIS V. ECOSMART" means Lewis v. EcoSmart et al.,
Sonoma County Superior Court Case No. SCV-256907. (Exhibit 3)

Q.      As used herein the words "LIBERTY MUTUAL INSURANCE COMPANY" means
Liberty Mutual Insurance Company and any agent, employees, representatives, attorneys (as to
non-privileged communications), investigators, and anyone else acting on its or Liberty Mutual
Insurance Company's behalf, or of any subsidiary or entity related to either named entity.

R.      As used herein the words "NOTIFY" or "NOTIFIED" means put on notice or advise or
report to in any manner, whether formally, informally or otherwise.

S.      As used herein the word "OR" means and/or.

T.      As used herein the word "PERSON" includes a natural person, firm, association,

4

Plaintiff Nicolette Lewis' Request for Documents Set One to Defendant Liberty International

1  organization, partnership, business, trust, corporation or public entity.

2  U.      As used herein the word "PRODUCE" shall mean to present the original document for

3  copying at the offices of Perry, Johnson, Anderson, Miller & Moskowitz at 438 First Street,

4  Fourth Floor, Santa Rosa, California 95401 or, in the alternative, to supply Plaintiffs' attorneys

5  with an exact copy of the document.  If any document or portion thereof is not produced, you are

6  asked to identify the document and to give the reason that it is not produced.

7  V.      As used herein, the words "REGARDING" or "RELATING" when used with respect to

8  documents shall mean any and all documents which in in any or in any manner refer to, relate to,

9  reflect, concern, contain, embody, or describe the subject matter referred to in any of the particular

10  document demands made below.

11  W.      As used herein the word "RELATIONSHIP" means any way that Liberty Mutual

12  Insurance Company is connected to or involved with Liberty International Underwriters, whether

13  as an owner, subsidiary, a division, a trading company for, or otherwise.

14

15  X.      As used herein the word "RENEWAL" means the continuation of insurance coverage.

16  Y.      As used herein the words "TRADING NAME" refers to "trading name" as that term is

17  used in INSURANCE POLICY #1 and INSURANCE POLICY #2.

18

19  Z.      As used herein, the words, "YOU" and "YOUR" means Liberty International Underwriters

20  and any agent, employees, representatives, attorneys (as to non-privileged communications),

21  investigators, and anyone else acting on behalf of either entity, or of any subsidiary or entity(ies)

22  related to Liberty International Underwriters.

23

24                                    NON-PRODUCTION

25          If any document falling within the demanding party's request is considered to be excluded

26  from production on the grounds of an objection or privilege, responding party shall include in the

27  written responses to said request a list of the documents so withheld from the production,

28  identifying each document by: date, name, title and address of addressor and addressee; name, title

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

5

1   and address of each other person to whom a copy of the document was sent; general character of

2   the document to be exempt from production. If responding parties have at any time relinquished

3   possession, custody or control of or destroyed any document falling within demanding party's

4   request, responding parties shall identify each document falling within demanding party's request,

5   responding parties shall identify each document as above and as to existing documents identify the

6   persons, if any, who currently have custody, possession or control of them.

7   For each document which you fail or refuse to produce, you are to provide all of the following

8   information:

9

10      1.   The exact name and title by which you refer to it;

11      2.   The date and all identifying numbers on it;

12      3.   The identity of each person who wrote, signed, initialed, or otherwise participated in

13           the execution of the document;

14      4.   The identity of each person having custody or control of the document; and

15      5.   Each reason why you have failed or refused to produce such documents.

16                              **DOCUMENTS TO BE PRODUCED**

17   **REQUEST NO. 1:**

18          All DOCUMENTS RELATING to any California licenses held by YOU've held in the

19   past 10 years.

20   **REQUEST NO. 2:**

21

22          All DOCUMENTS RELATING to that portion of the Liability Policy Form LIU-AUS-

23   CAS-CGL-2000001 referenced in INSURANCE POLICY #1 which states "this schedule attaches

24   and forms part of the LIU part of LIU Combined General & Products Liability Policy Form LIU-

25   AUS-CAS-CGL-2000001 and is valid only if it is signed and dated below by a person duly

26   authorized by Liberty International Underwriters."

27

28

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

**REQUEST NO. 3:**

   All DOCUMENTS RELATING to INSURANCE POLICY #1.

**REQUEST NO. 4:**

   All DOCUMENTS RELATING to INSURANCE POLICY #2.

**REQUEST NO. 5:**

   All COMMUNICATIONS between YOU and ECOSMART from April 30, 2013 to DATE

OF PRODUCTION.

**REQUEST NO. 6:**

   All COMMUNICATIONS between YOU and LIBERTY MUTUAL INSURANCE

COMPANY from April 30, 2013 to DATE OF PRODUCTION REGARDING ECOSMART.

**REQUEST NO. 7:**

   All COMMUNICATIONS between YOU and ECOSMART RELATING to INSURANCE

POLICY #1.

**REQUEST NO. 8:**

   All COMMUNICATIONS between YOU and LIBERTY MUTUAL INSURANCE

COMPANY RELATING to INSURANCE POLICY #1.

**REQUEST NO. 9:**

   All COMMUNICATIONS between YOU and ECOSMART RELATING to INSURANCE

POLICY #2.

**REQUEST NO. 10:**

   All COMMUNICATIONS between YOU and a BROKER RELATING to INSURANCE

POLICY #1.

**REQUEST NO. 11:**

   All COMMUNICATIONS between YOU and a BROKER RELATING to INSURANCE

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

POLICY #2.

**REQUEST NO. 12:**

All COMMUNICATIONS between YOU and a BROKER REGARDING ECOSMART

from April 30, 2013 to DATE OF PRODUCTION.

**REQUEST NO. 13:**

All COMMUNICATIONS between YOU and a BROKER REGARDING INSURANCE

for ECOSMART from April 30, 2013 to DATE OF PRODUCTION.

