1  JACK P. DICANIO (Bar No. 138782)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2  525 University Ave., Suite 1400
   Palo Alto, California 94301-1908
3  Telephone:     (650) 470-4500
   Facsimile:     (650) 470-4570
4  jack.dicanio@skadden.com

5  JAMES R. CARROLL (*pro hac vice*)
   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
6  500 Boylston Street
   Boston, Massachusetts 02116
7  Telephone:     (617) 573-4800
   Facsimile:     (617) 573-4822
8  james.carroll@skadden.com

9  *Attorneys for Defendants*
   LIBERTY MUTUAL INSURANCE COMPANY
10 AND LIBERTY INTERNATIONAL UNDERWRITERS

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13              SAN FRANCISCO DIVISION

14 NICOLETTE LEWIS, ALEXIS LEWIS,    )  Case No.: 3:18-cv-01138-JSC
   MARGRETT LEWIS, and JEFFERY       )
15 LEWIS,                            )  **DEFENDANTS' NOTICE OF MOTION AND**
                                     )  **MOTION TO DISMISS AMENDED**
16              Plaintiffs,          )  **COMPLAINT ON *FORUM NON***
                                     )  ***CONVENIENS* GROUNDS;**
17      v.                           )  **MEMORANDUM OF POINTS AND**
                                     )  **AUTHORITIES IN SUPPORT THEREOF**
18 LIBERTY MUTUAL INSURANCE          )
   COMPANY, LIBERTY                  )
19 INTERNATIONAL UNDERWRITERS,       )  Hearing Date: April 5, 2018
   and DOES 1 through 50, inclusive, )  Time: 9:00 a.m.
20                                   )  Location: Courtroom F, 15th Floor
                Defendants.          )
21 _____  )

22

23

24

25

26

27

28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 5, 2018 at 9:00 a.m. or as soon thereafter as this matter may be heard in the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Liberty Mutual Insurance Company ("LMIC") and Liberty International Underwriters ("LIU")[1] will and do hereby move this Court for dismissal of the Amended Complaint on *forum non conveniens* grounds and a valid mandatory forum selection clause in the insurance policies at issue in this action, which expressly requires that this dispute be resolved by the courts of Australia ("Motion").

This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities attached hereto, the Declaration of Angus Kench and exhibit attached thereto, the Declaration of Paul Milliken and exhibit attached thereto, the Declaration of John Nicholls and exhibit attached thereto, the Request for Judicial Notice and exhibits attached thereto, the Amended Complaint, the papers filed in this action, and such other and further evidence and arguments as may be submitted at or before the hearing on this matter.

Dated: March 1, 2018        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:    */s/ Jack P. DiCanio*
       Jack P. DiCanio

*Attorney for Defendants*
LIBERTY MUTUAL INSURANCE COMPANY
AND LIBERTY INTERNATIONAL UNDERWRITERS

---

[1] Because LIU is a trading name of LMIC, and does not have capacity to be sued, in moving to dismiss, LMIC and LIU do not waive any arguments with respect to the jurisdiction of this Court over LIU.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I.      STATEMENT OF THE ISSUE TO BE DECIDED ....................................................1

II.     INTRODUCTION .............................................................................................1

III.    FACTUAL BACKGROUND ..................................................................................4

      A.     LMIC Issues Insurance Policies in Australia to an Australian Company that Contain a Mandatory Australia Forum Selection Clause .......................................4

      B.     The Underlying Incident Occurs, and Plaintiffs Commence the Underlying Personal Injury Action .................................................................................5

      C.     TFC and EcoSmart Notice the Second Policy (But Not the First Policy) ..............5

      D.     EcoSmart Files For Bankruptcy ......................................................................5

      E.     LMIC Files a Declaratory Judgment Action in Australia Against TFC and EcoSmart ......................................................................................................6

      F.     Plaintiffs Obtain Default Judgments Against TFC and EcoSmart in the Underlying Action .........................................................................................6

      G.     Plaintiffs File the Instant Action ....................................................................6

IV.    THE FORUM SELECTION CLAUSE IS VALID, ENFORCEABLE AND APPLIES TO PLAINTIFFS' CLAIMS ..................................................................7

      A.     Plaintiffs Cannot Meet Their "Heavy Burden" of Demonstrating that the Forum Selection Clause Is Invalid ...................................................................7

      B.     Plaintiffs Are Bound by the Forum Selection Clause ........................................10

      C.     Plaintiffs' Claims Fall Within the Broad Scope of the Forum Selection Clause ........................................................................................................10

V.     THIS CASE SHOULD BE DISMISSED ON *FORUM NON CONVENIENS* GROUNDS ....................................................................................................11

      A.     Plaintiffs Cannot Establish that Australia Is an Inadequate Alternative Forum ....12

      B.     Plaintiffs Cannot Meet Their Heavy Burden of Showing that Public Interest Considerations Overwhelmingly Disfavor Dismissal .........................................13

VI.    CONCLUSION ...............................................................................................16

1

2 <u>**TABLE OF AUTHORITIES**</u>

3 **Cases**

4 *Adema Technologies., Inc. v. Wacker Chemical Corp.,*
5 657 F. App'x 661 (9th Cir. 2016) ...................................................................11

6 *Allstate Life Insurance Co. v. Linter Group. Ltd.,*
7 994 F.2d 996 (2d Cir. 1993)............................................................................13

8 *Argueta v. Banco Mexicano, S.A.,*
9 87 F.3d 320 (9th Cir. 1996) ..............................................................................8

10 *Atlantic Marine Construction Co. v. United States District Court for Western District of Texas,*
11 134 S. Ct. 568 (2013) .............................................................................. passim

12 *Auxer v. Alcoa, Inc.,*
13 406 F. App'x 600 (3d Cir. 2011) ...............................................................3, 4, 13

14 *Besag v. Custom Decorators, Inc.,*
15 No. CV08-05463 JSW, 2009 WL 330934 (N.D. Cal. Feb. 10, 2009) ....................9, 10, 11

16 *Camp West Recorders Inc. v. Gibbs,*
17 No. CV 1306525 BRO MRWx, 2013 WL 12191723 (C.D. Cal. Oct. 28, 2013) .............13

18 *Chateau des Charmes Wines Ltd. v. Sabate USA, Inc.,*
19 No. C-01-4203 MMC, 2003 WL 22682483 (N.D. Cal. Nov. 10, 2003) ...........................13

20 *eBay Inc. v. Digital Point Solutions, Inc.,*
21 608 F. Supp. 2d 1156 (N.D. Cal. 2009) ...........................................................10

22 *Effron v. Sun Line Cruises, Inc.,*
23 67 F.3d 7 (2d Cir. 1995)...................................................................................9