**REQUEST NO. 14:**

All COMMUNICATIONS between YOU and ECOSMART RELATING to INSURANCE

POLICY #2.

**REQUEST NO. 15:**

All DOCUMENTS RELATING to RENEWAL of INSURANCE POLICY #1.

**REQUEST NO. 16:**

All COMMUNICATIONS involving YOU and ECOSMART RELATING to RENEWAL

of INSURANCE POLICY #1.

**REQUEST NO. 17:**

All COMMUNICATIONS involving YOU and LIBERTY MUTUAL INSURANCE

COMPANY RELATING to RENEWAL of INSURANCE POLICY #1.

**REQUEST NO. 18:**

All DOCUMENTS RELATING to any CHANGE in INSURANCE POLICY #1 from

April 30, 2013 to DATE OF PRODUCTION.

**REQUEST NO. 19:**

All COMMUNICATIONS involving YOU and ECOSMART RELATING to any

CHANGE in INSURANCE POLICY #1 from April 30, 2013 to DATE OF PRODUCTION.

Plaintiff Nicolette Lewis' Request for Documents Set One to Defendant Liberty International

**REQUEST NO. 20:**

All COMMUNICATIONS involving YOU and LIBERTY MUTUAL INSURANCE COMPANY RELATING to any CHANGE in INSURANCE POLICY #1 from April 30, 2013 to DATE OF PRODUCTION.

**REQUEST NO. 21:**

All COMMUNICATIONS involving YOU and a BROKER RELATING to any CHANGE in INSURANCE POLICY #1 from April 30, 2013 to DATE OF PRODUCTION.

**REQUEST NO. 22:**

All COMMUNICATIONS involving YOU and ECOSMART RELATING to INSURANCE POLICY #2.

**REQUEST NO. 23:**

All COMMUNICATIONS involving YOU and LIBERTY MUTUAL INSURANCE COMPANY RELATING to INSURANCE POLICY #2.

**REQUEST NO. 24:**

All COMMUNICATIONS involving YOU and a BROKER RELATING to INSURANCE POLICY #2.

**REQUEST NO. 25:**

All DOCUMENTS RELATING to the denial of coverage to ECOSMART in *LEWIS V. ECOSMART*.

**REQUEST NO. 26:**

All COMMUNICATIONS between YOU and a BROKER RELATING to the denial of coverage to ECOSMART in *LEWIS V. ECOSMART*.

**REQUEST NO. 27:**

All COMMUNICATIONS between YOU and a BROKER RELATING to the denial of

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ, LLP

9

1    coverage to ECOSMART in *LEWIS V. ECOSMART.*

2    **REQUEST NO. 28:**

3    All DOCUMENTS relating to YOUR decision to decline to provide a defense to

4    ECOSMART in *LEWIS V. ECOSMART.*

5    **REQUEST NO. 29:**

6

7    All DOCUMENTS RELATING to the reason for CHANGE to INSURANCE POLICY #1

8    from April 30, 2013 to DATE OF PRODUCTION.

9    **REQUEST NO. 30:**

10    All DOCUMENTS RELATING to NOTICE by YOU to ECOSMART REGARDING any

11    CHANGE to INSURANCE POLICY #1 from April 30, 2013 to DATE OF PRODUCTION.

12    **REQUEST NO. 31:**

13

14    All DOCUMENTS RELATING to NOTICE by YOU  to a BROKER REGARDING any

15    CHANGE to INSURANCE POLICY #1 from April 30, 2013 to DATE OF PRODUCTION.

16    **REQUEST NO. 32:**

17    All DOCUMENTS RELATING to replacement of Endorsement 3, Exclusion 7.24 in

18    INSURANCE POLICY #2 including, but not limited to, DOCUMENTS RELATING to the

19    decision to include this exclusion in INSURANCE POLICY #2.

20

21    **REQUEST NO. 33:**

22    All DOCUMENTS REGARDING NOTICE to ECOSMART that Exclusion 7.24 was

23    inserted into INSURANCE POLICY #2.

24    **REQUEST NO. 34:**

25

26    All COMMUNICATIONS involving YOU and ECOSMART relating to Exclusion 7.24 of

27    INSURANCE POLICY #2.

28    ///

Plaintiff Nicolette Lewis' Request for Documents Set One to Defendant Liberty International

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

**REQUEST NO. 35:**

All COMMUNICATIONS involving YOU and LIBERTY MUTUAL INSURANCE COMPANY relating to Exclusion 7.24 of INSURANCE POLICY #2.

**REQUEST NO. 36:**

All COMMUNICATIONS involving YOU and a BROKER relating to Exclusion 7.24 of INSURANCE POLICY #2.

**REQUEST NO. 37:**

All DOCUMENTS RELATING to Endorsement 4 in INSURANCE POLICY #2 including, but not limited to DOCUMENTS REGARDING the decision to include this Endorsement in INSURANCE POLICY #2.

**REQUEST NO. 38:**

All DOCUMENTS REGARDING NOTICE to ECOSMART that Endorsement 4 was inserted into INSURANCE POLICY #2.

**REQUEST NO. 39:**

All COMMUNICATIONS involving YOU and ECOSMART RELATING to Endorsement 4 of INSURANCE POLICY #2.

**REQUEST NO. 40:**

All COMMUNICATIONS involving YOU and LIBERTY MUTUAL INSURANCE COMPANY RELATING to Endorsement 4 of INSURANCE POLICY #2.

**REQUEST NO. 41:**

All COMMMUNICATIONS involving YOU and a BROKER RELATING to Endorsement 4 of INSURANCE POLICY #2.