24 *Endonovo Therapeutics, Inc. v. New Paradigm Ventures, Inc.,*
25 No. cv-1607433-MWF-FFM, 2017 WL 3049560 (C.D. Cal. Jan. 5, 2017) ....................15

26 *Gamayo v. Match.com LLC,*
27 Nos. C 11-00762 SBA, *et al.*, 2011 WL 3739542 (N.D. Cal. Aug. 24, 2011) ...............7, 8

28

**DEFENDANTS' MOTION TO DISMISS**                        **Case No. 3:18-cv-01138-JSC**

*Global Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc.,*
  No. 16-cv-00920-LB, 2016 WL 4259126 (N.D. Cal. Aug. 12, 2016)..................14, 15, 16

*Great Prize, S.A. v. Mariner Shipping Pty., Ltd.,*
  967 F.2d 157 (5th Cir. 1992) ...........................................................................13, 15

*Herd v. Airbus SAS,*
  No. 2:17-cv-05001-SVW-MRW, 2017 WL 6504162 (C.D. Cal. Dec. 11, 2017) ............13

*International Chemical Supplies (ICS), Inc. v. Restoration Energy, LLC,*
  No. 1:14-cv-01645-MCE, 2015 WL 4602664 (E.D. Cal. July 29, 2015)...................15, 16

*In re Air Crash Over Mid-Atl. on June 1, 2009,*
  760 F. Supp. 2d 832 (N.D. Cal. 2010) ...........................................................................15

*Koresko v. RealNetworks, Inc.,*
  291 F. Supp. 2d 1157 (E.D. Cal. 2003)............................................................................8

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.,*
  583 F.3d 656 (9th Cir. 2009) ....................................................................................12, 13

*Lueck v. Sundstrand Corp.,*
  236 F.3d 1137 (9th Cir. 2001) ......................................................................11, 12, 13, 14

*Moretti v. Hertz Corp.,*
  No. C 13-02972 JSW, 2014 WL 1410432 (N.D. Cal. Apr. 11, 2014)........................13, 14

*M/S Bremen v. Zapata Off-Shore Co.,*
  407 U.S. 1 (1972)...........................................................................................................3, 8

*O'keeffe's Inc. v. Access Info. Techs. Inc.,*
  No. 15-cv-03115-EMC, 2015 WL 6089418 (N.D. Cal. Oct. 16, 2015) ...........................14

*Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.,*
  741 F.2d 273 (9th Cir. 1984) ...........................................................................................9

*Phillips v. Noetic Specialty Insurance Co.,*
  919 F. Supp. 2d 1089 (S.D. Cal. 2013)...........................................................................10

*Piper Aircraft Co. v. Reyno,*
  454 U.S. 235 (1981)...................................................................................................12, 14

iii

*Qingdao Tang-Buy International Import. & Export Co. v. Preferred Secured Agents, Inc.,*
    No. 15-cv-00624-LB, 2016 WL 10860010 (N.D. Cal. Nov. 3, 2016)...................14, 15, 16

*Richards v. Lloyd's of London,*
    135 F.3d 1289 (9th Cir. 1998) ...................................................................................8

*Run Them Sweet, LLC v. CPA Global Limited,*
    No. 16-cv-03662-JST, 2016 WL 6216874 (N.D. Cal. Oct. 25, 2016)..............................8

*San Diego Housing Commission v. Industrial Indemnity Co.,*
    95 Cal. App. 4th 669 (2002) .....................................................................................10

*Schoenduve Corp. v. Lucent Technologies, Inc.,*
    442 F.3d 727 (9th Cir. 2006) ...............................................................................10, 11

*Stewart Org., Inc. v. Ricoh Corp.,*
    487 U.S. 22 (1988).................................................................................................15

*Swenson v. T-Mobile USA, Inc.,*
    415 F. Supp. 2d 1101 (S.D. Cal. 2006).....................................................................10

*TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc.,*
    915 F.2d 1351 (9th Cir. 1990) .................................................................................10

*Vogt-Nem, Inc. v. M/V Tramper,*
    263 F. Supp. 2d 1226 (N.D. Cal. 2002) .....................................................................9

*Voicemail Club, Inc. v. Enhanced Services Billing, Inc.,*
    No. C 12-02189 SI, 2012 WL 4837697 (N.D. Cal. Oct. 10, 2012) ...................................9

*Warn v. M/Y Maridome,*
    169 F.3d 625 (9th Cir.), as amended (May 3, 1999)....................................................13, 15

**Statutes**

Cal. Ins. Code § 11580(b)(2) ..........................................................................6, 7, 10, 11

iv

1
<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2
**I.      STATEMENT OF THE ISSUE TO BE DECIDED**

3
    Whether the mandatory forum selection clause contractually agreed to by the parties to the

4
insurance policies at issue in this action, which states that "All matters arising from or relating to

5
the construction, operation or interpretation of the Policy shall be submitted to the exclusive

6
jurisdiction of the Australian Courts," requires dismissal of this action on *forum non conveniens*

7
grounds.

8
**II.     INTRODUCTION**

9
    Defendants Liberty Mutual Insurance Company ("LMIC") and Liberty International

10
Underwriters ("LIU" and together with LMIC, "Liberty")[2] respectfully submit this memorandum

11
of points and authorities in support of their motion to dismiss on the basis of *forum non conveniens*

12
and the identical mandatory Australia forum selection clause contractually agreed to by the parties

13
to the insurance policies at issue in this action.

14
    On June 8, 2014, Plaintiffs Nicolette Lewis, Alexis Lewis, Margrett Lewis and Jeffrey

15
Lewis ("Plaintiffs") suffered a tragic accident: a bottle of ethanol fuel allegedly exploded while

16
Alexis Lewis was attempting to refuel a fire pit at Plaintiffs' home, causing severe injuries to

17
Nicolette Lewis as well as injuries to the other Plaintiffs.  (Amended Complaint ("Am. Compl.") ¶¶

18
6, 7, 8.)  In April 2015, Plaintiffs filed a personal injury action against several entities allegedly

19
responsible for the incident, including The Fire Company Pty Ltd. ("TFC") and EcoSmart, Inc.

20
("EcoSmart").  (*Id.* ¶ 10, Ex. A.)  TFC is a company duly incorporated in Australia.  (Request for

21
Judicial Notice ("RJN"), Ex. 3.)  EcoSmart is a California corporation and was at all relevant times

22
a subsidiary of TFC.  (*Id.*; Am. Compl. ¶ 2, Ex. A.)