**REQUEST NO. 42:**

All DOCUMENTS RELATING to the increase in premium to AUD $150,000 for

11

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

1  INSURANCE POLICY #2.

2  **REQUEST NO. 43:**

3      All DOCUMENTS REGARDING NOTICE to ECOSMART that the premium for

4  INSURANCE POLICY #2 was AUD $150,000.

5  **REQUEST NO. 44:**

6
7      All COMMUNICATIONS involving YOU and ECOSMART RELATING to the increase

8  of premium to AUD $150,000 for INSURANCE POLICY #2.

9  **REQUEST NO. 45:**

10     All COMMUNICATIONS involving YOU and LIBERTY MUTUAL INSURANCE

11 COMPANY RELATING to the increase of premium to AUD $150,000 for INSURANCE

12 POLICY #2.

13
14 **REQUEST NO. 46:**

15     All COMMUNICATIONS involving YOU and a BROKER RELATING to the increase of

16 premium to AUD $150,000 for INSURANCE POLICY #2.

17 **REQUEST NO. 47:**

18
19     All DOCUMENTS RELATING to the liability limit of $2,500,000 in Endorsement 4 to

20 INSURANCE POLICY #2.

21 **REQUEST NO. 48:**

22     All DOCUMENTS REGARDING NOTICE to ECOSMART of the liability limit of

23 $2,500,000 in Endorsement 4 to INSURANCE POLICY #2.

24 **REQUEST NO. 49:**

25
26     All COMMUNICATIONS involving YOU and ECOSMART REGARDING the liability

27 limit of $2,500,000 in Endorsement 4 to INSURANCE POLICY #2.

28 ///

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

12

**REQUEST NO. 50:**

All COMMUNICATIONS involving YOU and LIBERTY MUTUAL INSURANCE COMPANY REGARDING the liability limit of AUD $2,500,000 in Endorsement 4 to INSURANCE POLICY #2.

**REQUEST NO. 51:**

All COMMUNICATIONS involving YOU and a BROKER REGARDING the liability limit of $2,500,000 in Endorsement 4 to INSURANCE POLICY #2.

**REQUEST NO. 52:**

All DOCUMENTS RELATING to YOUR denial of coverage to ECOSMART in *LEWIS v. ECOSMART.*

**REQUEST NO. 53:**

All COMMUNICATIONS between YOU and LIBERTY MUTUAL INSURANCE COMPANY RELATING to the denial of coverage to ECOSMART in *LEWIS V. ECOSMART.*

**REQUEST NO. 54:**

All DOCUMENTS RELATING to YOUR refusal to indemnify ECOSMART in *LEWIS v. ECOSMART.*

**REQUEST NO. 55:**

All DOCUMENTS RELATING to *LEWIS v. ECOSMART.*

**REQUEST NO. 56:**

All DOCUMENTS RELATING to LAWSUITS against ECOSMART from April 30, 2013 to June 30, 2014.

**REQUEST NO. 57:**

All DOCUMENTS RELATING to flame arrestors REGARDING ECOSMART PRODUCT(S).

Plaintiff Nicolette Lewis' Request for Documents Set One to Defendant Liberty International

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

**REQUEST NO. 58:**

All DOCUMENTS RELATING to YOUR knowledge of burn injuries from ECOSMART

PRODUCT(S) from April 30, 2013 to June 30, 2014.

**REQUEST NO. 59:**

All DOCUMENTS RELATING to any CLAIMS MADE against ECOSMART from April

30, 2013 to June 30, 2014.

**REQUEST NO. 60:**

All DOCUMENTS REGARDING the legal RELATIONSHIP between YOU and

LIBERTY MUTUAL INSURANCE COMPANY.

**REQUEST NO 61:**

DOCUMENTS REGARDING what TRADING NAME means when the term is used by

YOU in YOUR insurance policies.

**REQUEST NO. 62:**

All DOCUMENTS REGARDING the registration of "Liberty International Underwriters"

as a TRADING NAME, or other similar business name registration, with the Government of

Australia or any state or local jurisdiction therein.

**REQUEST NO. 63:**

ALL DOCUMENTS REGARDING the corporate formation of LIBERTY

INTERNATIONAL UNDERWRITERS in Australia or any state jurisdiction therein.

**REQUEST NO. 64:**

All DOCUMENTS REGARDING the identity of and number of shares held by each

beneficial owner of LIBERTY INTERNATIONAL UNDERWRITERS.

**REQUEST NO. 65:**

All DOCUMENTS REGARDING the nomination, election, or appointment of directors

14

1    and officers of LIBERTY INTERNATIONAL UNDERWRITERS.

2    **REQUEST NO. 66:**

3         All DOCUMENTS REGARDING periodic, special, or current corporate governance

4    reports from LIBERTY INTERNATIONAL UNDERWRITERS.

5    **REQUEST NO. 67:**

6         All DOCUMENTS REGARDING the authority of LIBERTY INTERNATIONAL

7    UNDERWRITERS to execute insurance policies using the "Liberty Mutual Insurance Company"

8

9    name.

10   **REQUEST NO. 68:**

11        All DOCUMENTS identified in YOUR responses to Special Interrogatories Set One

12   served herewith.

13

14   **REQUEST NO. 69:**

15        All DOCUMENTS identified in YOUR responses to Form Interrogatories Set One served

16   herewith.