23
    Prior to the underlying incident, LMIC, operating under its Australian trade name LIU,

24
underwrote, negotiated and issued two insurance policies in Australia to TFC as the first Named

25
Insured, and which also listed EcoSmart as an insured: (1) General and Products Liability Policy

26
───────────────

27
    [2] Because LIU is a trading name of LMIC, and does not have capacity to be sued, in
moving to dismiss, LMIC and LIU do not waive any arguments with respect to the jurisdiction of
28
this Court over LIU.

1

1    No. ME-CAS-12-438176, which has a policy period from April 30, 2013 to April 30, 2014 (the

2    "First Policy"); and (2) General and Products Liability Policy No. SY-CAS-13-438176, which has

3    a policy period from April 30, 2014 to April 30, 2015 (the "Second Policy" and together with the

4    First Policy, the "Policies").  (Declaration of Paul Milliken ("Milliken Decl.") ¶¶ 3-6, Ex. 1;

5    Declaration of John Nicholls ("Nicholls Decl.") ¶¶ 3-6, Ex. 1.)

6         Given the Australia-centric nature of the Policies and the insuring parties' relationship,

7    Section 8.6 of the Policies provides:

8         This Policy shall be interpreted in accordance with the laws of Australia and all
          claims for indemnity under this Policy shall be decided in accordance with those

9         laws.  All matters arising from or relating to the construction, operation or
          interpretation of the Policy shall be submitted to the exclusive jurisdiction of the

10        Australian Courts.

11   (Milliken Decl., Ex. 1; Nicholls Decl., Ex. 1.)  The language and its intent is clear: all disputes

12   arising out of either Policy must be resolved before an Australian court under the laws of Australia.

13        At the time of the underlying incident, the First Policy had expired and the Second Policy

14   was in effect.  As such, TFC and EcoSmart, through their broker in Australia, noticed the

15   underlying action under the Second Policy.  (Declaration of Angus Kench ("Kench Decl.") ¶ 4, Ex.

16   1.)  Based upon an analysis of the terms and conditions of the Second Policy, Liberty denied

17   coverage.  (*Id.* ¶ 5, Ex. 1.)  The First Policy, which expired well over a month before the

18   underlying incident, was never noticed.  (*Id.* ¶ 6; Milliken Decl., Ex. 1.)

19        On January 9, 2018, Plaintiffs obtained default judgments in excess of $45 million against

20   TFC and EcoSmart in the underlying action.  (Am. Compl. ¶ 16, Ex. A; RJN ¶ 4, Ex. 4.)  One week

21   later on January 16, 2018, in violation of the mandatory Australia forum selection clause (and the

22   choice of law clause), Plaintiffs commenced this action against Liberty seeking to recover the

23   outstanding judgments obtained against EcoSmart (and TFC) only under the First Policy in reliance

24   on provisions of the California Insurance Code.  Plaintiffs are not, and never were, parties to, or

25   insured under, the First Policy.  Rather, they stand in the shoes of EcoSmart (or TFC) as third party

26   beneficiaries of the First Policy, have no greater rights than EcoSmart (or TFC) under the First

27   Policy and must abide by the terms and conditions thereof, including the mandatory Australia

28   forum selection clause.  Plaintiffs cannot delete or rewrite this provision in order to proceed in a

DEFENDANTS' MOTION TO DISMISS                                              Case No. 3:18-cv-01138-JSC

1  forum of their own choosing.  Irrespective of Plaintiffs' motive for filing suit in California, doing

2  so is a violation of the forum selection clause.

3      To the extent that Plaintiffs want to litigate matters of coverage, including governing law,

4  with Liberty, the mandatory forum selection clause in Section 8.6 of the Policies requires that

5  Plaintiffs litigate those matters, which "aris[e] from or relat[e] to the construction, operation or

6  interpretation of the Policy," in Australia.  (Milliken Decl., Ex. 1; Nicholls Decl., Ex. 1.)  Indeed,

7  LMIC has already taken affirmative steps to resolve the underlying coverage issues with its

8  insureds in Australia.  In October 2017, prior to the commencement of this action, LMIC filed a

9  declaratory judgment action in the contracting parties' agreed upon forum of Australia seeking a

10  declaration that LMIC does not owe coverage for the underlying action under the Second Policy

11  (the only policy that was actually noticed on behalf of TFC and EcoSmart).  (RJN ¶¶ 1, 2, Ex. 1, 2;

12  Kench Decl. ¶¶ 4, 6.)  LMIC had no reason to include the First Policy in its initial pleadings

13  because that policy was never noticed.  The action in Australia remains pending.  Pursuant to the

14  express terms of the First Policy, Plaintiffs also must resolve their coverage dispute with Liberty in

15  Australia.

16      Controlling U.S. Supreme Court precedent requires this result.  A mandatory forum

17  selection clause, such as those in the Policies, is "prima facie valid" and should be enforced unless

18  the party opposing enforcement can meet its "*heavy burden*" of demonstrating that the clause is

19  unreasonable or fundamentally unfair.  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 17

20  (1972) (emphasis added).  The mandatory Australia forum selection clause is valid, and Plaintiffs

21  cannot meet their heavy burden of demonstrating otherwise.

22      Moreover, the U.S. Supreme Court has further cautioned that an action commenced in

23  violation of a forum selection clause should be dismissed on *forum non conveniens* grounds unless

24  the party opposing dismissal can meet its burden of demonstrating that the contractual forum is an

25  inadequate alternative forum or "public-interest factors *overwhelmingly disfavor* a [dismissal.]"

26  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 134 S. Ct. 568, 583 (2013)

27  (emphasis added).  "[N]umerous federal courts have found Australia to be an adequate alternative

28  forum and dismissed on grounds of *forum non conveniens*."  *Auxer v. Alcoa, Inc.*, 406 F. App'x

3

1   600, 603 (3d Cir. 2011).  Furthermore, the U.S. Supreme Court has explained that because public

2   interest factors will "rarely defeat" a motion to dismiss for *forum non conveniens*, "the practical

3   result is that forum-selection clauses should control except in unusual cases." *Atl. Marine*, 134 S.

4   Ct. at 582.  Plaintiffs cannot meet their burden of demonstrating that public interest factors

5   overwhelmingly disfavor enforcement of the forum selection clause.

6          Accordingly, the forum selection clause should be enforced as written, and this action

7   should be dismissed on *forum non conveniens* grounds.