17                                          PERRY, JOHNSON, ANDERSON,
18                                          MILLER & MOSKOWITZ, LLP

19   DATED: February 13,  2018        By:

20                                          LESLIE R. PERRY
21                                          HEATHER-ANN YOUNG
                                           Attorneys for Plaintiffs
22                                          NICOLETTE LEWIS, ALEXIS LEWIS,
                                           MARGRETT LEWIS and JEFFREY
23                                          LEWIS

24

25

26

27

28

---

15

Plaintiff Nicolette Lewis' Request for Documents Set One to Defendant Liberty International

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

Case No. SCV261819
02-14-2018
Special Interrogatories served on Liberty
International Underwriters

1 │ LESLIE R. PERRY (SBN 062390)
2 │ JOHN J. JOHNSON (SBN 114902)
  │ HEATHER-ANN T. YOUNG (SBN 283211)
3 │ PERRY, JOHNSON, ANDERSON,
  │ MILLER & MOSKOWITZ, LLP
4 │ 438 First Street, Fourth Floor
  │ Santa Rosa, CA 95401
5 │ Telephone: (707) 525-8800
  │ Facsimile: (707) 545-8242
6 │
  │ Attorney for Plaintiffs
7 │ MARGRETT LEWIS, NICOLETTE LEWIS,
  │ ALEXIS LEWIS, and JEFFREY LEWIS
8 │         SUPERIOR COURT OF THE STATE OF CALIFORNIA
9 │                    COUNTY OF SONOMA
10 │ NICOLETTE LEWIS, ALEXIS LEWIS,          ) CASE No. 261819
11 │ MARGRETT LEWIS; and JEFFREY LEWIS       )
   │                                          ) Unlimited Civil Action
12 │                  Plaintiff(s),           )
   │                                          ) **PLAINTIFF NICOLETTE LEWIS'**
13 │           vs.                            ) **SPECIAL INTERROGATORIES TO**
   │                                          ) **DEFENDANT LIBERTY**
14 │ LIBERTY MUTUAL INSURANCE COMPANY ,       ) **INTERNATIONAL UNDERWRITERS**
   │ LIBERTY INTERNATIONAL UNDERWRITERS,      ) **[SET ONE]**
15 │ and DOES 1 through 50, inclusive,        )
   │                                          ) Department: 16
16 │                  Defendant(s).           ) Judge: Hon. Patrick Broderick
   │                                          ) Trial Date: not yet set
17 │                                          )
18 │                                          )
   │                                          )
19 │ _____ )
20 │
21 │ REQUESTING PARTY:      Plaintiff NICOLETTE LEWIS
22 │
   │ RESPONDING PARTIES:    Defendant LIBERTY INTERNATIONAL UNDERWRITERS
23 │
24 │ SET NUMBER:            ONE
25 │     Pursuant to Code of Civil Procedure section 2030.010 et seq., Plaintiff NICOLETTE
26 │ LEWIS requests that Defendant LIBERT LIBERTY INTERNATIONAL UNDERWRITERS,
27 │ answer the following interrogatories under oath within 30 days from the date of service.
28 │

*(left margin, rotated)* PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

1

## DEFINITIONS

2

A.      As used herein the word "BROKER" means anyone or entity transacting insurance on

3

behalf of ECOSMART, including, but not limited to representative or agent of OAMPS Insurance

4

Brokers and/or Arthur J. Gallagher Insurance Brokers (including James Forster and/or Melissa

5

Mudge).

6

B.      As used herein the words "CALIFORNIA BUSINESSES" means a company that you

7

believed conducted business in California.

8

9

C.      As used herein the word "CHANGED" or "CHANGES" means to modify, alter, change or

10

restrict the terms or coverage of in any way between INSURANCE POLICY #1 and

11

INSURANCE POLICY #2.

12

D.      As used herein the words "CLAIMS MADE" means any claim made during the policy

13

period, regardless of when the act that gave rise to the claim took place.

14

E.      As used herein the words "COMBINED GENERAL & PRODUCTS LIABILITY

15

POLICIES" means policies providing the same or similar general coverage to that contained in

16

INSURANCE POLICY #1.

17

F.      As used herein, the word "COMMUNICATION(S)" means any form of communication,

18

19

including, but not limited to emails, letters (delivered by mail, personal delivery or otherwise),

20

text, memorandum, facsimile, documents made available on the internet for viewing, downloading

21

OR uploading (e.g. sharing Google Documents, Sharefile, Dropbox, etc.) and includes direct

22

communications and also communications in which an individual is copied, blind copied, or in

23

some fashion included in, or made privy to, the COMMUNICATION.

24

G.      As used herein the words "DEFEND" or "DEFENDED" means to defend and indemnify

25

in accordance with INSURANCE POLICY #1.

26

H.      As used herein, the word "DOCUMENT" or  "DOCUMENTS" is used herein to mean all

27

"writings" as defined in California Evidence Code Section 250 (see text, below), including, but

28

not limited to, all written, recorded, or graphic material, however produced or reproduced, of any

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

2

1   kind in your possession, custody, or control, or in the possession, custody, or control of any

2   officers, members, partners, employees, servants, or your agents or representatives, including,

3   without limitation, letters, correspondence, telegrams, memoranda, records, minutes, contracts,

4   agreements, memoranda, or records of telephone or personal conversations or conferences,

5   interoffice communications, emails, sound recordings, handwritings, ELECTRONICALLY

6   STORED INFORMATION, electronic data processing inputs, and memories of all kinds,

7   including hard drives, CD ROM data, tapes and discs, computer reports and printouts, microfilm,

8   bulletins, circulars, pamphlets, studies, notices, summaries, reports, books, teletype messages, bills

9   of lading, invoices, work sheets, and index cards, or copies of such documents where originals are

10  not available. The term "document" or "documents" includes any and all matter that relates in

11  whole or in part to the subject referred to in a demand to produce. Where a document has been

12  prepared in several copies that are not identical (or which by reason of subsequent modification,

13  addition, or notation are no longer identical), each non-identical copy is a separate "document."

14  DOCUMENT includes any COMMUNICATION.

15

16          Evidence Code Section 250:  "Writing" means handwriting, typewriting, printing,

17          photostating, photographing, photocopying, transmitting by electronic mail or facsimile,

18          and every other means of recording upon any tangible thing, any form of communication

19          or representation, including letters, words, pictures, sounds, or symbols, or combinations

20          thereof, and any record thereby created, regardless of the manner in which the record has

21          been stored."