8   **III.    FACTUAL BACKGROUND**

9          **A.    LMIC Issues Insurance Policies in Australia to an Australian Company that
10                 Contain a Mandatory Australia Forum Selection Clause**

11         LMIC underwrote, negotiated and issued the First Policy and the Second Policy in

12  Australia.  (Milliken Decl. ¶¶ 3-6, Ex. 1; Nicholls Decl. ¶¶ 3-6, Ex. 1.)  TFC, an Australian

13  company doing business in Australia, is the first Named Insured on the Policies.  (Milliken Decl.,

14  Ex. 1; Nicholls Decl., Ex. 1; RJN, Ex. 3.)  EcoSmart, which was at all relevant times a subsidiary

15  of TFC and a California corporation, also is an insured under the Policies.  (*Id.*; Am. Compl. ¶ 2,

16  Ex. A.)  Plaintiffs allege that EcoSmart developed and sold an ethanol-based fuel product known as

17  E-NRG for use in decorative fire appliances.  (Am. Compl. ¶ 2.)

18         The First Policy, which provides occurrence-based coverage, has a per occurrence /

19  aggregate limit of AUD 20,000,000 (approximately USD 15,686,000), subject to a per occurrence

20  deductible of AUD 25,000 (approximately USD 19,607) for losses in North America and AUD

21  10,000 (approximately USD 7,843) for all other losses.  (Milliken Decl., Ex. 1.)  The Second

22  Policy, which provides both occurrence-based and claims-made coverage, has a per occurrence /

23  aggregate limit of AUD 20,000,000 (approximately USD 15,686,000), subject to a per occurrence

24  deductible of AUD 10,000 (approximately USD 7,843).  (Nicholls Decl., Ex. 1.)  However, under

25  the Second Policy, occurrences arising from losses in North America have a lower per occurrence /

26  aggregate limit of AUD 2,500,000 (approximately USD 1,960,000), subject to a per occurrence

27  deductible of AUD 250,000 (approximately USD 196,000).  (*Id.*)

28

4

1    Section 8.6 of the Policies contains a broadly worded mandatory Australia forum selection

2  clause stating that "*All matters arising from or relating to the construction, operation or*

3  *interpretation of the Policy shall be submitted to the exclusive jurisdiction of the Australian*

4  *Courts.*"  (Milliken Decl., Ex. 1; Nicholls Decl., Ex. 1 (emphasis added).)  The same provision also

5  contains a broadly worded choice of law clause stating that *"This Policy shall be interpreted in*

6  *accordance with the laws of Australia and all claims for indemnity under this Policy shall be*

7  *decided in accordance with those laws."*  (*Id.* (emphasis added).)

8    **B.    The Underlying Incident Occurs, and Plaintiffs Commence the Underlying**
9    **Personal Injury Action**

10    Plaintiffs allege that on June 8, 2014, a bottle of E-NRG fuel sold by EcoSmart exploded at

11  Plaintiffs' home while Alexis Lewis was attempting to refuel a fire pit.  (Am. Compl. ¶ 6.)  The

12  incident allegedly caused severe injuries to Nicolette Lewis as well as injuries to the other

13  Plaintiffs.  (*Id.* ¶¶ 7, 8.)  On April 1, 2015, Plaintiffs commenced a personal injury action in the

14  Superior Court of the State of California, County of Sonoma, captioned *Lewis v. EcoSmart, et al.*,

15  Case No. SCV-256907, against TFC, EcoSmart and several other entities seeking to recover

16  damages for their injuries (the "Underlying Action").  (*Id.* ¶ 10.)

17    **C.    TFC and EcoSmart Notice the Second Policy (But <u>Not</u> the First Policy)**

18    On April 17, 2015, EcoSmart forwarded via email a copy of the summons and complaint in

19  the Underlying Action to TFC in Australia.  (Kench Decl., Ex. 1.)  TFC then forwarded the email

20  to Arthur J. Gallagher ("AJG"), TFC and EcoSmart's broker in Australia.  (*Id.*)  On April 20, 2015,

21  AJG noticed the Underlying Action to Liberty in Australia under the Second Policy.  (*Id.* ¶ 4, Ex.

22  1.)  On April 21, 2015, Liberty in Australia denied coverage for the Underlying Action pursuant to

23  the terms of the Second Policy.  (*Id.* ¶ 5, Ex. 1.)  Neither the Underlying Action nor the underlying

24  incident were ever noticed under the First Policy, which expired well over a month before the

25  underlying incident even occurred.  (*Id.* ¶ 6; Milliken Decl. ¶ 3, Ex. 1.)

26    **D.    EcoSmart Files For Bankruptcy**

27    Several months later, on November 8, 2015, EcoSmart filed for bankruptcy in the U.S.

28  Bankruptcy Court for the Central District of California.  (Am. Compl. ¶ 15.)  Plaintiffs allege that

5

1   "[b]y order of the Bankruptcy Court, Plaintiffs were allowed to proceed against EcoSmart's

2   insurance carrier, to the extent there is coverage, but discharged EcoSmart for personal liability for

3   debt." (*Id.*)

4   **E.  LMIC Files a Declaratory Judgment Action in Australia Against TFC and**
    **EcoSmart**

5

6   On October 23, 2017, LMIC commenced a lawsuit in the Supreme Court of New South

7   Wales in Sydney, Australia against TFC and EcoSmart captioned *Liberty Mutual Insurance Co. v.*

8   *The Fire Company Pty Ltd., et al.*, No. 2017/319387 (the "Australia Action"). (RJN ¶¶ 1, 2, Exs.

9   1, 2.) The Australia Action seeks a declaration that LMIC is not liable under the Second Policy to

10  pay any sum by or on behalf of TFC or EcoSmart for the Underlying Action. (*See id.*) As pled, the

11  Australia Action does not seek a declaration with respect to the First Policy. The Australia Action

12  remains pending.

13  **F.  Plaintiffs Obtain Default Judgments Against TFC and EcoSmart in the**
    **Underlying Action**

14

15  Both EcoSmart and TFC defaulted in the Underlying Action. (Am. Compl. ¶ 16, Ex. A;

16  RJN ¶ 4, Ex. 4.) On January 9, 2018, following a prove-up hearing in the Underlying Action, the

17  court entered default judgments in excess of $45 million against TFC and EcoSmart in favor of

18  Plaintiffs. (*Id.*)

19  **G.  Plaintiffs File the Instant Action**

20  On January 16, 2018, in disregard of the mandatory Australia forum selection clause,

21  Plaintiffs commenced the instant action in the Superior Court of the State of California for the

22  County of Sonoma (Case No. SCV-261819) seeking payment under the First Policy. On February

23  22, 2018, LMIC removed the action to this Court on diversity grounds.