22  I.      As used herein the word "ECOSMART" means EcoSmart, Inc., its agents, employees,

23  attorneys, accountants,  investigators, insurance broker(s) and anyone else acting on its behalf,

24  The Fire Company Pty Ltd, Esmart Group Pty Ltd, any employee, representative or agent of

25  OAMPS Insurance Brokers and/or Arthur J. Gallagher Insurance Brokers (including James Forster

26  and/or Melissa Mudge).

27  J.      As used herein the words "ECOSMART PRODUCT(S)" means any fuel produced by

28  ECOSMART that is intended for use by consumers, including but not limited to E-NRG,

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

3

K.      As used herein the word "ELECTRONIC" means RELATING to technology having electrical, digital, magnetic, wireless, optical, electromagnetic, or similar capabilities.

L.      As used herein the words "ELECTRONICALLY STORED INFORMATION" means information that is stored in an ELECTRONIC medium.

M.      As used herein the word "FIRE COMPANY" means The Fire Company, Pty, Ltd., its agents, employees, attorneys, accountants, investigators, insurance broker(s) and anyone else acting on its behalf.

N.      As used herein, the words, "FLAME ARRESTOR" means deflagration and detonation prevention device, flashback arrestor, vapor flashback quencher, flame retarder, vapor flashback quenching guard or flame mitigation device.

O.      As used herein the word "IDENTIFY" when referring to:

    a.   INSURANCE POLICY means:

       (i)   List in detail all policies covering negligence, product defect or any other form of legal action or claim and include:

          (1)   Name of policy;

          (2)   Coverage period

          (3)   Amount of coverage

          (4)   All individuals and ENTITIES covered by the policy

          (5)   Type of coverage

          (6)   Limits or exclusions of the policy

          (7)   All DOCUMENTSRELATING to the policy in relation to ECOSMART.

    b.   NOTICE means to:

       i.   State the type of COMMUNICATION used to convey the NOTICE;

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

ii.   State the date of the NOTICE; and

iii.  Provide sufficient detail so that the NOTICE, if written, can be correctly identified when requesting production of it if it is a DOCUMENT.

c.   COMMUNICATION means to:

i.    State the type of communication, e.g., verbal, e-mail, letter, etc.;

ii.   State the date of the communication;
iii.  Summarize briefly what the communication related to and/or involved;

iv.   Name the individuals who signed the document and provide their address, telephone number and position with any entity, company or organization they represented when the signed the communication.
v.    State generally what the COMMUNICATIONS related to and involved.
vi.   Provide sufficient definition of the communication so that if it is a DOCUMENT it can be requested to be produced without ambiguity.

d.   DOCUMENT means to:

i.    Name the DOCUMENT consistent with its content and which YOU will recognize in relation to a demand to produce that DOCUMENT;

ii.   Provide a brief summary of the document;

iii.  Date of the DOCUMENT;

iv.   Purpose of the DOCUMENT;

v.    If executed, who signed the DOCUMENT, including the signator's name, address, telephone number, and position with YOU.

O.   As used herein the word INSURANCE means any form of liability insurance including, but not limited to General, Products OR Combined General & Products Liability Policies (including INSURANCE POLICY #1 OR INSURANCE POLICY #2).

P.   As used herein the words "INSURANCE POLICY" (other than specific references to INSURANCE POLICY #1 and INSURANCE POLICY #2) means any form of insurance which provides coverage (including indemnity) for claims made against the insured.

Q.   As used herein the words "INSURANCE POLICY #1" means Liberty International Underwriters Combined General & Products Liability Policy #ME-CAS-12-438176 with a period of insurance 4 p.m. April 30, 2013 to 4 p.m. April 30, 2014. (Exhibit 1)

5

R.    As used herein the words "INSURANCE POLICY #2" means Liberty International Underwriters Combined General & Products Liability Policy #SY-CAS-13-438167 with a period of insurance 4 p.m. April 30, 2014 to 4 p.m. April 30, 2015.  (Exhibit 2)

S.    As used herein the word "LAWSUIT(S)" means any lawsuit based on personal injuries or death resulting from an ECOSMART product.

T.    As used herein the words "LEWIS V. ECOSMART" means Lewis v. EcoSmart et al., Case No. SCV-256907 (Exhibit 3) and also includes any amendments thereto.

U.    As used herein the words LIBERTY MUTUAL means Liberty Mutual Insurance Company and any agent, employees, representatives, attorneys (as to non-privileged communications), investigators, and anyone else acting on Liberty Mutual Insurance Company behalf or of any subsidiary or entity related to Liberty Mutual Insurance Company..

V.    As used herein the word "NOTICE" means notice as required by Insurance Code § 678.1.

W.    As used herein the words "NOTIFY" or "NOTIFIED" means put on notice or advise or report to in any manner, whether formally, informally or otherwise.

X.    As used herein the word "OR" means and/or.

Y.    As used herein, the words "PRINCIPAL OFFICE" means the place designated on the California Secretary of State Statement of Information or the office of the headquarters of the company.

Z.    As used herein the words "PRODUCTS LIABILITY POLICIES" mean any insurance policy that includes Products Liability coverage, whether exclusively or in combination with another form of coverage.

AA.    As used herein the words "REGARDING" or "RELATING" when used with respect to documents shall mean any and all documents that in any way or in any manner refer to, relate to, reflect, concern, contain, embody, or describe the subject matter referred to in the list of documents to be produced as identified below.

BB.  As used herein, the word "REGARDING" OR "RELATING " when used with respect to a fact or person includes referring to, alluding to, responding to, concerning, connected with, commenting on, about, regarding, discussing, constituting, evidencing or pertaining to.

CC.  As used herein the word "RELATIONSHIP" means any way that Liberty Mutual Insurance Company is connected to or involved with Liberty International Underwriters, whether as an owner, subsidiary, a division, a trading company for, or otherwise.