24  In the Amended Complaint – which omits any mention of the forum selection clause –

25  Plaintiffs assert a direct action pursuant to California Insurance Code Section 11580(b)(2) in their

26  capacity as judgment creditors of EcoSmart and a breach of contract claim in their capacity as third

27  party beneficiaries of the First Policy. (Am. Compl. ¶¶ 11-25.) The claims seek the same relief,

28  namely recovery of the full amount of the default judgments Plaintiffs obtained against EcoSmart

6

1   in the Underlying Action.  (*Id.*)  Apparently recognizing that the Second Policy – the policy that

2   was actually in effect at the time of the underlying incident and that was noticed – does not provide

3   coverage for the Underlying Action, Plaintiffs seek to recover only under the First Policy – the

4   policy that expired before the underlying incident occurred and that was never noticed.

5        Plaintiffs, ignoring the mandatory Australia forum selection clause, seek to invoke the First

6   Policy by relying on provisions of the California Insurance Code.  Plaintiffs allege that Liberty

7   "substantially reduced coverage limits and included claims made provisions [in the Second Policy]

8   without providing 60 days' notice as required under California law."  (*Id.* ¶ 12.)  Therefore,

9   Plaintiffs allege, the First Policy was "extended by 60 days until June 30, 2014, pursuant to

10  California Insurance Code section 678.1" and remained in effect on June 8, 2014, when the

11  underlying incident occurred.  (*Id.* ¶ 14.)

12       Liberty disagrees with Plaintiffs' alleged view of the construction, operation and

13  interpretation of the Policies, and contends that neither the First Policy nor the Second Policy

14  provide coverage for the Underlying Action.  There is no coverage under the First Policy because

15  (i) it is an occurrence-based policy, (ii) the underlying incident occurred on June 8, 2014, outside

16  of the policy period and (iii) the underlying incident was never noticed under the First Policy, a

17  condition precedent to coverage.  There is no coverage under the Second Policy because (i) the

18  underlying incident is excluded from the occurrence-based coverage and (ii) the limited claims-

19  made coverage does not apply.

20  **IV.   THE FORUM SELECTION CLAUSE IS VALID, ENFORCEABLE AND APPLIES**

21       **TO PLAINTIFFS' CLAIMS**

22       The mandatory forum selection clause – which requires that all disputes "arising from or

23  relating to" the Policies be submitted to the "exclusive jurisdiction" of the Australian courts – is

24  valid, enforceable against Plaintiffs as third party beneficiaries and encompasses Plaintiffs' claims.

25       **A.   Plaintiffs Cannot Meet Their "Heavy Burden" of Demonstrating that the**

26            **Forum Selection Clause Is Invalid**

27       Federal law governs the validity of forum selection clauses in diversity cases.  *Gamayo v.*

28  *Match.com LLC*, Nos. C 11-00762 SBA, *et al.*, 2011 WL 3739542, at *3 (N.D. Cal. Aug. 24,

7

1   2011).  Where, as here, a forum selection clause clearly designates the forum chosen as the

2   "exclusive forum," it is considered mandatory.  *Koresko v. RealNetworks, Inc.*, 291 F. Supp. 2d

3   1157, 1161 (E.D. Cal. 2003).  Mandatory forum selection "clauses are prima facie valid and should

4   be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the

5   circumstances."  *M/S Bremen*, 407 U.S. at 10; *see also Gamayo*, 2011 WL 3739542, at *3 (citing

6   *Carnival Cruise Lines, Inc. v. Schute*, 499 U.S. 585, 593-95 (1991) ("A forum-selection clause is

7   presumptively valid and should not be set aside unless the party challenging enforcement of such a

8   provision can show it is unreasonable or fundamentally unfair.")).

9       The Ninth Circuit has explained that a forum selection clause may be deemed unreasonable

10   or unfair if "(1) its incorporation into the contract was the result of fraud, undue influence, or

11   overweening bargaining power; (2) the selected forum is so 'gravely difficult and inconvenient'

12   that the complaining party will 'for all practical purposes be deprived of its day in court'; or (3)

13   enforcement of the clause would contravene a strong public policy of the forum in which the suit is

14   brought."  *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) (citations omitted).

15   The party opposing enforcement of a mandatory forum selection clause bears a *"heavy burden"* of

16   demonstrating why it should not be enforced.  *Run Them Sweet, LLC v. CPA Glob. Ltd.*, No. 16-cv-

17   03662-JST, 2016 WL 6216874, at *2 (N.D. Cal. Oct. 25, 2016) (emphasis added).

18       Plaintiffs cannot meet their heavy burden of demonstrating that the forum selection clause

19   is unreasonable or unfair.  First, "[f]or a party to escape a forum selection clause on the grounds of

20   fraud, it must show that, the *inclusion of that clause in the contract* was the product of fraud or

21   coercion."  *Richards v. Lloyd's of London*, 135 F.3d 1289, 1297 (9th Cir. 1998) (citation omitted).

22   Plaintiffs cannot make such a showing.  The contracting parties' connection to the designated

23   forum of Australia belie any such argument.  For example, the Policies were underwritten,

24   negotiated and issued in Australia (Milliken Decl. ¶¶ 3-6; Nicholls Decl. ¶¶ 3-6); the Underlying

25   Action was noticed by AJG in Australia to LMIC personnel in Australia (Kench Decl. ¶ 4, Ex. 1);

26   TFC, the first Named Insured under the Policies, is an Australian entity doing business in Australia

27   (RJN, Ex. 3; Milliken Decl., Ex. 1; Nicholls Decl., Ex. 1); and EcoSmart was at all relevant times a

28   subsidiary of TFC.  (RJN, Ex. 3; Am. Compl., Ex. A.)  It is therefore understandable that the

8

1  contracting parties agreed to include a mandatory Australia forum selection (and choice of law)

2  clause in the Policies.

3  Second, Plaintiffs cannot demonstrate that proceeding in Australia would be so gravely

4  difficult that it would effectively deprive them of their day in court.  The fact that it may be more

5  convenient for Plaintiffs to litigate in their home state of California is of no consequence.  "When

6  parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as

7  inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the

8  litigation."  *Atl. Marine*, 134 S. Ct. at 582.

9  To that end, federal courts, including this Court, routinely enforce forum selection clauses

10  even where doing so may inconvenience plaintiffs or require them to incur additional travel

11  expenses.  *See, e.g.*, *Pelleport Inv'rs, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 281 (9th

12  Cir. 1984) (travel from east coast to west coast does not constitute deprivation of day in court);

13  *Vogt-Nem, Inc. v. M/V Tramper*, 263 F. Supp. 2d 1226, 1232 (N.D. Cal. 2002) (dismissing claims

14  on *forum non conveniens* grounds in favor of the Netherlands despite plaintiff's assertion that

15  "enforcement of the forum selection clause would 'seriously inconvenience all parties (especially

16  as to expense)'" (citation omitted)).  Refusing to enforce a forum selection clause on the basis of

17  convenience and expense may constitute reversible error.  *See, e.g.*, *Effron v. Sun Line Cruises,*

18  *Inc.*, 67 F.3d 7, 10 (2d Cir. 1995) (district court erred in failing to enforce forum selection clause

19  despite "the costs and difficulties entailed in suing in Greece").