DD.   As used herein, the word, "RISK" means the exposure to danger or harm.

EE.   As used herein, the word "TERM" means the clauses, coverages, conditions, limitations, endorsements, and any other provision of the insurance policy.

FF.   As used herein, the words "TRADING NAME" refers to meaning as that term is used in INSURANCE POLICY #1 and INSURANCE POLICY #2

GG.   As used herein, the words, "YOU" and "YOUR" means Liberty Mutual Insurance Company and any agent, employees, representatives, attorneys (as to non-privileged communications), investigators, and anyone else acting on behalf of Liberty Mutual Insurance Company or of any subsidiary or entity(ies) related thereto.

For Interrogatories 17-19, 27-40 and 47-49, YOU also means LIBERTY INTERNATIONAL UNDERWRITING.

**SPECIAL INTERROGATORY NO. 1:**

IDENTIFY all COMMUNICATIONS between YOU and LIBERTY INTERNATIONAL UNDERWRITERS RELATING to INSURANCE POLICY #1.

**SPECIAL INTERROGATORY NO. 2:**

IDENTIFY all COMMUNICATIONS between YOU and LIBERTY INTERNATIONAL UNDERWRITERS RELATING to INSURANCE POLICY #2.

///

Plaintiff Nicolette Lewis' Special Interrogatories Set One to Defendant Liberty International

**SPECIAL INTERROGATORY NO. 3:**

IDENTIFY all INSURANCE POLICIES issued by YOU covering ECOSMART from April 1, 2013 to April 1, 2016.

**SPECIAL INTERROGATORY NO. 4:**

IDENTIFY all INSURANCE POLICIES issued by LIBERTY INTERNATIONAL UNDERWRITING covering ECOSMART from April 1, 2013 to April 1, 2016.

**SPECIAL INTERROGATORY NO. 5:**

IDENTIFY all COMMUNICATIONS between YOU and ECOSMART RELATING to INSURANCE POLICY #1.

**SPECIAL INTERROGATORY NO. 6:**

IDENTIFY all COMMUNICATIONS between YOU and ECOSMART RELATING to INSURANCE POLICY #2.

**SPECIAL INTERROGATORY NO. 7:**

IDENTIFY all COMMUNICATIONS between YOU and LIBERTY INTERNATIONAL UNDERWRITERS RELATING to INSURANCE POLICY #1.

**SPECIAL INTERROGATORY NO. 8:**

IDENTIFY all COMMUNICATIONS between YOU and LIBERTY INTERNATIONAL UNDERWRITERS RELATING to INSURANCE POLICY #2.

**SPECIAL INTERROGATORY NO. 9:**

IDENTIFY all COMMUNICATIONS between YOU and LIBERTY INTERNATIONAL UNDERWRITERS RELATING to the denial of coverage to ECOSMART in *LEWIS V. ECOSMART.*

///

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

**SPECIAL INTERROGATORY NO. 10:**

IDENTIFY all COMMUNICATIONS between YOU and BROKER RELATING to INSURANCE POLICY #1.

**SPECIAL INTERROGATORY NO. 11:**

IDENTIFY all COMMUNICATIONS between YOU and BROKER RELATING to INSURANCE POLICY #2.

**SPECIAL INTERROGATORY NO. 12:**

IDENTIFY all COMMUNICATIONS between YOU and BROKER to the denial of coverage to ECOSMART in *LEWIS V. ECOSMART.*

**SPECIAL INTERROGATORY NO. 13:**

IDENTIFY all COMMUNICATIONS between YOU and FIRE COMPANY RELATING to INSURANCE POLICY #1.

**SPECIAL INTERROGATORY NO. 14:**

IDENTIFY all COMMUNICATIONS between YOU and FIRE COMPANY RELATING to INSURANCE POLICY #2.

**SPECIAL INTERROGATORY NO. 15:**

IDENTIFY all COMMUNICATIONS between YOU and FIRE COMPANY to the denial of coverage to ECOSMART in *LEWIS V. ECOSMART.*

**SPECIAL INTERROGATORY NO. 16:**

Why did YOU decline to provide a defense to ECOSMART in *LEWIS V. ECOSMART?*

**SPECIAL INTERROGATORY NO.17:**

Why did YOU decline to indemnify ECOSMART in *LEWIS V. ECOSMART?*

///

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

9

1  **SPECIAL INTERROGATORY NO. 18:**

2      Why did LIBERTY INTERNATIONAL UNDERWRITERS decline to provide a defense

3  to ECOSMART in *LEWIS V. ECOSMART*?

4  **SPECIAL INTERROGATORY NO. 19:**

5      Why did LIBERTY INTERNATIONAL UNDERWRITERS decline to indemnify

6  ECOSMART in *LEWIS V. ECOSMART*?

7

8  **SPECIAL INTERROGATORY NO. 20:**

9      REGARDING the statement by Angus Kench in an email dated April 21, 2015 (Exhibit 4),

10 to wit "Based on the summons and in particular the circumstances summarised above the policy

11 **will not respond** to this current claim" [emphasis added], would INSURANCE POLICY #1 have

12 "responded" to the claims if it were still in effect as of June 8, 2014.

13

14 **SPECIAL INTERROGATORY NO. 21:**

15     If INSURANCE POLICY #1 was in full effect when Nicolette Lewis was injured as noted

16 in *LEWIS v. ECOSMART*, would YOU have declined to indemnify ECOSMART in *LEWIS V.*

17 *ECOSMART*?

18

19 **SPECIAL INTERROGATORY NO. 22:**

20     Would YOU have agreed to indemnify ECOSMART in *LEWIS v. ECOSMART* if

21 INSURANCE POLICY #1 was in full effect when Nicolette Lewis was injured as noted in *LEWIS*

22 *v. ECOSMART*.