20  Third, Plaintiffs cannot demonstrate that enforcement of the forum selection clause would

21  contravene a strong public policy of California.  Attempts to invalidate a forum selection clause

22  because of "public interest factors" will "rarely" prevail "except in unusual cases."  *Atl. Marine*,

23  134 S. Ct. at 582.  Moreover, "a party challenging enforcement of a forum selection clause may not

24  base its challenge on choice of law analysis."  *Besag v. Custom Decorators, Inc.*, No. CV08-05463

25  JSW, 2009 WL 330934, at *4 (N.D. Cal. Feb. 10, 2009); *see also, e.g.*, *Voicemail Club, Inc. v.*

26  *Enhanced Servs. Billing, Inc.*, No. C 12-02189 SI, 2012 WL 4837697, at *3 (N.D. Cal. Oct. 10,

27  2012) (rejecting argument that enforcement of forum selection clause "would violate the strong

28  public policies behind California Civil Code sections 1542, 1668, and 1717" [pertaining to

9

1  unconscionable contracts] where "plaintiff fail[ed] to demonstrate that the underlying public policy

2  behind those sections relate[s] to venue"). "The question is not whether the application of the

3  forum's law would violate the policy of the other party's state, but rather, whether enforcement of

4  the forum selection agreement would violate the policy of the other party's state *as to the forum for*

5  *litigation of the dispute*." *Swenson v. T-Mobile USA, Inc.*, 415 F. Supp. 2d 1101, 1105 (S.D. Cal.

6  2006) (emphasis added).

7      Plaintiffs cannot meet their heavy burden of establishing that enforcement of the forum

8  selection clause would contravene a strong California public policy relating to the *venue* in which

9  their claims are to be litigated.

10      **B.     Plaintiffs Are Bound by the Forum Selection Clause**

11      Plaintiffs are bound by the Australia forum selection clause. Assuming *arguendo* that

12  California law were to apply to this dispute – which Liberty denies – a judgment creditor bringing

13  a direct action against the tortfeasor's insurer pursuant to California Insurance Code Section

14  11580(b)(2) is considered to be a third party beneficiary of the insurance policy. *See Phillips v.*

15  *Noetic Specialty Ins. Co.*, 919 F. Supp. 2d 1089, 1097 (S.D. Cal. 2013); *San Diego Hous. Comm'n*

16  *v. Indus. Indem. Co.*, 95 Cal. App. 4th 669, 684-85 (2002). Moreover, "[i]n the Ninth Circuit, a

17  third-party beneficiary of an agreement is bound by the terms of the agreement, including a valid

18  forum selection clause." *eBay Inc. v. Digital Point Sols., Inc.*, 608 F. Supp. 2d 1156, 1162 (N.D.

19  Cal. 2009); *see also TAAG Linhas Aereas de Angola v. Transam. Airlines, Inc.*, 915 F.2d 1351,

20  1354 (9th Cir. 1990) ("[I]t is well-settled contract law that the scope of a third-party beneficiary's

21  rights is defined by the contract . . . [and] a forum selection clause can restrict a third-party

22  beneficiary to the designated forum." (citation omitted)).

23      **C.     Plaintiffs' Claims Fall Within the Broad Scope of the Forum Selection Clause**

24      There is no question that Plaintiffs' claims fall within the broad scope of the forum

25  selection clause, which states that "All matters arising from or relating to the construction,

26  operation or interpretation of the Policy shall be submitted to the exclusive jurisdiction of the

27  Australian Courts." (Milliken Decl., Ex. 1; Nicholls Decl. Ex. 1 (emphasis added).) Assuming,

28  again, that California law were to apply – which Liberty denies – the Ninth Circuit has broadly

10

1  interpreted the phrase "arising out of or relating to" as "[i]ntending to reach all aspects of [the

2  parties'] relationship."  *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 732 (9th Cir.

3  2006); *see Besag*, 2009 WL 330934, at *1, *4 (broadly interpreting phrase "all actions relating to

4  this Agreement" to cover contractual and non-contractual statutory claims relating to the parties'

5  relationship).

6       Plaintiffs' breach of contract claim relates to the "construction, operation or interpretation"

7  of the Policies because Plaintiffs allege that Liberty breached the terms of the First Policy "by

8  failing to indemnify or defend EcoSmart" and "by failing to provide coverage to EcoSmart."  (Am.

9  Compl. ¶¶ 23, 24.)  Liberty disagrees with Plaintiffs' position on the construction, interpretation

10  and operation of the First Policy (and Second Policy to the extent that Plaintiffs might allege that

11  there is coverage thereunder) and contends that neither of the Policies provide coverage for the

12  Underlying Action.

13       Plaintiffs' direct action claim pursuant to Section 11580(b)(2) of the California Insurance

14  Code similarly "aris[es] from or relat[es] to" the Policies because it is premised on the same

15  allegations and seeks the same relief as the breach of contract claim.  Moreover, Plaintiffs could

16  not proceed with the direct action had the Policies not existed.  *See Adema Techs., Inc. v. Wacker*

17  *Chem. Corp.*, 657 F. App'x 661, 662 (9th Cir. 2016) (concluding that plaintiff's unjust enrichment,

18  conversion, and aiding and abetting claims "relate[d] to" the agreement because "[n]one could go

19  forward had the contract not existed").

20  **V.      THIS CASE SHOULD BE DISMISSED ON *FORUM NON CONVENIENS***

21  **GROUNDS**

22       Because the forum selection clause is valid, enforceable and applies to Plaintiffs' claims,

23  this case should be dismissed on *forum non conveniens* grounds.  *Atl. Marine*, 134 S. Ct. at 580

24  (holding that *forum non conveniens* is the proper mechanism to enforce a forum selection clause

25  designating a foreign forum).

26       For cases *not* involving a forum selection clause, "[i]n dismissing an action on forum non

27  conveniens grounds the court must examine: (1) whether an adequate alternative forum exists, and

28  (2) whether the balance of private and public interest factors favors dismissal."  *Lueck v.*

11

1  *Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001); *see also Piper Aircraft Co. v. Reyno*, 454

2  U.S. 235, 254 n.22 (1981).  However, where, as here, the case *does* involve a contract with a valid

3  and enforceable forum selection clause, "[t]he calculus changes."  *Atl. Marine*, 134 S. Ct. at 581.