23 **SPECIAL INTERROGATORY NO. 23:**

24     If INSURANCE POLICY #1 were in full effect when Nicolette Lewis was injured as

25 noted in *LEWIS V. ECOSMART*, would YOU have DEFENDED ECOSMART in *LEWIS V.*

26 *ECOSMART*?

27

28 ///

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

**SPECIAL INTERROGATORY NO. 24:**

State in detail all facts RELATING to YOUR acceptance or declination to DEFEND ECOSMART in *LEWIS v. ECOSMART* if INSURANCE POLICY #1 was in full effect when Nicolette Lewis was injured, as noted in *LEWIS v. ECOSMART*.

**SPECIAL INTERROGATORY NO. 25:**

What time frame was INSURANCE POLICY #1 in effect?

**SPECIAL INTERROGATORY NO. 26:**

Were the TERMS of policy INSURANCE POLICY #1 CHANGED?

**SPECIAL INTERROGATORY NO. 27:**

If the terms of policy INSURANCE POLICY #1 CHANGED, state in detail what TERMS were CHANGED.

**SPECIAL INTERROGATORY NO. 28:**

If the terms of policy INSURANCE POLICY #1 CHANGED, state in detail all facts RELATING to the CHANGE.

**SPECIAL INTERROGATORY NO. 29:**

If the terms of policy INSURANCE POLICY #1 CHANGED, state in detail why CHANGES were made.

**SPECIAL INTERROGATORY NO. 30:**

If the terms of policy INSURANCE POLICY #1 CHANGED, IDENTIFY all DOCUMENTS RELATING to the CHANGE.

**SPECIAL INTERROGATORY NO. 31:**

If the terms of policy INSURANCE POLICY #1 CHANGED, IDENTIFY all persons with knowledge RELATING to the CHANGE.

11

**SPECIAL INTERROGATORY NO. 32:**

If the terms of policy INSURANCE POLICY #1 CHANGED, IDENTIFY all facts YOU believe each person with knowledge RELATING to the CHANGE has RELATING to the CHANGE.

**SPECIAL INTERROGATORY NO. 33:**

Do YOU contend that YOU were justified in denying ECOSMART'S insurance coverage for *LEWIS V. ECOSMART*?

**SPECIAL INTERROGATORY NO. 34:**

If YOU contend that YOU were justified in denying ECOSMART'S insurance coverage for *LEWIS V. ECOSMART*, state all facts REGARDING this contention.

**SPECIAL INTERROGATORY NO. 35:**

If YOU contend that YOU were justified in denying ECOSMART'S insurance coverage for *LEWIS V. ECOSMART*, IDENTIFY all DOCUMENTS REGARDING this contention.

**SPECIAL INTERROGATORY NO. 36:**

If YOU contend that YOU were justified in denying ECOSMART'S insurance coverage for *LEWIS v. ECOSMART*, IDENTIFY all persons with knowledge REGARDING YOUR contention.

**SPECIAL INTERROGATORY NO. 37:**

If YOU contend that YOU were justified in denying ECOSMART'S insurance for *LEWIS v. ECOSMART*, for each person with knowledge REGARDING YOUR contention, state in detail what YOU believe that person has knowledge of.

**SPECIAL INTERROGATORY NO. 38:**

Do YOU contend that YOU provided NOTICE to ECOSMART REGARDING CHANGES to INSURANCE POLICY #1?

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

**SPECIAL INTERROGATORY NO. 39:**

If YOU contend that YOU provided NOTICE to ECOSMART REGARDING CHANGES to INSURANCE POLICY #1, IDENTIFY the NOTICE.

**SPECIAL INTERROGATORY NO. 40:**

If YOU contend that YOU provided NOTICE to ECOSMART REGARDING CHANGES to INSURANCE POLICY #1, state all facts REGARDING YOUR contention.

**SPECIAL INTERROGATORY NO. 41:**

If YOU contend that YOU provided NOTICE to ECOSMART REGARDING CHANGES to INSURANCE POLICY #1, IDENTIFY all DOCUMENTS REGARDING YOUR contention.

**SPECIAL INTERROGATORY NO. 42:**

If YOU contend that YOU provided NOTICE to ECOSMART REGARDING CHANGES to INSURANCE POLICY #1, IDENTIFY all persons with knowledge REGARDING YOUR contention.

**SPECIAL INTERROGATORY NO. 43:**

If YOU contend that YOU provided NOTICE to ECOSMART REGARDING CHANGES to INSURANCE POLICY #1, for each person with knowledge REGARDING YOUR contention, state in detail what YOU believe that person has knowledge of.

**SPECIAL INTERROGATORY NO. 44:**

Do YOU contend that YOU did not provide NOTICE to ECOSMART REGARDING CHANGES to INSURANCE POLICY #1?

**SPECIAL INTERROGATORY NO. 45:**

If YOU contend that YOU did not provide NOTICE to ECOSMART REGARDING CHANGES to INSURANCE POLICY #1, state all facts REGARDING YOUR contention.

///

PERRY, JOHNSON, ANDERSON, MILLER & MOSKOWITZ LLP

**SPECIAL INTERROGATORY NO. 46:**

If YOU contend that YOU did not provide NOTICE to ECOSMART REGARDING CHANGES to INSURANCE POLICY #1, for each person with knowledge REGARDING YOUR contention, state in detail what YOU believe that person has knowledge of.

**SPECIAL INTERROGATORY NO. 47:**

Why was the date June 18, 2014 included in paragraph 7.24.3.3 of INSURANCE POLICY #2?

**SPECIAL INTERROGATORY NO. 48:**

IDENTIFY all COMMUNICATIONS REGARDING June 18, 2014 being the date included in paragraph 7.24.3.3 of INSURANCE POLICY #2?