4       In that scenario, the court is to afford "no weight" to the plaintiff's chosen forum, and "the

5  plaintiff must bear the burden of showing why the court should not transfer the case to the forum to

6  which the parties agreed."  *Id.* at 581-82.  In addition, the court must assume that any private

7  interest factors weigh in favor of dismissal.  *See id.* at 582.  As the U.S. Supreme Court explained

8  in *Atlantic Marine*:

9           When parties agree to a forum-selection clause, they waive the right to challenge the
            preselected forum as inconvenient or less convenient for themselves or their
10           witnesses, or for their pursuit of the litigation. A court accordingly must deem the
            private-interest factors to weigh entirely in favor of the preselected forum.

11

12  *Id.*

13       As a result, aside from the adequacy of the foreign forum, the court may only consider

14  public interest factors in the *forum non conveniens* analysis.  *Id.*  Moreover, the "party acting in

15  violation of the forum-selection clause . . . must bear the burden of showing that public-interest

16  factors *overwhelmingly disfavor* a transfer."  *Id.* at 583 (emphasis added).  "Because [these] factors

17  will rarely defeat a transfer motion, the practical result is that forum-selection clauses should

18  control except in unusual cases."  *Id.* at 582.

19       **A.      Plaintiffs Cannot Establish that Australia Is an Inadequate Alternative Forum**

20       An adequate alternative forum exists if the defendants are amenable to process in the

21  foreign forum and the jurisdiction's legal system has the potential to provide some remedy to

22  plaintiffs for their alleged wrong.  *Piper Aircraft*, 454 U.S. at 254 n.22.  A foreign country is not an

23  inadequate forum merely because its laws offer the plaintiffs a lesser remedy than they might hope

24  to receive in the U.S. court system.  *Id.* at 247; *see also Lueck*, 236 F.3d at 1145 (following *Piper*

25  *Aircraft* and rejecting argument by plaintiffs that New Zealand was an inadequate forum because

26  they would receive a lesser monetary award from a court in New Zealand); *Loya v. Starwood*

27  *Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 664 (9th Cir. 2009) (holding that Mexico was an

28  adequate alternative forum where Mexico recognized a tort cause of action and therefore "Mexican

12

courts would afford some remedy, even though less than available in this country"). Rather, "the doctrine of *forum non conveniens* is 'nothing more or less than a supervening venue provision' that goes to 'process rather than substantive rights.'" *Loya*, 583 F.3d at 663 (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994)).

Not surprisingly, "[n]umerous federal courts have found Australia to be an adequate alternative forum and dismissed on grounds of *forum non conveniens*." *Auxer*, 406 F. App'x at 603 (personal injury action); *see also Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 998 (2d Cir. 1993) (securities action); *Great Prize, S.A. v. Mariner Shipping Pty., Ltd.*, 967 F.2d 157, 160 (5th Cir. 1992) (admiralty and maritime action). California federal courts have reached the same conclusion, including in the breach of contract context. *See, e.g.*, *Herd v. Airbus SAS*, No. 2:17-cv-05001 SVW-MRW, 2017 WL 6504162, at *2 (C.D. Cal. Dec. 11, 2017) (personal injury action); *Camp W. Recorders Inc. v. Gibbs*, No. cv 13-06525 BRO(MRWx), 2013 WL 12191723, at *1-*4 (C.D. Cal. Oct. 28, 2013) (breach of contract action); *see also Warn v. M/Y Maridome*, 169 F.3d 625, 630 (9th Cir.), *as amended* (May 3, 1999) (dismissing maritime claims in favor of Greece or the United Kingdom); *Chateau des Charmes Wines Ltd. v. Sabate USA, Inc.*, No. C-01-4203 MMC, 2003 WL 22682483, at *9 (N.D. Cal. Nov. 10, 2003) (dismissing products liability action in favor of both Canada and France).

Liberty is amenable to jurisdiction in Australia. Indeed, LMIC commenced the Australia Action in Australia as required by the Policies. (*See* RJN ¶¶ 1, 2, Exs. 1, 2.) Further, litigating in Australia would not foreclose Plaintiffs' ability to pursue what, at bottom, are breach of contract claims against Liberty. Australia is an adequate alternative forum, and Plaintiffs cannot meet their burden of demonstrating otherwise.

### B. Plaintiffs Cannot Meet Their Heavy Burden of Showing that Public Interest Considerations Overwhelmingly Disfavor Dismissal

Nor can Plaintiffs meet their burden of showing that public interest factors "overwhelmingly disfavor" dismissal. *Atl. Marine*, 134 S. Ct. at 583; *Moretti v. Hertz Corp.*, No. C 13-02972 JSW, 2014 WL 1410432, at * 4 (N.D. Cal. Apr. 11, 2014). There are five public interest factors considered by courts in the Ninth Circuit: "(1) local interest of lawsuit; (2) the

13

1  court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the

2  court; and (5) the costs of resolving a dispute unrelated to this forum." *Lueck*, 236 F.3d at 1147

3  (citing *Piper Aircraft*, 454 U.S. at 259-61).  No one factor is determinative, but these factors will

4  "rarely defeat" a motion to enforce a forum selection clause.  *Glob. Quality Foods, Inc. v. Van*

5  *Hoekelen Greenhouses, Inc.*, No. 16-cv-00920-LB, 2016 WL 4259126, at *9 (N.D. Cal. Aug. 12,

6  2016) (quoting *Atl. Marine*, 134 S. Ct. at 582).  Regardless, here, all five factors favor dismissal.

7      The local interest factor weighs in favor of enforcing the mandatory forum selection clause.

8  "[L]ocal interests generally do not outweigh the controlling weight of the forum-selection clause."

9  *O'keeffe's Inc. v. Access Info. Techs. Inc.*, No. 15-cv-03115-EMC, 2015 WL 6089418, at *3 (N.D.

10  Cal. Oct. 16, 2015) (granting motion to transfer to New York in product liability suit due to forum

11  selection clause).  Because Plaintiffs are judgment creditors of EcoSmart and stand in its shoes, the

12  local interest factor must be viewed from the context of the contract at issue rather than the

13  underlying case.  *See, e.g.*, *Glob. Quality Foods*, 2016 WL 4259126, at *9 (local interest factor

14  favors enforcing forum selection clause, despite claim that "substantial part of the alleged events"

15  occurred in California, because "[w]hat is precisely in question, however, is not the underlying

16  complaint, but the indemnification dispute" (citation omitted)); *see also Qingdao Tang-Buy Int'l*

17  *Imp. & Exp. Co. v. Preferred Secured Agents, Inc.*, No. 15-cv-00624-LB, 2016 WL 10860010, at

18  *8 (N.D. Cal. Nov. 3, 2016) (stating that the question is about the credit agreement – rather than

19  the sale of goods – in granting third-party creditor's motion to dismiss on *forum non conveniens*

20  grounds).