**SPECIAL INTERROGATORY NO. 49:**

IDENTIFY all persons with knowledge REGARDING June 18, 2014 being the date included in paragraph 7.24.3.3 of INSURANCE POLICY #2?

**SPECIAL INTERROGATORY NO. 50:**

IDENTIFY all DOCUMENTS REGARDING June 18, 2014 being the date included in paragraph 7.24.3.3 of INSURANCE POLICY #2?

**SPECIAL INTERROGATORY NO. 51:**

IDENTIFY each person who signed INSURANCE POLICY #1.

**SPECIAL INTERROGATORY NO. 52:**

IDENTIFY each person who signed INSURANCE POLICY #2.

**SPECIAL INTERROGATORY NO. 53:**

IDENTIFY all INSURANCE POLICIES YOU issued to ECOSMART during the last 10 years.

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

1  **SPECIAL INTERROGATORY NO. 54:**

2  How many COMBINED GENERAL & PRODUCTS LIABILITY POLICIES have YOU

3  issued to ECOSMART in the past ten years?

4

5  **SPECIAL INTERROGATORY NO. 55:**

6  How many insurance policies have YOU underwritten for CALIFORNIA BUSINESSES

7  from January 1, 2008 to the date of YOUR response to this interrogatory?

8  **SPECIAL INTERROGATORY NO. 56:**

9  How many insurance policies for CALIFORNIA BUSINESSES did YOU have in effect

10  on April 30, 2014?

11  **SPECIAL INTERROGATORY NO. 57:**

12  How many PRODUCTS LIABILITY POLICIES for CALIFORNIA BUSINESSES did

13  YOU have in effect on April 30, 2014?

14  **SPECIAL INTERROGATORY NO. 58:**

15  How many COMBINED GENERAL & PRODUCTS LIABILITY POLICIES for

16  CALIFORNIA BUSINESSES did YOU have in effect on April 30, 2014?

17

18  **SPECIAL INTERROGATORY NO. 59:**

19  Did YOU COMMUNICATE with a BROKER REGARDING INSURANCE for

20  ECOSMART from April 30, 2013 to present?

21  **SPECIAL INTERROGATORY NO.60:**

22

23  If YOU COMMUNICATED with a BROKER REGARDING INSURANCE for

24  ECOSMART from April 30, 2013 to present, IDENTIFY the COMMUNICATION(S).

25  **SPECIAL INTERROGATORY NO. 61:**

26  What is the legal RELATIONSHIP between YOU and LIBERTY MUTUAL

27  INSURANCE COMPANY?

28

---

15

1   **SPECIAL INTERROGATORY NO. 62:**

2       What is the corporate form and status of LIBERTY INTERNATIONAL

3   UNDERWRITERS in Australia (or any state jurisdiction therein)?

4   **SPECIAL INTERROGATORY NO. 63:**

5

6       IDENTIFY what type of entity(ies) YOU have been for the past 10 years.

7   **SPECIAL INTERROGATORY NO. 64:**

8       What does TRADING NAME mean as used in YOUR insurance policies?

9

10  **SPECIAL INTERROGATORY NO. 65:**

11      IDENTIFY all DOCUMENTS REGARDING what TRADING NAME means as used in

12  YOUR insurance policies.

13  **SPECIAL INTERROGATORY NO. 66:**

14
15      How did LIBERTY MUTUAL INSURANCE COMPANY's acquisition of Ironshore Inc.

16  affect the legal RELATIONSHIP between LIBERTY MUTUAL INSURANCE COMPANY

17  AND LIBERTY INTERNATIONAL UNDERWRITERS in Australia (or any state jurisdiction

18  therein)?

19  **SPECIAL INTERROGATORY NO. 67:**

20      If YOU contend LIBERTY INTERNATIONAL UNDERWRITERS is a separately

21  organized business entity, describe the ownership and voting interests held or controlled by

22  LIBERTY MUTUAL INSURANCE COMPANY?

23
24  **SPECIAL INTERROGATORY NO. 68:**

25      If YOU contend LIBERTY INTERNATIONAL UNDERWRITERS is a separately

26  organized business entity, describe any special rights held by LIBERTY MUTUAL INSURANCE

27  COMPANY to direct the operations of LIBERTY INTERNATIONAL UNDERWRITERS,

28  including but not limited to the power to nominate, elect, or appoint its directors and officers.

Plaintiff Nicolette Lewis' Special Interrogatories Set One to Defendant Liberty International

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ LLP

**SPECIAL INTERROGATORY NO. 69:**

If YOU contend LIBERTY INTERNATIONAL UNDERWRITERS is a separately organized business entity, who are its directors and officers?

**SPECIAL INTERROGATORY NO. 70:**

If YOU contend LIBERTY INTERNATIONAL UNDERWRITERS is a separately organized business entity, do any directors or officers hold positions on the board or as officers or employees of LIBERTY MUTUAL INSURANCE COMPANY?

**SPECIAL INTERROGATORY NO. 71:**

IDENTIFY each person who is a director or officer of LIBERTY INTERNATIONAL UNDERWRITERS that holds a position on the board or as an officer or employee of LIBERTY MUTUAL INSURANCE COMPANY.

**SPECIAL INTERROGATORY NO. 72:**

IDENTIFY any and all licenses YOU've held in California for the past 10 years.

**SPECIAL INTERROGATORY NO. 73:**

Were you continuously admitted as a commercial insurance company in California from April 1, 2013 to August 1, 2015?

PERRY, JOHNSON, ANDERSON,
MILLER & MOSKOWITZ, LLP

DATED: February 13, 2018          By

LESLIE R. PERRY
HEATHER-ANN YOUNG
Attorneys for Plaintiffs
NICOLETTE LEWIS, ALEXIS LEWIS,
MARGRETT LEWIS and JEFFREY
LEWIS

Plaintiff Nicolette Lewis' Special Interrogatories Set One to Defendant Liberty International