21      California does not have a sufficiently strong interest in the litigation to justify disregarding

22  the contractually agreed to mandatory forum selection clause.  Although California may have an

23  interest in compensating tort victims, the crux of this matter is insurance coverage under an

24  insurance policy that was underwritten and issued in Australia by Australian parties.  Furthermore,

25  the fact that neither LMIC nor LIU is a California corporation weighs in favor of dismissal.  *See*

26  *Moretti*, 2014 WL 1410432, at *5 (when "defendants are not California corporations, California

27  has little interest in keeping the litigation in this state to deter future wrongful conduct" (citation

28

**DEFENDANTS' MOTION TO DISMISS**                         **Case No. 3:18-cv-01138-JSC**

1    omitted)).  Moreover, the Australia Action is already pending in Australia and seeks to resolve

2    coverage issues related to the Underlying Action.

3         By contrast, Australia "has an interest in 'protecting the bargained-for rights and

4    expectations of its residents.'"  *Glob. Quality Foods*, 2016 WL 4259126, at *9 (dismissing third-

5    party complaint on *forum non conveniens* grounds in favor of Ohio (citation omitted)).  Moreover,

6    the "enforcement of valid forum-selection clauses, bargained for by the parties, protects their

7    legitimate expectations and furthers vital interests of the justice system."  *Endonovo Therapeutics,*

8    *Inc. v. New Paradigm Ventures, Inc.*, No. CV-16-07433-MWF(FFM), 2017 WL 3049560, at *3

9    (C.D. Cal. Jan. 5, 2017) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)

10   (Kennedy, J., concurring) (dismissing action on *forum non conveniens* grounds in breach of

11   contract action in favor of Canada)).  Thus, "[w]hatever California's interest in the underlying suit,

12   that interest is outweighed by [Australia's] interest in seeing the parties' valid forum-selection

13   clause enforced."  *Qingdao*, 2016 WL 10860010, at *8 (dismissing on *forum non conveniens*

14   grounds in favor of Florida in contract dispute).

15        The governing law factor also weighs in favor of dismissal because in addition to the

16   mandatory Australia forum selection clause, the Policies expressly require that *"This Policy shall*

17   *be interpreted in accordance with the laws of Australia and all claims for indemnity under this*

18   *Policy shall be decided in accordance with those laws."*  (Milliken Decl., Ex. 1; Nicholls Decl. Ex.

19   1 (emphasis added).)  The courts of Australia are better equipped to apply their own law than a

20   U.S. court.  *See, e.g.*, *Warn*, 169 F.3d at 629-30 (affirming dismissal on *forum non conveniens*

21   grounds in favor of Greece or the United Kingdom because "either of the foreign forums would be

22   more adept at applying its own law"); *Great Prize*, 967 F.2d at 160 (affirming dismissal on *forum*

23   *non conveniens* grounds in favor of Australia because doing otherwise would "oblig[e] the district

24   court to "untangle problems . . . in law foreign to itself"" (omission in original) (citation omitted));

25   *In re Air Crash Over Mid-Atl. on June 1, 2009*, 760 F. Supp. 2d 832, 847 (N.D. Cal. 2010)

26   ("[D]ismissal to France also avoids the prospect of courts in the United States having to apply

27   French law.");  *Int'l Chem. Supplies (ICS), Inc. v. Restoration Energy, LLC*, No. 1:14-cv-01645-

28

15

1    MCE-JLT, 2015 WL 4602664, at *3 (E.D. Cal. July 29, 2015) ("The New York state courts are

2    indisputably more 'at home' with New York state law than this Court.").

3          The burden on local courts and juries, court congestion and the costs of resolving a dispute

4    unrelated to a particular forum factors also favor dismissal.  For example, as of the 12-month

5    period ending December 31, 2017, this Court was reported as having 9,199 pending cases.  (RJN ¶

6    5, Ex. 5.)  By contrast, as of December 31, 2017, the Common Law Division of the Supreme Court

7    of New South Wales in Sydney, Australia (the court in which the Australia Action is pending

8    before the Equity Division) is reported to have 2,655 pending civil cases and 119 criminal cases.

9    (RJN ¶ 6, Ex. 6.)  The less congested docket of the Common Law Division of the Supreme Court

10   of New South Wales suggests that Australia is the preferable forum.  *See Int'l Chem. Supplies*,

11   2015 WL 4602664, at *2 (comparing caseloads to determine court congestion and dismissing on

12   *forum non conveniens* grounds in favor of New York in breach of contract dispute).

13         Moreover, given that this case revolves around the Policies, which were underwritten,

14   negotiated and issued in Australia (Nicholls Decl. ¶¶ 3-6; Milliken Decl. ¶¶ 3-6); the underlying

15   claim was noticed in Australia (Kench Decl. ¶ 4, Ex. 1); the first Named Insured is an Australian

16   company (RJN, Ex. 3); and the contracts invoke the exclusive jurisdiction of Australian courts and

17   Australian law (Milliken Decl., Ex. 1; Nicholls Decl., Ex. 1), Australia has a stronger interest than

18   California in the dispute and should be willing to shoulder the burden of ensuring that contracts

19   entered into by its residents are honored.  *Glob. Quality Foods*, 2016 WL 4259126, at *9; *Qingdao*,

20   2016 WL 10860010, at *8.

21         Accordingly, Plaintiffs cannot demonstrate that the public interest factors overwhelmingly

22   disfavor dismissal.

23   **VI.    CONCLUSION**

24         As the U.S. Supreme Court has explained, "[w]hen parties have contracted in advance to

25   litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled

26   expectations. . . .  In all but the most unusual cases, therefore, 'the interest of justice' is served by

27   holding parties to their bargain."  *Atl. Marine*, 134 S. Ct. at 583 (citation omitted).

28

1    Liberty respectfully requests that the Court enforce the Policies as written and agreed to and

2 dismiss this action based on *forum non conveniens*.

3

4 Dated: March 1, 2018                    Respectfully submitted,

5                                         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

6

7                                         By: */s/ Jack P. DiCanio*
                                              Jack P. DiCanio

8

9                                         *Attorney for Defendants*
                                          LIBERTY MUTUAL INSURANCE COMPANY
10                                        AND LIBERTY INTERNATIONAL UNDERWRITERS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS' MOTION TO DISMISS**                    **Case No. 3:18-cv-01138-JSC**